**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel*. T.J. NOVAK, | ) ) ) | |
| Plaintiffs-Relator, | ) ) | Case No. 18 C 5452 |
| v. | ) ) | Judge Joan H. Lefkow |
| WALGREENS BOOTS ALLIANCE, INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT**
**RELATOR IS ENTITLED TO A SHARE OF THE STATES' SETTLEMENT**
**WITH WALGREENS THAT SETTLED RELATOR'S STATE FCA CLAIMS**

Plaintiff-Relator, T.J. Novak ("Relator Novak" or "Mr. Novak"), by his undersigned counsel, pursuant to 28 U.S.C. § 2201, hereby moves for a declaratory judgment that he is entitled to a share of the multi-state settlement with Walgreens. This states' settlement agreement resolved Relator's state False Claims Act ("FCA") claims in this case. In support of his Motion, Relator Novak states as follows:

1. In this Motion, Relator Novak asks this Court to enter a declaratory judgment, confirming his right to a share of the multi-state settlement that certain states reached with Walgreens. All parties have acknowledged that the multi-state settlement resolved Mr. Novak's state FCA claims in this case. Twenty-Eight (28) states are at issue (the "States"). The state FCAs expressly provide this right to Mr. Novak.[1]

---

[1] The full caption to Mr. Novak's case in this Court is: *United States of America, and the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Washington, ex rel. T.J. Novak v. Walgreens Boots Alliance, Inc.*, Case No. 18-cv-05452 (the "Novak *Qui Tam* Action").

2.      This FCA case featured claims by Relator Novak against Walgreens under the federal and various states' FCAs.  Relator Novak alleged that Walgreens filled illegal opioid prescriptions and then submitted them for reimbursement to federal health insurance programs, including Medicare and Medicaid.  The federal FCA claims covered the prescriptions submitted to exclusively federal health care programs like Medicare and Tricare, and also covered the federally funded portion of Medicaid.  Relator Novak's claims under the state FCAs covered each States respective portion of the Medicaid funds spent on the illegally filled prescriptions.  The federal government intervened in the federal FCA claims and settled them for $150 million.  The federal Settlement Agreement also resolved other federal claims that the government had asserted against Walgreens for violations of the Controlled Substance Act ("CSA").  The total federal settlement was for $300 million, and half—$150 million—was allocated to Mr. Novak's FCA claims.  The United States government paid Mr. Novak a 17.25% relator share in connection with the settlement of the federal FCA claims.

3.      While the federal government was negotiating with Walgreens to settle the federal FCA claims, the States reached their own separate settlement with Walgreens related to Walgreens' contribution to the opioid crisis.  The States' settlement, consummated in December 2022, involved alleged conduct by Walgreens similar to that alleged by Relator Novak in this case.  Under the terms of the States' Settlement Agreement, Walgreens has agreed to pay the States that are parties to that agreement a total of approximately $4,788,165,456 (the "States' Settlement").  *See* States' Settlement Agreement attached hereto as Exhibit A.[2]  In exchange, Walgreens was released from all liability regarding the Covered Conduct (*see*

---

[2]  It appears that all the States at issue in Mr. Novak's case here are parties to the States' Settlement Agreement.  *See* States' Settlement Agreement at Exhibit A.

Settlement Agreement § X, at 45-50), which includes liability related to the distribution, sale, dispensing, use or abuse of, any Product, system, plan, or policy—the very same conduct alleged by Mr. Novak in this case. (*See* States' Settlement Agreement § I. S. (5), at 4). To effectuate Walgreens' release of liability, the States' Settlement Agreement defines "Releasors" to include "any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam,* taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in this Agreement." *See* States' Settlement Agreement § NNN(c), at 10. In other words, the States' Settlement resolved Relator Novak's *qui tam* claims.

4. The States never asserted claims against Walgreens regarding the illegal opioid reimbursement requests to their Medicaid programs. Rather, the States pursued other harms that Walgreens allegedly caused to their respective state and municipal public health systems. Nevertheless, in order to resolve their claims against Walgreens, the States were required to release and dismiss all state *qui tam* claims pending against Walgreens, including Relator Novak's state FCA claims asserted in this case. Therefore, it is beyond dispute that part of the value paid by Walgreens to the States settled and released Mr. Novak's state FCA claims. The release of claims in exchange for payment is the very definition of a settlement. By entering into the States' Settlement, Walgreens obtained a release of Mr. Novak's state FCA claims, the federal counterpart of which cost Walgreens $150 million to resolve.

5. Notably, the States failed to follow their own FCA laws when they settled Mr. Novak's state FCA claims without informing him or this Court. Most of the States have FCAs that are modeled after the federal FCA. A common provision shared by the federal FCA, and their State counterparts, states as follows:

> The State may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

*See, e.g.*, Illinois False Claims Act, 740 ILCS 175/4(c)(2)(B). Here the States never informed Mr. Novak or this Court of their settlement of Mr. Novak's state FCA claims. Nor did the States seek a hearing or present any information to show that its release of Mr. Novak's claims was fair, adequate, or reasonable.

6. The States have also refused to comply with the provisions of their state FCAs that expressly require them to pay Mr. Novak a share of the States' Settlement. Those provisions, also modeled directly after the federal FCA, state as follows:

> Notwithstanding subsection (b), the State may elect to pursue its claim through any alternate remedy available to the State, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this Section.

*See, e.g.*, Illinois False Claims Act, 740 ILCS 175/4(c)(5)[3]. Thus, Relator Novak has the same right to a share of the States' Settlement as if the States had pursued the States' Settlement in this action.

7. Courts across the country have held that relators bringing claims under the federal FCA are entitled to a portion of settlement proceeds, even if the government did not intervene in the relator's case and instead pursued a separate settlement with the defendant. *See, e.g.,* *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 647 (6th Cir. 2003). As explained in

---

[3] A complete list of the relevant cites to the state FCA statutes is attached hereto as Exhibit B. Even the States without an express alternate remedy provision cannot settle a relator's *qui tam* case privately and then deprive the relator of a share of such settlement. To do so would be antithetical to the very existence of the state FCA.

*Bledsoe*, if that were not the case, "the government could decline to intervene in a *qui tam* suit, then settle that suit's claims separately and deny the relator his or her share of the settlement proceeds simply because the government had not formally intervened in the *qui tam* action. . . . Such a result would not further Congress' legislative intent that the government and private citizens collaborate in battling fraudulent claims[.]" *Id*. at 648-49. Under this reasoning, the Sixth Circuit held that "a settlement pursued by the government in lieu of intervening in a *qui tam* action asserting the same FCA claims constitutes an 'alternate remedy'." *Id*. at 649.

The court in *Bledsoe* addressed the very same concerns that would arise for Mr. Novak as a result of the Plaintiff States' release of Walgreens from their claims in the *Qui Tam* Actions:

> If the government has recovered funds lost from conduct asserted in Relator's qui tam action, then the government has essentially settled Relator's claims, regardless of whether it formally intervened in Relator's action or not. . . . There is no language in the FCA suggesting that a relator's statutory right to a share of the proceeds from the settlement of claims he or she had asserted may properly be abrogated by an agreement to which the relator was not a party.
>
> . . . If indeed the government settled Relator's claims, either Defendants would assert an accord and satisfaction defense (which, if successful, would deny Relator part or all of his rightful share of the recovered funds), or Defendants would be forced to pay the civil penalties and double or treble damages associated with the very same claims for which they had already paid penalties and damages by way of the settlement. Under either result, adverse consequences (to either Relator or Defendants) would ensue that the FCA had not intended. . . .
>
> We therefore hold that the government may not settle a relator's claims and seek to avoid paying a relator his or her statutory share to the settlement proceeds by excluding the relator's claims from the terms of the settlement agreement.

*Id*. at 649-50.

8.    Notably, courts in the Seventh Circuit have followed this logic. S*ee United States v. Bisig*, Case No. 2005 WL 3532554, at *2 (S.D. Ind. Dec. 21, 2005) (holding that "because the United States has achieved a monetary recovery from the Defendant in a manner outside of the *qui tam* action, and that recovery made an actual monetary recovery by the relator in the *qui tam*

action either impossible or futile, the United States, in effect, elected to pursue its claim through an alternate remedy under § 3730(c)(5)."); *U.S. Conner v. Veluchamy*, Case No. 11-CV-4458, 2015 WL 7710365, at *2 (N.D. Ill. Nov. 30, 2015). *See also United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001) (holding that even an administrative proceeding resulting in a settlement constituted an "alternative remedy").

9.     Therefore, because the Plaintiff States have pursued an alternative remedy via the States' Settlement Agreement with Walgreens, Mr. Novak has the same right to recover a share of that settlement that they would have had had the Plaintiff States obtained such settlement in the Q*ui Tam* Actions.  Indeed, if a state was free to use a relator's *qui tam* action against a defendant as a bargaining chip to extract other relief from a defendant, and then simply claim that the relief was not related to the *qui tam*, then the FCA would become a dead letter.  No rational relator would risk filing a case just to be manipulated out of his relator share.

10.     In order to accommodate the States' agreement to release Walgreens from all *qui tam* cases, Mr. Novak agreed to voluntarily dismiss his state FCA claims pending in this Court. In exchange for Mr. Novak's cooperation, the States agreed that the question of what, if any, right he had to a share of the States' Settlement was expressly reserved for resolution after resolution of the federal FCA claim.  Indeed, this Court's dismissal order stated:

   3.  Resolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant have been resolved.

*See* Order dated January 2, 2024.  Likewise, the States' Joint Motion to Dismiss Relator's state FCA claims acknowledges that the States' Settlement Agreement "resolved" those claims (Dkt. No. 27, p. 2).

11.     Even though the States' violations of the state FCA laws are clear, and even though States have nevertheless refused to negotiate a relator share in any way, Relator Novak wishes to be transparent about apparent facts behind the State's conduct here.  Mr. Novak wants to assert his rights, but is not intending to portray the States in a bad light.

12.     State FCA cases are served on the respective state attorney general offices.  That is what happened here.  Cases alleging fraud against a state's Medicaid program are typically assigned by the state attorney general to the State's Medicaid Fraud Control Unit, and multi-state cases like this one are typically coordinated by the National Association of Medicaid Fraud Control Units ("NAMFCU").  Here, State assistant attorney generals, including some Members of the NAMFCU, were assigned to investigate and monitor Mr. Novak's claims pending in this Court and filed under 28 different state FCAs.  The States' Settlement with Walgreens, however, was apparently not handled by NAMFCU and did not arise out any state FCA claims.  Rather, it was handled by a group of assistant attorneys general from the consumer divisions of various state attorney general offices.  Many of the States had not even filed litigation against Walgreens prior to the States' Settlement.  Instead, the States' Settlement resolved the States' assertion that conduct by Walgreens related to inventory and dispensing of opioids wreaked havoc on public health systems throughout the States.  When it came time to consummate the States' Settlement, however, Walgreens demanded the dismissal of all *qui tam* claims, which included Mr. Novak's case here. The state consumer division apparently never consulted with the NAMFCU or the State assistant attorney generals assigned to Mr. Novak's case, before releasing Walgreens from Mr. Novak's state FCA claims.

13.     When Mr. Novak asserted by letter the right to a share of some portion of the States' Settlement, the States' consumer divisions apparently were taken by surprise.  The

consumer divisions assert that they obtained the States' Settlement without even knowing about the existence of Mr. Novak's case. They prefer to view Relator Novak as just some interloper, trying to take advantage of the large consumer settlement that they obtained from Walgreens without any help from him. Of course, there is no merit to this position. Even if it is true that the consumer divisions had no knowledge of Mr. Novak's claims before the States' Settlement was consummated, such a fact does not negate the value that Mr. Novak provided. Regardless of what the consumer divisions actually knew, Walgreens understood the value of getting a release of all *qui tam* claims; and part of the reason Walgreens paid the $4.7+ billion was to get released from Mr. Novak's valuable *qui tam* case. In other words, the States would not have received the $4.7+ billion from Walgreens without releasing Relator Novak's valuable state FCA claims. The State's consumer divisions have offered no explanation as to why they did not reach across the aisle to their colleagues responsible for state FCA cases to find out what *qui tam* claims they were actually releasing.

14. The States have apparently also taken whatever settlement funds Walgreens has paid to date and disbursed them out to various municipal and/or state agencies, such that paying Mr. Novak a relator share has now become complicated. These sets of circumstances have led the States to dig in and refuse to pay any relator share whatsoever to Mr. Novak. Notably, the States still expect to receive more than $4 billion in future settlement payments under the States' Settlement. A relatively small fraction of that amount could easily be set aside to pay the relator share to which Mr. Novak is entitled.

15. While the States' frustration may be real, its position on the law and the equities is misguided. Mr. Novak brought an extremely valuable lawsuit against Walgreens. The federal claims in that case, including the federal share of the Medicaid program, settled for $150 million,

and the federal government paid Mr. Novak a 17.25% relator share. There is no reason to think that the State Medicaid share would be worth proportionally less, and certainly not zero. The States are receiving almost $5 billion from Walgreens, and one of the ways the States achieved that value is by giving Walgreens a release of Mr. Novak's Medicaid claims. None of the States filed their own claims relating to the damage Walgreens caused to their Medicaid programs. Only Mr. Novak did that, and at considerable sacrifice to him. Giving Walgreens a release was integral to the States' ability to consummate a $4.7+ billion settlement. Indeed, it saved Walgreens from significant FCA liability under the state FCAs. States cannot disburse the other agencies' money that they owed to Mr. Novak and then claim it is too hard to get it back.

16. Mr. Novak is far from an interloper. He is a pharmacist who first worked for Walgreens from 1982-1986 and then from 1997 to the present. While working for Walgreens, Mr. Novak would often come across questionable prescriptions for controlled substances. When he questioned whether a prescription should be filled, which often delayed the filling of the prescription, the customer would complain. Because of these complaints, Walgreens subjected Mr. Novak to significant discipline and retaliation. Each of these disciplinary actions against him were precipitated by Mr. Novak properly questioning the validity of a questionable opioid prescription. At these disciplinary hearings, senior members of Walgreens management/legal department were present, and provided no support to Mr. Novak for his insistence on following good faith dispensing practices and for his questioning "red flag" prescriptions. Instead, Mr. Novak was criticized for receiving customer complaints and was placed at risk of losing his job. As detailed in Mr. Novak's allegations, the retaliatory messages that he received from Walgreens' senior employees with national responsibility, and the process flaws that led to pharmacists' ignoring of good faith dispensing ("GFD") practices, were not limited to the stores

in which Mr. Novak worked. Rather, what Mr. Novak witnessed and experienced was systemic to Walgreens' processes and culture nationwide. These incidents prompted Mr. Novak to look for other ways to stop Walgreens from preventing its pharmacists from following their GFD obligations without fear of being disciplined or terminated. After much consternation, Mr. Novak decided that the way to stop Walgreens from filling invalid prescriptions, and to save the Medicaid and Medicare programs from having to pay for these invalid prescriptions, was to risk his career and file an FCA case. He came to work for the next 6 years with all of this hanging over his head.

17. Instead of acknowledging their obligation to pay, Mr. Novak the share to which the law entitles him, the States have indicated that they intend to attack the underlying merits of Mr. Novak's claims, with arguments such as inadequate pleading detail, prior public disclosure of the allegations, and the like. Putting aside whether these arguments would have ever had any validity, they are no longer available. Once a party settles a case, it can no longer continue to litigate the underlying merits. That principle is well settled. *See United States ex rel. Fallon v. Accudyne Corp*, 97 F.3d 937 (7th Cir. 1996); *Hudson v. Chicago Teachers Union*, 922 F.2d 1306, 1312 (7th Cir. 1991); *Geaney v. Carlson*, 776 F.2d 140, 141-42 (7th Cir. 1985). If the States truly doubted the merit of Mr. Novak's state FCA claims, the States could have attempted to move to dismiss them when they were filed, or even before the States settled with Walgreens. Of course, they did no such thing. It would have made no sense to dismiss claims which garnered a $150 million settlement for the federal government. Instead, the States used Mr. Novak's claims— unwittingly or not—as a bargaining chip for the States' Settlement Agreement.

18. Mr. Novak also expects the States to attempt to have this case removed to each of the respective state courts, so that Relator Novak has to chase the States in 28 different forums to

enforce his rights. That result makes no sense. Relator Novak's right to a share of the States' Settlement derives directly from his state FCA claims filed in *this Court*. This Court has supplemental jurisdiction over those claims. Each of the subject States has consented to that jurisdiction by using this Court to effectuate the dismissal of the claims as required by the States' Settlement. Each of the States was content to use this Court's jurisdiction to do so; and each State consented to an order by this Court which allows the question of Mr. Novak's right to a relator share to be decided once the federal claims have been resolved. Moreover, Relator Novak's right to the relator share stems from express provisions in state FCAs that parrot the language of the federal FCA. Federal courts have far greater experience than state courts interpreting and enforcing FCA issues. It is much more rare for state courts to litigate even a state-based FCA claim. Forcing Relator Novak to litigate in 28 different forums is neither warranted nor sensible.

19.    To be very clear, Mr. Novak is not seeking an award based on the entire States' Settlement, only a share of the portion of that agreement that can be allocated to the resolution of Mr. Novak's claims. The $150 million federal settlement resolved a year after the States' Settlement and was reduced by Walgreens' inability to pay the actual damages caused by its conduct. Indeed, Walgreens' agreement in December, 2022, to pay the $4.7+billion State Settlement likely affected its ability to pay additional damages for the federal FCA claim. The $150 million federal settlement is at least one reasonable data point as to the value of the release that the States gave to Walgreens. At this point, Relator Novak seeks only a declaratory judgment that he is entitled to an award from the States' Settlement.

WHEREFORE, Plaintiff-Relator T.J. Novak respectfully asks this Court to enter a declaratory judgment, in favor of Relator T.J. Novak, declaring that he is entitled to at least the

statutory minimum 15% share of the value of the States' Settlement that is allocated to the release of Mr. Novak's state FCA claims.

Dated:  November 26, 2025     Respectfully submitted,

           PLAINTIFF-RELATOR T.J. NOVAK

           By:  /s/ *David J. Chizewer*
               One of His Attorneys

Michael C. Rosenblat
ROSENBLAT LAW
707 Skokie Boulevard, Suite 600
Northbrook, Illinois  60062
(847) 480-2390
mike@rosenblatlaw.com

David J. Chizewer
William C. Meyers
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois  60603
(312) 201-4000
david.chizewer@goldbergkohn.com
william.meyers@goldbergkohn.com

*Counsel for Plaintiff-Relator T.J. Novak*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney, hereby certifies that on November 26, 2025, he caused a true and correct copy of **PLAINTIFF-RELATOR'S MOTION FOR A DECLARATION THAT RELATOR IS ENTITLED TO A SHARE OF THE STATES' SETTLEMENT WITH WALGREENS THAT SETTLED RELATOR'S STATE FCA CLAIMS** to be served via the Court's ECF/electronic mailing system upon all counsel of record.  In addition, service has been made in accordance with the most recent service instructions published by the National Association of Medicaid Fraud Control Units, available at https://www.whistleblowersattorneys.com/state-attorney-general-service-list-for-fca.

*/s/ David J. Chizewer*