**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| *ex rel.* T.J. NOVAK, | ) | |
| Plaintiffs-Relator, | ) | |
| v. | ) | Case No. 18 C 5452 |
| | ) | |
| WALGREENS BOOTS ALLIANCE, | ) | Judge Joan H. Lefkow |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**STATE OF CALIFORNIA'S OPPOSITION TO PLAINTIFF-RELATOR'S**
**MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS**
**ENTITLED TO A SHARE OF THE STATE OF CALIFORNIA'S**
**OPIOID ABATEMENT SETTLEMENT**

## I.      INTRODUCTION

The State of California ("California") hereby opposes Relator T.J. Novak's ("Relator") motion for declaratory judgment that he is entitled to a share of the settlement recovery obtained in the California state court-effectuated stipulated judgment entered in *People v. Walgreen Co.*, 23-CV-013529 (California Superior Court, County of Sacramento) ("Opioid Abatement Settlement"), which released, in part, claims Relator brought in this Court pursuit to the *qui tam* provisions the California False Claims Act ("CFCA"), Cal. Gov't Code section 12650, et seq. ("CFCA") ("*Qui Tam* Action").

As a threshold matter, unlike most states with alternate remedy provisions in the *qui tam* sections of their false claims acts, there is no authority under California law that permits any relator to a share of an alternate proceeding. And, where an alternate remedy exists in other states' statutes, the Opioid Abatement Settlement is not the type of recovery that a relator could claim as an alternate remedy. Relator also cannot claim a share predicated on a facially invalid *qui tam* claim that does not meet Rule 9(b) muster and cannot claim a share of a recovery to which he did not contribute.

Additionally, declaratory relief fails for independent, jurisdictional reasons. The dismissal with prejudice of all California claims in this matter leaves no live case or controversy involving California. Relator also cannot obtain declaratory relief by motion, and sovereign immunity would bar any freestanding declaratory-judgment action against California in federal court.

Finally, as all federal claims have been dismissed, the Court should exercise its discretion in declining to maintain supplemental jurisdiction over novel and complex state law claims that predominate and have yet to be decided by any state court, and where, as here, the complexities of the state court-effectuated stipulated judgment underlying the Opioid Abatement Settlement constitute exceptional circumstances compelling the declination of jurisdiction.

In sum, this Court should deny Relator's motion and direct Relator to refile his claim for a share of the Opioid Abatement Settlement in the California Superior Court, County of Sacramento.

## II. NO AUTHORITY PERMITS RELATOR A SHARE OF CALIFORNIA'S OPIOID ABATEMENT SETTLEMENT.

### A. California Does Not Have an Alternate Remedy Provision in its *Qui Tam* Statute That Relator Can Avail Himself to Compel a Share of California's Opioid Abatement Settlement.

Unlike the federal False Claims Act and many state analogues, and contrary to Relator's assertion that there is a "common provision shared by the federal FCA, and their State counterparts . . . ." (Relator's Motion, ¶5), the CFCA does <u>not</u> contain an alternate remedy provision. In fact, Relator's Exhibit B, a list Relator cites as the applicable alternate remedy provisions for each state named in his *Qui Tam* Action, includes nothing more than a blank space for California. This is because there is no statutory basis upon which Relator can countenance his claim to a share of California's Opioid Abatement Settlement as an alternate remedy to his *Qui Tam* Action. On these grounds alone, Relator's motion must be denied as to California.

Further, contrary to Relator's blanket position as to all states' statutes, the primary purpose of the CFCA on the whole is *not* to incentivize those with information concerning false claims to come forward; rather, it is to protect the public fisc against false claims. Demonstrating the variety among state statutes, some states, like California, have elected to strengthen their state False Claims Acts ("FCAs") with *qui tam* provisions, while other states have not. Of those with *qui tam* provisions, their terms and requirements vary. For example, some states mirror the federal relator share percentage range, while others—like California—do not. And here, some states' statutes have alternate remedy provisions, while others—like California—do not.

In fact, when the CFCA was first enacted in 1987, the California Attorney General

suggested amending the bill to add an alternate remedy provision. After considering the impact on parallel criminal proceedings concerning the same fraudulent conduct, the California Legislature elected *not* to include an alternate remedy provision to enable a relator a portion of a criminal restitution order. *See* Assem. Comm. on Judiciary, Concurrence in Senate Amendments to Assem. B. No. 1441 as amended August 18, 1987, 1987-1988 Reg. Sess., at 4 (Cal. 1987); Floyd Shimomura, Cal. Dep't. of Just. analysis of Assemb. B. No. 1441 for Assembly Member Floyd, 1987-1988 Reg. Sess., at 4 (Cal. 1987). And in 2012, when the CFCA was amended, the Legislature followed federal agency guidance that included a list of amendments required to bring the CFCA into sufficient conformity with the federal statute. That guidance did not require inclusion of an alternate remedy provision. The CFCA has been amended or modified several times; each time, the Legislature has elected *not* to include an alternate remedy provision in the statute. *See generally* Assem. Comm. on Judiciary, Concurrence in Senate Amendments to Assem. B. No. 2492, 2011-2012 Reg. Sess., Aug. 15, 2012 (Cal. 2011).

**B. The Federal Statute's Alternate Remedy Provision Cannot Be Used to Create a Non-Existent Provision In California Law.**

Because the CFCA was patterned after and resembles its federal counterpart, the federal False Claims Act (31 U.S.C. § 3729, et seq.), federal decisions are persuasive in interpreting analogous provisions. *United States v. Shasta Servs., Inc.*, 440 F. Supp. 2d 1108, 1111 (E.D. Cal. 2006), citing *Rothschild v. Tyco Int'l, Inc.,* 83 Cal. App. 4th 488, 494 (2000) and *Laraway v. Sutro & Co., Inc.*, 96 Cal. App. 4th 266, 274-275 (2002). However, where there is "different statutory language, federal authorities are not particularly helpful with respect to the proper construction of the California statute." *Id.*, see also *Fassberg Constr. Co. v. Hous. Auth. of City of Los Angeles*, 152 Cal. App. 4th 720, fn.10 (2007). While it is certainly appropriate for a court to turn to federal caselaw interpreting the federal False Claims Act when interpreting an

3

*analogous* provision of the CFCA, here, California in its sovereign capacity has chosen to provide no alternate remedy provision in its CFCA, making it inappropriate to rely on interpretation of the federal statute.

### C. The Opioid Abatement Settlement in This Case is Not the Type of Recovery That Would Amount to an Alternate Remedy to Relator's *Qui Tam* Action.

Although California's *qui tam* statute lacks an alternate remedy provision, jurisdictions that include such a provision intend it to apply to the *same types of fraud* that a relator could pursue in a *qui tam* action. A false claims act "does not reward relators any time the government pursued any 'alternate claim or cause of action' arising from the same set of facts and circumstances." *United States ex rel. Kennedy v. Novo A/S ("Novo A/S")*, 5 F.4th 47, 57 (D.C. Cir. 2021).

For example, in *Novo A/S*, the relator filed a *qui tam* action alleging violations of the federal False Claims Act for the submission of claims for drugs unlawfully marketed for off-label uses. The government filed and settled a separate action against the defendant under the Food, Drug and Cosmetic Act ("FDCA") for misbranding and resulting injuries to consumers. The relator contended that the government's FDCA action was an alternate remedy. The court rejected relator's claim, reasoning that a factual overlap is a necessary but not a sufficient condition for a relator to share in FDCA recovery. Rather, "it is the nature of the legal claim … and not the commonality of facts determines a relator's right to share in an alternative recovery." *Id.* The FDCA misbranding cause of action was intended to address harm to consumers and the public at large, not to redress fraud against a government payor, as is the case in a False Claims Act action. Because the FDCA action "did not involve the type of claim covered by the False Claims Act," and thus was not of the type a relator could have pursued in a *qui tam* action, relator was not entitled to a share of the FDCA settlement. *Id.* at 49, 56.

Similarly here, to claim a share of the Opioid Abatement Settlement, Relator must show that the recovery was for the same harm the federal and state FCAs recognize. *See United States ex rel. Kuriyan v. HCSC Insurance Services Co.*, No. 16-cv-1148, 2022 WL 704130, at *1-2 (D.N.M., Mar. 9, 2022). Here, while there is certainly some commonality of allegations that Walgreens improperly dispensed opioids, the nature of which was widely and publicly known at the time Relator filed his *Qui Tam* Action (as set forth in greater detail below), the nature of the legal claims and remedies in Relator's *Qui Tam* Action and the Opioid Abatement Settlement are entirely different.

Specifically, the claims asserted in California's Complaint for Permanent Injunction, Abatement, Civil Penalties, and Other Equitable Relief against Walgreens that resulted in the negotiated Opioid Abatement Settlement were based on violations of California's Unfair Competition Law ("UCL"), California Business and Professions. Code section 17200, et seq., and public nuisance as defined by California Civil Code sections 3479 and 3480. Declaration of David Jones ("Decl.") ¶ 14. The negotiated remedies for those violations—injunctive relief and funds obtained via the Opioid Abatement Settlement—are designed to save lives by remediating and abating harms to the public caused by Walgreens' over dispensing of opioids. Decl. ¶¶ 4, 37-40, 45. As the *qui tam* provisions of the CFCA limit relators to the pursuit of fraudulent claims for payment submitted to government payors (Cal. Gov't Code § 12650, et seq.), the UCL and public nuisance-predicated claims underlying the Opioid Abatement Settlement were not claims any relator could have brought in a CFCA *qui tam* action. Nor were they claims Relator brought in his *Qui Tam* Action asserting claims for restitution and penalties for alleged false claims submitted to and resulting in financial injury to California's Medicaid program, Medi-Cal.

Further, the only cases Relator cites are inapposite and undermine his claim. For example, unlike in this case, in *United States v. Bisig*, No. IP01-0030, 2005 WL 3532554 (S.D.

5

Ind. Dec. 21, 2005), the government's parallel criminal proceeding sought a restitution recovery for same type of injury to the Medicaid program as alleged in the relator's *qui tam*. In *United States v. Veluchamy*, No. 11-cv-4458, 2015 WL 7710365 (N.D. Ill. Nov. 30, 2015), the court denied the relator's claim to a share of a separate proceeding because the government did not pursue that proceeding as an alternative to joining the relator's *qui tam* action. And in *United States ex rel. Barajas v. United States*, 258 F.3d 1004 (9th Cir. 2001), unlike here, the separate proceeding enabled the government to obtain a remedy from the defendant "that substantially replicated the remedy it could have obtained" in the relator's *qui tam* action.

Here, the Opioid Abatement Settlement was designed to save lives and was not replicated, or even similar, to the remedy that Relator could have, in theory, obtained via his *Qui Tam* Action to redress alleged financial injury to Medi-Cal. Accordingly, Relator is not entitled to any portion of California's Opioid Abatement Settlement.

### D. Relator Cannot Claim a Share of a Recovery Predicated on a Facially Invalid *Qui Tam* Claim as to California.

Courts require relators to "allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings." *United States ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 357 (D. Mass. 2011); *see also, e.g.*, *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012) (finding relator's complaint "provide[d] neither the level of detail nor indicia of reliability required to support his state-law claims against the identified state defendants," where relator drew an inference of a nationwide scheme from his experience in two local clinics and his receipt of national office memoranda, "rather than his firsthand participation in billing and drug inventory management on a nationwide basis or in all of the identified states"); *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011) (holding that the facts a plaintiff alleged

regarding events in one state "cannot support by inference her general pleading, 'upon information and belief,' that similar frauds were also perpetrated in" four other states). Relator also cannot rely on conclusory allegations of nationwide fraud to support a claim that unlawful conduct was carried out in any other particular state, including California. *United States ex rel. Pepe v. Fresenius Medical Care Holdings*, No. 14-cv-03505, 2024 WL 4635236, at *5, 7 (E.D.N.Y., Oct. 31, 2024). Despite these requirements, and contrary to Relator's contention that the "States' violations of the state FCA laws are clear" (Motion ¶ 11), Relator failed to allege a single instance of Walgreens' submission of false claims for reimbursement to California in his original Complaint, First Amended Complaint, or Second Amended Complaint. Nor did Relator allege any facts providing "reliable indicia" or "evidence to strengthen the inference of fraud beyond possibility" as to California. *Id*.

Even assuming, *arguendo*, that the CFCA contained an alternate remedy provision—which it does not—Relator would still not be entitled to a share of the Opioid Abatement Settlement because his operative pleading fails to allege facts sufficient to support a CFCA violation under Rule 9(b). *See, e.g., United States v. Lab'y Corp. of Am. Holdings*, No. 17-cv-05696, 2015 WL 7292774, at *6 (S.D.N.Y. Nov. 17, 2015) (Rule 9(b) pleading standard applies equally to a relator's state law claims); *United States ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 561 (S.D.N.Y 2017) (no alternate remedy available because operative complaint failed to state a valid FCA claim as a matter of law); *United States ex rel. Bledsoe v. Comm'y Health Sys., Inc.*, 501 F.3d 493, 523 (6th Cir. 2007) (a "valid *qui tam* action must exist with respect to the FCA violations covered by the Settlement Agreement" for entitlement to alternate-source relief).

### E.  Relator Did Not Contribute to California's Opioid Abatement Settlement.

In order for Relator to claim a share as either an alternate or direct remedy, the

government must have relied on Relator's information to recoup the Opioid Recovery Settlement funds at issue through Relator's provision of direct and independent information in support of his allegation of a CFCA violation in the *Qui Tam* Action, *see Kuriyan*, 2022 WL 704130, at *1, and Relator's information must not have been previously publicly disclosed without Relator being an original source. *See State of California v. Pac. Bell Tel. Co.* (2006) 142 Cal. App. 4th 741, 757. Here, Walgreens' conduct, upon which Relator pled his *Qui Tam* Action, was publicly disclosed prior to the filing of his *Qui Tam* Action and Relator did not contribute to California's Opioid Abatement Settlement. Decl. ¶¶ 2, 6-10.

## III. DECLARATORY JUDGMENT IS INAPPROPRIATE HERE.

### A. Declaratory Relief Cannot Be Sought By Motion.

Though "appropriate pleading" is not defined, the Supreme Court has suggested that a party may not merely *move* for relief under the Declaratory Judgment Act; rather, the party must bring an *action* for a declaratory judgment. See *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). While the Seventh Circuit has not addressed this issue, the Ninth Circuit has held that "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014), citing *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma (USA) Inc. ("Kam-Ko")*, 560 F.3d 935, 943 (9th Cir. 2009). Requests for declaratory judgment are *not* properly before the court if raised only in passing, *or by motion. Id.* (emphasis added.); *see also Kam-Ko*, 560 F.3d at 943 (denying "motion for declaratory judgment" because such a motion is "inconsistent with the Federal Rules") (internal quotations marks omitted). Further, the Declaratory Judgment Act "is not an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960), citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

Rather than file a complaint, Relator filed a simple motion. Because doing so is

inconsistent with the Declaratory Judgment Act, Relator's motion must be denied.

**B. Should Relator File a Declaratory Relief Action, This Court Would Lack Jurisdiction Over Entirely State Law Claims.**

In any civil action in which a court has original federal jurisdiction, the court, in its discretion, may exercise supplemental jurisdiction over state law claims that "are so related to the claims supported by original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) ("Section 1367"). The plain language of section 1367 "makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 617 (7th Cir. 2018), citing *Herman Fam. Revoc. Tr. v. Teddy Bear*, 254, F.3d 802, 805 (9th Cir. 2001).

All federal claims in this matter—including Relator's parallel claim to a share of the federal settlement recovery—have been dismissed with prejudice. Accordingly, there are no claims for which "the district court has a hook of original jurisdiction on which to hang" supplemental jurisdiction over the state law claims. *Id*.; *see also Murphy v. Collins*, No. 25-cv-611, 2025 WL 3496141, at *2 (N.D. Ind. Dec. 4, 2025) (finding that "without a claim that the Court can appropriately hear based on federal law, the Court has no supplemental jurisdiction over potential state-law claims"). Assuming Relator were to file a declaratory relief action against the states under state law[1], because such action would not involve any federal question, this Court would still lack jurisdiction over it, as all federal claims, including Relator's claim to a

---

[1] Should Relator attempt to sue California for a share of the Consumer Abatement Recovery, such action would be barred by the Eleventh Amendment because California would not consent to such suit in federal court, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974), and the Eleventh Amendment requires courts to resolve immunity issues before entering judgment on the merits of underlying claims. *Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896, 907 (C.D. Ill. 2012); *see also McHugh v. Illinois Department of Transportation*, 55 F.4th 529 (7th Cir. 2022).

share of the federal recovery, have been dismissed. *See Bonner v. Repairers of the Breach, Inc.*, No. 24-cv-1636-PP, 2025 WL 2021047, at *2 (E.D. Wis. July 19, 2025) (federal court may hear state law claims only if claims exist over which there is diversity or federal question jurisdiction that are "so related" to the diversity or federal question claims that "they form part of the same case or controversy").

### C. There is No Existing Case or Controversy For Which Relator Can Seek Relief in This Court.

Federal courts are courts of limited jurisdiction restricted to hear specific types of cases and controversies as authorized by the United States Constitution and federal statutes enacted by Congress. *East Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 957 (7th Cir. 2021). Here, California and its claims were dismissed with prejudice on January 2, 2024. Dkt. No. 33. As a result, there is no case or controversy before this court involving California, and this Court no longer has jurisdiction over California.

Further, as California had been dismissed with prejudice, it did not receive notice or have an opportunity to be heard as to Relator's April 2025 request for this Court to maintain supplemental jurisdiction over Relator's state law based claims. Nevertheless, even if California had so consented, parties cannot agree to confer federal subject matter jurisdiction where it does not already exist by law. *Pittsburgh, C. & St. L.R. Co. v. Ramsey*, 89 U.S. 322 (1874).

### IV. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER RELATOR'S CLAIM TO A SHARE OF THE STATE COURT EFFECTUATED OPIOID ABATEMENT RECOVERY.

Section 1367(c) authorizes this Court to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over any federal claims; (3) the district court has already dismissed all federal claims; or (4) there are exceptional circumstances or other compelling reasons to decline

jurisdiction. 28 U.S.C. § 1367. As each of these factors exist here, this Court should decline to exercise supplemental jurisdiction over Relator's state law claim.

**A. Relator's Claim Raises Complex and Novel Issues of State Law Not Yet Decided.**

The Seventh Circuit has held that "issues of unsettled state law that may decide the outcome of [a] state-law claim" function as "an independent ground for relinquishing supplemental jurisdiction." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). In fact, it is "especially inappropriate for a federal court to make 'needless decisions of state law' when the court would not be interpreting or following established principles of state law, but rather would be required to decide difficult questions which the state courts have never addressed." *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1241 (7th Cir. 1984).[2] "[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989); *see also RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479-480 (7th Cir. 2012).

Because the CFCA does not contain an alternate remedy provision, no California or federal court has opined as to a *qui tam* relator's entitlement to a share of a California state court effectuated judgment as an alternate remedy under the CFCA. As California maintains a discernible state interest over applicable state law issues that are genuinely unsettled and potentially controlling, this Court should refrain from exercising supplemental jurisdiction to be the first court to impact unique state law.

---

[2] This District has also recognized that a federal court may appropriately abstain from exercising jurisdiction with which it is endowed pursuant to "*Pullman* abstention," where state court determination of state law may moot or change posture of federal constitutional question, "*Thibodaux* abstention," where federal court faces difficult questions of state law bearing on policy problems of substantial public importance, "*Burford* abstention," where federal review would be disruptive of state efforts to establish coherent policy on matter of substantial public concern, "*Younger* abstention," where federal jurisdiction has been invoked to enjoin certain state proceedings, and "*Colorado River* abstention," where considerations of wise judicial administration favor deference to concurrent state court proceeding. *Starzenski v. City of Elkhart*, 842 F. Supp. 1132 (N.D. Ind. 1994).

Relator may reply that requiring him to refile his state law predicated claims as to state court effectuated stipulated judgments in state courts neither serves his convenience nor avoids the risk of inconsistent rulings in various different state courts applying their respective state laws. Nevertheless, this Court should avoid "unnecessarily decid[ing] questions of state law," and not permit "the commandeering of state law to create a right of action" where none exists in California, as doing so would put the Court in the position of having to abuse its discretion in using "whatever tools it had available to correctly divine and apply state law." *Ameritox, Ltd. v. Millennium Laboratories, Inc.,* 803 F.3d 518, 520 (11th Cir. 2015). Relator's convenience cannot trump the state court's right to influence state law claims, and comity simply does not support continued exercise of supplemental jurisdiction over novel and complex state law claims.

**B. Relator's Claim for a Share of California's Consumer Recovery Under California State Law Predominates Over All "Anchor" Federal Claims Over Which the District Court Once Had Original Jurisdiction But That Have Been Dismissed.**

The Seventh Circuit routinely requires district courts to relinquish supplemental jurisdiction when state-law issues substantially predominate over dismissed federal claims, consistently applying the principle that state courts are better suited to decide predominately state law questions, in part because they are better situated to accurately gauge the legislative intent behind the state statutes in question and the policies guiding the issues involved. *Clemons v. City of Springfield*, 735 F.Supp. 309, 313 (C.D. Ill. 1990). Because this dispute turns entirely on unresolved questions of state law, Section 1367(c)(2) compels dismissal consistent with the Supreme Court's interpretation of the "substantially predominates" standard in in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966):

> **Needless decisions of state law should be avoided** both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, **if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well**. Similarly, if it appears that the **state issues substantially predominate**, whether in

terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and **left for resolution to state tribunals**.

*Id.* at 726–27 (footnotes omitted) (emphasis added).

Further, under Section 1367(c)(3), courts routinely relinquish jurisdiction over state law claims when federal "anchor" claims are no longer viable (*see Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36–37 (1st Cir. 2020)), and the Seventh Circuit has repeatedly held that the usual practice is to relinquish jurisdiction over state law claims once all federal claims are dismissed before trial. *See generally Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994)*; Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906–07 (7th Cir. 2007).

The federal claims conferring original jurisdiction were dismissed with prejudice shortly after the action was unsealed. No federal claim remains to support the exercise of supplemental jurisdiction over Relator's novel state-law claims. Retaining jurisdiction in these circumstances would improperly entangle a federal court in unresolved matters of state law. See *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) (presuming relinquishment of supplemental jurisdiction when all federal claims are dismissed before trial); see also *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518 (11th Cir. 2015) (holding that retention of supplemental jurisdiction over novel and complex state-law claims after dismissal of federal claims constitutes an abuse of discretion).

Further, because litigation never even began, the Court has little investment over state law issues, and previously executed tolling agreements permit Relator to refile and pursue his claims in state courts. Promotion of state court judicial economy, fairness to sovereign states, and comity require declination of exercise of supplemental jurisdiction.

**C. Exceptional Circumstances and Compelling Reasons Warrant the District Court Declining to Exercise Supplemental Jurisdiction to Usurp the State Court's Administration and Distribution of Funds From the State-Specific, Complex State Consumer Recovery Grounded Under State Law and Effectuated by a State Court Stipulated Judgment.**

The allocation and use of settlement funds in California are complex and controlled through the interplay of state statute, California Government Code section 12534, and the interlocking, cross-referenced terms of the 865-page stipulated judgment entered by the Superior Court of California, County of Sacramento in *People of the State of California v. Walgreen Co.*, Case Number 23-CV-013529. Decl. ¶¶ 13-43. Simply put, the State of California has no discretion for the remediation funds it receives from this settlement to be used for anything but future opioid remediation and abatement, money that California in its sovereign capacity determined is best used to combat the opioid epidemic and save lives. Decl. ¶¶ 2-4, 30-45. Neither state statute nor the judgment permits the use of settlement funds for Medi-Cal recovery or allocates any funds as purported damages to Medi-Cal. *Id*. To the extent there ultimately needs to be a reallocation of any funds from the Opioid Abatement Recovery, that effort should only be undertaken by the California Legislature or state court as to California's state specific allocation.

Moreover, Relator's claim over settlement funds from the Opioid Abatement Settlement glosses over the difficulties in defining what the State of California's share of those settlement funds is or will be. First, the settlement amounts are complicated by the uncertainty implicit in a payment stream lasting 15 years and involving base payments, which were guaranteed under the settlement, and incentive payments, which were earned via high levels of subdivision participation and the cessation of subdivisions' litigation activity against Walgreens. Indeed, the amount California receives will not be known until Walgreens has made its last payment, Decl. ¶ 30, and that payment will impact the ultimate recovery between the State of California and

14

participating California cities and counties that Relator did not name in his *Qui Tam* Action. Decl. ¶ 31-33, 42. Finally, reallocation of any funds to the Medi-Cal program or Relator would require both a modification of the state court judgment and amendments to state statute, Decl. ¶ 46, which cannot be effectuated by any order from this Court.

## V.      RELATOR'S CLAIM TO A SHARE OF CALIFORNIA'S OPIOID ABATEMENT RECOVERY SHOULD BE MADE IN CALIFORNIA STATE COURT.

The Court with jurisdiction over California's Opioid Abatement Settlement and the distribution thereof is the California Superior Court, County of Sacramento. Decl. ¶¶ 15-16. That state court is the proper forum for Relator's claim to a share of the Opioid Abatement Settlement. This Court should afford full faith and credit to the California state court's stipulated judgment and not divert its proceeds in a way not provided by that state court judgment.

## VI.     CONCLUSION

For the foregoing reasons, Relator's Motion for Declaratory Judgment should be denied with prejudice. In the alternative, as to California, this Court should direct Relator to seek relief in California Superior Court, County of Sacramento.

Dated:  January 30, 2026                        Respectfully submitted,

                                                ROB BONTA
                                                Attorney General of California

                                    By:     */s/ Jennifer S. Gregory*
                                                JENNIFER S. GREGORY
                                                DAVID JONES
                                                Supervising Deputy Attorneys General
                                                NICHOLAS N. PAUL
                                                Senior Assistant Attorney General
                                                California Department of Justice
                                                Office of the Attorney General
                                                *Attorneys for State of California*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on January 30, 2026, she caused a true and correct copy of **STATE OF CALIFORNIA'S OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATE OF CALIFORNIA'S OPIOID ABATEMENT SETTLEMENT** to be served via the Court's ECF/electronic mailing system upon all counsel of record.

/s/ Jennifer S. Gregory