# EXHIBIT 2

# STATE-SUBDIVISION AGREEMENT
# BETWEEN THE STATE OF MARYLAND AND LOCAL GOVERNMENTS
# ON PROCEEDS RELATING TO THE SETTLEMENT OF OPIOIDS LITIGATION

**Introduction**……………………………………………………………………………………………………………………………2

**Statement of Agreement**……………………………………………………………………………………………………….3

    **Section I**  Definitions……………………………………………………………………………………………………3

    **Section II**  General Terms……………………………………………………………………………………………..5

    **Section III**  Use of Settlement Proceeds………………………………………………………………………..6

    **Section IV**  Deposit, Distribution, and Allocation of Settlement Payments……………………..6

    **Section V**  Calculation of Subdivision Allocation Percentages…………………………………….9

    **Section VI**  Audit of Settlement Proceeds and Enforcement……………………………………… 9

**Signature Pages**

**Exhibits**

# Introduction

**WHEREAS,** the State of Maryland, its local governments, and its people have been harmed by an epidemic of opioid addiction and overdose deaths, as well as by the myriad costs to the health, economic well-being, and welfare of all Maryland residents caused by the epidemic; and

**WHEREAS,** certain pharmaceutical manufacturers, distributors, and dispensers have engaged in unlawful conduct related to the manufacture, marketing, promotion, distribution, and dispensing of opioids that has caused these harms; and

**WHEREAS,** the State and many of its local governments have engaged in investigations, litigation, and settlement negotiations involving certain manufacturers and distributors seeking to hold them accountable for their unlawful conduct and to obtain funds to be used to abate the epidemic; and

**WHEREAS**, the settlement negotiations with Johnson & Johnson, Amerisource Bergen, Cardinal Health, and McKesson have resulted in national settlements that invite participation by States and their local subdivisions, according to the terms of the agreements; and

**WHEREAS,** the State and its local governments recognize that their share of the settlement proceeds will not be sufficient to abate the widespread harm of the epidemic, but that the funds will enable them to increase significantly the reach and effectiveness of their ongoing abatement efforts; and

**WHEREAS**, the State and its local governments recognize that obtaining their full share of the settlement proceeds is contingent upon full participation in the national settlements by the State and all its qualifying subdivisions; and

**WHEREAS**, this State-Subdivision Agreement will facilitate compliance with the National Settlement Agreements on the part of the State and its local governments; and

**WHEREAS**, the National Settlement Agreements set default intrastate allocation formulas unless the State and its local governments enter state-specific State-Subdivision Agreements regarding the allocation and distribution of their shares of settlement proceeds; and

**WHEREAS**, distribution of the settlement proceeds may also be governed by Section 7-331 of the State Finance and Procurement Article Section, in the absence of a State-Subdivision Agreement; and

**WHEREAS**, to maximize recovery from the national settlements for the benefit of the residents of Maryland, it is necessary and appropriate to reach agreement among the State and its local governments as to the allocation and distribution of their shares of the settlement funds,

The Parties hereto agree as follows:

**STATEMENT OF AGREEMENT**

**Section I** **Definitions**

All terms used in this State-Subdivision Agreement shall have the meanings defined by the National Settlement Agreement or defined below unless explicitly stated otherwise. The following additional terms are defined for purposes of this State-Subdivision Agreement:

(a) "Abatement Plan" shall mean a plan created by any Subdivision or Consortium for the expenditure of Settlement Proceeds through Targeted Abatement Grants for Permitted Uses.

(b) "*Additional Restitution Payments*" shall mean the portion of the "Additional Restitution Amount" under the National Settlement Agreement that is allocated to the State of Maryland.

(c) "*Agreement*" shall mean this State-Subdivision Agreement.

(d) "*Consortium*" shall mean any group of Subdivisions that wishes to pool resources with one or more other Subdivisions for purposes of coordinated Future Opioid Remediation through Permitted Uses. There shall be no requirement that any Subdivision participate in a Consortium, but voluntary coordination among subdivisions, especially where economies of scale would be fostered by such coordination, is strongly encouraged. The Secretary shall assist in the development of an Abatement Plan created by Subdivisions for any consortium.

(e) "*Consortium Abatement Fund*" shall mean a special fund voluntarily created by a Consortium and its participating Subdivisions for any Consortium formed under this Agreement to receive Settlement Proceeds or other funding.

(f) "*County*" shall mean any county of the State and shall include Baltimore City.

(g) "*Executive Director*" shall mean the Executive Director of the Opioid Operational Command Center.

(h) "*Permitted Use*" shall mean any use permitted by the National Settlement Agreement and Section 7-331(f) of the State Finance and Procurement Article, as amended from time to time. Except as specifically provided otherwise by this Agreement, Permitted Uses shall be limited to Future Opioid Remediation.

(i) "*Qualifying Exhibit G Subdivision*" shall mean a subdivision listed on Exhibit G of the National Settlement Agreement that is not a Special District.

(j) "*Qualifying Non-Litigating Subdivision*" shall mean a Subdivision other than a Qualifying Exhibit G Subdivision or Special District that has established a Local Abatement Fund in accordance with the requirements of this Agreement.

(k) *"Qualifying Charter County"* shall mean Baltimore City and Anne Arundel, Baltimore, Frederick, Harford, Howard, Montgomery, and Prince George's Counties.

(l) *"Local Abatement Fund"* shall mean a separate, special revenue fund created by a Subdivision receiving funds under Section IV of this Agreement.

(m) *"Municipal Subdivision"* shall mean any incorporated city or town in Maryland other than Baltimore City.

(n) *"National Settlement Agreement"* shall mean the [Janssen Settlement Agreement/ Distributors Settlement Agreement] of [Date], which shall be incorporated in a consent order incorporating the National Settlement Agreement and this State-Subdivision Agreement.

(o) *"Opioid Operational Command Center"* shall mean the entity established by Governor Hogan's Executive Order 01.01.2017.01 to oversee the State's response to the opioid crisis and to build upon community-based strategies by increasing collaboration between state and local public health, human services, education, and public safety entities.

(p) *"Opioid Restitution Fund"* shall mean the Opioid Restitution Fund established by State Finance and Procurement Article Section 7-331(a), as amended from time to time.

(q) *"Parties"* shall mean the State of Maryland and the Subdivisions joining this agreement.

(r) "*Secretary*" shall mean the Secretary of Health.

(s) "*Settlement Payments*" shall mean settlement payments made to the State or its Subdivisions pursuant to the National Settlement Agreement.

(t) "*Settlement Proceeds*" shall mean the amounts of Settlement Payments allocated or distributed to the State or to a Subdivision under this Agreement.

(u) "*State*" shall mean the government of the State of Maryland, without inclusion of Subdivision governments.

**(v)** "*Targeted Abatement Subfund*" shall mean a subfund of the Opioid Restitution Fund created for the purpose of holding and distributing payments received pursuant to the National Settlement Agreement for Targeted Abatement Spending.

**Section II    General Terms**

(a) This State-Subdivision Agreement shall be dated January 21, 2022 and shall be effective on that date for all purposes under the National Settlement Agreement. Subdivisions that return Subdivision Settlement Participation Forms under the National Settlement Agreement shall be deemed to consent to this Agreement.

(b) This State-Subdivision Agreement shall be subject to the requirements of the National Settlement Agreement, as well as applicable law, and unless explicitly provided otherwise, the National Settlement Agreement governs over any inconsistent provision of this State-Subdivision Agreement. The Parties shall also commit jointly to effectuate the goals of this Agreement through legislation amending State Finance and Procurement Article Section 7-331 to conform with this Agreement's distribution requirements.

(b) This Agreement shall not create rights in any Non-Participating Subdivision to Settlement Proceeds of any kind, provided that the State may, consistent with the National Settlement Agreement, establish programs using Settlement Proceeds that benefit the residents of any Non-Participating Subdivision.

(c) This Agreement shall apply to Settlement Payments under the National Settlement Agreement and shall not apply to funding from any other source, *provided that* nothing in this Agreement shall prohibit the State or any of its Subdivisions from voluntarily supplementing Settlement Proceeds from the National Settlement Agreement with funding derived from any other authorized source.

(d) Any power conferred by this Agreement upon the Secretary may be delegated by the Governor to the Executive Director or a similar official created by future executive order.

(e) If the National Settlement Agreement to which this State-Subdivision Agreement applies fails to go forward, this State-Subdivision Agreement shall be void and create no rights or duties among the Parties hereto with respect to that National Settlement Agreement. To the extent a National Settlement Agreement to which this State-Subdivision Agreement applies goes forward, this State-Subdivision Agreement will go forward with respect to that National Settlement Agreement.

(f) This State-Subdivision Agreement shall create no rights in third parties, including parties to the National Settlement Agreement who are not also Parties to this State-Subdivision Agreement.

(g) Within 60 days of the date of this Agreement, each Subdivision receiving payments under the National Settlement Agreement and this Agreement shall establish a Local Abatement Fund consistent with State law for the purpose of receiving and spending direct payments made to local subdivisions by the Settlement Administrator to Qualifying Exhibit G Subdivisions under the National Settlement Agreement and this Agreement.

(h) The State shall maintain in the Opioids Restitution Fund a Targeted Abatement Subfund for the purpose of spending money received by the State under the National Settlement Agreement for Targeted Abatement Grants to Subdivisions of the State.

### Section III  Use Of Settlement Proceeds

(a) Except as provided under subsection (b), all expenditures of Settlement Proceeds by the State or its subdivisions shall be for Permitted Uses that serve the purpose of Future Opioid Remediation as set forth in the National Settlement Agreement.

(b) Notwithstanding subsection A, any Subdivision receiving settlement proceeds pursuant to Section IV(a)(3) of this Agreement may use up to 15 percent to pay for past Opioid Remediation consistent with Permitted Uses, subject to the accounting requirements of the National Settlement Agreement and the provisions of Section VI(a) of this Agreement.

(c) The Secretary shall have the discretion to supplement grants to Qualifying Exhibit G Subdivisions for Permitted Uses with additional funding derived from Settlement Proceeds whose expenditure is committed to the discretion of the Secretary by this Agreement, or from any other authorized source provided in the budget or by appropriation; *provided that* the Subdivision's use of Settlement Proceeds and other funds is consistent with State policies and any statewide abatement plan adopted by the Secretary for the purpose of coordinated future opioid remediation.

### Section IV  Deposit, Distribution, And Allocation of Settlement Payments

(a) Consistent with the National Settlement Agreement and Section 7-331 of the State Finance and Procurement Article, the Settlement Fund Administrator shall allocate and distribute Settlement Payments to the State and its Subdivisions under the National Settlement Agreement as follows:

 (1) **State Allocation.** The Settlement Fund Administrator shall allocate all Additional Restitution Payments, and 15 percent of all Annual Payments, to the State Fund for distribution to the State. Such payments shall be deposited in the Opioid Restitution Fund and expended on Permitted Uses as determined by the State.

 (2) **Targeted Abatement Subfund.** The Settlement Fund Administrator shall allocate 60 percent of all Annual Payments to the Abatement Accounts Fund established by the National Settlement Agreement for distribution to the State. Such payments shall be deposited in the Targeted Abatement Subfund and expended for Permitted Uses as follows:

(A) **State Discretionary Abatement Fund.** 25 percent of the 60 percent (15 percent of all Annual Payments) for Permitted Uses as determined by the Secretary to best serve the purpose of Future Opioid Remediation in the State, *provided that* the Secretary shall establish a program that enables Qualifying Non-Litigating Subdivisions to apply for grants and may, in the Secretary's discretion, make grants from this amount to participating Qualifying Non-Litigating Subdivisions. In determining whether to make a grant under this subsection, the Secretary may consider: (i) whether a grant is consistent with the overall needs for abatement in the community and in Maryland; (ii) the experience of the Subdivision in providing programs for opioids remediation and for the public health generally; (iii) the feasibility of the program to be funded by the grant; (iv) the consistency of the program with State policy and its level of integration with State and County programs for abatement and the discussions required by Section IV(b) of this Agreement; and (v) other needs for Future Opioids Remediation across the State; *provided that,* nothing in this subsection shall require the Secretary to make any grant or restrict the Secretary's discretion in utilizing funds deposited under this Subsection IV(a)(2)(A) as the Secretary believes will best serve the needs of Maryland residents and communities for opioids remediation. A Qualifying Non-Litigating Subdivision that does not apply for a grant in any given year may apply in future years, but only for Settlement Payments applicable to the years in which the Subdivision applies.

(B) **Targeted Abatement Grants.** 75 percent of the 60 percent (45 percent of all Annual Payments) for non-competitive Targeted Abatement Grants to Qualifying Exhibit G Subdivisions for Permitted Uses in accordance with each Subdivision's Subdivision Allocation Percentage as calculated pursuant to Section V of this Agreement. These non-competitive grants shall be made: (i) to the Local Abatement Funds of participating Qualifying Charter Counties within 30 days of the later of the deposit of Annual Payments in the Targeted Abatement Subfund or a Qualifying Charter County's establishment of a Local Abatement Fund pursuant to this Agreement; (ii) to other participating Qualifying Exhibit G Subdivisions upon the Secretary's approval of a grant application demonstrating that a Local Abatement Fund for deposit of Settlement Proceeds has been established, that the Settlement Proceeds will be used under a Local Abatement Plan that ensures the use of funds for Future Opioids Remediation through a Permitted Use, and that the Qualifying Exhibit G Subdivision has the capability of carrying out the specific program for which the grant is to be made. A grant application under this subparagraph (ii) that meets these requirements must be approved by the Secretary. A Subdivision receiving a grant under this subparagraph (ii) must renew it every five years. The Settlement Proceeds of any

Qualifying Exhibit G Municipal Subdivision that does not apply for a grant shall revert to the County in which the Subdivision is located.

(3) **Local Allocation.** The Settlement Fund Administrator shall allocate 25 percent of all Annual Payments to the Subdivision Fund for distribution directly to the Local Abatement Funds established by participating Qualifying Exhibit G Subdivisions in accordance with each subdivision's Subdivision Allocation Percentage as calculated pursuant to Section V of this Agreement, *provided that* no more than 60 percent of these local allocation funds (15 percent of all Base Payments and Incentive Payments overall) may be used for purposes other than Future Opioid Remediation.

(b) It is the intention of this Agreement to promote, as much as reasonably practicable, the efficient, effective, and consistent pursuit of coordinated statewide Future Opioid Remediation policies and programs at all levels of government. To that end, each year, no later than 180 days before an Annual Payment is due, the Secretary shall provide non-binding recommendations for County and Municipal Subdivision expenditure of Settlement Proceeds that, in the Secretary's judgment, will serve an efficient and effective program of Future Opioid Remediation across Maryland. Following the Secretary's recommendations, and no later than 120 days before an Annual Payment is due, a County receiving Settlement Proceeds under this Agreement shall meet with representatives from the Municipal Subdivisions that are located within the County and that receive Settlement Proceeds under this Agreement, plus any other Municipal Subdivisions that express interest in a meeting and are located within the County, together with the Secretary or the Secretary's designee, to discuss their respective plans for the use of Settlement Proceeds. The County and the Municipal Subdivisions within it, with the participation of the Secretary or the Secretary's designee, are encouraged to further engage in discussions as reasonably necessary to foster appropriate coordination. In the event of disagreement, the ultimate use of specific Settlement Proceeds shall be determined by the Subdivision that has been granted them in a manner consistent with the other provisions of this Agreement and applicable law.

**Section V      Calculation of Subdivision Allocation Percentages**

(a) When Annual Payments are to be granted or distributed to the Qualifying Exhibit G Subdivisions under the National Settlement Agreement or this Agreement, the Secretary shall determine each Qualifying Exhibit G Subdivision's Subdivision Allocation Percentage according to the following formulas:

(1) for a County, according to a formula that gives: (A) 25 percent weight to the population of the County as of July 1, 2019, according to the Census Bureau's official population estimates; and (B) 75 percent weight to the results of application of the formula used to derive Exhibit G to the National Settlement Agreement.  A county's Subdivision Allocation Percentage shall be reduced by the amount of the Subdivision Allocation Percentage, calculated under subsection V(a)(2), of any Municipal Subdivision that is a Qualifying Exhibit G Subdivision within it.

(2) for a Municipal Subdivision, according to a formula that gives: (A) 25 percent weight to the population of the Municipal Subdivision as of July 1, 2019, according to the Census Bureau's official population estimates; and (B) 75 percent weight to the results of application of the formula used to derive Exhibit G to the National Settlement Agreement.

**Section VI.** **Audit of Settlement Proceeds and Enforcement**

(a) The Secretary shall establish procedures for the audit of Subdivisions receiving Settlement Proceeds under the National Settlement Agreement and this Agreement consistent with the procedures for other grants to Subdivisions administered by the Secretary.  The auditing procedures shall ensure that the requirements of the National Settlement Agreement and this Agreement concerning the use of Settlement Proceeds for Permitted Uses and for Opioids Remediation are followed.

(b) If the Secretary believes that the provisions of the National Settlement Agreement or this Agreement are being violated, the Secretary shall report the violation to the Attorney General who may enforce the Consent Judgment incorporating the National Settlement Agreement and this Agreement against any Subdivision.