# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| United States of America, and the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Washington, *ex rel.* T.J. Novak,<br><br>     Plaintiffs/Relator,<br><br>v.<br><br>Walgreens Boots Alliance, Inc.,<br><br>     Defendant. | Case No. 1:18-cv-05452<br><br>Hon. Joan H. Lefkow |

## STATE OF CONNECTICUT'S BRIEF IN OPPOSITION
## TO NOVAK'S ALTERNATE REMEDY MOTION

`

WILLIAM TONG
Connecticut Attorney General

Eric P. Babbs
Assistant Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5041
eric.babbs@ct.gov

The State of Connecticut opposes Relator T.J. Novak's ("Novak") motion for declaratory judgment that he is entitled to a share of the settlement recovery obtained in the state court-effectuated stipulated judgment ("Opioid Abatement Settlement") entered in *State of Connecticut v. Walgreen Co.* that released, in part, claims Novak brought in this Court pursuant to the qui tam provisions in the Connecticut False Claims Act ("CFCA").

## FACTUAL AND LEGAL BACKGROUND

Before and after 2020, Walgreens was a defendant in litigations—brought under common law and statutory theories—whereby plaintiffs sought to recover for harms imposed upon the public because of chain pharmacies' role in the nationwide public health crisis concerning opioids. For example, Walgreens was among the chain pharmacies defending in a multi-district litigation against claims by local governments and other subdivisions. *County of Lake v. Purdue Pharma, L.P.* (*In re Nat'l Prescription Opiate Litig.*), No. 1:17-md-2804, 477 F. Supp. 3d 613 (N.D. Ohio 2020) (denying pharmacy defendants' motion to dismiss).[1]

**Connecticut's Settlement With Walgreens**

Against this backdrop, Connecticut and other states reached the Opioid Abatement Settlement with Walgreens regarding the company's role in the opioid crisis. The Opioid Abatement Settlement was announced on December 9, 2022. Its components included: (1) financial terms and structure; (2) injunctive relief in the form of anti-diversion controls and a controlled substance compliance program; (3) a timeline for states and subdivisions to join. Walgreens agreed to pay a Global Settlement Amount of up to $5.52 billion to participating states and subdivisions over fifteen (15) years, subject to contingencies for Walgreens' future financial

---

[1] *See also City & Cty. of San Francisco v. Purdue Pharma L.P.*, 620 F. Supp. 3d 936 (N.D. Cal. 2022) (findings of fact and conclusions of law regarding Walgreens' liability).

conditions. ECF 84-1, PageID.1269, 1291-1292, 1555. Walgreens received a broad release of any civil claim concerning an opioid product brought by or on behalf of a state or participating subdivision for conduct from the beginning of time to the Reference Date of the Opioid Abatement Settlement. *Id.*, PageID.1267-1268, 1272-1273.[2] Ninety-five percent (95%) of Walgreens' payments disbursed from the Settlement Fund to the states and participating subdivisions must be spent on opioid remediation. *Id.*, PageID.1293. The Opioid Abatement Settlement dispute resolution provisions list types of disputes subject to resolution in state court and types of disputes subject to arbitration through the National Arbitration Panel. *Id.*, PageID.1300-1305.

Connecticut, to effectuate the Opioid Abatement Settlement, filed an action in state court and obtained a stipulated judgment. *State of Connecticut v. Walgreen Co.*, No. HHD-CV24-6178098-S (Conn. Super. Ct.). Exhibit B – Docket. The state court complaint reflected Connecticut's theory that Walgreens violated the Connecticut Unfair Trade Practices Act and public policy against public nuisance. Exhibit A – Complaint. It did not cite the CFCA or allege that Walgreens had violated the CFCA. *Id.*

In 2022, the Connecticut General Assembly enacted a statute that governs opioid settlement moneys. It establishes an Opioid Settlement Fund as a separate nonlapsing fund overseen by an Opioid Settlement Advisory Committee. Conn. Gen. Stat. §§ 17a-674c, 17a-674d. Settlement payments from Walgreens have been deposited into this Fund. Exhibit C – Declaration of Christopher McClure ("Decl."). Moneys in the Fund "shall be spent only for … substance use disorder abatement purposes." Conn. Gen. Stat. § 17a-674c (f).

---

[2] Although this release did not reference Novak's case, it encompassed the conduct and theories of liability alleged in Novak's complaint. This was because its definitions of "Claim," "Covered Conduct," and "Released Claims" were broad and were "intended" to be interpreted broadly.

**Procedural History of Qui Tam Action**

Novak filed this action (the "Novak Qui Tam Action") under seal on August 10, 2018. He included a CFCA count in his complaint. ECF 1. On or about December 21, 2023, the named States intervened in the action for the limited purpose of moving to dismiss the States' claims. ECF 27. This Court granted the States' request, dismissing the States' claims brought by Relator under each state's false claim act with prejudice; the order also provided that "[r]esolution of the issue of whether Relator is entitled to a share … is postponed until after the United States' claims in this case against Defendant have been resolved" (Jan. 2, 2024 Order)—without providing in which venues such resolution would occur.

The Novak Qui Tam Action remained sealed until September 3, 2024. In 2025, Walgreens, the only defendant, was dismissed with prejudice. Per Walgreens' settlement with the United States, all federal False Claims Act ("FCA") claims in Novak's complaint were dismissed with prejudice to Novak; Novak later dismissed his claim against Walgreens for attorney's fees and costs. ECF 72, ECF 82. Six federal programs were reflected in the federal Controlled Substances Act and FCA settlement, including but not limited to Medicare, TRICARE, Medicaid, and the Federal Employees Health Benefits Program ("FEHB"). ECF 69, PageID.1150.

Novak filed his Motion for Declaratory Judgment ("Novak Alternate Remedy Motion") on November 26, 2025, seeking relief against Connecticut and 27 other states. ECF 84, PageID.1251.

## SUMMARY OF THE ARGUMENT

I.      The Declaratory Judgment Act and the Federal Rules of Civil Procedure do not permit a party to seek declaratory relief by motion.  Thus, the Motion is procedurally improper.

II.     The Eleventh Amendment bars Novak's alternate remedy claim, and Connecticut did not waive its sovereign immunity from suit in federal court. Just as the federal FCA does not contain a waiver of sovereign immunity, no waiver of sovereign immunity can be found in the CFCA

either. The CFCA speaks only of suits in state court and makes no mention of federal court. While Novak's alternate remedy claim arising under state law invokes supplemental jurisdiction, supplemental jurisdiction statutes do not override Eleventh Amendment immunity.

III. Even if the Court had supplemental jurisdiction over Novak's claim, it should relinquish jurisdiction because the claim involves novel and complex questions of state law, and all federal claims have been dismissed. The state-law questions are novel because there is a lack of state-court precedent for the type of claim Novak brings here. These questions belong in state court because the Opioid Abatement Settlement is governed by a state-court consent judgment and Connecticut statute and because Novak's claim to a share is premised on his view of state law. To collapse the distinctions amongst the states would strain judicial economy, fairness, and federal-state comity.

IV. The Opioid Abatement Settlement is not an alternate remedy for the claims in the Novak Qui Tam Action. First, there are no well-pleaded allegations that Connecticut relied upon or otherwise made use of Novak's action or information. Second, the Opioid Abatement Settlement was not premised upon any allegation of CFCA violations by Walgreens but amounted to settlement of qualitatively different claims. That settlement provides money to remediate harms to the general public, not financial harm to the state.

## ARGUMENT

**I. Novak Improperly Sought Declaratory Relief By Motion.**

By motion, Novak sought declaratory relief without filing "an appropriate pleading," 28 U.S.C. § 2201, such as a complaint or crossclaim. "Because an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *International Bhd. of Teamsters v. Eastern*

*Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (emphasis in original), citing Fed. R. Civ. P. 57. "Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014). "[T]he Declaratory Judgment Act authorizes declaratory judgment actions, not declaratory judgment motions within an active case." *Russell v. PS 27 Fam. L.P.*, No. 1:23-CV-405-CCB-SLC, 2025 WL 689744, 2025 U.S. Dist. LEXIS 38407, *12 (N.D. Ind. Mar. 4, 2025). Because the Motion is procedurally improper, and for the reasons set forth below, the Court should deny Novak's Alternate Remedy Motion and dismiss Novak's claim against Connecticut. If dismissal is not granted, Connecticut reserves its rights to seek discovery and to request summary judgment.

## II. The Eleventh Amendment Bars Novak's State-Law Claim Against Connecticut.

Federal jurisdiction is absent over Novak's claim against Connecticut, as the Eleventh Amendment prevents federal courts from deciding suits against a state by citizens of another state.

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XI. "While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens," the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974). The Eleventh Amendment bars not only suits styled as such, but also "ancillary and supplemental" claims for relief against a state. *Missouri v. Fiske*, 290 U.S. 18, 27 (1933). "[D]eclaratory relief should not be awarded where the [E]leventh [A]mendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993).

## A. The CFCA Does Not Provide For Federal Suits Against Connecticut.

"Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), *superseded by statute on other grounds*, *Lane v. Pena*, 518 U.S. 187, 200 (1996). "[A] State's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." *Id.* (quotation omitted). "Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal* court." *Id.* Moreover, "[w]aiver of sovereign immunity must be knowing and voluntary, and the 'test for determining whether a State has waived its immunity from federal jurisdiction is a stringent one.'" *Pettigrew v. Oklahoma ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1213 (10th Cir. 2013) (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)). Although "[n]o magic words are required," "implicit waivers won't do." *Mueller v. Thompson*, 133 F.3d 1063, 1064 (7th Cir. 1998). The Supreme Court will find a waiver of Eleventh Amendment immunity only where "the State voluntarily invokes [federal] jurisdiction" or makes a "clear declaration that it intends to submit itself to [federal] jurisdiction." *Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. at 675-676 (quotation omitted).

No waiver of the Eleventh Amendment immunity is present here. The CFCA speaks only of suits in state court and makes no mention of any federal forum. Conn. Gen. Stat. § 4-277 (qui tam provisions refer to state court "in the … judicial district of Hartford"); Conn. Gen. Stat. § 4-280 (alternate remedy provision lacks any reference to federal court). The lack of any express reference to federal court is dispositive here. *See Mueller*, 185 F.3d at 1064-1065 (no federal jurisdiction over state employee class action against State of Wisconsin, where state consented to

suit "in any court of competent jurisdiction"); O'Shell v. Cline, 571 Fed. Appx. 487, 491 (7th Cir. 2014) (holding that Indiana did not waive sovereign immunity under its state FCA analogue).

Moreover, the structure of the CFCA shows that the state itself cannot be a defendant. The CFCA provides that a defendant can be liable for a relator's expenses, Conn. Gen. Stat. § 4-279(b), and that the state "shall not be liable for" a relator's expenses. Conn. Gen. Stat. § 4-283. This implies that the state cannot be a defendant. The CFCA no more contains a waiver of sovereign immunity than does the federal FCA, which courts have held does not waive the federal government's sovereign immunity. Galvan v. Federal Prison Indus., 199 F.3d 461, 467-468 (D.C. Cir. 1999). The federal FCA "provides no express waiver of the sovereign immunity of the United States for a collateral attack on a settlement between the government and a qui tam defendant." King v. United States Gov't, 878 F.3d 1265, 1267 (11th Cir. 2018).

**B. Connecticut Did Not Consent to Federal Suit.**

Contrary to Novak's argument (ECF 84, PageID.1261), Connecticut did not waive its Eleventh Amendment immunity during this case when joining with other states to dismiss Novak's CFCA claim. ECF 27. "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A., 623 F.3d 440, 443 (7th Cir. 2010). While the states may not have raised a jurisdictional issue in the 2023 notice of intervention and dismissal, ECF 27, this was not an affirmative invitation to decide Novak's not-yet-filed claim on the merits, so it could not have amounted to waiver. 623 F.3d at 443 (holding that party's "preliminary actions" did not waive personal jurisdiction defense).

In all events, Connecticut did not make a knowing and voluntary choice of a federal forum; it did not "come into the suit for the purpose of litigating the rights [Novak] asserted." *Missouri v. Fiske*, 290 U.S. at 27. Only Novak chose this forum; and if the states had not intervened, Novak could have litigated against Walgreens in a manner that violated Connecticut's obligations under the Opioid Abatement Settlement. As the settlement's dispute resolution provisions refer to state courts and the National Arbitration Panel, nothing about the Opioid Abatement Settlement suggests a waiver of Eleventh Amendment immunity either. ECF 84-1, PageID.1300-1305.

**C. Supplemental Jurisdiction Cannot Be Exercised Over Claims Already Barred By The Eleventh Amendment.**

Supplemental jurisdiction cannot be exercised over claims the Eleventh Amendment already bars. Novak's claim for declaratory judgment is based on state law exclusively and does not arise under federal law.³ *See Virginia ex rel. Hunter Labs., L.L.C. v. Virginia*, 828 F.3d 281, 287-288 (4th Cir. 2016) (holding that state false claims suit for alleged Medicaid fraud did not "arise under" federal law). The Eleventh Amendment's bar of federal suits against states "applies to pendent claims as well." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984). "A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121. After Congress codified supplemental jurisdiction in 28 U.S.C. § 1367, the Supreme Court held that "[section] 1367(a)'s grant of jurisdiction does not extend to claims against non-consenting state defendants." *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533, 542 (2002). Where a state statutory provision waives sovereign

---

³ Although the False Claims Act has a jurisdictional provision for "any action brought under the laws of any State for the recovery of funds paid by a State," 31 U.S.C. § 3732(b), this provision incorporates supplemental jurisdiction by its "same transaction or occurrence" language. *See Wisconsin v. Amgen, Inc.*, 516 F.3d 530, 532 (7th Cir. 2008) (affirming remand of state-law fraud case to state court, as supplemental jurisdiction did not provide a basis for removal).

immunity in state court only, a federal court cannot exercise supplemental jurisdiction over a claim against that state. *Am. Soc'y of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1072 (N.D. Ill. 2001) ("Any lawsuit based on such an independent state law violation would be barred by the Eleventh Amendment, and this Court's exercise of supplemental jurisdiction over such a claim would run contrary to *Pennhurst*.").

In sum, because Connecticut did not consent to federal suit for the type of state-law claim Novak brings—an alleged failure to provide him a settlement share under the CFCA alternate remedy provision, Conn. Gen. Stat. § 4-280—that claim is barred by the Eleventh Amendment.[4]

### III. The Court Should Relinquish Supplemental Jurisdiction Where All Federal Claims Have Been Dismissed And The State-Law Questions Are Novel and Complex.

Even if this Court had jurisdiction over Novak's state-law claim to share in recovery from a state court consent judgment, it should decline to exercise jurisdiction. *See* 28 U.S.C. § 1367(c).

### A. All Federal Claims Have Been Dismissed Before Trial.

To begin with, all federal claims have been dismissed. 28 U.S.C. § 1367(c) states:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
> (1) the claim raises a novel or complex issue of State law,
> …
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's*

---

[4] Novak does not appear to argue that Congress abrogated the states' Eleventh Amendment immunity in FCA cases. Any such argument would fail for lack of statutory support. *See O'Shell*, 571 Fed. Appx. at 490-491 (holding that abrogation of state sovereign immunity cannot be found in the FCA); *Monroe v. Fort Valley State Univ.*, 93 F.4th 1269, 1276-1277 (11th Cir. 2024) (holding that FCA's anti-retaliation provisions did not abrogate state sovereign immunity).

*Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). "This presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479-480 (7th Cir. 2012) (quotation omitted). Where all federal claims have dropped from the case, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989). Where "the district judge properly dismissed [the federal] claim before trial, and since the considerations of judicial economy that underlie pendent jurisdiction are but weakly engaged when the federal claim drops out so soon, the judge was required in the absence of extraordinary circumstances not shown here to remand the pendent claim to state court rather than go on and decide it." *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 187 (7th Cir. 1984). "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Oneida Indian Nation v. Madison County*, 665 F.3d 408, 439 (2d Cir. 2011) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 727 (1966)). And here, the federal claims are not even an "appendage" but have been dismissed entirely. Therefore, all state-law claims should drop out as well.

**B. The Novak Alternate Remedy Motion Raises Complex And Novel Issues Of State Law.**

The second factor that supports declining jurisdiction is that the Motion raises complex and novel issues of state law. 28 U.S.C. § 1367(c)(1). "[I]n cases involving complex or novel issues of state law, the appellate courts have held that it is an abuse of discretion to retain jurisdiction after the federal issue is disposed of at trial or even on appeal." *United States v. Zima*, 766 F.2d 1153, 1158 (7th Cir. 1985). Where "[t]he judge identified several issues of unsettled state law that may decide the outcome of [plaintiff's] state-law claim, [this was] an independent ground for

relinquishing supplemental jurisdiction." *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Where a Section 1367(c) factor applies, "the court may (and indeed, ordinarily should) kick the case to state court." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32.

The state-law questions are novel because, in Connecticut, there is no court precedent construing the CFCA alternate remedy provision. The CFCA alternate remedy provision states:

> Notwithstanding the provisions of section 4-277, the Attorney General may elect to pursue the state's claim through any alternate remedy available to the state, including any administrative proceeding to determine a civil penalty. If any such alternate remedy is pursued in another proceeding, the person bringing the action shall have the same rights in such proceeding as such person would have had if the action had continued under the provisions of sections 4-277 to 4-279, inclusive.

Conn. Gen. Stat. § 4-280 (no state court decisions for this section in Lexis database).[5] Connecticut courts have not decided (or been asked) whether the Connecticut Attorney General's pursuit of consumer protection claims can function as an alternate remedy to a relator's CFCA claims. When a state-law claim "raises issues of first impression in [a state]," this is a strong factor weighing against exercise of pendent jurisdiction. *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1240 (7th Cir. 1984). Where "[t]he only significant legal questions ... are of state law," the "state courts are better suited … to decide those questions, in part because they are better situated to accurately gauge the legislative intent behind the statutes in question and the policies guiding the common law issues involved." *Clemons v. Springfield*, 735 F. Supp. 309, 313 (C.D. Ill. 1990).

Indeed these questions belong in state court, under each state's false claims statute, because the Opioid Abatement Settlement (of which Novak seeks a share) is governed by state-court consent judgments and, in some respects, state statutes. Conn. Gen. Stat. §§ 17a-674c, 17a-674d.

---

[5] The lone administrative decision discussing § 4-280 makes clear that the CFCA applies to state agencies and quasi-public agencies, not municipal agencies. *In the Matter of Complaint by Nancy Griswold*, 2025 CT FOI Comm. Decs. LEXIS 114, *9 (Jun. 11, 2025).

The state law issues are also complex, where Novak challenges a consent judgment in each state's court—and Connecticut is just one of twenty-eight states. Against each state Novak is asserting a separate claim and thus this Court, were it to retain jurisdiction, would need to adjudicate twenty-eight distinct claims. *See United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d Cir. 2000) (holding that the relators' claims to proceeds "must be based on a claim-by-claim analysis").

Lastly, any attempt to collapse relevant differences amongst states or to rewrite the Opioid Abatement Settlement as implemented in each state would fly against fairness to states and disserve federal-state comity. The Novak Alternate Remedy Motion also strains judicial economy by attempting to join what in effect are Novak's actions against twenty-eight states into one federal court action. *See Ameritox, Ltd. v. Millennium Laboratories, Inc.*, 803 F.3d 518, 534-536, 541 (11th Cir. 2015) (holding it was an abuse of discretion to retain supplemental jurisdiction over novel and complex state-law claims hailing from nine states, when considering judicial economy, convenience, fairness, and federal-state comity). Promotion of judicial economy, fairness, and comity at this juncture requires declination of supplemental jurisdiction. *Id.*

**IV. The Opioid Abatement Settlement Is Not An Alternate Remedy For The Claims In The Novak Qui Tam Action.**

If the Court examines the merits, Novak is not entitled to relief for two independent reasons. ***First***, there are no well-pleaded allegations that Connecticut relied upon or made use of any information Novak supplied. To share in a recovery the government obtains from a separate action or settlement, the relator must show that the government "relied on [the relator's] actions or information." *United States ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, No. CIV 16-1148 JB/KK, 2022 WL 704130, 2022 U.S. Dist. LEXIS 41502, *10 (D.N.M. Mar. 9, 2022); *see United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 651 (6th Cir. 2003) ("*Bledsoe I*") (relator needed

to have "apprised" government of specific diagnosis code that underpinned government's settlement). Novak presumes "it is beyond dispute that part of the value paid by Walgreens to the States settled and released Mr. Novak's state FCA claims." ECF 84, PageID.1253. In fact, this claim is in dispute. Novak should not presume that "Walgreens understood the value of getting a release of all qui tam claims." *Id.*, PageID.1258. To speculate about Walgreens' motivations is too conclusory, especially where Walgreens had to defend against active litigation in the MDL Court, *In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d at 616, including litigation finding that Walgreens had liability, *City & Cty. of San Francisco*, 620 F. Supp. 3d at 1009. Nor do the facts in the Novak Alternate Remedy Motion lead to any determination regarding a supposed value Walgreens or a particular state ascribed to Novak's Qui Tam Action.

Indeed, Novak's Alternate Remedy Motion lacks any quantitative methodology. For Novak to say that the $150 million allocated to federal FCA claims in the United States' settlement with Walgreens is one "data point" is not meaningful. *See* ECF 84, PageID.1261. It doesn't permit an apples-to-apples comparison with Novak's state Medicaid claims. The federal settlement reflected six separate programs—Medicare, TRICARE, FEHB, Medicaid, and two others—which sheds little light on whether Medicaid-only claims for the states would have been viable on their own. ECF 69, PageID.1150. That inquiry is more complex than Novak acknowledges, especially where his claim requires the premise that Medicaid-only fraud claims would have been viable in every one of 28 states. The single reference to Medicaid alongside other programs in the federal settlement does not support that premise without undue speculation.

**Second**, Connecticut's share in the Opioid Abatement Settlement was not premised upon any allegation of CFCA violations by Walgreens—but was a settlement of qualitatively different claims that could not have been brought in a qui tam action. Under the federal FCA, "the alternative

remedial proceedings from which a relator can recover a share must redress the same type of falsity and fraud claims that otherwise could be pursued by a private relator's qui tam lawsuit under the [FCA]." *United States ex rel. Kennedy v. Novo A/S*, 5 F. 4th 47, 56 (D.C. Cir. 2021). Other circuits agree. "[A] relator's right to recovery under [31 U.S.C.] § 3730(d)(1) is limited to a share of the settlement of the claim that he brought." *United States ex rel. Conyers v. Conyers*, 108 F.4th 351, 360 (5th Cir. 2024); *Rille v. PriceWaterhouseCoopers LLP*, 803 F.3d 368, 372 (8th Cir. 2015) (en banc). "By its terms, § 3730(d)(1) does not entitle the relator to recover from new claims the Government brings after discovering additional wrongdoing—even if the relator 'impelled' the government's investigation." *Conyers*, 108 F.4th at 360.

Novak's Qui Tam Action alleged FCA and CFCA violations by stating that Walgreens presented or caused false or fraudulent claims to Connecticut's Medicaid program. But when Connecticut pursued the Opioid Abatement Settlement, it alleged that Walgreens violated the Connecticut Unfair Trade Practices Act and violated Connecticut's public policy against public nuisance. Exhibit A – Complaint. Connecticut's state-court complaint did not mention the CFCA at all. And in substance, Connecticut's state-court complaint did not accuse Walgreens of Medicaid fraud. *Id.* The allegations, and thus the claims, in the matters are different.

The difference is not semantic but is substantive because the remedy for each type of claim differs. The remedies under the CFCA are "three times the amount of damages that the state sustains" and a civil penalty for the defendant's actions. Conn. Gen. Stat. § 4-275(b). If Connecticut had pursued Walgreens for financial harm to the state, it would have deposited the settlement proceeds into the state's general fund. But it didn't. The remedies under the Opioid Abatement Settlement are present and future payments for remediation of the general public's health and welfare, and these moneys are deposited into the Opioid Settlement Fund overseen by the Opioid

Settlement Advisory Committee. Conn. Gen. Stat. §§ 17a-674c, 17a-674d; Exhibit C – Decl. Moneys in the fund are for prospective purposes only. Conn. Gen. Stat. § 17a-674c (g)(2).

That the remedies in the two matters are different also shows that Novak's cases do not require a recovery for Novak. In *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001), the separate proceeding substantially replicated the "remedy that [the government] could have … obtained" in the relator's qui tam action, which is not applicable here. *United States v. Bisig*, No. 1:00-cv-335-JDT-WTL, 2005 WL 3532554, 2005 U.S. Dist. LEXIS 38316, at *2-3 (S.D. Ind. Dec. 21, 2005), involved a criminal restitution recovery for the same injury to a Medicaid program as alleged in the relator's action, which does not apply here. In *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493 (6th Cir. 2007) ("*Bledsoe II*"), the relator's motion for a share was denied, and the Sixth Circuit affirmed that denial. *Id.* at 523 (holding that "a valid qui tam action [did not] exist with respect to the FCA violations covered by the Settlement Agreement"); *id.* at 499 n.6 (settlement agreement explicitly resolved FCA claims).

## CONCLUSION

The Court should deny Novak's Alternate Remedy Motion and dismiss, without prejudice on jurisdictional grounds or with prejudice on the merits, the claim against Connecticut.

Dated: February 2, 2026      Respectfully submitted,

STATE OF CONNECTICUT

WILLIAM TONG
Connecticut Attorney General

By: /s/ Eric P. Babbs
Eric P. Babbs
Assistant Attorney General
165 Capitol Avenue
Hartford, Connecticut 06106
(860) 808-5041
eric.babbs@ct.gov