# Exhibit C

# DECLARATION

I, Christopher McClure, say under oath that:

1. I am an employee with the State of Connecticut, Department of Mental Health and Addiction Services (DMHAS). I am competent to testify to the matters set forth in this Declaration and would do so if called upon by the Court.

2. My position title is Chief of Staff at the Office of the Commissioner in Hartford, CT.

3. As Chief of Staff, I am familiar with matters relating to the State of Connecticut's Opioid Settlement Fund. These opioid matters have included, but have not been limited to, the Master Settlement Agreement with Walgreen Co. dated December 9, 2022 (the "Walgreens Master Settlement Agreement").

4. As Chief of Staff, I am familiar with the State of Connecticut's receipt of Annual Remediation Payments pursuant to the Walgreens Master Settlement Agreement.

5. Nationwide, as in Connecticut, the Walgreens Master Settlement Agreement's monetary provision falls into several buckets: Annual Remediation Payments, which are to be paid in fifteen (15) installments between 2022 and 2036; private attorneys' fees for subdivisions nationwide, which the State of Connecticut does not receive; state AG fees and costs; and, for those states like the State of Connecticut that did not employ outside counsel, an Additional Remediation Amount.

6. Walgreens does not make payments directly to settling states or participating subdivisions. Rather, Walgreens makes payments into a trust, and a settlement administrator calculates and distributes payments due to each participating state and its subdivisions.

7. The largest portion of Walgreens' payments are the Annual Remediation Payments, which equal up to $4,788,165,456 in installment payments over the fifteen years.

1

8. Connecticut and its subdivisions are eligible to receive up to approximately 1.39158% of the Annual Remediation Payments, or up to approximately $66,631,200 over the installment payments' fifteen years. Of these installment payments, the State of Connecticut receives eight-five percent (85%) as its share. The remaining fifteen percent (15%) share goes from the settlement administrator to Connecticut subdivisions, *i.e.*, cities, towns, and other local governmental units in Connecticut.

9. The State of Connecticut's share of Annual Remediation Payments has been collected on behalf of DMHAS and all of it has been deposited into the Opioid Settlement Fund created by Conn. Gen. Stat. § 17a-674b, *et seq*.

10. Moneys in the Opioid Settlement Fund must be spent only for substance use disorder abatement purposes. Conn. Gen. Stat. § 17a-674c states, in part:

> (f) Moneys in the fund shall be spent only for the following substance use disorder abatement purposes, in accordance with the controlling judgment, consent decree or settlement, as confirmed by the Attorney General's review of such judgment, consent decree or settlement and upon the approval of the committee and the Secretary of the Office of Policy and Management:
> (1) State-wide, regional or community substance use disorder needs assessments to identify structural gaps and needs to inform expenditures from the fund;
> (2) Infrastructure required for evidence-based substance use disorder prevention, treatment, recovery or harm reduction programs, services and supports;
> (3) Programs, services, supports and resources for evidence-based substance use disorder prevention, treatment, recovery or harm reduction;
> (4) Evidence-informed substance use disorder prevention, treatment, recovery or harm reduction pilot programs or demonstration studies that are not evidence-based, but are approved by the committee as an appropriate use of moneys for a limited period of time as specified by the committee, provided the committee shall assess whether the evidence supports funding such programs or studies or whether it provides a basis for funding such programs or studies with an expectation of creating an evidence base for such programs and studies;
> (5) Evaluation of effectiveness and outcomes reporting for substance use disorder abatement infrastructure, programs, services, supports and resources for which moneys from the fund have been disbursed, including, but not limited to, impact on access to harm reduction services or treatment for substance use disorders or reduction in drug-related mortality;
> (6) One or more publicly available data interfaces managed by the commissioner to aggregate, track and report data on (A) substance use disorders, overdoses and drug-related harms, (B) spending recommendations, plans and reports, and (C) outcomes of programs, services, supports and resources for which moneys from the fund were disbursed;

(7) Research on opioid abatement, including, but not limited to, development of evidence-based treatment, barriers to treatment, nonopioid treatment of chronic pain and harm reduction, supply-side enforcement;

(8) Documented expenses incurred in administering and staffing the fund and the committee, and expenses, including, but not limited to, legal fees, incurred by the state or any municipality in securing settlement proceeds, deposited in the fund as permitted by the controlling judgment, consent decree or settlement;

(9) Documented expenses associated with managing, investing and disbursing moneys in the fund;

(10) Documented expenses, including legal fees, incurred by the state or any municipality in securing settlement proceeds deposited in the fund to the extent such expenses are not otherwise reimbursed pursuant to a fee agreement provided for by the controlling judgment, consent decree or settlement; and

(11) Provision of funds to municipal police departments for the purpose of equipping police officers with opioid antagonists, with priority given to departments that do not currently have a supply of opioid antagonists.

(g)

(1) For purposes of this section, the fund balance shall be determined by the State Treasurer as of July first, annually.

(2) Except as permitted by subdivision (8) of subsection (f) of this section, or unless otherwise required by court order to refund to the federal government a portion of the proceeds, moneys in the fund shall be used for prospective purposes and shall not be used to reimburse expenditures incurred prior to July 1, 2022.

(3) Proceeds derived from any state settlement of claims against a defendant shall be allocated and disbursed only to those municipalities that execute an agreement to participate in such settlement and adhere to the terms of such agreement, provided the allocation or disbursement of such settlement proceeds for the benefit of persons within municipalities that do not execute an agreement to participate in such settlement or do not adhere to the terms of such agreement shall not be precluded or limited.

(4) Governmental and nonprofit nongovernmental entities shall be eligible to receive moneys from the fund for programs, services, supports and resources for prevention, treatment, recovery and harm reduction.

Conn. Gen. Stat. § 17a-674c.

11. DMHAS is not permitted to supplant or take the place of the State of Connecticut's general fund balance using any funds from the Opioid Settlement Fund or the Walgreens Master Settlement Agreement unless the Walgreens Master Settlement Agreement was to be modified or state statute was to be amended.

12. To date, DMHAS has not reimbursed the State of Connecticut's general fund balance using any funds from the Opioid Settlement Fund or the Walgreens Master Settlement Agreement.

3

13. DMHAS is not permitted to reimburse the State of Connecticut's Medicaid program using any funds from the Opioid Settlement Fund or the Walgreens Master Settlement Agreement unless the Walgreens Master Settlement Agreement were to be modified or state statute were to be amended.

14. To date, DMHAS has not reimbursed the State of Connecticut's Medicaid program using any funds from the Opioid Settlement Fund or the Walgreens Master Settlement Agreement.

Dated at Hartford, Connecticut on January 29, 2026.

SIGNED _____
[NAME]


Subscribed and sworn to before me at Hartford, Connecticut this 29th day of January, 2026.

_____
Commissioner of the Superior Court/Notary Public

JOYCE G. FIGUEROA
NOTARY PUBLIC
STATE OF CONNECTICUT
My Commission Expires Dec. 31, 2028

4