UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, | ) ) ) | |
| Plaintiff-Relator, | ) | |
| v. | ) ) | Case No. 18 C 5452 |
| WALGREENS BOOTS ALLIANCE, INC., | ) ) ) ) | Judge Joan H. Lefkow |
| Defendant. | ) | |

### THE STATE OF NEVADA'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT

**I. INTRODUCTION**

The State of Nevada makes this limited appearance to oppose Relator's motion for a declaratory judgment to the extent it seeks relief against Nevada. Relator's motion is improper, Nevada is not a party to the Walgreens Multistate Settlement Agreement, Nevada's False Claims Act contains no "alternate remedy" provision, and none of the settlement proceeds from the Nevada settlement were allocated to Nevada Medicaid. For these reasons, the motion should be denied as to Nevada. Alternatively, the action should be dismissed, or the Court should decline supplemental jurisdiction over all Nevada-specific issues.

**II. LEGAL ARGUMENT**

**A. Relator's Motion For Declaratory Judgment Is Procedurally Improper.**

While the District Court generally has the discretion to hear or dismiss a declaratory judgment action, the Relator cannot properly obtain declaratory relief by motion; he must file a complaint seeking such relief in accordance with the Federal Rules of Civil Procedure. *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma (USA Inc.)*, 560 F.3d 935, 943 (9th Cir. 2009). Relator sought declaratory relief against Nevada and other states without filing "an appropriate pleading," 28 U.S.C. § 2201, such as a complaint or crossclaim. "Because an action for a

declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment." *International Bhd. of Teamsters v. Eastern Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995), citing FRCP 57. When a request for declaratory relief is raised only in passing, or by motion, it is improperly before the district court. *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014).[1] In *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995), the Supreme Court reaffirmed that *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) governs the propriety of a district court's consideration of declaratory judgment actions. *Wilton*, 515 U.S. at 289. Importantly, *Brillhart* counsels district courts to consider whether the questions in controversy between parties in a federal declaratory judgment action could be better addressed in a parallel state action, going so far as to suggest it would be "gratuitous interference" in some situations to permit the federal declaratory action to proceed. *Brillhart*, 316 U.S. at 495. Because issues raised in Relator's motion are better addressed in Nevada state courts, due to the unique, relevant Nevada statutes that affect these claims and in the context of the parallel opioid litigation occurring in Nevada, it would be gratuitous interference for the Court to find for the Relator against Nevada. Therefore, not only should the district court dismiss the declaratory action against Nevada, but the district court must dismiss the declaratory action for its improper presentation as a motion rather than a complaint for relief.[2]

B. <u>Nevada Is Not a Party To The Multi-State Walgreens Settlement Agreement, and Therefore Relator's Motion For a Declaratory Judgment Is Inapplicable To Nevada</u>.

Relator asks the Court to declare that the State of Nevada, along with 27 other states, owes him a "share of the multi-state settlement with Walgreens." As the basis for his motion, he attaches a copy of the "Walgreens Settlement Agreement," dated December 9, 2022, and notes that "all the States at issue in Mr. Novak's case here are parties to the States' Settlement Agreement." *See* Doc. 84 (Motion for Dec. J. at 2, FN.2); Doc. 84-1 (Relator's Exhibit A, Walgreens Settlement Agreement). This is false. Nevada is <u>not a party</u> to the States' Settlement Agreement and Nevada

---

[1] District courts in this Circuit have ruled similarly. *Russell v. PS 27 Fam. L.P.*, No. 1:23-CV-405-CCB-SLC, 2025 U.S. Dist. LEXIS 38407, *12 (N.D. Ind. Mar. 4, 2025) ("[T]he Declaratory Judgment Act authorizes declaratory judgment actions, not declaratory judgment motions within an active case.").
[2] At best, Relator's declaratory judgment motion is an improper attempt to amend the complaint to add crossclaims that does not comply with Federal Rules of Civil Procedure 13(g), 15, and 20.

2

should therefore be excluded entirely from the Court's consideration here.[3]

The multi-state Walgreens Settlement Agreement expressly states that "[u]pon satisfaction of the conditions set forth in Sections II and VIII, this Agreement will be binding on the Settling States, Walgreens and the Participating Subdivisions." *See* Relator's Exhibit A at 2. "Settling State" is defined as "[a]n Eligible State that has entered into this Agreement and delivers executed releases in accordance with Section VIII.A." *Id.* at 11. "Non-Settling State" is defined as "[a]ny Eligible State that is not a Settling State." *Id.* at 6. The State of Nevada did not agree with the proposed allocations contained in the multi-state Settlement Agreement with Walgreens, also known as the Master Settlement Agreement, and opted instead to pursue separate negotiations with Walgreens. *See* Krueger Decl., attached as Ex. 1 at ¶ 15. Thus, under the terms of the agreement expressly invoked by Relator in his motion, Nevada is a Non-Settling State and reaps no direct benefit from the multi-state Walgreens Settlement Agreement upon which the Relator's instant motion is premised (Relator's Exhibit A).[4]

The Attorney General for the State of Nevada signed Nevada's own, separate Settlement Agreement and Release with Walgreens on May 1, 2023 ("Walgreens-Nevada"), and over the next few months, Nevada's participating governmental subdivisions executed the applicable Subdivision Participation and Release Forms pursuant to the Walgreens-Nevada settlement. *See* Walgreens-Nevada "Settlement Agreement and Release," attached hereto as Ex. 2; *See also* Ex. 1 at ¶¶ 16-17. The Walgreens-Nevada Agreement required the State of Nevada to cease "all

---

[3] *See* Doc. 27 at 2, FN. 2 ("Nevada and New Mexico also entered into separate Walgreens Settlement Agreements.").
[4] A copy of the multi-state Walgreens Settlement Agreement (with exhibit updates 10.13.23) is available to the public at www.nationalopioidsettlement.com. The Walgreens Settlement Agreement is located at https://nationalopioidsettlement.com/wp-content/uploads/2023/10/2023.10.13-Updated-Walgreens-Multistate-Settlement-Agreement.pdf. Importantly, this updated agreement contains a schedule identifying Nevada as a Non-Settling State in the Walgreens settlement. *See id.,* Walgreens Multistate Settlement Agreement Final Fee Schedule at 788 (excerpt attached hereto as Ex. 3).

The public website also contains a "Walgreens, Walmart & CVS Settlement Dashboard" that tracks the payments to Settling States pursuant to the Walgreens Multistate Settlement Agreement as well as the CVS and Wal-Mart multistate agreements. https://nationalopioidsettlement.com/wp-content/uploads/2025/12/CVS-Walgreens-Walmart-Payment-Dashboard-11.28.25.pdf. Section 4 of the Dashboard demonstrates that the State of Nevada is not a beneficiary to and has received no funds from the Walgreens Multistate Settlement Agreement. *See* Walgreens, Walmart & CVS Settlement Dashboard at 12-21, https://nationalopioidsettlement.com/wp-content/uploads/2025/12/CVS-Walgreens-Walmart-Payment-Dashboard-11.28.25.pdf ("Nevada and West Virginia are not Settling States as defined in the National Settlement and received payments outside of the National Settlement")(attached hereto as Ex. 4).

litigation activities in the Nevada AG Action related to Claims Against Walgreens" and to dismiss the Nevada AG Action (Case No. A-19-796755-B (Eighth Judicial District Court, Clark County, Nevada) with prejudice. Ex. 2 at 3, (Sec. II.B).[5] In return, Walgreens' Annual Remediation Payments to the State were earmarked "exclusively [for] Opioid Remediation pursuant to the requirements of the One Nevada Agreement." *Id.* at 4 (Sec. IV.A); Krueger Dec. Ex. 1 at ¶¶ 18-22. In December 2023, Nevada and the other States identified in the Relator's action filed a "Joint Notice of Intervention for the Purpose of Moving to Dismiss the State Medicaid Portion of the State Causes of Action." Dkt. 27. Nevada, however, expressly noted that it had entered into a separate Walgreens Settlement Agreement. *Id.* at 2, fn. 2 ("Nevada and New Mexico also entered into separate Walgreens Settlement Agreements."). The Relator now asks the Court to confirm "his right to a share of the multi-state settlement that certain states reached with Walgreens," but he makes no reference to Nevada's status as a Non-Settling State, Nevada's decision to opt out of the multi-state settlement, or Nevada's separate Settlement Agreement and Release. Thus, the Relator's right to any share of Nevada's settlement with Walgreens is not properly before this Court, nor should it because the Walgreens-Nevada Agreement is expressly subject to the jurisdiction of the State of Nevada and, more specifically, the Eighth Judicial District Court in Clark County, Nevada. *See* Ex. 2 at 6 (Sec. VII.C). As such, the Nevada judiciary is in the best position to review and interpret the Walgreens-Nevada Agreement, to review and interpret the complex intrastate agreement governing the allocation and disbursement of all opioid settlement funds to the state subdivisions for remediating the harms, risks, and impacts of the opioid epidemic in Nevada[6], and as discussed below, to rule on the proper interpretation of Nevada's False Claims Act ("Nevada FCA").

**C. Declaratory Judgment Cannot Be Sought Through a Motion in the Same Lawsuit Where the Predicate State Law Claims Were Already Dismissed with Prejudice.**

The only causes of action before this Court related to Nevada were claims under the Nevada

---

[5]The Walgreens-Nevada Settlement Agreement incorporated Section X of the "Walgreens Global Settlement," releasing the same entities to the extent it was not inconsistent with the Walgreens-Nevada Settlement Agreement. Ex. 2 at 4 (Sec. V).

[6] Nevada was and remains one of the hardest hit states by the opioid epidemic. As a result, Nevada has complex needs and plans to remediate the harms, risks, and impacts of the epidemic in Nevada.

FCA. These claims were "dismissed with prejudice" by this Court in January 2024. *See* Dkt. 33 at ¶1. Accordingly, there is no live claim over which this Court has any jurisdiction to proceed with respect to Nevada. Although the Court entered orders upon joint motions dismissing the federal claims with prejudice, purporting to retain jurisdiction over the state share of the state Medicaid claims that had been dismissed already, Nevada was not a party to the joint motions as it was already dismissed from the case with prejudice and was not advised before the motions or the proposed orders were filed. *See* Dkt. 72, Order at 3-4 ¶¶ 2, 3 (Apr. 21, 2025); Dkt. 82, Agreed Order of Dismissal at 1 ¶¶ 1, 2 (Oct. 23, 2025). While this Court entered a settlement resolving federal FCA claims, that settlement does not address state claims against Walgreens and Relator's claim for a share of that settlement has already been fully resolved. This Court is therefore without jurisdiction over subsequent disputes. *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007)( "When a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction.").[7] Relator's Nevada FCA claims were dismissed with prejudice by the Court, and the Court may not retain jurisdiction over disputes involving those claims despite that dismissal.

**D. <u>Nevada Law Does Not Permit this Court to Award Relator a Share of Nevada's Settlement Because Nevada's FCA Does Not Include an Alternate Remedy Provision Preserving Relator's Rights in Proceedings Outside the Qui Tam Action</u>.**

Statutory rights of a qui tam relator are defined and limited by statute. The federal FCA includes an "alternate remedy" provision at 31 U.S.C. § 3730(c)(5), preserving a relator's rights when the government pursues recovery outside the qui tam action. By contrast, Nevada's FCA, *omits* any comparable "alternate remedy" language, abrogating relator rights to an "action pursuant to this chapter." NRS 357.080(1). Inclusion of the term "alternate remedy" in the federal statute makes clear that if the government chooses not to intervene in the relator's action, but, instead, chooses to pursue "any alternate remedy," then under §3730(c)(5) the relator still has a right to

---

[7] Relator relies on *United States ex rel. Bledsoe v. Community Health Sys., Inc*., 342 F.3d 634 (6th Cir. 2003) ("*Bledsoe I*"). *Bledsoe I* involved a case where the federal government had not intervened to dismiss the original *qui tam* case (or to take any other action) and where the relator still had a live *qui tam* claim. *Id*. at 647. Here, Nevada did intervene to dismiss its claims and there is no live claim under the Nevada FCA. Moreover, the demand for a relator share from the federal government in *Bledsoe I* was a question of federal law over which any federal court would have federal question jurisdiction.

5

recover a share of the proceeds of the "alternate remedy" to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action. *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010-1011 (9th Cir. 2001). Here, however, Relator seeks recovery under Nevada's FCA which does not include a similar "alternative remedy "provision. The absence of an "alternative remedy" provision in Nevada's FCA means the Nevada legislature intentionally prohibited that relator's right to participate in or share proceeds from governmental recoveries obtained outside the qui tam action brought "pursuant to this chapter." NRS 357.080(1).

When a federal court applies state law, the court anticipates how the state's highest court would rule in the case and are bound by controlling decisions of that court. *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017). When the state supreme court has not yet addressed the issue, the federal court renders a prediction by looking to all the available data. *Mitchell v. Durham Enters., Inc.*, 99 F.4th 978 (7th Cir. 2024). Sources of relevant data include the decisions (or dicta) of the state's highest court in analogous cases, pronouncements from other state courts, and regulatory guidance. *Busk v. Integrity Staffing Sols., Inc. (In re Amazon.com, Inc.)*, 905 F.3d 387, 391 (6th Cir. 2018). In Nevada, statutory interpretation begins with the text of the statute, and the first rule in construing statutes "is to give effect to the legislature's intent." *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 14 P.3d 511, 513-14 (Nev. 2000) *citing Cleghorn v. Hess*, 109 Nev. 544, 853 P.2d 1260, 1262 (Nev. 1993) ("…[W]e first look to the plain language of the statute. Where the statutory language is ambiguous or otherwise does not speak to the issue before us, we will construe it according to that which 'reason and public policy would indicate the legislature intended.") Although the Nevada Supreme Court has yet to analyze the omission of the "alternative remedy" language in Nevada's FCA, the Court has made clear that when the Nevada Legislature uses different language than those used in a statute's federal counterpart, Nevada courts presume those differences reflect a deliberate legislative choice. *State v. Granite Constr. Co.*, 118 Nev. 83, 40 P.2d 423 (2002); *see also Dep't of Tax'n v. DaimlerChrysler Servs. of N. Am.*, 121 Nev. 541, 548, 119 P.3d 135, 139 (2005) ("Nevada law also provides that omissions of subject matters from statutory provisions are presumed to have been intentional."); *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 122 Nev. 132, 154, 127 P.3d 1088, 1103-1104 (2006) ("This court presumes

that the Legislature enacts a statute 'with full knowledge of existing statutes relating to the same subject.' Thus, the presumption that the Legislature, in enacting a state statute similar to a federal statute, intended to adopt the federal courts' construction of that statute, is rebutted when the state statute clearly reflects a contrary legislative intent."); *State Dep't of Motor Vehicles & Public Safety v. Brown*, 104 Nev. 524, 526, 762 P.2d 882 (1988) (Where the legislature could have easily inserted exception language into statute but chose not to, the court would not judicially create an exception.); *Cox v. Smith*, 1 Nev. 161, 167 (1865) (Intentional omission of part of California act done *ex industria* and for a purpose).

The Nevada Supreme Court has repeatedly applied this principle to hold that an omission of language appearing in a federal counterpart is intentional and thus meaningful for interpretive purposes. In *State v. Granite Construction Co.*, the Nevada Supreme Court compared Nevada's prevailing wage statute to the federal Davis-Bacon Act and emphasized that the Legislature omitted the federal phrase "directly upon," opting instead for the broader "at the site of the work" language. *Id.* at 118 Nev. 89, 40 P.2d 427. The *Granite* Court treated the departure from the federal text as intentional, reading Nevada's formulation to reflect a deliberate legislative choice that broadened the statute's coverage beyond the federal approach. Because the Nevada statute did not mirror the federal language, the *Granite* Court refused to import the federal limitation into Nevada law and construed the omission as purposeful. Similarly, in *Busk*, the Sixth Circuit analyzed Nevada's counterpart to the federal Fair Labor Standards Act and found that Nevada's decision to adopt different language than the federal statute, "signaled its willingness to part ways" with the federal statute. 905 F.3d at 398. Taken together, these decisions supply a clear rule: when a Nevada statute omits language found in a federal counterpart, Nevada courts presume the omission was intentional and will not import the omitted federal words or their limits into Nevada law.

Every operative provision of the Nevada FCA conferring relator rights ties those rights to an "action pursuant to this chapter" and does not extend them to separate suits, administrative proceedings, recoupments, or settlements outside the qui tam case. *See* NRS 357.080; 357.120; 357.130; 357.210. Nevada's FCA even recognizes administrative monetary-penalty proceedings as a distinct enforcement path and uses their existence as a bar to maintaining a qui tam action yet

includes no clause preserving relator participation or shares in such proceedings. NRS 357.080(3)(b). Because Nevada elected to proceed outside the qui tam case and negotiated a separate settlement with Walgreens, there is no statutory basis for Relator to claim any portion of Nevada's opioid remediation funds. Nevada law does not support any recovery by Relator for funds recovered by Nevada via an "alternative remedy," and Relator's motion should be denied. Should this Court believe *arguendo* that Relator may have a claim to any share of Nevada's Walgreens settlement funds, then any such right should be litigated in Nevada state court.

**E. Even If Nevada's FCA Contained an Alternate Remedy Provision, the Opioid Abatement Recovery in This Case is Not the Type of Recovery That Would Amount to an Alternate Remedy to Relator's *Qui Tam* Action.**

1. *Nevada Prioritized Enforcement of Other Nevada Laws and Public Nuisance Abatement; Not Enforcement of the Nevada FCA.*

Courts have held that relators are not entitled to proceeds of government enforcement actions under different statutes merely because the underlying facts overlap with the relator's FCA case. *See, e.g., U.S. ex rel. Kennedy v. Novo A/S*, 5 F.4th 47 (D.C. Cir. 2021)(holding that the FCA relator was not entitled to recovery because the government's enforcement action did not involve the type of claim cognizable under the FCA, nor did it allege a false or fraudulent effort to obtain money or property from the United States.) As such, even if Nevada's FCA contained an alternate remedy provision, which it does not, the alternative remedy concept applies only to the *same type of fraud claims* that could be brought under the Nevada FCA. *Id.* In *Novo*, a sales representative for Novo Nordisk brought a qui tam action against her employer under the FCA claiming she was directed to omit warnings information and otherwise market a prescription drug inconsistent with FDA limitations, and that Novo Nordisk made millions of dollars based on such misrepresentations. In addition to pursuing claims under the FCA, the federal government brought a separate action against Novo Nordisk for drug misbranding in violation of the Food, Drug, and Cosmetics Act (FDCA). The *Novo* Court recognized that the same misconduct that underlies false claims under the FCA may also run afoul of other federal statutes for different reasons, and that sometimes, on the same set of facts, <u>the government might prioritize the enforcement of a different law</u>. *Id*. at 49. Accordingly, the *Novo* Court ruled that the relator could not recover from the

8

settlement proceeds of the FDCA lawsuit because that lawsuit was not an "alternative remedy" under the FCA because it did not involve the type of claim covered by the FCA. *Id.* at 54.

Nevada, through the Bureau of Consumer Protection ("NVBCP"), brought claims against multiple defendants for violations of other Nevada laws including public nuisance, negligence, deceptive trade practices, and civil RICO claims; all which all involve different damages and remedies than those contemplated by the Nevada FCA.[8] Because Nevada's lawsuit was largely directed at addressing the impacts of the worst man-made epidemic in modern history– with Nevada being one of the hardest hit states– the State ultimately prioritized its deceptive trade practice and public nuisance claims to abate and remediate harm to the public caused by Walgreens' role in the opioid crisis instead of any financial injury to Nevada Medicaid, and therefore Relator is not entitled to a share of such recovery under an alternative remedy theory.

2. *Under the One Nevada Agreement and Nevada Law, No Settlement Funds Were Paid to Nevada Medicaid.*

Because Nevada prioritized abatement of the public nuisance resulting from the opioid epidemic, all Walgreens settlement funds, except attorney's fees, were allocated to opioid remediation under an intrastate agreement and related state law; none were allocated or disbursed to Nevada Medicaid. *See* Ex. 2 at 3-4.[9] To implement state-wide abatement measures funded by opioid settlements, the State of Nevada and all of its counties and litigating cities reached an intrastate allocation agreement in 2021. That agreement, titled the One Nevada Agreement on Allocation of Opioid Recoveries ("One Nevada Agreement"), establishes a framework for allocating and disbursing opioid settlement funds obtained from the misfeasance, nonfeasance, and malfeasance of certain individuals and entities, including licit and illicit opioid distribution, opioid manufacturers, distributors, and other defendants whose conduct contributed to the opioid crisis. The agreement was created so that, when Nevada and its cities and counties receive recoveries from opioid settlements like the Walgreens-Nevada Agreement, there is a pre-agreed method for

---

[8] As is relevant here, the NVBCP is, by statute, a separate unit within the Nevada Attorney General's office and had no involvement with or knowledge of the Relator's FCA claims at the time the State's Opioid Complaint, and various amendments, were filed. Ex. 1, Kruger Decl. at ¶¶ 6-7.
[9] See also Ex. 2 at 6 (Sec.) VII (…"the Total Remediation Amount paid by Walgreens… constitutes restitution or remediation, as defined in Treasury Regulation § 1.162-21(e)(4)).

allocating the proceeds among the state and local governments. *See* Ex. 2 at Exhibit C. Here, all funds disbursed via the One Nevada Agreement must be used for opioid remediation which typically includes prevention programs, treatment, harm reduction approaches, recovery and support services, and related health and social services to mitigate the impact of opioid misuse and may not be used outside approved purposes. As such, even assuming *arguendo* that Nevada Medicaid was entitled to a portion of the money, a reimbursement to Nevada Medicaid would <u>not</u> be included in these approved purposes. Ex. 1, Krueger Decl. at ¶¶ 2-5; 26-32.

Moreover, Nevada also passed legislation creating a program and fund known as the Fund for a Resilient Nevada ("FRN") within the Department of Health and Human Services, in which the State of Nevada's entire share of opioid recoveries, including those from the Walgreens settlement, would remain apart from the State general fund and statutorily used *only* to mitigate the harms, risks, and impacts of the opioid epidemic. *See* NRS 433.712-433.744. The One Nevda Agreement also incorporated the restrictive language from Nevada law. Like the One Nevada Agreement, nothing in the subject legislation authorizes or otherwise permits funds from the Walgreens settlement to be used to pay or reimburse Medicaid for any false claims. The State of Nevada's settlement with Walgreens strictly involved remediation efforts to address the deceptive trade practice violations and public nuisance to which Walgreens contributed, and no funds were allocated or disbursed to Nevada Medicaid, nor would it be proper to do so. Relator has no claim to Nevada's remediation funds because they are not related to Nevada FCA-type recoveries.[10]

### F. <u>Relator Failed to Plead His Allegations With Specificity as Required by NRCP 9(b)</u>.

Nevada FCA claims sound in fraud and must be pled with particularity under NRCP 9(b). *Nevada ex rel. Steinke v. Merck & Co., Inc.*, 432 F. Supp. 2d 1082, 1089 (D. Nev. 2006). Under Rule 9(b), "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how'

---

[10] The cases cited by Relator do not support his motion. *United States v. Bisig*, Case No. 2005 WL 3532554, at *2 (S.D. Ind. Dec. 21, 2005) involved criminal recovery was for same injury to Medicaid program as alleged in the relator's qui tam and is therefore not applicable here. In *U.S. Conner v. Veluchamy*, Case No. 11-CV-4458, 2015 WL 7710365, at *2 (N.D. Ill. Nov. 30, 2015), the relator's claim to a share was denied. In *United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1012 (9th Cir. 2001), a separate proceeding "substantially replicated the remedy it could have obtained" in the relator's qui tam action. As discussed above, the remedy contemplated by the FCA (repayment of false claims) is entirely different than the remedy obtained by Nevada via the Walgreens-Nevada Agreement (abatement and remediation) and this case is not applicable here.

of the misconduct charged. Under Rule 9(b), plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* Thus, a plaintiff pleading an Nevada FCA claim "must provide details that identify particular false claims for payment that were submitted to the government," including, for example, "details concerning the dates of the claims, the content of the forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727–78 (10th Cir. 2006) (internal citations omitted).

Relator's complaint lacks any of the specificity required by Rule 9(b), and relies instead on generalized nationwide allegations (e.g., discouraging pharmacists from refusing questionable prescriptions, and dispensing controlled substances not in good faith) and contains none of the "who, what, where, when and how" Rule 9(b) requires. Although the Complaint contains allegations about controlled substance prescriptions in other jurisdictions, the Complaint does not identify any specific instances of fraud or misconduct that occurred in Nevada, does not identify any Nevada pharmacy or pharmacist that engaged in misconduct, does it contain any identification of any claims that were fraudulently submitted to or paid by Nevada Medicaid, and does not identify the details of even a single instance of a Nevada Walgreens submitting a claim for reimbursement for opioid medications or opioid-related rehabilitation services to the State.[11] Accordingly, Relator's Nevada law claims were not sufficiently pled, should be dismissed, and Relator should not be entitled to any relief related to the Nevada FCA claims.

---

[11] Courts across the country have found that similar, non-specific allegations that Relator attempted to establish a nationwide scheme as being insufficient. *United States v. Lab'y Corp. of Am. Holdings*, No. 07-CV-5696, 2015 WL 7292774, at *6 (S.D.N.Y. Nov. 17, 2015); *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012); *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011), and application of *United States ex rel. Pepe v. Fresenius Medical Care Holdings* (E.D.N.Y., Oct. 31, 2024, No. 14-CV-03505 (LDH) (ST)) 2024 WL 4635236, at *4.)

### G. Relator's Complaint Did Not Further the State's Investigation or Advance Settlement Efforts in Any Way.

Nevada's FCA deprives courts of jurisdiction over qui tam actions based on publicly disclosed allegations unless the relator is an "original source." *Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211, 1213 (2011). Even under the federal FCA, in order to claim a share of a state's recovery, the state must have relied on Relator's information to recoup the settlement funds at issue. (See *United States ex rel. Kuriyan v. HCSC Insurance Services Co.* (D.N.M., Mar. 9, 2022, No. CIV 16-1148 JB/KK) 2022 WL 704130, at *1.) Relator does not qualify as an "original source" under Nevada law because, as discussed above, Relator's complaint lacked Nevada-specific allegations sufficient to aid any investigation into fraudulent Medicaid claims. Moreover, Nevada's Attorney General was already participating in broad opioid investigations prior to Relator's filing, ultimately leading to the Walgreens settlement. NRS § 357.100(2)(a)-(c). Krueger Decl., Ex. 2 at ¶¶ 7-14.[12] The investigation conducted by the NVBCP, which is statutorily not associated with any other Division or Unit in the Nevada Attorney General's Office and did not include Relator's complaint, ultimately led to the settlement at issue here. *Id.* Because Nevada did not rely on Relator's sparse complaint, the Relator is not entitled to share in the subject Nevada settlement.

### H. The Court Should Decline To Exercise Supplemental Jurisdiction Over The Nevada Claims.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state-law claim if any of the following apply: the claim raises a novel or complex issue of state law; the state-law claim substantially predominates over the claim(s) conferring original jurisdiction; the court has dismissed all claims over which it had original jurisdiction; or there are exceptional circumstances with other compelling reasons to decline. *Williams Elecs. Games, Inc. v. Garrity,* 479 F.3d 904 (7th Cir. 2007). The Seventh Circuit instructs that these factors are guided by the values of judicial economy, convenience, fairness, and comity. *Hansen v. Bd. of Trs. of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599 (7th Cir. 2008). Claims involving Medicaid-related state-law issues, if withdrawn from federal question jurisdiction, are generally

---

[12] As is relevant here, the NVBCP first learned of Relator's FCA claims in October 2025. Ex. 2 at ¶ 7.

treated as state matters for which federal courts often relinquish jurisdiction absent compelling reasons. *See, e.g., Novak v. Ind. Family & Soc. Servs. Admin.*, 1:10-CV-677-RLY, 2012 U.S. Dist. LEXIS 25983, 2012 WL 676179, at *1-2 (S.D. Ind. Feb. 29, 2012) (declining to invoke supplemental jurisdiction over state agency Medicaid denial); *Mid-Delta Home Health, Inc. v. Miss. Div. of Medicaid*, 499CV030-EMB, 2000 U.S. Dist. LEXIS 8852, 2000 WL 870802, at *3 (N.D. Miss. June 7, 2000) (no supplemental jurisdiction over state Medicaid claims); *Pike ex rel. Estate of Pike v. Sebelius*, 2014 U.S. Dist. LEXIS 184355, *25 (D. RI 2014).

    1. *Novel and Complex State-Law Issues Predominate Here.*

As discussed above, Relator's claims turn on unsettled Nevada FCA questions, specifically, the effect of Nevada's omission of an alternate remedy clause and interpretation of Nevada's separate Walgreens settlement, the One Nevada Agreement, and the FRN statutes. As such, resolution of Relator's Nevada FCA claim will likely involve the novel interpretation and application of the Nevada FCA and NRS 433.712-433.744, which address the permissible uses of the State's opioid settlement funds. In similar circumstances, courts have found it advisable to decline to exercise doctrine of pendent jurisdiction over state claims raising novel and unsettled questions of state law. *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir. 1984)(finding trial court should have declined supplemental jurisdiction on claim involving claims raising issues of first impression under state law.); *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns."); *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479-480 (7th Cir. 2012); *Willis v. Bell*, 669 F. Supp. 229 (N.D. Ill. 1987) (federal court declined to exercise jurisdiction over state-law claim posing novel or unsettled state-law issues). See also *U.S. v. Riverside Laboratories, Inc.*, 678 F.Supp. 1352 (N.D. Ill. 1988); *Starzenski v. City of Elkhart*, 842 F.Supp. 1132 (N.D. Ind. 1994); *United Mine Workers of Amer. v. Gibbs*, 383 U.S. 715, 726 (1966); *Ameritox, Ltd. v. Millennium Laboratories, Inc.* (11th Cir. 2015) 803 F.3d 518.)(Where "[t]he judge identified several issues of unsettled state law that may decide the outcome of [plaintiff's] state-law claim, [this was] an independent ground for relinquishing supplemental jurisdiction." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th

Cir. 2007); *see also Western World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014) (district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law). As Relator's claim involves issues of first impression in Nevada, the Court should decline supplemental jurisdiction here.

    2. *State-Law Claims Predominate and Are the Only Claims Remaining.*

If it appears that the state issues predominate, whether in terms of proof, of the scope of issues raised, or the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. *United Mineworkers v. Gibbs*, 383 U.S. 715, at 727, 86 S. Ct. 1130, at 1139, 16 L. Ed. 2d 218 1966). Under 28 U.S.C. § 1367(c)(3), a district court may also decline supplemental jurisdiction when all claims giving rise to original jurisdiction have been dismissed. Although the decision is discretionary, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). *See also*, *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36–37 (1st Cir. 2020) *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *Williams v. Rodriquez*, 509 F.3d 392, 404 (7th Cir. 2007); Here, state law claims not only predominate but are the only claims remaining before the Court. The federal False Claims Act claims that originally gave this court federal question jurisdiction over the case were fully dismissed with prejudice on October 23, 2025. Dkt. 82 at 1 ¶1. This Court should therefore decline jurisdiction because the only significant legal questions remaining are questions of Nevada law, and Nevada courts are better suited to decide those questions, in part because they are better situated to accurately gauge the legislative intent behind the statutes in question and the policies guiding the common law issues involved. *Clemons v. City of Springfield*, 735 F.Supp. 309, 313 (1990) (deferring consideration of state law questions in favor of a better suited forum; we decline to exercise pendent-party jurisdiction here, even if it is available to us.). Based on the foregoing, promotion of judicial economy, fairness, and comity at this juncture requires declination of exercise of supplemental jurisdiction. *See Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176 (D.D.C. 2018); *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63 (1st Cir. 2003).

3. *Exceptional Circumstances Exist for This Court to Decline Supplemental Jurisdiction Because the Majority of Opioid Settlement Funds in Nevada Flow to Participating Cities and Counties.*

As discussed above, the One Nevada Agreement was created so that, when Nevada and its cities and counties receive recoveries from opioid litigation or settlements, like the Walgreens-Nevada settlement here, there is a pre-agreed, fair, and transparent method for allocating and disbursing the recoveries among the state and its local governments. Under the Agreement, approximately 56.14% of funds are split among local governments under the One Nevada Agreement's complex formula. Approximately 43.86% of settlement funds go to the State.[13] As such the majority of the proceeds from the Walgreens-Nevada settlement were not, and were never intended to be, disbursed to the State, but were instead disbursed to Nevada cities and counties that are not subject to Relator's action. Moreover, the State's share of the settlement funds is managed by the FRN which was created by and operates according to Nevada statutes. If funds are spent outside approved purposes, there is a risk of violating the settlement terms, the One Nevada Agreement, and NRS 433.712-433.744. Ex. 2, Krueger Decl. at ¶¶ 3, 20-25. As such, if any court should entertain Relator's request for a share in Nevada's settlement, then Nevada is the proper forum because the amount of funds to be shared, if any, would need to be determined by applying multiple Nevada statutes, and by analyzing the Walgreens-Nevada settlement and a Nevada intra-local governmental agreement which are both expressly governed by Nevada law.

**I. CONCLUSION**

The motion should be denied as to Nevada, and the action should be dismissed. Alternatively, the Court should decline supplemental jurisdiction over all Nevada-specific issues, and such matters should be raised in Nevada state court as contemplated by the Walgreens-Nevada agreement.

Dated February 2, 2026              Respectfully Submitted.

                                    */s/Erica D. Entsminger, Esq.*
                                    ERICA D. ENTSMINGER, ESQ., admitted pro hac vice
                                    **EGLET LAW**

---

[13] The exact percentages vary based on specific settlement terms and deductions for litigation costs or attorney fees.

400 S. Seventh St., Suite 400
Las Vegas, NV 89101
Ph: (702) 450-5400; Fax: (702) 450-5451
E-Mail: eservice@egletlaw.com

AARON D. FORD, ESQ.
Attorney General
MARK J. KRUEGER, ESQ., admitted pro hac vice.
Chief Deputy Attorney General
**State of Nevada, Office of the Attorney General,**
**Bureau of Consumer Protection**
100 North Carson Street
Carson City, Nevada 89701-4717
Ph: (702) 684-1100; Fax (702) 684-1108
E-Mail: mkrueger@ag.nv.gov
*Attorneys for Plaintiff*
*State of Nevada*

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b), I hereby certify that I am an employee of EGLET LAW, and on the 2nd day of February 2026, I did cause a true and correct copy of the foregoing document **THE STATE OF NEVADA'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT** to be filed and served electronically via the Court's CM/ECF system.

*/s/ Jennifer Lopez*
An Employee of EGLET LAW