UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, </br></br> Plaintiffs-Relator, </br></br> v. </br></br> WALGREENS BOOTS ALLIANCE, INC., </br></br> Defendant. | Case No. 18 C 5452 </br></br> Judge Joan H. Lefkow |

**STATE OF RHODE ISLAND'S OPPOSITION TO RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATES' SETTLEMENT**

NOW COMES the State of Rhode Island, by and through its Attorney General, Peter F. Neronha, and Special Assistant Attorney General Kate Constance Brody, and hereby submits this Memorandum of Law in support of its Opposition to Relator's Motion for a Declaratory Judgment. Relator seeks a declaratory judgment compelling the State of Rhode Island to pay him a relator's share of proceeds from a nationwide opioid abatement settlement that was not brought under, did not arise from, and did not resolve any Rhode Island False Claims Act (RIFCA) causes of action. Relator's motion asks this Court to retroactively convert a separate, sovereign consumer-protection enforcement settlement into a Medicaid fraud False Claims Act recovery based solely on overlapping factual allegations. Neither RIFCA, the federal False Claims Act precedent nor principles of federalism permit that result. Relator's theory would transform every state enforcement action involving overlapping facts into a mandatory *qui tam* payout – an outcome squarely rejected by courts and incompatible with state sovereignty, Medicaid enforcement schemes and settled alternate-remedy doctrine. Therefore, the State of Rhode Island respectfully

requests that the Relator's Motion be denied.

## I. FACTUAL AND LEGAL BACKGROUND

Relator T.J. Novak filed an action under seal on behalf of the United States and other named states, including Rhode Island, on August 10, 2018, with this Honorable Court. ECF No. 1. Subsequently, Relator filed an Amended Complaint on May 9, 2019, and a Second Amended Complaint on March 25, 2021. ECF No. 7 and ECF No. 21 respectively. While the instant case was still under seal, Rhode Island, acting in its sovereign and *parens patriae* capacity pursuant to the authority granted by the Rhode Island Deceptive Trades Practices Act ("DTPA"), R.I. Gen. Laws § 6-13.1-1, et seq., entered into a multi-state Opioid Abatement Settlement Agreement ("Agreement") with Walgreens dated December 9, 2022. After the Agreement was finalized, it was joined by 46 states and thousands of local governments, referred to as "subdivisions" in the settlement.[1] The Agreement resolved claims related to public health on the grounds that Walgreens engaged in unfair or deceptive acts and practices in the conduct of trade and commerce as defined in and declared unlawful by the DTPA, and did not resolve any Medicaid fraud claims under RIFCA or the FCA. The Agreement was negotiated independently of Relator's *qui tam* action, did not allege false Medicaid claims, and did not result in any recovery attributable to Rhode Island Medicaid damages. No settlement funds were directed to resolve fraud claims on behalf of the states' Medicaid programs, and no portion of the Agreement called for payment to state Medicaid programs or the federal government. Rather, the Agreement has multiple provisions restricting a vast majority of the settlement funds to opioid remediation, Agreement §§ V.B., V.D.1-2, V.E.2, which is a defined term in the agreement. ECF No. 84-1.

The Agreement allows each state to develop its own consensual or statutory approach for

---

[1] Florida, Nevada, New Mexico, and West Virginia (and their subdivisions) did not join the December 9, 2022 Walgreens Settlement Agreement. Each of these States entered separate settlements with Walgreens.

allocating the money within the state. Agreement § V.D.1-2, ECF No. 84-1. The State of Rhode Island and each of its thirty-nine municipalities entered into a Memorandum of Understanding Between the State and the Cities and Towns Receiving Opioid Settlement Funds, as later amended ("MOU"), agreeing to allocate 80% of opioid abatement funds, including funds from the Walgreens Opioid Abatement Settlement Agreement, to the State and 20% to the municipalities.[2] Under this agreement and Rhode Island state law, the entirety of such funds to the state must be used for future opioid remediation. *See* R.I. Gen. Laws § 42-7.2-10(d). Recommendations on the use of such funds are made by a 17-member Opioid Settlement Advisory Committee, comprised of local and state leadership, public health experts, and community representatives, to the Secretary of the Executive Office of Health and Human Services. MOU § V. Funds to the cities and towns must be for approved opioid abatement purposes, as defined in the MOU, as determined by the individual municipalities. MOU § III. Because all state-designated opioid abatement funds must be used for future opioid abatement activities, no such funds have been used, or can be used, to reimburse Rhode Island Medicaid funds for claims against Walgreens.

The Agreement was implemented through the filing of individual consent judgments in the state courts of all participating states. Agreement § VIII.B, ECF No. 84-1. The consent judgments approved the Agreement and gave effect to its terms. See Exhibit 1, RI Consent Judgment ¶¶ 2, 7. Many of the individual state judgments were individualized to address releases and intrastate allocation. The Rhode Island consent judgment, entered by Rhode Island Providence County

---

[2] *See* The Rhode Island Memorandum of Understanding Between the State and Cities and Towns Receiving Opioid Settlement Funds, January 21, 2022, available electronically at https://eohhs.ri.gov/sites/g/files/xkgbur226/files/2023-06/RI%20Opioid%20MOU%20with%20Cities%20and%20Towns.pdf. The MOU was amended, pursuant to the Second Amendment to Rhode Island Memorandum of Understanding Between the State and Cities and Towns Receiving Opioid Settlement Funds, April 28, 2023, to apply to the Walgreens Opioid Abatement Settlement Agreement. The Second Amended MOU is available electronically at https://eohhs.ri.gov/sites/g/files/xkgbur226/files/2023-06/2nd%20Amendment%20to%20RI%20MOU%20with%20Cities%20and%20Towns.pdf.

3

Superior Court on December 28, 2023, incorporates the MOU as the means by which settlement payments are allocated within the state and addresses the statutory bar releasing government entity claims against Walgreens. RI Consent Judgment ¶¶ 10, 11, 13. The Rhode Island consent judgment does not provide for any payment to reimburse the state's Medicaid funds or to the Relator.

To comply with the terms of the Agreement,[3] the named States intervened in the *qui tam* action for the limited purpose of filing a motion to dismiss States' claims. Agreement § X.A., ECF No. 84-1; Notice Of Intervention ECF No. 27. Relator and the United States consented to the States' motion to dismiss.. This Court granted the States' request, dismissing the States' claims brought by Relator under each state's false claim act with prejudice [1] Order Re: The Named Plaintiff States' Joint Notice of Intervention for the Purpose of Moving to Dismiss the State Medicaid Portion of the State Causes of Action at 2 ¶ 1 (Jan. 2, 2024)("January 2024 Order"). The order provided that "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant have been resolved" – without providing in which venues such resolution would occur. *Id.* ¶ 3.

Thereafter, the Court entered orders upon joint motions dismissing the federal claims with prejudice, purporting to retain jurisdiction over the state share of the state Medicaid claims that had already been dismissed already. ECF, Order at 3-4 ¶¶ 2,3 (April 21, 2025). ECF 82, Agreed Order of Dismissal at 1 ¶¶ 1, 2 (October 23, 2023). The States were not parties to the joint motions, as they already were dismissed from the case with prejudice, and were not advised before the motions or the proposed orders were filed. Relator now seeks a declaration that he is entitled to a

---

[3] "Each Settling State (for itself and its Releasors) . . . hereby absolutely, unconditionally, and irrevocably covenants not . . . to cause, assist or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever." Agreement §X.A.

4

mandatory percentage of settlement funds that were neither obtained through nor allocated to any RIFCA cause of action.

## II. RELATOR'S MOTION FOR DECLARATORY RELIEF IS IMPROPER

### A. Relator Cannot Seek Declaratory Relief Via Motion

Relator's pending motion should be denied as it is procedurally improper. The Supreme Court has suggested that a party may not merely *move* for relief under the Declaratory Judgment Act; rather, the party must bring an *action* for a declaratory judgment. See *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). Though the Seventh Circuit has not addressed this issue, the Ninth Circuit has held that "[a] party may not make a *motion* for declaratory relief" because "such motion is inconsistent with the Federal Rules." *Kam-Ko-Bio-Pharm Trading Co. Ltd. v. Mayne Pharma (USA) Inc.,* 560 F.3rd 935, 943 (9th Cir. 2009)(quoting *Int'l Bhd. Of Teamsters v. E. Conference of Teamsters,* 160 F.R.D. 452, 456 (S.D.N.Y 1995). Requests for declaratory judgment are *not* properly before the court if raised only in passing, *or by motion*. *Arizona v. City of Tucson* (9th Cir. 2014) 761 F.3d 1005, 1010 (emphasis added.); *see also Kam-Ko*, *supra*, 560 F.3d at 943 (denying "motion for declaratory judgment" because such a motion is "inconsistent with the Federal Rules") (internal quotations marks omitted). The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed. R. Civ. P. 57. As a result, "the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions," including the requirement that the action be commenced by filing a complaint. *Id.*

Rather than file a complaint, Relator has filed a motion for a declaratory judgment against entities that are no longer defendants. Relator has failed to amend his complaint or seek permission to amend. Fed. R. Civ. P. 15. Because the Federal Rules of Civil Procedure do not contemplate a

motion for declaratory relief, Relator's Motion for Declaratory Judgment is improper and must be dismissed. See *Huminski v. Mercy Gilbert Med. Ctr.*, 2012 WL 4052420, at 2 (D. Ariz. Sept. 14, 2012)("Plaintiff's motions for declaratory judgment are not contemplated by the Federal Rules of Civil Procedure, and are denied on that basis.").

**III. THIS COURT LACKS, OR SHOULD DECLINE TO EXERCISE, JURISDICTION OVER RELATOR'S REQUEST FOR RELIEF.**

**A. Relator's Claim is Barred by the Eleventh Amendment.**

Here, "the real, substantial party in interest" in this case is plainly the State of Rhode Island. *Virginia Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011). "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021). This is specifically true of suits brought by individuals against states, and immunity must be resolved before reaching any merits issues. *McHugh v. Ill. Dep't of Transp.*, 55 F.4th 529, 532, 535 (7th Cir. 2022). Even if the relator were to re-file his contention as a separate suit, as he must do under the Federal Rules, it would be barred by the Eleventh Amendment.

It is well established that an unconsenting state is immune from suits in federal court brought by its own citizens or citizens of another state. *Employees v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973). The Eleventh Amendment likewise bars suits seeking relief payable from the state treasury, whether legal or equitable. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).; *Cory v. White*, 457 U.S. 85, 91 (1982). This jurisdictional bar is especially strong where, as here, the Relator seeks federal adjudication of claims grounded in state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). It also extends to ancillary or supplemental claims. *Missouri v. Fiske*, 290 U.S. 18, 27 (1933).

Rhode Island has not waived its immunity to declaratory judgment actions. Although

Rhode Island has waived a portion of its sovereign immunity from tort claims under General Laws § 9-31-1, it has not waived its immunity with respect to "suits involving traditional governmental activities" or "the discretionary administrative acts and omissions of the state's departments, commissions, boards, or the officials thereof, acting in their representative capacities." *Bergemann v. State of R.I.*, 958 F. Supp. 61, 68 (D.R.I. 1997) (quoting *Healey v. Bendick*, 628 F. Supp. 681, 695 (D.R.I. 1986)). And any waiver under § 9-31-1 is limited to actions that are "traditionally tortious." Allendale Leasing, Inc. v. Stone, 614 F. Supp. 1440, 1451 (D.R.I. 1985), judgment aff'd, 788 F.2d 830 (1st Cir. 1986). Actions under the federal declaratory judgment act are not torts.

Nothing in the Rhode Island False Claims Act contains a clear waiver of sovereign immunity, nor does the federal FCA provide a basis to collaterally attack a settlement or impose liability on a sovereign. See *King v. United States Gov't*, 878 F.3d 1265, 1267 (11th Cir. 2018). Relator's reliance on the states' Notice of Intervention and Dismissal's reservation language is misplaced; a reservation of rights does not constitute consent to federal jurisdiction. ECF No. 27; See *Edelman*, 415 U.S. at 673 (holding that constructive consent is insufficient to surrender Eleventh Amendment sovereign immunity).

Finally, the states' failure to raise jurisdictional objections in their Notice of Intervention and Dismissal does not amount to waiver, particularly with respect to a claim not yet filed. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Nor does the Agreement itself suggest waiver, as its dispute resolution provisions contemplate state courts and arbitration—not federal jurisdiction. Agreement § VI.F, ECF No. 84-

**B. There is No Basis for Diversity or Federal Question Jurisdiction.**

As a threshold matter, the question of diversity jurisdiction is easily resolved as "[t]here is

7

no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. County of Alameda,* 411 U.S. 693, 717 (1973).

Moreover, this Court lacks federal question jurisdiction over declaratory judgment actions against states that arise entirely under state law. Pursuant to 28 U.S.C. § 1331A, the courts court may exercise federal-question jurisdiction over state law causes of action in cases that arise under federal law. This power is limited, however, by the so-called "well-pleaded complaint" rule, which requires that a federal matter appear "on the face" of a plaintiff's complaint. *R.I. Fisherman's All., Inc. v. R.I. Dep't of Envt'l Mgmt.,* 585 F.3d 42, 48 (1st Cir. 2009)(citing *Franchise Tax Bd. Of Cal. V. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 13 (1983). The "well-pleaded complaint" refers only to plaintiff's affirmative claims and not any extraneous material such as anticipated defenses. *Id.* A federal court cannot exercise federal-question jurisdiction over a request for declaratory relief "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action." *Id.* at 16. Otherwise, a party could circumvent the well-pleaded complaint rule through "artful pleading" by reshaping an anticipated federal defense into a request for declaratory relief. *Skelly Oil v. Phillips Petroleum Co.,* 339 U.S. 667, 673-74 (1950).

To avoid such a scenario, when assessing whether federal-question jurisdiction exists over a request for declaratory relief, federal circuit courts, including the Seventh Circuit, apply a test where the positions of the parties are reversed and the courts look at a hypothetical coercive action initiated by the defendant against the plaintiff. *DeBartolo v. HealthSouth Corp.,* 569 F.3d 736 (7th Cir. 2009); *accord Great Clips, Inc. v. Hair Cuttery of Greater Bos.,* 591 F.3d 32, 35 (1st Cir. 2010); *see also Capitol Broad. Co. v. City of Raleigh,* 104 F.4th 536, 540 (4th Cir. 2024). Therefore, a court has subject-matter jurisdiction only if a federal claim appears on the fact of that hypothetical

complaint. *See Id.*

Should Relator properly file a declaratory judgment action against the states, that action would fail under the Seventh Circuit's federal question jurisdictional test. In an inverted coercive action, the state's well-pleaded complaint would not raise a federal question; it would merely contain a state-law alternate-remedy claim. There is no hypothetical lawsuit involving Relator's disputed demand to a relator's share over which this Court would have subject matter jurisdiction.

    A. **This Court Should Decline To Exercise Supplemental Jurisdiction Over Pure State Law Questions When the Federal Law Claims Have Been Fully Resolved.**

All federal claims, including Relator's claim to a share of the federal recovery, have been dismissed. "[S]upplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Rivera v. Allstate Ins. Co.,* 913 F.3d 603, 617 (7th Cir. 2018). In order to exercise supplemental jurisdiction, the Court must make a determination that the claims "are so related to the claims supported by original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.§ 1367(a). Therefore, as here, when the claims giving rise to original jurisdiction have been dismissed, state claims should also be dismissed. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id. United Mine Workers of Am. V. Gibbs,* 382 U.S. 715, 726 (1966).

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). *See also Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36–37 (1st Cir. 2020). Courts in this Circuit therefore only retain federal jurisdiction over pendent state claims when "unusual circumstances exist." *Hawkins v. Trustees of Ind. Univ.*, 83 F. Supp. 2d 987, 1002

9

(S.D. Ind. 1999). The Court may consider factors including "judicial economy, convenience, fairness and comity" when making this determination. *Id*.

There are no such factors here; promotion of judicial economy, fairness, and comity weigh strongly against the exercise of supplemental jurisdiction in this case. Relator's declaratory judgment arises under twenty-eight (28) different states false claims act laws. Judicial economy, fairness and comity will best be promoted in each individual state court, as those courts are best poised to navigate complex and novel state law issues regarding alternate remedies and resolve disputes regarding the state's own settlement and consent orders.

## II. RELATOR HAS NO RIGHT TO A SHARE OF THE MULTI-STATE OPIOID ABATEMENT SETTLEMENT AS IS NOT AN "ALTERNATE REMEDY" TO RELATOR'S *QUI TAM* ACTION UNDER RIFCA.

In a False Claims Act case, a relator can recover shares from an alternative remedial proceeding only if that proceeding, "redress[es] the same type of falsity and fraud claims that otherwise could be pursued by a private relator's *qui tam* lawsuit under the False Claims Act." *United States ex. Rel. Kennedy v. Novo A/S,* 5 F.4th 47, 56 (D.C. Cir. 2021). A false claims act "does not reward relators any time the government pursued any 'alternate claim or cause of action' arising from the same set of facts and circumstances." *Id.* at 57. Rather, alternate remedy provisions are intended to apply to the same kinds of fraud that a relator could have brought in a *qui tam*. In other words, "if the alternate proceeding seeks recompense for some other type of claim that the relator could not have brought," the relator cannot obtain a share of any remedy obtained in that proceeding." *Id.* At 56.

In *Kennedy,* the D.C. Circuit considered whether an alternate proceeding under the federal Food, Drug, and Cosmetic Act ("FCDA") for misbranding arose from the same type of claim as a relator's FCA claim such that relator could claim a share of any remedy obtained in that

10

proceeding. 5 F.4th at 56. The court looked to (1) the nature of claims at issue in the alternate proceeding, (2) who was harmed by the alleged falsity or fraud, and (3) the nature of the remedies available in the alternate proceeding. *Id.* The court rejected relator's claim that the FCDA action was an alternate remedy, concluding that the misbranding claim was not the same type of claim as the *qui tam* action because "misbranding bears little resemblance to the types of fraudulent behavior that the False Claims Act identifies and proscribes." *Id.* Additionally, the Court found that a misbranding cause of action intended to address harm to consumers seeks to protect the public at large, while a *qui tam* False Claims Act action seeks to redress fraud against a government payor. *Id.* at 56-57. Because the misbranding action "did not involve the type of claim covered by the False Claims Act," and thus was not of the type a relator could have pursued in a *qui tam* action, relator was not entitled to a share of the FCDA settlement. *Id.*

Similarly, here, in order to claim a share of the Opioid Abatement Settlement, Relator must show that the recovery was for the same harm the federal and state FCAs recognize. *See United States ex rel. Kuriyan v. HCSC Insurance Services Co.*, 2022 WL 704130, at *1 (D.N.M., Mar. 9, 2022). While there is some commonality of claims that Walgreens improperly dispensed opioids, the nature of the legal claims and remedies in Relator's *Qui Tam* Action and the Opioid Abatement Settlement, as well as the identities of those allegedly harmed, are entirely different.

Specifically, the claims asserted in Relator's *Qui Tam* Action under the RIFCA alleged false claims submitted to and resulting in financial injury to Rhode Island's Medicaid program. ECF No.21, ¶ 17. The remedy sought for those violations – restitution and penalties – is to relieve harm to the RI Medicaid Program. By contrast, the claims the states asserted against Walgreens that resulted in the negotiated Opioid Abatement Settlement between the states and Walgreens were based on violations of the DTPA in that Walgreens engaged in unfair or deceptive acts which

11

created a public nuisance prohibited by law. The Agreement in the Opioid Abatement Settlement repeatedly defines the subject matter of the settlement enforcement action as relating to consumer protection, public nuisance, and the remediation and abatement of societal harms arising from Walgreen's role in the opioid crisis. Agreement § I.D, ECF No. 84-1.

When comparing the subject matter of the claims, it is clear that the basis for the Opioid Abatement Settlement is different from the basis of Relator's *qui tam* FCA claims. The Opioid Abatement Settlement resolved public nuisance and consumer protection claims that could not be brought in a *qui tam* action under RIFCA. Nor were they claims Relator brought in his *Qui Tam* Action for restitution and penalties for alleged false claims submitted to and resulting in financial injury to Rhode Island's Medicaid program. Finally, the Opioid Abatement Settlement seeks to abate and remediate harm to the public caused by Walgreens' role in the opioid crisis, which greatly differs from remediating financial injury to RI Medicaid through Relator's Q*ui Tam* Action. Therefore, relator is barred from asserting any right to recover from the Opioid Abatement Settlement proceeds as an alternate remedy.

Relator's reliance on two out-of-circuit cases are unavailing. In *United State ex. rel. Barajas v. United States,* the Ninth Circuit held that an agreement reached in a debarment and suspension proceeding stemming from a contractor's criminal and fraudulent conduct was an alternate remedy under the FCA. 258 F.3d 1004, 1006-13 (9th Cir. 2001). *Barajas* is different than this case, however, because in that case a separate proceeding "substantially replicated the remedy it could have obtained" in the relator's *qui tam* action, which is not applicable here. *Id.* In *United States ex. rel. Bledsoe v. Cmty. Health Sys.,* the Sixth Circuit held that a relator was potentially entitled to a share of settlement proceeds reached between the Government and the defendant so long as the fraudulent conduct alleged in the relator's *qui tam* "overlap[ped]" with the covered

12

conduct. 342 F.3d 634, 637-40, 647-51 (6th Cir. 2003). That case is distinguishable from the case at hand because the Government's settlement in that case centered on the defendant's alleged Medicare fraud. In this case the basis for the Opioid Abatement Settlement was to protect the public from opioid abuse and did not involve fraud against the state.

Though factual overlap may be necessary for an alternative proceeding to be an "alternate remedy", "[f]actual symmetry alone is not enough to seal that deal." *Kennedy* 5 F.4th at 57-58. The courts must look at "the nature of the claim" since "the plain text of the False Claims Act confines the *qui tam* plaintiffs to recoveries only for claims seeking relief on the type of fraud or falsehoods covered by that statute." *Kennedy,* 5 F.4th at 49. The states' resolution in the Opioid Abatement Settlement does not resolve a False Claims Act-type claim, nor did the Agreement concern a false or fraudulent effort to obtain money or property from Rhode Island or the other states. As the court held in *Kennedy,* since the "alternate proceeding seeks recompense for some other type of claim that the relator could not have brought, then the proceeding is not covered…because it is not "alternate" to the False Claims Act *qui tam* remedy. It is a different legal claim altogether, arising beyond the False Claims Act's borders." 5 F.4th at 56.

### III. RELATOR'S ORIGINAL *QUI TAM* IS INVALID, WHICH ELIMINATES ANY ENTITLEMENT TO ALTERNATE REMEDIES.

#### A. Relator Fails to State a Plausible Fraud Claim

Relators must plead state FCA claims with specificity as to each state and may not rely on generalized allegations of nationwide fraud. *U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 357 (D. Mass. 2011). Absent a valid *qui tam* complaint capable of surviving dismissal, a relator may not recover from a settlement obtained by the government. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007).

Relator cannot meet that threshold. Relator's August 2018 complaint alleged no specific

facts concerning any state other than Illinois, rendering his state-law FCA claims facially deficient under Rule 9(b). ECF No. 1 ¶¶ 41–71. Courts routinely reject state-law FCA claims premised on extrapolation from conduct in other jurisdictions or conclusory assertions of nationwide schemes. See, e.g., *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012); *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011); *United States ex rel. Pepe v. Fresenius Med. Care Holdings*, 2024 WL 4635236, at *4 (E.D.N.Y. Oct. 31, 2024).

Recent authority underscores this deficiency. In *United States ex rel. Publix Litig. P'ship, LLP v. Publix Super Mkts., Inc.*, the court dismissed materially similar FCA claims premised on opioid dispensing practices, holding that allegations of poor business practices or regulatory violations—even if true—do not state a claim under the FCA. 2025 WL 5468832, at *4–7 (M.D. Fla. Aug. 27, 2025). Relator has not attempted to distinguish his allegations from those rejected in *Publix*, nor could he plausibly do so under Rule 9(b). Because Relator's qui tam allegations would not survive dismissal, he is categorically barred from asserting any entitlement to settlement proceeds under an alternate-remedy theory.

Despite these well-settled requirements, Relator failed—across his original, First Amended, and Second Amended Complaints—to allege a single instance of Walgreens submitting a false claim for reimbursement to Rhode Island Medicaid. Nor did Relator plead any facts supplying reliable indicia of fraud or strengthening the inference of a RIFCA violation beyond mere possibility. Accordingly, Relator's *qui tam* claim as to Rhode Island is facially invalid.

### B. Relator Did Not Contribute to Rhode Island's Opioid Abatement Settlement

Relator is independently barred from recovery because he did not contribute to Rhode Island's Opioid Abatement Settlement. To claim a share—whether as a direct or alternate

14

remedy—the government must have relied on the relator's information in obtaining the recovery, and the relator must qualify as an original source. *United States ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, 2022 WL 704130, at *1 (D.N.M. Mar. 9, 2022). Here, the conduct underlying Relator's allegations against Walgreens had been publicly disclosed before Relator filed his *qui tam* action. Relator did not voluntarily provide direct and independent knowledge to Rhode Island, nor did his information play any role in the State's settlement recovery. Because Relator neither pled a viable RIFCA claim nor contributed to the State's recovery as an original source, he cannot claim any share of Rhode Island's Opioid Abatement Settlement.

## IV. CONCLUSION

**For the foregoing reasons, Relator's Motion for Declaratory Judgment should be DENIED.**

Respectfully submitted,
**PETER F. NERONHA**
**ATTORNEY GENERAL OF RHODE ISLAND**

By his attorney:

/s/ Kate Constance Brody (#8425)
Kate Constance Brody
Special Assistant Attorney General
Deputy Director, RI MFCU
150 South Main Street
Providence, RI  02903
(401) 274-4400 ext. 2089
KBrody@riag.ri.gov


**CERTIFICATION OF SERVICE**

I, the undersigned, an attorney, hereby certify that on the 3rd day of February, 2026, I caused a true and correct copy of this, The State of Rhode Island's Opposition to Relator's Motion for a Declaratory Judgment to be served via the Court's ECF/electronic mailing system upon all counsel of record.

*/s/ Kate Constance Brody*

15