UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATES OF NORTH CAROLINA *et al.*, *ex rel.* T.J. NOVAK,<br><br>*Plaintiffs-Relator*,<br><br>v.<br><br>WALGREENS BOOTS ALLIANCE, INC,<br><br>*Defendant*. | Case No. 18-cv-5452<br><br>Judge Joan H. Lefkow |

**STATE OF NEW JERSEY'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT**

JENNIFER DAVENPORT
ACTING ATTORNEY GENERAL
OF NEW JERSEY
Division of Law
124 Halsey Street, 5th Floor
P.O. Box 45029
Newark, New Jersey 07101
*Attorney for Plaintiff*
(609) 696-5292

Lara J. Fogel (#038292006)
*Assistant Attorney General*
Jillian B. Pulverenti (#410472022)
*Deputy Attorney General*

I.   INTRODUCTION

The Attorney General of the State of New Jersey ("New Jersey") respectfully submits this memorandum in opposition to the motion filed by Plaintiff-Relator T.J. Novak ("Relator") for a declaratory judgment that Relator is entitled to a share of New Jersey's settlement with Walgreens, which resolved consumer-protection and public-nuisance claims. Relator's motion should be denied because it is procedurally improper, there is no basis for this Court to exercise supplemental jurisdiction over this dispute, and Relator is precluded from a share of the settlement under the New Jersey False Claims Act, N.J.S.A. 2A:32C-1 to -17 ("NJFCA").

II.   PROCEDURAL AND FACTUAL HISTORY[1]

For over a decade, New Jersey has actively investigated, litigated and settled opioid-related matters. (Declaration of Assistant Attorney General Lara Fogel ("Fogel Decl."), ¶ 2.) In its enforcement against the scourge of opioid dependency and abuse, New Jersey has settled multiple claims brought against numerous defendants, including opioid manufacturers, distributors, and dispensers. (*Id.* ¶ 3.) These settlements have generally been negotiated by a multistate group of states, and call first for sign-on from states, and then their eligible governmental subdivisions. (*Id.* ¶¶ 5, 7.) The defendant then has a period of time to decide if it will commit to proceeding with the settlement. (*Id.* ¶ 10.) In like fashion, a multistate settlement was reached with Walgreens on December 9, 2022, to resolve opioid-related claims against Walgreens ("Consumer Settlement"). (*Id.* ¶ 4.) New Jersey signed onto the Consumer Settlement on December 23, 2022, and all 262 of New Jersey's eligible governmental subdivisions ("Eligible NJ Subdivisions") joined the

---

[1] This section incorporates by reference the procedural and factual history set forth in the opposition brief filed by North Carolina and Tennessee, and focuses only on New Jersey-specific facts.

2

Consumer Settlement by May 2, 2023. (*Id.* ¶¶ 6-9.) On or before June 8, 2023, Walgreens informed the States of its commitment to go forward with the Consumer Settlement. (*Id.* ¶ 10.)

In accordance with the terms of the Consumer Settlement, on November 15, 2023, New Jersey filed a complaint ("Consumer Complaint") and consent judgment ("Consent Judgment") in the New Jersey Superior Court, Chancery Division, General Equity Part. (*Id.* ¶ 20.) The Consent Judgment, executed by the New Jersey court on November 29, 2023, made clear that "[t]he [New Jersey court] shall retain jurisdiction over the Parties for the limited purpose of the resolution of disputes identified in Section VI.F.1 of the [Consumer Settlement]." (*Id.*, Ex. B, ¶ 21.) Section VI.F.1 of the Consumer Settlement provides, in pertinent part, that "all disputes shall be resolved in… the court that entered the relevant Consent Judgment[.]" (*Id.* ¶ 4.) As reflected in the Consumer Complaint, by way of the Consumer Settlement and Consent Judgment, New Jersey resolved two consumer-based counts against Walgreens, including a: i) public nuisance claim brought under the common law; and ii) claim for violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq*. ("CFA"). (*Id.* ¶ 21.) Accordingly, the proceeds from the settlement are largely devoted to prospective nuisance abatements with no funds specifically allocated to resolve Medicaid claims or specifically directed to state Medicaid programs. (*Id.* ¶ 22.)

Pursuant to the terms of the "Memorandum Agreement Between the State of New Jersey and Local Governments on Opioid Litigation Recoveries" ("NJ Subdivision Agreement"), all the abatement proceeds due to New Jersey from the Consumer Settlement ("Consumer Proceeds") are to be divided equally between the State of New Jersey and its Eligible NJ Subdivisions. (*Id.* ¶¶ 11, 15.) New Jersey's use of these abatement monies is constrained by (i) the terms of the Consumer Settlement, (ii) the terms of the NJ Subdivision Agreement, and (iii) state law, which, among other

3

things, established the Opioid Recovery and Remediation Fund and governs the administration and use of these opioid settlement monies. (*Id.* ¶¶ 12-19; N.J.S.A. 26:2G-39 to -43.)

On December 21, 2023, New Jersey and the other named States, with the consent of Relator, filed in this Court a Joint Notice of Intervention For The Purpose Of Moving To Dismiss The State Medicaid Portion Of The State Causes Of Action, ECF #27 ("States' Joint Motion to Dismiss"), which the Court entered on January 2, 2024, dismissing with prejudice the States' claims brought by Relator under each state's false claim, ECF #33, ¶ 1. The order also provided that "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant have been resolved"—without indicating the venues in which such resolutions would occur. (ECF #33, ¶ 3.)

As described below, this matter cannot be reopened against New Jersey by Declaratory Judgment where the underlying state law claims have been dismissed. Moreover, due to the state-specific statutes, agreements, and filings at issue, there is no basis in the law or the facts for this Court to exercise supplemental jurisdiction over this dispute. Finally, Relator is not entitled to a share of the Consumer Proceeds because, under New Jersey law, the Consumer Settlement is not the type of alternate administrative proceeding that would entitle Relator to a share of the recovery.

### III. RELATOR'S DECLARATORY JUDGMENT MOTION SHOULD BE DISMISSED BECAUSE IT IS PROCEDURALLY IMPROPER.

New Jersey refers to and incorporates by reference the entirety of Section I ("Declaratory Motion is Improper in this Lawsuit") of the opposition brief filed by North Carolina and Tennessee, which argues that declaratory judgment cannot be sought here because it was improperly brought by motion and was neither pled in the complaint, nor brought against parties named as defendants. New Jersey only adds that "it is well-settled that a federal court cannot grant [Declaratory

4

Judgment Act] relief when it is requested solely via motion practice [and not via the commencement of an action]." *A.C. ex rel. K.C. v. Trenton Pub. Sch. Dist. Bd. of Educ.*, No. 23-04052, 2023 WL 5806353 * 4 (D.N.J. Sept. 7 2023) (denying declaratory relief when defendant failed to plead a declaratory judgment action) (collecting cases). Moreover, it would be futile to allow plaintiff an opportunity to amend the pleading to add a claim for declaratory judgment because the state law claims have already been dismissed. *ASAH v. N.J. Dep't of Educ.*, No. 16-3935, 2017 WL 2829648 at *12 (D.N.J. Jun. 30, 2017) (providing that "stand alone counts for declaratory and injunctive relief [are defective], since such claims are requests for remedies, and not independent causes of action" (collecting cases); *see also Chruby v. Kowaleski*, 534 F. App'x 156, 160 (3d Cir. 2013) (affirming the dismissal of claim seeking declaratory relief because none of the plaintiff's substantive claims could survive a motion to dismiss).

Relator's pending motion for declaratory judgment should thus be denied because it is procedurally improper.

### IV. RELATOR'S DECLARATORY JUDGMENT MOTION SHOULD BE DISMISSED BECAUSE OF JURISDICTIONAL INFIRMITIES.

New Jersey refers to and incorporates by reference Section II ("Statutory and Constitutional Barriers Prevent this Court from Entering a Declaratory Judgment Against the States") of the brief filed by North Carolina and Tennessee, including because no New Jersey State Court has yet interpreted the alternate-remedy provision of the NJFCA, which is a novel, important issue of New Jersey State law that should be decided by a New Jersey State Court. *See also U.S. ex rel. Piacentile v. Sanofi Synthelabo, Inc.*, Civ. Action No. 05-2927, 2010 WL 5466043 *10 (D.N.J. Dec. 30, 2010) (declining to exercise supplemental jurisdiction over state false claims act claims after dismissing federal claims) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not

5

insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")); *accord Constantine v. New Jersey Dep't of Banking*, No. 1:22-cv-02678, 2023 WL 2625007 * 6 (D.N.J. Mar. 24, 2023) (declining to exercise jurisdiction over state law claims and collecting cases) (*quoting Gibbs*, 383 U.S. at 726-27 ("Needless decisions of state law [by a federal court] should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.")).

## V. EVEN IF A DECLARATORY JUDGMENT IS PROCEDURALLY AND JURISDICTIONALLY PROPER, THE NJFCA DOES NOT ALLOW RELATOR TO COMPEL A SHARE OF NEW JERSEY'S CONSUMER SETTLEMENT.

Even if this Court finds no procedural or jurisdictional infirmities, Relator is not entitled to a share of the Consumer Settlement because the NJFCA's alternate-remedy provision applicable here is limited to State Medicaid recoveries under the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 *et seq.* (the "NJ Medicaid Act"); the Consumer Settlement, however, does not qualify as such a recovery.

The NJFCA limits alternate recoveries by relators to actions brought under the NJ Medicaid Act, *see* N.J.S.A. 2A:32C-6(h) (2008) (limiting relator's alternate-remedy interest in an election by the Attorney General "to pursue an alternate administrative recovery action under subsection (e) of [N.J.S.A. 30:4D-17]"), which is New Jersey's enactment of its participation in the shared federal and state Medicaid program, *G.C. v. Div. of Med. Assistance and Health Servs.*, 249 N.J. 20, 23 (2021). In the limited circumstance of the State opting to pursue NJFCA claims asserted in a relator's *qui tam* action under the NJ Medicaid Act instead, the NJFCA provides the relator the same rights under the NJ Medicaid Act as relator would have had in the *qui tam* action. N.J.S.A. 2A:32C-6(h) (2008).

6

The Consumer Settlement, however, did not resolve claims brought under the NJ Medicaid Act—in fact, it did not redress harms to New Jersey's Medicaid program at all. New Jersey's Consumer Complaint asserted public-nuisance claims, which ""fundamentally involve[] the vindication of a right common to the public." *In re Lead Paint*, 191 N.J. 405, 425 (2007). New Jersey's Consumer Complaint also asserted Consumer Fraud Act claims, aimed at providing "broad protection to consumers against deceptive commercial practices." *Thiedmann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 243 (2005). As such, New Jersey's Complaint sought relief from Walgreens for the public-health harms associated with the opioid crisis; it did not seek to recoup specific Medicaid payments for fraudulent prescriptions. (Fogel, Decl., Ex. A, ¶ 41).

Furthermore, the proceeds from the Consumer Settlement are forward-looking opioid-abatement initiatives, not backward-looking reimbursement of false claims paid by New Jersey Medicaid programs. (*Id.* ¶ 13.) Nearly all proceeds paid to New Jersey are split equally between the State and the Eligible NJ Subdivisions. (*Id.* ¶ 11.) New Jersey law designates the Opioid Recovery and Remediation Advisory Council to "develop and provide recommendations on the allocation and distribution of the State's share of proceeds from national opioid litigation resolutions," confirming future Consumer Proceeds will not function as simple recoupment of state Medicaid overpayments. (*Id.* ¶ 18.) Moreover, none of the monies from the Consumer Settlement has been remitted to state Medicaid programs. (*Id.* ¶ 22.) Similarly, none of such monies has reimbursed another State spending program. (*Ibid.*) Since the State's recoveries are for opioid-abatement and not for State Medicaid losses, as alleged by the Relator, there is no NJFCA-derivative recovery from which a relator could share. *See* N.J.S.A. 2A:32C-6(h)(2008).

Relator fares no better under the State's amended alternate-remedy provision,[2] which is similar to the federal analog, and provides that in "any" alternate "administrative proceeding to determine a civil money penalty," "the person initiating the action shall have the same rights . . . as such person would have had if the action had continued under this section." 31 U.S.C.A. §3730(d)(5).

While no New Jersey court has interpreted the amended alternate remedy provision, federal courts have found that a relator's right to a share is preserved under this provision only to the extent the State's recovery was for the type of false or fraudulent claims that the NJFCA recognizes and for harms that a *qui tam* action could redress. *See, e.g.*, *U.S. ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 54-58 (D.C. Cir. 2021) (finding damages for use of falsity or fraud to deprive the government of its money or property is the hallmark of a claim litigable under the False Claims Act); *see also United States v. Kurlander*, 24 F. Supp. 3d 417, 425 (D.N.J. 2014), *as amended* (Jun. 11, 2014) (holding an alternate remedy must purport to recover what would be recoverable in the *qui tam* action); *United States ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, CIV 16-1148 JB/KK, 2022 WL 704130 * 3 (D.N.M. Mar. 9, 2022) (requiring the relator to show recoupment was for, or was to prevent, the same type of fraud or falsity that the FCA recognizes to be awarded a share of an alternate remedy). If the alternate proceeding seeks "recompense for some other type of claim that the relator could not have brought, then the proceeding . . . is a different legal claim altogether, arising beyond the False Claims Act's borders," and therefore out of a relator's reach." *Novo*, 5 F.4th at 56.

---

[2] The NJFCA was amended on June 30, 2023. The post-June 30, 2023 version broadened the concept of alternate remedies to include any administrative proceeding or other alternate remedy, not just those under the NJ Medicaid Act.

8

It is beyond dispute that Relator could not have brought the public nuisance and New Jersey Consumer Fraud Act claims that formed the basis of New Jersey's settlement with Walgreens. Further, the Relator's Complaint alleged Walgreens knowingly presented, or caused to be presented, false claims to Medicaid by illegally dispensing controlled substances, and avoided obligations to return money after learning that prescriptions billed to the State were fraudulent. (ECF #21, ¶ 3.) The Relator's Complaint sought damages and civil penalties on behalf of New Jersey for money paid by Medicaid for noncompliant prescriptions. (ECF #21, ¶¶ 194-97, 314-17.) As discussed, the Consumer Settlement redressed harm to New Jersey residents to resolve public-nuisance and Consumer Fraud Act claims. Relator is thereby not entitled to an alternate remedy, even under the current version of the NJFCA's alternate-remedy provision. *See Kennedy v. Novo* at 57 ("[I]t is the nature of the legal claim--the fraudulent or false deprivation of a monetary or property interest--and not the commonality of facts that determines a relator's right to share in an alternative recovery."); *see also Rille v. PricewaterhouseCooper LLP,* 803 F.3d 368, 372 (8th Cir. 2015) (a relator's "right to recovery is limited to a share of the settlement of the claim that they brought," and "does not extend to a different claim that is settled by the government when that claim was not originally 'brought by' the relator.").

In addition, an alternate remedy depends on a viable *qui tam* action. *See, e.g.*, *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007). As the brief by North Carolina and Tennessee argues, Relator's action also fails under the public-disclosure bar; therefore, Relator is not entitled to the relief sought here.

Additionally, because the NJFCA claims asserted in this *qui tam* action have been dismissed, with Relator's consent, those NJFCA claims cannot form the basis for recovery of a share of the monies from the Consumer Settlement. *See United States v. L-3 Commc'ns EOTech,*

*Inc.*, 921 F.3d 11, 19 (2d Cir. 2019) (holding relator was not entitled to share in the government's recovery because relator's *qui tam* action was voluntarily dismissed).

And even if the State had specifically settled its own *qui tam* claim against Walgreens as part of the Consumer Settlement, Relator could nonetheless have pursued his claim independently of the government. *See, e.g.*, *U.S. ex rel. Dunleavy v. Cnty. of Delaware*, 123 F.3d 734, 739 (3d Cir. 1997) (finding that the government's settlement does not compromise a relator's claim through an independent settlement because defendant's potential exposure in a *qui tam* action may ultimately exceed what is accepted in its settlement with the government), *abrogated on other grounds by Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280 (2010). Thus, the State could not have settled the Relator's claims. Relator's reliance on the global release language contained in the Consumer Settlement is misplaced.

The States' Joint Motion to Dismiss to postpone the resolution of the issue of whether Relator is entitled to a share of one or more plaintiff state's share of the Consumer Settlement cannot be construed as New Jersey's, or any state's, agreement or acknowledgement of Relator's right to a share. Where the court retains jurisdiction to resolve a relator's claim, the government's right to contest the issue of the relator's share remains. *U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 107 (3d Cir. 2000), *as amended* (Apr. 21, 2000).

## VI. CONCLUSION

For all these reasons, Relator's motion should be denied.

10

                    Respectfully submitted,

                    JENNIFER DAVENPORT
                    ACTING ATTORNEY GENERAL
                    OF NEW JERSEY

       By:    /s/ Jillian B. Pulverenti
                    Jillian B. Pulverenti
                    *Deputy Attorney General*

Dated: February 3, 2026
       Newark, New Jersey

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 3, 2026, she caused a true and correct copy of STATE OF NEW JERSEY'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT to be served via the Court's ECF/electronic mailing system upon all counsel of record.

/s/ Jillian B. Pulverenti  
Jillian B. Pulverenti  
*Deputy Attorney General*