**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, | ) | |
| Plaintiffs-Relator | ) | Case No. 18 C 5452 |
| v. | ) | Judge Joan H. Lefkow |
| WALGREENS BOOTS ALLIANCE, INC. | ) | |
| Defendant | ) | |

# STATE OF DELAWARE'S OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT THE RELATOR IS ENTITLED TO A SHARE OF DELAWARE'S SETTLEMENT WITH THE DEFENDANT

## INTRODUCTION

The Relator seeks a share of a $5.52 billion, 46-state settlement of public nuisance and consumer protection claims that were litigated against and settled with Defendant Walgreens for its role in the nationwide opioid crises. The nature and scope of the opioid crisis—and the conduct of the companies that contributed to it — were well known to the State of Delaware ("Delaware") long before the Relator filed his Complaint on August 10, 2018. ECF 1. Delaware filed its Delaware Opioids Lawsuit (defined below) nearly eight months before the Relator filed his Complaint. The Delaware Opioids Lawsuit included all of Delaware's claims. For reasons both procedural and substantive, the Relator's Motion should be denied in its entirety as to Delaware.

## FACTUAL BACKGROUND

On January 19, 2018, Delaware, by and through its Attorney General, filed a lawsuit against the Defendant, Walgreens, and several other entities involved in the manufacture, distribution, and

dispensing opioids (the "Delaware Opioids Lawsuit").[1] The Delaware Opioids Lawsuit alleged, among other things, that Walgreens failed to meet the relevant standard of care in dispensing opioids established by Delaware's Uniform Controlled Substances Act (16 *Del. C.* §§ 4701, *et seq.*), Uniform Controlled Substances Act Regulations (24 *Del. Admin. C.* CSA 1.0 *et seq.*), and numerous professional regulations related to persons who handle, prescribe, and dispense controlled substances, (collectively the "DE CSA").

The Delaware Opioids Lawsuit alleged that Walgreens knew that it failed to meet the relevant standard of care for its dispensing practices in Delaware based in part upon Walgreens's entry into various settlement agreements relating to earlier claims of violations of the Federal Controlled Substances Act ("FCSA"), 21 U.S.C. §§ 801 *et seq.*, and various state regulatory frameworks similar to DE CSA, dating back to no later than June 11, 2013.[2]

The Relator's Complaint was filed on August 10, 2018, nearly eight months *after* Delaware filed the Delaware Opioids Lawsuit and publicized its allegations by issuing a press release.[3] Count 5 of the Relator's Complaint alleged violations of the Delaware False Claims and Reporting Act ("DFCRA"), 6 *Del. C.* §§ 1201, *et seq.*, but his Complaint contains no factual allegations specific to any false claims presented to, or paid by, Delaware. ECF 1, Complaint ¶¶109-112. The Relator

---

[1] *State of Delaware ex rel. Denn v. Purdue Pharma L.P., et al.*, Delaware Superior Court Case No. N18C-01-223 MMJ CCLD (attached as Exhibit 1).

[2] Press Release, U.S. Attorney's Office S. Dist. of Fla., "Walgreens Agrees to Pay a Record Settlement of $80 Million for Civil Penalties Under the Controlled Substances Act" (June 11, 2013), https://www.justice.gov/usao-sdfl/pr/walgreens-agrees-pay-record-settlement-80-million-civil-penalties-under-controlled

[3] Press Release, Delaware Department of Justice, "Delaware Files Lawsuit Against Opioids Industry" (January 19, 2018), https://news.delaware.gov/2018/01/19/opioid-lawsuit/

provided no information about Walgreens to Delaware before the Delaware Opioids Lawsuit was filed.[4]

DFCRA Section 1203 gives the Delaware Attorney General the authority, but not the duty, to bring civil actions for violations she discovers after investigation. In filing the Delaware Opioids Lawsuit, the Delaware Attorney General exercised Delaware's sovereign authority in selecting the remedy pursued through the Delaware Opioids Lawsuit.

Delaware's legislature – seeking to ensure a nimble stakeholder-informed process to distribute opioid settlement funds on a statewide basis – passed Senate Bill 166 ("SB 166") in 2021.[5] SB 166 established the Prescription Opioid Settlement Fund ("POS Fund") to "hold all monies collected by the State and its subdivisions as a result of the terms of statewide opioid settlement agreements." 16 *Del. C.* § 4808B(b).The POS Fund is restricted as follows:

> (d) Money in the Settlement Fund must be used for activities in 1 or more of the following categories:
>
> (1) For services that remediate the harm caused by opioids.
>
> (2) To reduce harm caused by opioids.
>
> (3) Consistent with the terms of the settlement, judgment, or other source of the moneys.
>
> (e) Money in the Settlement Fund may not be used to supplant existing state or local government funding.
>
> (f) Money in the Settlement Fund does not lapse at any time and must not be transferred to or commingled with any other fund.

---

[4] The Relator's reliance upon *U.S. ex rel. Bledsoe v. Cmty Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003) ("*Bledsoe I*") is entirely misplaced based on the facts alone. The *Bledsoe I* claim was premised on the Relator's communication with the government after filing his Complaint and Disclosure Statement, but *before* the government pursued an "alternate remedy." The Delaware Opioids Lawsuit was filed months before the Relator's Complaint and Disclosure Statement were served on Delaware.

[5] See 83 Del. Laws, c. 243, §§ 3 and 5; 16 *Del. C.* § 4808B; Tit. 16 Del. Code, Ch. 51.

16 *Del. C.* § 4808B(d)-(f). Once deposited into the POS Fund, settlement proceeds can only be distributed based on the recommendation of an independent Prescription Opioid Settlement Distribution Commission, comprised of members from both within and outside of Delaware's state government. Importantly, no abatement funds from any statewide opioid settlement agreement go into any state or local government's general fund in Delaware. Delaware's adopted statutory framework is unique among the plaintiff states before this Court.

The final Consent Judgment incorporating the settlement between Delaware and Walgreens of the Delaware Opioids Lawsuit was entered by the Delaware Superior Court on December 18, 2023.[6] In so entering the Consent Judgment, the Delaware Superior Court explicitly retained jurisdiction over the settlement and specified that it "shall not be modified (by the Court, by any other court, or by any other means) without the consent of the State and Walgreens and without the approval of the [Delaware Superior] Court." Exh. 2 at 12. As required by SB 166, all proceeds from the Delaware's settlement with Walgreens were deposited into the POS Fund. No part of the settlement was distributed directly to Delaware's general fund or to any of Delaware's political subdivisions. The Consent Judgment does not provide for a Relator's share.

Per Walgreens settlement with the United States, all federal False Claims Act ("FCA") claims in the Relator's Complaint were dismissed with prejudice to the Relator; the Relator later dismissed his claim against Walgreens for attorney's fees and costs. ECF 72, ECF 82.

---

[6] Delaware's Consent Judgment (with attachments) is attached as Exhibit 2.

## ARGUMENT

### I. DECLARATORY RELIEF IS IMPROPER IN THIS LAWSUIT.

"A party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma (USA Inc.)*, 560 F.3d 935, 943 (9th Cir. 2009). "[T]he Declaratory Judgment Act authorizes declaratory judgment actions, not declaratory judgment motions within an active case." *Arizona v. City of Tuscon,* 761 F.3d 1005, 1010 (9th Cir. 2014). The Relator has not sought permission to amend (Fed. R. Civ. P. 15),[7] nor has the Relator sought a crossclaim against Delaware (Fed. R. Civ. P. 20; Fed. R. Civ. P. 13(g)). The Relator's role in this case as currently pled is to "stand[] in the shoes of the government[s]." *United States ex rel. Robinson v. Healthnet Inc.*, 124 F.4th 511, 514 (7th Cir. 2024). The Relator cannot hijack his self-selected role of standing in the shoes of Delaware to seek entry of judgment against Delaware.

Alternatively, the only Delaware claims brought before this Court were the claims under DFCRA. Those claims were "dismissed with prejudice" by this Court in January 2024. ECF 32 at 2 ¶1. Accordingly, there is no live claim over which this Court has any jurisdiction to proceed with respect to Delaware.

[7] While Rule 15(b)(2) allows for issues not raised in the complaint to be addressed, those issues may only come before the Court upon the parties' express or implied consent. Fed. R. Civ. P. 15(b)(2). Delaware recognized this request would be deferred; but it was never before the Court by the Relator's filing, and thus Delaware was not placed on notice the Relator would attempt to litigate these matters in this forum.

## II. EVEN IF THE MOTION WERE PROCEDURALLY PROPER, JURISDICTIONAL, STATUTORY, AND CONSTITUTIONAL LIMITATIONS PROHIBIT A DECLARATORY JUDGMENT HERE.

### A. The Court does not have diversity or federal question jurisdiction over a declaratory judgment action against Delaware that arises under Delaware law.

The jurisdiction of United States District Courts is subject to both statutory and constitutional limitations.

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S. Code § 1331. As noted above, all FCA violations alleged in the Complaint have been dismissed with prejudice. ECF 72. There are no remaining issues "arising under the Constitution, laws, or treaties of the United States."

Delaware is not amenable to diversity jurisdiction in federal courts. "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973). From the founding, the states have enjoyed "a residuary and inviolable sovereignty." *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting The Federalist No. 39, at 245). The founders "considered immunity from private suits central to sovereign dignity." *Id.* As a result, "the doctrine that a sovereign could not be sued without its consent was universal in the States when the Constitution was drafted and ratified." *Id.* at 715-16.

As the Supreme Court has long held, Delaware's waiver of immunity, if any, must be express and unequivocal. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). Absent evidence of knowing and voluntary waiver by Delaware – for which the Relator presents no evidence here – the Relator's claims against Delaware under the DFCRA, and not under any federal principle, cannot be heard by this Court, absent a proper application of supplemental jurisdiction.

### B. The Court should decline supplemental jurisdiction over Delaware law questions when the federal law claims have been fully resolved.

In 1990, Congress enacted 28 U.S.C. § 1367 to codify the common law doctrines of pendent and ancillary jurisdiction under the label of "supplemental jurisdiction." Pursuant to those doctrines, if – and only if – a district court had an independent basis for subject matter jurisdiction over at least one claim, then the jurisdictional statutes "implicitly authorized supplemental jurisdiction over all other claims between the same parties arising out of the same Article III case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 556 (2005). "In order for a federal court to invoke supplemental jurisdiction . . . it must first have original jurisdiction over at least one claim in the action." *Id.* at 554, citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966).

Even where a district court *can* exercise supplemental jurisdiction, 28 U.S.C. § 1367(c) sets forth situations where a district court may nonetheless decline it. Subsection 1367(c) "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).

Subsection 1367(c) "confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." *Id.* Specifically, a district court may decline to exercise supplemental jurisdiction where

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) *the district court has dismissed all claims over which it has original jurisdiction*, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added).

Subsection 1367(c)(3) does no more than reflect the state of United States Supreme Court jurisprudence prior to its adoption. "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under pendant jurisdiction doctrine . . . point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)). See also *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. . . . [I]f the federal law claims are dismissed before trial ... the state claims should be dismissed as well."). Accord., *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716 (7th Cir. 1998).

### C. The Court must afford full faith and credit to the Delaware court's judgment effectuating its settlement with Walgreens.

The Court must give full faith and credit to Delaware's Consent Judgment.[8] Federal courts must treat state court judgments as valid and enforceable. 28 U.S.C. § 1738. In the Seventh Circuit, a state court settlement is treated the same way in federal court as it would be in state court. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000) (upholding state settlement and requiring lower court to apply the same preclusion principles as a state court would).

Here, Delaware Superior Court entered the Consent Judgment incorporating its settlement with Walgreens and retained jurisdiction over its administration. Delaware's Consent Judgment

---

[8] Exh. 2ed.

does not provide for a Relator's share. To the extent the Relator wants relief from the Delaware's Consent Judgment, he must seek it in Delaware Superior Court.[9]

**D. Sovereign immunity bars the post-dismissal alternate remedy action.**

Suits against states for monetary damages are barred by the Eleventh Amendment:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

A suit for monetary damages is determined by whether the action would deplete the state treasury. *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775 (7th Cir. 1991). "[D]eclaratory relief should not be awarded where the [E]leventh [A]mendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993).

The Relator's request for a share of Delaware's settlement with Walgreens is effectively a request for recovery of money from Delaware's treasury. As stated above, SB 166 established the POS Fund to "hold all monies collected by the State and its subdivisions as a result of the terms of statewide opioid settlement agreements" and restricted the expenditure of such funds to specified purposes. 16 *Del. C.* § 4808B(b). Because paying a Relator's share is not a permissible expense of the POS Fund, it cannot be paid by the POS Fund. Therefore, it must come, if at all, from Delaware's treasury.

---

[9] As previously stated, SB 166 directs the spending of Delaware funds from its opioid settlement with Walgreens, restricting the uses to which the POA Funds may be distributed. 16 *Del. C.* § 4808B(d)-(f). In any event, this issue must be resolved by the Delaware Superior Court that entered the Consent Judgment.

While Delaware may waive Eleventh Amendment immunity explicitly," *Lane v. Pena*, 518 U.S. 187, 192 (1996), the DFCRA does not contain any language that abrogates Eleventh Amendment immunity. Eleventh Amendment immunity therefore bars the Relator's request for a declaratory judgment.[10] "[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). "To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. Of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). While Delaware did not raise a jurisdictional issue (or any other defense) in intervening in this case for purposes of dismissal, it did not waive any defense to the Relator's not-yet-filed claim for a share of Delaware's settlement with Walgreens. *Id.* at 443 (holding that a party's "preliminary actions" did not waive a personal jurisdiction defense); ECF 27.

Absent an explicit waiver of sovereign immunity, the Eleventh Amendment's bar of federal suits against states "applies to pendant claims as well." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 120 (1984).

[10] Delaware intervened for the limited purpose of dismissing its *qui tam* claims against Walgreens. That action did not waive immunity from suit for all claims. Rather, it provided that the Relator was not barred from later proceeding, in an otherwise appropriate forum, to litigate its claim to a relator's share. *See* January 2024 Order at 2 ¶3.

## III. EVEN IF A DECLARATORY JUDGMENT MOTION IS PROCEDURALLY PROPER, THE MOTION SHOULD BE DENIED.

### A. The Relator has no right to share in Delaware's settlement because it resolved claims that the Relator could not assert in his *qui tam* suit.

Alternate remedy proceedings from which a relator can recover "must redress the same type of falsity and fraud claims that otherwise could be pursued by a private relator's qui tam lawsuit under the False Claims Act." *United States v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021). If the alternate proceeding seeks "recompense for some other type of claim that the relator could not have brought, then the proceeding . . . is a different legal claim altogether, arising beyond the False Claims Act's borders," and thus beyond a relator's reach. *Id.*

Here, the Relator could not have brought the public nuisance and consumer protection claims that formed the basis for Delaware's settlement with Walgreens. He therefore has no right to share in the settlement of those claims, particularly given that the proceeds from Delaware's settlement are primarily devoted to prospective nuisance abatement, with no funds specifically allocated to resolve Medicaid claims or specifically directed to Delaware's Medicaid program.

### B. The Relator's original *qui tam* claim is invalid, which eliminates any entitlement he might have had to alternate remedies.

Even if the Relator can assert a claim for share of settlement proceeds from causes of action he could not assert, he is still not entitled to a share because his *qui tam* suit is not valid. See, e.g., *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007) ("We read the relevant statutory provisions to mean that a relator is not entitled to a share in the proceeds of an alternate remedy when the relator's qui tam action under [the FCA] is invalid.").

#### 1. The Relator's Claim Against Delaware is Expressly Barred by the DFCRA.

Under the express terms of the DFCRA,

> In no event may a person bring an action under this chapter which is based upon allegations or transactions which are the subject of a civil suit or an administrative proceeding in which the government is already a party . . . . This subsection shall have no effect on the Attorney General's ability to bring any such action.

6 *Del. C.* § 1206(a). The Relator's DFCRA-based, opioid-related allegations in the Complaint were already the subject of the Delaware Opioids Lawsuit.[11] They are therefore barred under Delaware law.

### 2. The Public Disclosure Bar Renders the Relator's Claims Invalid

The DFCRA, like the federal FCA, requires dismissal of a *qui tam* claim when substantially the same allegations or transactions as alleged in the claim were already publicly disclosed, whether in a civil action, administrative hearing, a legislative or state report, or from the news media. 6 *Del. C.* § 1206(b).

The Seventh Circuit has adopted a three-step analysis to determine when a *qui tam* must be dismissed pursuant to the public disclosure bar. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). First, courts must determine whether the allegations in the complaint have been "publicly disclosed" through an enumerated channel. *Id.* If so, the court must then determine whether the Relator's suit is "based upon" or "substantially similar to" the publicly disclosed allegations. *Id.* at 913, 920. The public disclosure bar then precludes the action unless "the relator is an 'original source' of the information upon which the lawsuit is based." *Id.* at 913. The Relator bears the burden of proof at all three steps. *Id.*

A public disclosure occurs "when the critical elements exposing the transaction are placed in the public domain." *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016). The Seventh Circuit has recognized two meanings to the phrase "in the public domain": (1) where

[11] Exh. 1.

"the information is open or manifest to the public at large," *Glaser*, 570 F.3d at 274; and (2) where the "facts disclosing the fraud are in the government's possession." *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 708 (7th Cir. 2014). "The Government's possession of the information exposing the fraud is alone sufficient to trigger the public disclosure bar." *Cause of Action*, 815 F.3d at 275.

As detailed in the Delaware Opioids Complaint, Walgreens' failure to properly dispense opioids was already well-covered both in court proceedings and the media. Delaware sued Walgreens long before the Relator filed his Complaint,[12] and the Relator's action offered nothing new to Delaware. All the facts Delaware could have used to assert a fraud claim were already in Delaware's possession when the Relator filed his Complaint. The Relator was in no sense an "original source" for any claims involving Delaware.

### 2. Relator Fails to State a Plausible Fraud Claim

A relator whose *qui tam* would be subject to dismissal under Fed. R. Civ. P. 9(b) is not eligible to assert any claim for an alternate remedy. In *Bledsoe I*, after remanding to the district court for an analysis on whether the relator's *qui tam* complaint complies with the requirements of Rule 9(b), the Sixth Circuit was asked to confirm that if a relator's *qui tam* cannot survive dismissal, then they would not be entitled to any alternate remedy. The Sixth Circuit answered in the affirmative. See *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007) ("*Bledsoe II*") ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government."). Here, the Relator's Complaint alleged no specific

[12] Exh. 1, pp. 75-79.

facts related to Delaware, which dooms its compliance with Rule 9(b) with respect to the DFCRA claims. ECF 1, Complaint ¶¶109-112.

The Relator has settled all its claims against the United States in this action, so there remains no claim over which the Court has original jurisdiction. It follows that, weighing the values of judicial economy, convenience, fairness, and comity at this stage of the case, there is no longer any basis for the Court to continue to exercise supplemental jurisdiction over Delaware claims brought by the Relator under DFCRA.

Respectfully submitted:
KATHLEEN JENNINGS,
ATTORNNEY GENERAL

Edward K. Black (Delaware Bar #05302)
*Pro Hac Vice*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, C600
Wilmington, Delaware 19801
(302) 577-4209
edward.black@delaware.gov
*Counsel for the State of Delaware*

Dated: February 3, 2026