UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, and the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Texas, Vermont, Virginia, and Washington, *ex rel.* T.J. Novak,<br><br>        Plaintiffs-Relator,<br><br>v.<br><br>Walgreens Boots Alliance, Inc.,<br><br>        Defendant. | Case No. 18 C 5452<br><br>Judge Joan H. Lefkow |

**THE STATE OF GEORGIA'S OPPOSITION TO
<u>RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT</u>**

Relator seeks a declaration from this Court that the State of Georgia's alternate remedy statute, O.C.G.A § 49-4-168.2(h), entitles Relator to a share of the opioid abatement funds recovered by Georgia pursuant to the December 2022 Master Settlement Agreement between Walgreens and 46 states, which was executed to resolve the states' consumer protection and public nuisance claims against Walgreens for its role in the nationwide opioid crisis. Relator's motion should be denied without prejudice because (1) it is procedurally infirm; (2) it is barred by sovereign immunity; and (3) the Court is without both original jurisdiction and supplemental jurisdiction over it. Relator's motion should further be denied even if the Court were to reach the merits of the arguments raised therein (and it should not), because Georgia's opioid abatement recovery under the Master Settlement Agreement is plainly not an "alternate remedy" within the meaning of Georgia's alternate remedy statute.

## PROCEDURAL AND FACTUAL BACKGROUND

Relator seeks a share of a $5.52 billion, 46-state settlement of public nuisance and consumer protection claims (the "Master Settlement Agreement" or "MSA") that were litigated against and settled with Defendant Walgreens for its role in the nationwide opioid crisis. In particular, the Master Settlement Agreement resolved Walgreens' "Alleged Harms," including, as defined: "past, present, and future financial, societal, and public nuisance harms and related expenditures arising out of the alleged misuse and abuse of Products . . . that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, and death, and other related diseases and disorders, and that have been allegedly caused by [Walgreens]." MSA § I(D).[1] The MSA also included multiple provisions restricting the

---

[1] The Master Settlement Agreement is more than 800 pages long. It is available online here: https://nationalopioidsettlement.com/wp-content/uploads/2023/10/2023.10.13-Updated-Walgreens-Multistate-Settlement-Agreement.pdf.

vast majority of settlement funds to opioid remediation, MSA §§ V.B, V.D.1-2, V.E.2, which is defined in the MSA. Pursuant to its terms, the MSA was implemented as a Final Consent Judgment in Gwinnet County Superior Court, Civ. Act. No. 23-A-10485-10. Exh. 1, Consent Judgment (excerpt pp. 1-10)[2]. And as required by the MSA, Georgia entered into a Memorandum of Understanding ("MOU") that allocated its receipt of settlement funds to local governmental entities, set forth the requirement that the funds be primarily used for "future abatement purposes" and prohibiting use for past abatement expenses, including "reimburs[ing] past Medicaid expenses or any other expense that would be subject to a federal clawback, recoupment, or similar mechanism." Exh. 2, MOU, § III(b). In other words: none of the money that Georgia recovered from Walgreens pursuant to the Master Settlement Agreement has gone or can go to Georgia Medicaid. The sworn Declaration of Assistant Attorney General Melissa Devine, attached hereto as Exhibit 3, provides additional detail on the structure, implementation, and numerous restrictions on Georgia's opioid abatement recovery pursuant to the MSA. Exh. 3, Feb. 3, 2026 Decl. of M. Devine.

Although the MSA did not arise from Medicaid fraud claims, it did provide a broad release of all civil claims that the states could assert against Walgreens, including *qui tam* actions. As required by the MSA's release language, as well as O.C.G.A. § 10-13B-3(a)("No such claim barred by this Code section shall be brought, threatened, asserted or pursued in any way in any court, and any such claim shall be dismissed by the court in which the claim is brought."), Georgia filed in this above-captioned case a "Joint Notice of Intervention for the Purpose of Moving to Dismiss

---

[2] The complete Final Consent Judgment and Dismissal With Prejudice, to which both the MSA and MOU are Exhibits, is 851 pages long and is available online here: GEORGIA-Consent-Judgment-Walgreens.pdf.

2

the State Medicaid Portion of the State Causes of Action," asking that the Court dismiss Relator's state claims. The Court granted the motion on January 2, 2024, dismissing, *inter alia*, Relator's Georgia Medicaid claims. Jan. 2, 2024 Order. The Order also noted that "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant have been resolved." *Id*. ¶ 3. Thereafter, the Court entered orders upon joint motions dismissing the federal claims with prejudice. ECF 72, Order at 3-4 ¶¶2, 3 (Apr. 21, 2025); ECF 82, Agreed Order of Dismissal at 1 ¶¶1, 2 (Oct. 23, 2025). The States were not parties to the joint motions, as they already were dismissed from the case with prejudice, and were not advised before the motions or the proposed orders were filed. This motion followed.

## ARGUMENT

### I. RELATOR'S MOTION IS PROCEDURALLY IMPROPER.

#### A. Relator cannot seek declaratory relief via motion.

Relator has moved this Court for a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, which provides that in "a case of actual controversy within its jurisdiction . . . upon the filing of an *appropriate pleading*, [a court] may declare the rights and other legal relations of any interested party seeking such declaration." *Id.* (emphasis added). As this Court has previously explained, although "appropriate pleading is not defined, the Supreme Court has suggested that a party may not merely *move* for relief under the Declaratory Judgment Act; it must bring an *action* for a declaratory judgment." *Greenfield v. Monroe Clinic*, Case No. 18 CV 50331, 2019 U.S Dist. LEXIS 86850, *8, 2019 WL 2225982 (N.D. Ill. 2019) (emphasis in original). Although the Seventh Circuit has not addressed this issue, the Ninth Circuit has held that a "request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. [. . .] Requests for declaratory judgment are not properly

3

before the court if raised only in passing, or by motion." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) (citing *Kam-Ko Bio-Pharm trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009)); *see also* 10B Wright, Miller & Kane, Fed. Prac. And Proc. Civ. S 2768 (3d ed. 1998).

Numerous federal district courts have denied motions for declaratory judgment based on procedural impropriety. *See, e.g. OneBeacon Am. Ins Co. v. Fulton Boiler Works, Inc.*, 5:13-cv-01525, 2016 U.S. Dist. LEXIS 39834, *18 (N.D.N.Y. March 28, 2016) (holding that "[w]here the parties are seeking declaratory relief but have not commenced an action for declaratory judgment, the Court is without jurisdiction to act under 28 U.S.C. § 2201."); *Ragnar Dev. LLC v. Deutsche Bank Nat'l Trust Co.*, Civ. No. 4:23-cv-02191, 2023 U.S. Dist. LEXIS 218296, *3, 2023 WL 8480061 (S.D. Tex. Dec. 7, 2023). Because Relator requests declaratory relief via motion and not complaint, the motion should be denied.

### B. There is not – nor can there be – a "case of actual controversy" between Relator and the State of Georgia in this Court.

A court can grant a declaratory judgment pursuant to section 2201 only where there is a "case of actual controversy." 28 U.S.C. § 2201(a). In other words, there must be a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Boler Co. v. Raydan Mfg.* 415 F. Supp. 2d 896, 901 (N.D. Ill. 2006) (quoting *Maryland Casualty Co. v. Pac. Coal & Oil, Co.*, 312 U.S. 270, 273 (1941)). *See also Sarkis' Café, Inc v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1038 (N.D Ill. 2014). If no actual controversy exists, then "the court has no authority to decide the case." *Boler Co.*, 415 F. Supp. at 901.

Putting aside that Relator's motion is procedurally improper for the reasons discussed in Section I.A *supra*, Relator cannot seek declaratory relief against Georgia because no "actual

4

controversy" exists between the parties in this case. In the underlying complaint, Relator alleged that Walgreens – the only named defendant in this *qui tam* – violated the federal False Claims Act as well as the false claims act of numerous states, including Georgia. Therefore, Relator *cannot* be adverse to Georgia in this matter because Relator's primary function is to act "on behalf of the government." *Crews & Ill. V. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 855 (7th Cir. 2006). Relator has not amended his complaint to include claims or cross-claims against Georgia, nor could he have because such claims are barred by the Eleventh Amendment. *See infra* Section II.A. There simply is no existing "actual controversy" between Relator and the State of Georgia, and thus the Court is without jurisdiction to grant declaratory relief.

### C. Relator's motion is improper because it seeks a declaration of liability for a past act.

Relator's motion is additionally improper because it "seeks to proclaim liability for a past act," rather than a declaration of "the legal rights and obligations of the parties in anticipation of some future conduct." *Justice Network Inc. v. Craighead Cty.,* 931 F.3d 753, 764 (8th Cir. 2019). *See also In re Iko Roofing Shingles Prod. Liab. Litig.*, 09-MD-2104, 2013 U.S. Dist. LEXIS 193722, *24 (C.D. Ill. 2013) ("[D]eclaratory relief is inappropriate to adjudicate past conduct[.]"). Indeed, "declaratory relief is limited to *prospective* declaratory relief." *Justice Network Inc.*, 931 F. 3d at 764. *See also Johnson v. McCuskey*, 72 Fed. Appx 475, 478 (7th Cir. 2003).

Relator seeks a declaration from this court that he "is entitled to a share of the multi-state settlement with Walgreens." ECF No. 84 at 1. In similar contexts, however, courts have held that where a plaintiff seeks a court order "requiring the States to hand over money[,] [t]his does not make the relief sought nonmonetary or prospective." *Barton v. Sumers*, 293 F.3d 944, 949 (6th Cir. 2002) (citing *Papasan v. Allain*, 478 U.S. 265, 281 (1986)). Because Relator seeks to adjudicate past conduct – i.e., a court determination that the State of Georgia violated its alternate

5

remedy statute when it entered into the MSA without carving out a Relator share – not obtain a declaration of his rights in anticipation of future conduct, declaratory relief is inappropriate.

## II. CONSTITUTIONAL AND JURISDICTIONAL LIMITATIONS PREVENT THIS COURT FROM ENTERING DECLARATORY JUDGMENT.

### A. The Eleventh Amendment bars Relator from bringing a declaratory action against the State of Georgia in federal court.

Relator's Motion is effectively an action for declaratory judgment *against* the State of Georgia[3] – which has heretofore not been a defendant in this lawsuit – and as such is plainly barred by the Eleventh Amendment. *See Pennhurst State and Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). "[D]eclaratory relief should not be awarded where the [E]leventh [A]mendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993). A state defendant that invokes sovereign immunity "deprives a federal court of jurisdiction over the claims against that defendant." *McHugh v. Ill.* DOT, 55 F.4th 529, 531 (7th Cir. 2022).[4]

Relator's action against Georgia is analogous to the early-2000s class action litigation brought by Medicaid recipients against state Medicaid programs, seeking to intercept tobacco settlement money due to the states under a master settlement agreement with tobacco manufacturers. In those lawsuits, the plaintiffs argued that federal law entitled them to a portion

---

[3] In his motion, Relator alleges that the "States' violations of state FCA laws are clear." ECF No. 84 at ¶11.

[4] A state may waive sovereign immunity but must do so explicitly. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Moreover, a state's "consent to be sued in its own state courts, without more, does not constitute an intention to submit itself to suit in federal court." *Thompson v. Del. Dep't of Servs. for Child., Youth & their Fams.*, 44 F.4th 188, (3d Cir. 2022) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89,99 n.9 (1984)). Therefore, for a state statute to constitute "consent to submit itself to federal jurisdiction, the statute" must specify the State's intention to subject itself to suit in *federal court*."" *Id*. (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990)(emphasis in original)). There can be no plausible argument here that Georgia's alternate remedy statute constitutes the State of Georgia's consent to suit in federal court.

of the settlement proceeds. Federal district courts across the country dismissed such lawsuits, concluding, *inter alia*, that such claims were barred by sovereign immunity. *See, e.g., Floyd v. Thompson*, 111 F. Supp. 2d 1097, 1101 (W.D. Wis. 1999) ("Allowing plaintiffs to recover a portion of settlement funds would be the functional equivalent of retrospective monetary damages paid from the state treasury because the amount, obligation and ownership of the funds was fixed when the Master Settlement Agreement was signed, rather than upon receipt of funds."); *Tyler v. Douglas*, Civ. No. 1:00CV39, 2000 U.S. Dist. LEXIS 20444, *6-7 (D. Vt. 2000) (same); *Barton v. Summers*, 111 F. Supp. 2d 989, 992 (M.D. Tenn. 2000) (same).

In affirming the Middle District of Tennessee's opinion in *Barton*, the Sixth Circuit rejected *Ex Parte Young* arguments that the suit should be allowed because it sought to "seize upon a state's continuing income" via settlement payments, concluding instead that the "attempt to seize on the settlement monies awarded to the States is an attempt to recover money damages and is barred by the Eleventh Amendment." *Barton v Summers*, 293 F.3d 944, 950 (6th Cir. 2002). As the Sixth Circuit admonished in *Barton*, "the interest of a sovereign in allocating state funds is a very serious one." *Id.* at 950 (internal quotes omitted). Sovereign immunity similarly demands denial of Relator's Motion.

### B. The Court has neither federal question jurisdiction nor supplemental jurisdiction over a declaratory judgment action that arises under state law.

Relator's Motion for judgment against the State of Georgia is unaccompanied by any federal question over which the Court might have original jurisdiction, and for that reason also must be denied.[5] The Declaratory Judgment Act itself "does not confer jurisdiction but rather,

---

[5] Georgia acknowledges that, as stated in the States' December 21, 2023 intervention and dismissal motion, the States "agreed to postpone resolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement," Dec. 21, 2023 Mot. at 3. The motion was

7

provides an additional remedy where jurisdiction already exists." *Goudy v. Ace SEC Corp.*, No. 19CV2491, 2019 U.S. Dist. LEXIS 247517, *7, 2019 WL 13247505 (N.D. Ill. Nov 18, 2019) (quoting *Balanyi v. Local 1031, Int'l Bhd. Of Elec. Workers AFL-CIO*, 374 F.2d 723, 726 (7th Cir. 1967)). In any civil action in which a court has original federal jurisdiction, the court has supplemental jurisdiction over state law claims that "are so related to the claims supported by original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Batistatos v. City of Hammond*, 2:25cv71, 2025 U.S. Dist. LEXIS 147107, *3 (N.D. Ind. July 31, 2025). The plain language of 28 U.S.C. section 1367 "makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 617 (7th Cir. 2018).

Had Relator sought his relief through the "appropriate pleading," it would have been immediately clear that the relief sought lacks a "hook of original jurisdiction." Relator does not bring a similar alternate remedy claim under federal law against the United States, nor could he, because his share of the federal recovery has already been resolved. Because Relator's declaratory judgment action in no way involves federal law but, rather, involves *only* interpretation of the laws of twenty-eight sovereign states[6] this Court lacks jurisdiction over it. *See Murphy v. Collins*, Case

---

silent as to the appropriate forum for this resolution, however, and this agreed-upon postponement cannot be read as a waiver of any jurisdictional arguments. To the contrary, "[i]t is well settled that subject matter jurisdiction cannot be conferred by agreement of the parties." *Scaccianoce v. Hixon Mfg. & Supply Co.*, 57 F.3d 582, 585 (7th Cir. 1995). Indeed, counsel always "has a professional obligation to analyze subject-matter jurisdiction[,] and a federal court always has a responsibility to ensure that it has jurisdiction." *Middlemen Serv. Pros., LLC v. Aion Mgmt.,* 1:23-cv-01336, 2023 U.S. Dist. LEXIS 193087, *2 (S.D. Ind. Oct. 27, 2023) (citing *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) and *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 427 (7th Cir. 2009)).

[6] Neither does diversity jurisdiction exist, as a "State is not a 'citizen' for purposes of diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

8

No. 1:25-cv-611, 2025 U.S. Dist. LEXIS 251372, *6 (N.D. Ind. Dec. 4, 2025)("[W]ithout a claim that the Court can appropriately hear based on federal law, the Court has no supplemental jurisdiction over potential state-law claims."). *See also Goudy v. Ace SEC Corp.*, No. 19CV2491, 2019 U.S. Dist. LEXIS 247517, *6, 2019 WL 13247505, (N.D. Ill. Nov 18, 2019) ("As a result of the dismissal of all three of [plaintiff's] federal claims, no federal question remains.").

### C. The Court should decline to exercise supplemental jurisdiction.

Relator argues that because his "right to a share of the States' Settlement derives directly from his state FCA claims filed in *this Court*," ECF 84, Rel. Mot. at ¶ 18, this Court has supplemental jurisdiction. For the reasons discussed in Sections II.A & II.B *supra*, not only does this Court lack jurisdiction, but declaratory relief against the State of Georgia is barred by Eleventh Amendment immunity. However, even if the Court *could* exercise supplemental jurisdiction (it cannot), it should decline to exercise it pursuant to 28 U.S.C. § 1367(c). Section 1367(c) authorizes a court to decline to exercise supplemental jurisdiction over a state-law claim if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over any federal claims; (3) the district court has already dismissed all federal claims; or (4) there are exceptional circumstances or other compelling reasons to decline jurisdiction. 28 U.S.C. § 1367(c). In this case, all four factors weigh in favor of declining supplemental jurisdiction.

#### i. The Court has dismissed all federal claims.

Under 28 U.S.C. § 1367(c)(3), a district court may decline supplemental jurisdiction when all claims giving rise to original jurisdiction have been dismissed. Although the decision is discretionary, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). *See also*,

9

*Williams v. Rodriquez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims."). This Court dismissed with prejudice all federal claims in this case after the U.S and Walgreens settled them. ECF No. 82.[7] The Court should follow Seventh Circuit precedent and decline supplemental jurisdiction.

> ii. **Relator's claim against the State of Georgia raises complex and novel issues of state law not yet decided by a Georgia state court.**

Under 28 U.S.C. § 1367(c)(1), a district court may decline supplemental jurisdiction over a claim that raises a novel issue of state law. The Seventh Circuit has previously explained that "it is especially inappropriate for a federal court to make "needless decisions of state law" when the court would not be interpreting or following established principles of state law, but rather would be required to decide difficult questions which the state courts have never addressed."" *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1241 (7th Cir. 1984). *See also Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

Determining whether Relator is entitled to a share of Georgia's opioid abatement recovery requires application of O.C.G.A § 49-4-168.2(h) – which has yet to be interpreted by a Georgia state court – to the relevant facts relating to Georgia's investigation of Walgreens and its participation in the MSA. Relator's Motion references the *federal* alternate remedy statute, *see* ECF 84, Rel. Mot. at ¶¶ 8-9), the cited law is, at most, optional persuasive authority. While a Georgia state court may opt to consider federal case law interpreting the federal alternate remedy

---

[7] Although this Court Order was titled "*Agreed* Order of Dismissal" (emphasis added) and asserted that the "Court shall retain jurisdiction only . . . over any claims Relator may have for a share of the State Settlement Funds," the State of Georgia did not agree this order of dismissal and, as this brief makes clear, vigorously disputes this Court's jurisdiction over the question of whether Relator is entitled to share of Georgia's opioid abatement recovery under the MSA.

10

statute, interpretation of Georgia law – especially as a matter of first impression – is best left to a Georgia state court. It would constitute an abuse of this Court's discretion to retain subject matter jurisdiction despite the dismissal of all federal claims, and where only this single, novel question of state law remains. *See Ameritox. Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 520 (11th Cir. 2015)("We hold that the District Court's decision to retain jurisdiction over novel and complex state-law claims hailing from nine different states . . . constituted an abuse of discretion.").

### iii. Relator's claim for a share of Georgia's opioid abatement recovery pursuant to Georgia state law predominates.

"If it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Mata v. Deslauriers, Inc.*, No. 21CV3976, 2023 U.S. Dist. LEXIS 165203, *6, 2023 WL 6065478 (N.D. Ill. 2023) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, state law clearly predominates, because Relator seeks relief against each of the States *solely* on the basis of their respective state alternate remedy statutes.

### iv. Exceptional circumstances and compelling reasons warrant declining supplemental jurisdiction.

Court must give full faith and credit to the relevant state court judgments resolving the multistate opioid settlement. Federal courts are required to treat state court judgments as valid and enforceable. 28 U.S.C. § 1738. In the Seventh Circuit, a state court settlement is treated the same way in federal court as it would be in state court. *See 4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000) (upholding state settlement and requiring lower court to apply the same preclusion principles as a state court would). This Court is similarly required to give full faith and credit to the consent judgment entered by Gwinnet County Superior Court. *See* Exh. 1, Consent Judgment excerpt. And in this case, full faith and credit effectively prohibits this Court from

11

diverting any portion of Georgia's opioid abatement recovery to pay a Relator, as compliance with such an order from this Court would put the State of Georgia in direct violation of the Gwinnett County consent judgment and the terms of the MSA itself. *See, e.g.,* Exh. 3, Devine Decl.

As the Declaration of AAG Devine makes clear, the state court judgement requires the State of Georgia to follow a strictly defined, exceptionally complex protocol in utilizing any funds received under the MSA. Under the terms of the settlement, Georgia is legally obligated to utilize the settlement proceeds it expects to receive for defined, specific purposes relating to Opioid Use Disorder treatment, providing wrap-around services for individuals with Opioid Use Disorder, and funding opioid abuse prevention efforts. *Id.* at ¶ 18. Use of those proceeds to fund or reimburse the Georgia Medicaid Program for past expenses is not only outside of the enumerated allowable uses, it is specifically forbidden by the terms of the settlement. *Id.* at ¶¶ 32, 34-35, 38. Going outside of the settlement's parameters to allocate money for paying a relator in this unrelated GFMCA lawsuit would require either modification, or violation, of both the state court judgment and the underlying settlement. *Id.* at ¶ 38. Considering this complex framework and the existing state court judgement implementing it, this Court should decline to retain supplemental jurisdiction over Relator's claims. Instead, this Court should allow a Georgia state court to assess its own judgment and the underlying settlement documents to determine what, if anything, Relator is entitled to.

### III. EVEN IF RELATOR'S DECLARATORY JUDGMENT MOTION WERE NOT PROCEDURALLY, JURISDICTIONALLY, AND CONSTITUTIONALLY BARRED, IT SHOULD STILL BE DENIED.

The substantive question of whether O.C.G.A. § 49-4-168.2(h) entitles Relator to a portion of Georgia's opioid abatement recovery is not properly before this Court, because Relator's Motion is both procedurally infirm and jurisdictionally and constitutionally barred. *See* Sections I

& II, *supra*. However, out of an abundance of caution and so as not to waive any substantive arguments, Georgia argues as follows:

### A. Relator has no right to a share of Georgia's opioid abatement recovery because the MSA resolved claims that Relator could not assert in his *qui tam* suit.

As is argued, supra, no Georgia state court has yet interpreted the scope of Georgia's alternate remedy statute, a task that is best left to a Georgia court. Should this Court proceed to address the merits of Relator's motion, however, available federal case law interpreting the federal alternate remedy statute makes clear that there is no available alternate remedy. In *U.S. ex rel. Kennedy v. Novo A/S*, 5 F.4th 47 (D.C. Cir. 2021), the D.C. Circuit held that alternate remedy proceedings allow a relator to recover a share "only when the claim pursued in the alternate remedy is of the type that could have been pressed under the False Claims Act." *Id*. at 54. The court explained that the statute does not allow the relator to recover "if the government pursues any alternate cause of action." *Id*. at 55. More specifically, the court held, the "proceedings from which a relator can recover a share must redress the *same type of falsity and fraud claims* that otherwise could be pursued by a private relator's *qui tam* lawsuit under the False Claims Act." *Id*. at 56 (emphasis added). The court concluded that the government's claim under the FDCA was not the type of claim it could have brought under the FCA, because "[m]ost critically," the "claim seeks to protect the *public* from being misled by the drug company's marketing tactics," *id*. at 56, rather than recover money paid out by the government. *See also U.S. ex rel. Newell v. City of St. Paul*, 728 F.3d 791, 799 (8th Cir. 2013) ("the term 'alternate remedy' does not include the government's settlement of unrelated claims against unrelated parties in unrelated lawsuits.").

The same conclusion applies here. The MSA was executed to resolve consumer protection and public nuisance claims – claims which the Relator did not and could not have brought as part of his *qui tam* suit. To the extent the settlement resolved harm to the public fisc, that harm included

13

expenditures "arising out of the alleged misuse and abuse of [opioid products] . . . that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, death, and other related diseases and disorders." MSA ¶ D. The "Alleged Harm" defined in the settlement agreement did not include any harm to Georgia Medicaid. And per the terms of the MOU, no amount of the opioid abatement funds that Georgia has or will received can be used to reimburse Georgia's Medicaid program. Exh. 2, MOU at III(b).

### B. Relator has no right to a share of Georgia's opioid abatement recovery because Relator's *qui tam* Complaint is invalid.

Relator is not entitled to a portion of Georgia's opioid abatement recovery because Relator's Complaint is invalid. *See, e.g. Bledsoe*, 501 F.3d 493, 521-23 (6th Cir. 2007)(a "valid *qui tam* action must exist with respect to the FCA violations covered by the Settlement agreement" for entitlement to alternate-source relief). Relator's *qui tam* Complaint is invalid under Georgia's public disclosure bar, O.C.G.A. § 49-4-168.2(l). In addition to the extensive litigation and investigations already under way when Relator filed his complaint, described *supra*, there were multiple news media reports[8] of harms caused by Walgreens due to the opioid epidemic prior to Relator filing. Relator's Complaint is devoid of knowledge that was independent of and materially added to the publicly disclosed allegations. *See, e.g. Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712 (7th Cir. 2017).

Further, it is unclear whether Relator's complaint could have survived a Rule 9(b) challenge had it not been voluntarily dismissed. *See, e.g., United States v. Lab'y Corp. of Am.*

---

[8] *See, e.g.*, https://www.axios.com/2017/12/15/west-virginia-county-sues-drug-distributors-over-opioid-crisis-1513300858; https://www.cbsnews.com/news/cherokee-nation-opioid-lawsuit-cvs-walgreens-wal-mart-drug-stores/; https://www.cbsnews.com/news/kentucky-sues-walgreens-over-opioid-epidemic/. The Court may take judicial notice of matters of public record for purposes of the public disclosure bar. *Cause of Action v. Chi. Transit Auth.*, 815, F.3d 267, 277, n13 (7th Cir. 2016).

*Holdings,* 2015 WL 7292774, at *6 (S.D.N.Y. Nov. 17, 2015) (Rule 9(b) pleading standard applies with equal force to a relator's state law claims); *U.S. ex rel. Kolchinsky v. Moody's Corp.*, 238 F. Supp. 3d 550, 561 (S.D.N.Y 2017) ("No alternate remedy is available here, however, because the Second Amended Complaint fails to state a valid FCA claim as a matter of law."). Nowhere in the Complaint does Relator allege any activity by Walgreens that occurred in the State of Georgia or that in any way implicates Georgia's Medicaid program. Indeed, the only place in the Complaint where Georgia is mentioned at all is in the opening paragraph, where Relator lists all states with a false claim statute, and then again in the recitations of Georgia-relevant Counts (Counts 7 & 37). Relator's claims on behalf of Georgia were not valid to begin with, and for this reason also, Relator cannot claim any alternate remedy share.

## CONCLUSION

For all the above reasons, the State of Georgia respectfully asks that this Court deny Relator's Motion without prejudice for lack of jurisdiction or, in the alternative, deny the motion with prejudice on its merits.

Dated: February 3, 2026

Respectfully submitted,

STATE OF GEORGIA
ATTORNEY GENERAL CHRIS CARR

By: /s/ Hannah L. Perng
Hannah L. Perng
Assistant Attorney General
Medicaid Fraud & Patient Protection Division
Georgia Department of Law
*Counsel for the State of Georgia*

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 3, 2026, she caused a true and correct copy of **THE STATE OF GEORGIA'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT** and all accompanying Exhibits to be served via the Court's ECF/electronic mailing system upon all counsel of record.

/s/ Hannah L. Perng