UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, STATE OF ILLINOIS, et al. *ex rel.* T.J. NOVAK, | ) ) ) ) | |
| Plaintiffs-Relator, | ) ) | Case No. 18 C 5452 |
| v. | ) ) | Judge Joan H. Lefkow |
| WALGREENS BOOTS ALLIANCE, INC., | ) ) ) | |
| Defendant. | ) ) | |

**STATE OF ILLINOIS'S OPPOSITION TO PLAINTIFF-RELATOR'S
MOTION FOR A DECLARATORY JUDGMENT THAT
RELATOR IS ENTITLED TO A SHARE OF
<u>ILLINOIS'S SETTLEMENT WITH WALGREENS</u>**

Dated: February 3, 2026

STATE OF ILLINOIS

KWAME RAOUL,
Attorney General
State of Illinois
MELISSA GUSKE
Deputy Chief
ANDREA LAW
Deputy Bureau Chief
DAVID KIM
Assistant Attorney General

Office of the Illinois Attorney General
115 S. LaSalle Street
Chicago, Illinois 60603

## INTRODUCTION

The State of Illinois opposes Relator T.J. Novak's ("Relator") motion for a declaratory judgment that Relator is entitled to a share of the settlement recovery obtained in the Illinois state-court-effectuated stipulated judgment entered on December 7, 2023, ("Illinois Walgreens Settlement" or "Agreement"[1]) that released, in part, claims Relator brought in this Court pursuant to the *qui tam* provisions in the Illinois False Claims Act ("IFCA"), 740 ILCS 175/, et seq. ("*Qui Tam* Action"). On April 21, 2025, the federal claims were dismissed and all that remains are complicated questions of state law. [Dkt. No. 71].

The Illinois Walgreens Settlement is one of a series of national multistate opioid-related settlements that have been the result of longstanding work by state attorneys general across the country to address the opioid crisis. It resolved consumer protection and public nuisance claims brought by Illinois against Walgreens, not Medicaid fraud claims, and no portion of the Agreement called for payment to state Medicaid programs. To avoid unnecessary duplication, Illinois incorporates by reference the Factual and Legal Background section from the Joint Opposition filed by the states of North Carolina and Tennessee that provides further context for Illinois' arguments below.

## ARGUMENT

**I. DECLARATORY JUDGMENT IS INAPPROPRIATE HERE.**

    **A. Relator Cannot Seek Declaratory Relief Via Motion.**

Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights … of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal courts have

---

[1] For further details related to the Illinois Walgreens Settlement, in support of the State of Illinois's Opposition, see Exhibit 1, Declaration of Andrea Law.

typically held that declaratory relief is discretionary; federal courts have broad authority to stay or dismiss an action seeking a declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (district court dismissed insurer's action seeking declaratory relief in federal court of nonliability on an insurance policy).

A request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment, rather than by motion. *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) ("such a motion is inconsistent with the Federal Rules"); *see also Greenfield v. Monroe Clinic, Inc.*, No. 18 CV 50331, 2019 U.S. Dist. LEXIS 86850, at *8 (N.D. Ill. May 23, 2019) (denying defendant's motion for declaratory judgment and holding, "a party may not merely *move* for relief under the Declaratory Judgment Act; it must bring an *action* for a declaratory judgment").

Under this authority, Relator's motion for a declaratory judgment is procedurally improper and must therefore be denied.

**B. There is No Case or Controversy For Which Relator Can Seek Relief in This Court.**

Federal courts can issue declaratory judgments only in cases of "actual controversy," meaning the dispute must be real and substantial. *See, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) and *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937). Here, Illinois and its Medicaid claims pursuant to the IFCA were dismissed with prejudice on January 2, 2024. Dismissal Order [Dkt. No. 33]. As a result, there is no case or controversy against Illinois for which Relator can seek declaratory relief. "[W]hen a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007). Further, parties cannot agree to confer federal subject matter jurisdiction where it

2

does not already exist by law. *Pittsburgh, C. & St. L.R. Co. v. Ramsey*, 89 U.S. 322 (1874).

The court with jurisdiction over the Illinois Walgreens Settlement and the distribution of settlement proceeds is the Circuit Court of Cook County, Illinois, not this court. Thus, declaratory judgment is inappropriate here.

## II. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION.

Section 1367(c) authorizes a district court to decline to exercise supplemental jurisdiction over a state-law claim if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over any federal claims; (3) the district court has already dismissed all federal claims; or (4) there are exceptional circumstances or other compelling reasons to decline jurisdiction. 28 U.S.C. § 1367; *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 44 (2025) (plaintiff amending her complaint to remove federal claims, "deprived the District Court of federal-question jurisdiction" and "supplemental jurisdiction over state claims") and *Watkins v. City of Chicago*, No. 24-cv-04467, 2025 LX 443305, at *7 (N.D. Ill. Sep. 30, 2025) (district court declined to exercise supplemental jurisdiction after dismissal of plaintiff's federal claims). This Court should decline to exercise supplemental jurisdiction over Relator's state law claim for the following reasons.

### A. All Federal Claims Over Which This Court Had Original Jurisdiction Have Been Dismissed.

First, a district court may decline supplemental jurisdiction when all claims giving rise to original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). Although the decision is discretionary, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); *see also*

3

*Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36–37 (1st Cir. 2020) and *Thurmon v. Mount Carmel High Sch.*, 191 F. Supp. 3d 894, 900 (N.D. Ill. 2016) (the court, having dismissed federal law claims, dismissed the remaining state law claims without prejudice).

The Seventh Circuit has consistently emphasized that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). Generally, "when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007).

In *Patla*, plaintiff pharmacies sued the Illinois Department of Public Aid for violations of specific state law provisions in the Illinois Administrative Procedure Act ("IAPA"). *American Soc'y of Consultant Pharmacists v. Patla*, 138 F. Supp. 2d 1062, 1065 (N.D. Ill. 2001). The court opined that "adjudicating the IAPA claim would constitute an intrusion on the State's role of interpreting its own laws without any counterbalancing benefit of economy of scale, convenience, fairness and comity that typically would weigh in favor of exercising supplemental jurisdiction." *Id.* at 1076.

In *RWJ Mgmt. Co.*, when all the federal claims were withdrawn, leaving only claims under Illinois law, the district court relinquished supplemental jurisdiction and remanded the case to Illinois state court. *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 478 (7th Cir. 2012). The court opined that "concerns about judicial economy have their greatest force when … there is no doubt about how those claims should be decided." *Id.* at 481.

Similarly, "now that the federal claims are gone," the issue of whether Relator is entitled

4

to a share of Illinois's recovery is "ideally decided by an Illinois judge applying Illinois law." *Id*. Promotion of judicial economy, fairness, and federal-state comity at this juncture requires declination of supplemental jurisdiction. *See Ameritox, Ltd. V. Millennium Laboratories, Inc.*, 803 F.3d 518, 534-36 (11th Cir. 2015) (holding it was an abuse of discretion to retain supplemental jurisdiction over novel and complex state law claims, when considering judicial economy, convenience, fairness, and comity) and *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 191 (D.D.C. 2018) (the court concluded that the factors weigh against retaining plaintiff's [unfamiliar] state law claims and plaintiff would not be prejudiced in any way by dismissal).

### B. Relator's Claim Raises Complex or Novel Issues of State Law.

Historically, the Seventh Circuit has emphasized that it is imprudent to exercise supplemental jurisdiction over state claims raising complex or novel questions involving state law. *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1242 (7th Cir. 1984). Likewise, federal district courts are discouraged from retaining jurisdiction over claims that raise issues of first impression for the state court. *Id*. at 1240. "[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989).

"Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Where "[t]he judge identified several issues of unsettled state law that may decide the outcome of [plaintiff's] state-law claim, [this was] an independent ground for relinquishing supplemental jurisdiction." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *see also Western World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014) ("district court would be wise to decline jurisdiction if a declaratory action involved

5

novel, unsettled, or complex issues of state law").

Here, Relator is requesting that the Court maintain supplemental jurisdiction over two Illinois state law issues: (1) application of the IFCA alternate remedy provision; and (2) how such application would intersect with the Illinois state court judgment and state-specific infrastructure governing distribution of monies under the Illinois Walgreens Settlement. Since federal question jurisdiction no longer exists in this matter, the Court should relinquish jurisdiction over these complex state law issues.

A ruling on whether Relator is entitled to a share of the Illinois Walgreens Settlement not only involves the IFCA, but also implicates an Illinois State Court Consent Judgment, Illinois state law, and a Governor-issued Executive Order that governs the implementation and distribution of funds from the Illinois Walgreens Settlement. Ex. 1, Law Decl. ¶¶ 15-16. While there is Illinois state case law on the IFCA alternate remedy provision, the interplay of the IFCA and the state law issues involved with implementing the Illinois Walgreens Settlement presents a complex and novel question that would better be resolved by an Illinois state court. This Court should avoid "unnecessarily decid[ing] questions of state law," as this would put the court in a position of having to abuse its discretion, using "whatever tools it had available to correctly divine and apply state law." *Ameritox*, 803 F.3d at 520.

### C. Relator's Claim for a Share of Illinois's Consumer Recovery Under Illinois State Law Predominates Over the Dismissed Federal Claims.

Generally, "state courts are better suited" to decide legal questions of state law. *Clemons v. Springfield*, 735 F. Supp. 309, 313 (C.D. Ill. 1990) (the district court determined that "the only significant legal questions concerning … Defendants are of state law, and the state courts are better suited than this Court to decide those questions"; the district court lacks "the statutory power to hear these pendent claims").

Under 28 U.S.C. § 1367(c)(2), a district court "may decline to exercise supplemental jurisdiction" if "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." This standard comes directly from the Supreme Court's opinion in *Gibbs* and should be understood in that context. *Gibbs* established that the exercise of pendent jurisdiction is a matter of judicial discretion, justified by "considerations of judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726.

As determined by *Gibbs*, Relator's claim for a share of Illinois's recovery under Illinois state law "substantially predominates" over the dismissed federal claims and is not suited for resolution in this Court.

**D. Exceptional Circumstances and Compelling Reasons Further Justify the District Court Declining to Exercise Supplemental Jurisdiction.**

The determination of whether Relator is entitled to any recovery here necessarily involves complicated questions regarding the interpretation and enforcement of the Illinois State Court Consent Judgment by which the Illinois Walgreens Settlement was effectuated. The Consent Judgment, among other things, dictates the complex structure for how settlement monies received by Illinois are to be allocated and used within the State. Specifically, the Consent Judgment dictates that the Illinois Opioid Allocation Agreement ("Allocation Agreement"), incorporated into the Judgment, is the means by which funds paid to Illinois, pursuant to the National Walgreens Settlement Agreement, will be divided within the State. Ex. 1, Law Decl. ¶¶ 8,11. The Allocation Agreement is an intrastate allocation agreement that was negotiated between the Illinois Attorney General and the seven largest Illinois counties, effectuated in December 2021. *Id.* ¶ 8. The Allocation Agreement dictates how monies from all national multistate opioid settlements, including the Walgreens Settlement, are to be distributed in Illinois and has been joined by more than 180 Illinois subdivisions. *Id.*

7

1. **The Vast Majority of Settlement Funds in Illinois Do Not Flow to the State.**

Pursuant to the Allocation Agreement, the majority of Walgreens' Annual Remediation Payments received by Illinois, 55%, go to the Illinois Remediation Fund. *Id.* ¶ 14. An Advisory Board, consisting of both state and local representatives, is appointed to make recommendations on the use of the monies in the Illinois Remediation Fund. *Id.* Pursuant to the Allocation Agreement, as well as an additional agreement between the State and the City of Chicago, the next largest bucket, 33%, of the Annual Remediation Payments are distributed directly to local governments. *Id.* ¶ 19. Accordingly, only 12% of all of Walgreens' Annual Remediation Payments actually flow directly to the State. *Id.* ¶ 20. Monies from this 12% State Share have gone and continue to go to cover costs associated with the administration of the Illinois Remediation Fund, as well as to fund opioid remediation programs throughout Illinois. *Id.* ¶¶ 21-23.

2. **None of the Settlement's Funds Have Gone to Medicaid Coffers, and Pursuant to State Law and the State Court Judgment, the Vast Majority of the Settlement Funds Must be Used to Abate the Opioid Crisis.**

Under the national settlement agreement, not less than 95% of Walgreens' Annual Remediation Payments must be used for opioid remediation purposes, as defined in that agreement, with not less than 70% required to be used for future opioid remediation. *Id.* ¶ 12. Consistent with this, the Allocation Agreement largely requires that monies allocated throughout the State of Illinois be used for Approved Abatement Programs. The list of Approved Abatement Programs is attached to the Allocation Agreement and coincides with the approved uses under the national settlement. Indeed, state law and directives that establish the Illinois Remediation Fund and the infrastructure to support it, likewise dictate that the funds must be used for approved abatement programs. *Id.* ¶¶ 15-16; 30 ILCS 105/6z-133; Gov. JB Pritzker, Exec. Order No. 2022-19 (August 30, 2022). To date, monies from the Illinois Remediation Fund have been used for a variety of opioid abatement purposes. Decl. ¶ 18. In tandem with this, the State's 12% Share has been and

8

continues to be used to support the administration of the Illinois Remediation Fund, the subsequent expenditure of the monies approved from the Remediation Fund, and to directly fund programs to abate the opioid crisis in Illinois. None of the Illinois Walgreens Settlement monies have gone to the state Medicaid program.

The complex and state-specific issues at play here constitute exceptional circumstances and compelling reasons which, among other factors, warrant this Court to decline to exercise supplemental jurisdiction.

### III. THE COURT SHOULD NOT AWARD RELATOR A SHARE OF THE ILLINOIS WALGREENS SETTLEMENT AS AN ALTERNATE REMEDY.

#### A. The Illinois Walgreens Settlement is Not the Type of Recovery That Would Amount to an Alternate Remedy to Relator's *Qui Tam* Action.

Federal courts have held that the federal False Claims Act ("FCA") "does not reward relators any time the government pursued any 'alternate claim or cause of action' arising from the same set of facts and circumstances." *U.S. ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 57 (D.C. Cir. 2021). Rather, alternate remedy provisions are intended to apply to the *same kinds of fraud* that a relator could have brought in a *qui tam* action.

In *Novo A/S*, a relator alleged that a pharmaceutical company violated the FCA when it marketed off-label uses for a drug and failed to inform doctors of "unknown risk[s]." *Id.* at 51. The relator alleged that because of the pharmaceutical company's false claims, government health care programs spent millions of dollars on the drug. *Id*. The government intervened and then settled the FCA claim. *Id.* at 52. Later, the government filed a complaint under the Food, Drug, and Cosmetic Act ("FDCA") against the same pharmaceutical company, alleging it introduced a drug "into interstate commerce as an unlawfully 'misbranded' drug" and the defendant provided "its sales force with 'certain messages and tactics' that created 'false or misleading impression'" about the

9

drug's risks. *Id*. The government sought equitable disgorgement and then notified the court that it had settled its FDCA complaint. Moving for a share of the FDCA settlement, the relator argued that it was entitled to an alternate remedy under the FCA. *Id*. at 53. The district court denied the relator's motion. *Id*.

Affirming the district court, the appellate court noted that the FCA "allows a relator to recover a share only when the claim pursued in the alternate remedy is of the type that could have been pressed under the [FCA]." *Id*. at 54. The FCA alternative remedy "must be the same type of claim that a relator could have initiated and 'continued' through a *qui tam* [FCA] suit." *Id*. at 55. While the FDCA "seeks to protect the *public* from being misled by the drug company's marketing tactics," the FCA seeks to "recover damages for any use of falsity or fraud to deprive the *government* of its money or property …" *Id*. at 56. Accordingly, the relator could share in a recovery "if and only when the government pursues an 'alternate remedy' specifically for a false or fraudulent taking of government money or property." *Id*. at 57.

In *Kuriyan*, the district court, relying on *Novo A/S,* held that for a relator to be entitled to a share of an alternate remedy, the relator needs to show that the alternate remedy "was for, or was to prevent, the same type of fraud or falsity that the FCA […] recognized" and that the government used the information in the alternate remedy. *U.S. ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, No. CIV 16-1148 JB/KK, 2022 U.S. Dist. LEXIS 41502, at *5 (D.N.M. Mar. 9, 2022).

Here, as in *Novo A/S*, the Illinois Walgreens Settlement is not the "same type of claim that a relator could have initiated and 'continued' through a" *qui tam* suit. *Novo A/S,* 5 F.4th at 55. The Illinois Walgreens Settlement seeks "to protect the *public*" and not to "recover damages for any use of falsity or fraud to deprive the *government* of its money or property." *Id.* at 56. The Illinois Walgreens Settlement resolved claims brought by the Illinois Attorney General, on behalf of the

People of the State of Illinois, for violations of consumer protection law and public nuisance. *People v. CVS Pharmacy, Inc. et al.*, 2023 CH 09846 (Cir. Ct. Cook County, Dec. 6, 2023). The work that resulted in the Illinois Walgreens Settlement was handled by attorneys in the Consumer Protection Division of the Illinois Attorney General's Office. Decl. ¶ 27. Indeed, no information from Relator was relied on or used by the Illinois Attorney General's Office in this work, as required by *Kuriyan*.

The Illinois Walgreens Settlement seeks to abate and remediate harm to the public caused by Walgreens' role in the opioid crisis, not financial injury to the Illinois Medicaid program. Accordingly, no funds are allocated to Medicaid. Relator concedes that "the States never asserted claims against Walgreens regarding the illegal opioid reimbursement requests to their Medicaid programs." Rel.'s Mtn. at ¶ 4. Relator also admits that the Illinois Walgreens Settlement resolved allegations that Walgreens' conduct "related to inventory and dispensing of opioids[,] wreaked havoc on public health systems throughout the States" and "did not arise out [of] any state FCA claims." *Id.* ¶ 12. Additionally, Relator concedes that attorneys that negotiated the Walgreens Settlement did so without knowledge of the Relator's complaint: "State's consumer divisions apparently were taken by surprise"; "state consumer divisions apparently never consulted with the [Medicaid Fraud Control Unit] assigned to Mr. Novak's case …"; "[the States] obtained the [Walgreens Settlement] without even knowing about the existence of Mr. Novak's case." *Id.* ¶¶ 12-13.

Relator cites three factually distinguishable cases to support his contention that he is entitled to a share of the Illinois Walgreens Settlement. In *Bisig*, the court awarded a relator a share of a criminal forfeiture action for the same injury as alleged in the relator's *qui tam* complaint, unlike the Illinois Walgreens Settlement which was for claims that Relator did not and could not

11

assert. *U.S. v. Bisig*, Nos. 1:00-cv-335-JDT-WTL, 1:01-cv-0030-JDT-WTL, IP02-CR-112-01-T/F, 2005 U.S. Dist. LEXIS 38316, at *28 (S.D. Ind. Dec. 21, 2005). In *Veluchamy*, the district court denied relator's motion for a share of a settlement negotiated between the FDIC and a bank. *U.S. ex rel. Conner v. Peyhinaidu Veluchamy*, No. 11-CV-4458, 2015 U.S. Dist. LEXIS 159916, at *8 (N.D. Ill. Nov. 30, 2015). In *Barajas*, the Ninth Circuit found that a separate proceeding "substantially replicated the remedy it could have obtained" in the relator's *qui tam* action. *U.S. ex rel. Barajas v. U.S.,* 258 F.3d 1004, 1011 (9th Cir. 2001).

Relator also argues that Walgreens was motivated to agree to the Illinois Walgreens Settlement to obtain a release to Relator's *Qui Tam* Action. *See* Rel.'s Mtn. ¶¶ 13, 15. This is highly unlikely because Relator's complaint was not unsealed until September 3, 2024, nearly two years after the Illinois Walgreens Settlement was executed in 2022. [Dkt. No. 37.] Similarly, in *Fanatics*, an Illinois appellate court held that there was no alternate remedy where the state initiated a tax audit prior to the filing of a *qui tam* complaint. *State ex rel. Hurst v. Fanatics, Inc.*, 2021 IL App (1st) 192159, at ¶ 19, 454 Ill. Dec. 237, 189 N.E.3d 498. While the complaint was under seal during the audit, defendant made a voluntary sales tax payment to the Illinois Department of Revenue. *Id.* at ¶ 13. The court found that defendant's action was not an alternate remedy because the defendant had no knowledge of the sealed *qui tam* complaint. *Id.* at ¶ 20. Here, there is no alternate remedy since there is no evidence that Walgreens was aware of Relator's *Qui Tam* Action at the time it executed the Illinois Walgreens Settlement.

Thus, the Illinois Walgreens Settlement in this case is not an alternate remedy to Relator's *Qui Tam* Action and Relator is not entitled to any portion of Illinois's recovery.

### B. The Public Disclosure Bar Renders Relator's Claims Invalid.

The IFCA, like the federal FCA, contains provisions requiring dismissal of a *qui tam* claim

when substantially the same allegations or transactions as alleged in the claim were already publicly disclosed, whether in a civil action, administrative hearing, a legislative or state report, or from the news media. 740 ILCS 175/4(e)(4)(A). Illinois courts have adopted a four-part inquiry as to whether the public disclosure bar applies:

> (1) whether the alleged 'public disclosure' contains allegations or transactions from one of the listed sources of section 4(e)(4)(A) of the [IFCA]; (2) whether the alleged disclosure was made 'public' within the meaning of the [IFCA]; (3) whether the relator's complaint is 'based upon' the 'public disclosure'; and (4) if the answer is positive for the prior three inquiries, whether the relator qualifies as an 'original source' under section 4(e)(4)(B) …

*Lyons Township ex rel. Kielczynski v. Indian Head Park,* 2017 IL App (1st) 161574, ¶ 11, 84 N.E.3d 1118; *see also Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). Here, the public disclosures about Walgreens' failure to properly dispense opioids bar Relator's *Qui Tam* Action.

Relator cannot overcome the first two prongs of the *Lyons* inquiry. A public disclosure occurs "when the critical elements exposing the transaction are placed in the public domain." *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016); *State ex rel. Wilke v. Ameresco, Inc.*, 2020 IL App (4th) 180563-U, ¶ 36. The Seventh Circuit has recognized two meanings to the phrase "in the public domain": (1) "the information is open or manifest to the public at large," *Glaser*, 570 F.3d at 274; and (2) the "facts disclosing the fraud are in the government's possession." *U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 708 (7th Cir. 2014). "The Government's possession of the information exposing the fraud is alone sufficient to trigger the public disclosure bar." *Cause of Action*, 815 F.3d at 275.

Walgreens' failure to properly dispense opioids was well-covered both in court

13

proceedings[2] and the media[3], satisfying the first two prongs of the *Lyons* inquiry. Governmental investigations into Walgreens were public, and the company had already been sued by multiple states and more than 300 subdivisions[4] before Relator filed suit in August 2018, his *Qui Tam* Action offering nothing to the States' recovery efforts from the company.

Next, Relator's *Qui Tam* Action is not saved by the third prong in the *Lyons* inquiry because in the "absence of an explicit allegation of fraud, the public-disclosure bar may still apply so long as … facts establishing the essential elements of fraud—and, consequently, providing a basis for the inference that fraud has been committed—are in the government's possession or the public domain." *Id.* at 278. The facts listed above that place Relator's allegations in the public domain support dismissal under this prong as well. While prior investigations and litigation were generally based on the Controlled Substances Act and state nuisance and consumer protection claims, all the facts the government could have used to assert a fraud claim were already in the possession of the government when Relator filed his *Qui Tam* Action.

Further, Relator cannot claim to be an original source. An 'original source' is an "individual who either (i) prior to a public disclosure …, has voluntarily disclosed to the State the information on which allegations or transactions in a claim are based, or (ii) has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the State before filing an action under this Section."

---

[2] *Delaware v. Purdue Pharma L.P.*, Case no. N18C-01-223 MMJ CCLD; and *Kentucky v. Walgreens*, Case No. 18-CI-00846.
[3] https://www.palmbeachpost.com/story/news/local/2012/09/15/dea-suspends-walgreens-distribution-center/7164083007/; and https://www.dea.gov/press-releases/2013/06/11/walgreens-agrees-pay-record-settlement-80-million-civil-penalties-under.
[4] Due to the volume of litigation against Walgreens and other defendants, the Judicial Panel on Multidistrict Litigation established the National Prescription Opiate MDL 2804 in December 2017, a full eight months before Relator's *Qui Tam* Action. *In re Nat'l Prescription Opiate Litig*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017).

14

740 ILCS 175/4(e)(4)(B).

Relator is not an original source under either prong. While it may be true that he witnessed problematic internal behavior while employed by an Illinois Walgreens store, the fact remains that the company's failures and wrongdoing in dispensing opioids was public knowledge by the time Relator filed his *Qui Tam* Action. Under the second prong, Relator failed to provide any information that "materially adds to the publicly disclosed allegations or transactions." 740 ILCS 175/4(e)(4)(B).

In *Medline*, a relator made similar allegations against the same defendant as a previously filed and settled *qui tam*, alleging a kickback scheme with a different recipient and different federal healthcare programs for a non-overlapping period. *U.S. ex rel. Bogina v. Medline Industries, Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). The Seventh Circuit held that the additional allegations did not "materially add[…] to the publicly disclosed allegations" because defendant's kickback scheme was already public and the government was on notice. *Id*. Here, Walgreens' failure to properly dispense opioids was well covered and investigated and none of the information Relator provided materially added to the publicly disclosed allegations. This prior disclosure serves as a clear bar to Relator's claim, and in turn prohibits him from recovering any settlement share as an alternate remedy.

## CONCLUSION

For the reasons set forth above[5], this Court should deny Relator's motion for a declaratory judgment that Relator is entitled to a share of Illinois's settlement with Walgreens.

---

[5] The State of Illinois adopts the legal arguments made in briefs in opposition filed by the other plaintiff-states with alternate remedy provisions in their state FCA statute not specifically made herein.

15

| | |
|---|---|
| Dated: February 3, 2026 | Respectfully submitted,<br><br>KWAME RAOUL<br>ATTORNEY GENERAL OF ILLINOIS<br><br>*/s/Melissa Guske*<br>Melissa Guske<br><br>Melissa Guske<br>Deputy Chief<br>773-590-7970<br>melissa.guske@ilag.gov<br><br>Andrea Law<br>Deputy Bureau Chief<br>773-590-6839<br>andrea.law@ilag.gov<br><br>David Kim<br>Assistant Attorney General<br>773-519-6896<br>david.kim@ilag.gov<br><br>Office of the Illinois Attorney General<br>115 S. LaSalle Street<br>Chicago, Illinois 60603<br>*Attorneys for the State of Illinois* |

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on February 3, 2026, she caused a true and correct copy of STATE OF ILLINOIS'S OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF ILLINOIS'S SETTLEMENT WITH WALGREENS to be served via the Court's ECF/electronic mailing system upon all counsel of record.

*/s/Melissa Guske*