UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATES of NORTH CAROLINA and TENNESSEE, et al, *ex rel.* T.J. NOVAK, <br><br>Plaintiffs-Relator, <br><br>v. <br><br>WALGREENS BOOTS ALLIANCE, INC. <br><br>Defendants. | Civil Action No. 18-C-5452 <br> Judge Joan H. Lefkow |

### LOUISIANA'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT

The State of Louisiana hereby opposes Relator T.J. Novak's ("Relator") motion for declaratory judgment that he is entitled to a share of the settlement recovery obtained in the Louisiana Opioid Abatement Settlement that released, in part, claims Relator brought in this Court pursuit to the *qui tam* provisions in the False Claims Act ("FCA").

Relator seeks a share of a $5.52 billion, 46-state settlement of public nuisance and consumer protection claims that were litigated against and settled with Defendant Walgreens for its role in the nationwide opioid crises, through actions that began long before Relator filed his *qui tam* suit in this Court on August 10, 2018. By the time the Relator file his qui tam action, the nature and scope of the opioid crisis along with the conduct of the companies that contributed to it— were well known to state and local governments. Numerous books, investigative reports, and national media stories had documented the failures of manufacturers, distributors, and pharmacy chains to maintain effective controls against diversion.[1]

---

[1] *See* https://www.wvgazettemail.com/news/health/drug-firms-shipped-m-pain-pills-to-wv-town-with/article_ef04190c-1763-5a0c-a77a-7da0ff06455b.html;

Governmental investigations of Walgreens' role in the opioid crisis began in September 2012, when the company received an immediate suspension order ("ISO") from the Drug Enforcement Administration ("DEA"), shutting down Walgreens' Jupiter, Florida, Distribution Center. In the ISO, the DEA found Walgreens "failed to maintain effective controls against the diversion of controlled substances."[2] Walgreens entered a widely publicized settlement with the DEA to resolve allegations that its distribution centers in Florida ignored suspicious orders from numerous of its own pharmacies.[3] The settlement found "dispensing of controlled substances to individuals Walgreens knew or should have known were diverting controlled substances"—conduct materially identical to the allegations Relator later advanced in his case.

By August 2018, Walgreens was the subject of active litigation by both state and local governments. Delaware sued Walgreens in January 2018, asserting public-nuisance and consumer-protection claims based on the same core factual allegations later repeated in the relator's complaint.[4] Kentucky did the same in June 2018.[5] More than 300 counties, cities, and other local governmental entities had sued Walgreens before Relator filed suit. The volume of

---

https://www.washingtonpost.com/business/economy/2012/12/30/014205a6-4bc3-11e2-b709-667035ff9029_story.html; https://www.drugchannels.net/2012/09/the-dea-nabs-cvs-and-walgreen.html; https://www.statnews.com/2015/12/22/pharmacy-delivery-vans-targeted/; https://www.vox.com/2015/10/1/9433099/opioid-painkiller-heroin-epidemic;

[2] *See* DEA Order to Show Cause and Immediate Suspension of Registration, ¶ 16(g), Sep. 13, 2012 https://www.palmbeachpost.com/story/news/local/2012/09/15/dea-suspends-walgreens-distribution-center/7164083007/.

[3] https://www.dea.gov/press-releases/2013/06/11/walgreens-agrees-pay-record-settlement-80-million-civil-penalties-under.

[4] *Delaware v. Purdue Pharma L.P.*, Case no. N18C-01-223 MMJ CCLD, Del. Compl. ¶¶183-91 (citing Walgreens' prior settlement with the DEA for "allowing . . . prescription pain killers to be diverted for abuse," and alleging Walgreens corporate officers incentivized diversion by compensating pharmacists based on the number of prescriptions filled at the pharmacy)

[5] *Kentucky v. Walgreens*, Case No. 18-CI-00846 (bringing consumer protection, public nuisance, and Medicaid fraud claims (among others) based on Walgreens' distribution and dispensing of opioids, and specifically alleging that Walgreens' pharmacists blatantly ignored red flags based on the DEA's findings from Florida.)

litigation against Walgreens and other defendants grew so rapidly that the Judicial Panel on Multidistrict Litigation established the National Prescription Opiate MDL 2804 in December 2017, a full eight months before Relator's action, to coordinate thousands of cases brought by local governments.[6]

At the same time, the DEA shared its opioid transaction data with state attorneys general.[7] This data allowed Louisiana and other states to track prescription opioids through the distribution chain and focus on problematic dispensers, including Walgreens. In short, the factual basis for Relator's allegations against Walgreens was neither unknown nor undisclosed to the States; it had been publicly aired, investigated, and litigated for years.

In fact, the Louisiana Office of the Attorney General was extremely active in addressing the opioid crisis in Louisiana. In April of 2017, the attorney general announced the creation of the Opioid Abuse Prevention Fund to provide manufacturer rebates for opioid antidotes and launched a new website, endtheepidemicla.org. In May of 2017, the attorney general announced a settlement of a pharmaceutical case with Pfizer for $1 million in Naloxone, a prescription medication that counteracts the effects of an opioid overdose, to be made available to first responders in the State.

On September 20, 2017, the Louisiana Department of Health, through the Secretary of the Louisiana Department of Health, filed a Petition for Damages and Injunctive Relief against Defendants, Purdue Pharma L.P; Purdue Pharma, Inc., The Purdue Frederick Company, Inc.; Teva Pharmaceutical Industries, LTD., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson and Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Allegran

---

[6] *In re Nat'l Prescription Opiate Litig*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017).
[7] https://www.justice.gov/archives/opa/pr/dea-share-painkiller-prescription-information-48-attorneys-general?form=MG0AV3

PLC f/k/a Actavis PLC, Watson Pharmaceuticals, Inc. n/k/a Actavis, Inc., Watson Laboratories, Inc., Actavis, LLC, Actavis Pharma, Inc. f/k/a Watson Pharma, Inc, in the 19th Judicial District State Court under docket number C-661,638. In February 2018, the East Baton Rouge Parish Sheriff's Office filed a petition for damages naming Purdue Pharma Inc, Purdue Frederick Co. Inc., *et al* as defendants.

Louisiana state and local governments were actively investigating and prosecuting their claims against pharmaceutical companies and pharmacies long before the Relator's claim under the FCA was filed. And Relator's August 2018 complaint does not contain any specific facts or allegations which directly pertain to Louisiana.

Because of the degree of misconduct by the pharmaceutical industry, and the volume of litigation, the most responsible companies began seeking global settlements to fully resolve their civil liability to state and local governments arising from the national opioid crisis. The first wave of global settlements, with nation's three largest pharmaceutical distributors and a manufacturer, were announced in July 2021. The Walgreens settlement, from which Relator seeks to recover, was part of a second wave of agreements between the States and three pharmacy chains and two manufacturers announced in late 2022. *See* Walgreens Settlement Agreement (Dec. 9, 2022) ("Agreement"). The structure of these five agreements and many of the key provisions generally followed the prior first wave settlements. After the Agreement was finalized, it was joined by 46 states and thousands of local governments, referred to as "subdivisions" in the settlement.[8]

Settlement funds were not directed to resolve fraud claims on behalf of the states' Medicaid programs, and no portion of the Agreement called for payment to state Medicaid programs or the

---

[8] Florida, Nevada, New Mexico, and West Virginia (and their subdivisions) did not join the December 9, 2022 Walgreens Settlement Agreement. Each of these States entered separate settlements with Walgreens.

federal government. Rather, the Agreement has multiple provisions restricting a vast majority of the settlement funds to opioid remediation, Agreement §§ V.B, V.D.1-2, V.E.2, which is a defined term in the Agreement. And the Agreement allows each state to develop its own consensual or statutory approach for allocating the money within the state for remediation.[9]

The Agreement was implemented through the filing of individual consent judgments in the state courts of all participating states. Many of the individual state judgments were individualized to address releases and intrastate allocation. The consent judgments do not provide for any payment to reimburse the states' Medicaid funds or to the Realtor.

Though the Walgreens settlement did not arise from Medicaid fraud claims, Section X.A of the Agreement provides a broad release of all civil claims that states (and subdivisions) could assert, which included *qui tam* actions.[10] The Agreement's coverage of *qui tam* claims matched the scope of the release in the pharmaceutical distributors' 2021 settlement of the States' opioid claims, even though no state Medicaid fraud *qui tam* claims were pending against the distributors. Although this release did not reference Relator's case, it encompassed the conduct and theories of liability alleged in Relator's complaint.[11] Following the execution of the Agreement, the States approached Relator with the option to voluntarily dismiss the States as plaintiffs to the *qui tam*

---

[9] The agreement has default intrastate allocation provisions if a state does not address allocation through a consensual agreement between the state and its subdivisions or statute. Agreement § V.E.2.

[10] The Settlement defines "Releasors" to include "any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in this Agreement." Settlement § I.NNN.

[11] This is because its definition of "Claim," "Covered Conduct," and "Released Claims" are broad. *See* Settlement §§ I.O, I.S, I.LLL; *see also id*. § X.A (release provision relying on these terms). Moreover, the Settlement provides that "[t]he Parties intend that this term, 'Released Claims,' be interpreted broadly." *Id*. § I.LLL; *see also id*. § X.A ("The releases provided for in this Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Settling State and its Attorney General to release claims.").

action. Relator refused. To comply with the terms of the Agreement,[12] the named States intervened in the action for the limited purpose of filing a motion to dismiss the States' claims. Relator and the United States consented to the States' motion to dismiss. This Court granted the States' request, dismissing the States' claims brought by Relator under each state's false claim act with prejudice. Order Re: The Named Plaintiff States' Joint Notice of Intervention for the Purpose of Moving To Dismiss the State Medicaid Portion of the State Causes of Action at 2 ¶1 (Jan. 2, 2024) ("January 2024 Order"). The order also provided that "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant have been resolved"—without providing in which venues such resolution would occur. *Id.* ¶3.

Thereafter, the Court entered orders upon joint motions dismissing the federal claims with prejudice, purporting to retain jurisdiction over the state share of the state Medicaid claims that had been dismissed already. ECF 72, Order at 3-4 ¶¶2, 3 (Apr. 21, 2025); ECF 82, Agreed Order of Dismissal at 1 ¶¶1, 2 (Oct. 23, 2025). The States were not parties to the joint motions, as they already were dismissed from the case with prejudice, and were not advised before the motions or the proposed orders were filed. This motion followed.

## ARGUMENT

**I. DECLARATORY MOTION IS IMPROPER IN THIS LAWSUIT.**

    **A. Declaratory judgment cannot be sought because it neither was pled in the complaint nor is against parties named as defendants.**

Relator's pending motion should be denied for the simple reason that it is procedurally improper. "A party may not make a *motion* for declaratory relief, but rather, the party must bring

---

[12] "Each Settling State (for itself and its Releasors) . . . hereby absolutely, unconditionally, and irrevocably covenants not . . . to cause, assist or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever." Agreement §X.A.

-6-

an *action* for a declaratory judgment." *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma (USA Inc.)*, 560 F.3d 935, 943 (9th Cir. 2009).[13] Moreover, Relator has failed to amend his complaint or seek permission to amend. Fed. R. Civ. P. 15.[14] Nor has Relator sought to add the States as parties in order to bring a crossclaim. Fed. R. Civ. P. 20; Fed. R. Civ. P. 13(g).

Refusing to allow Relator to seek an unpled Declaratory Judgment action through a motion is not a mere formality, but reflects the alignment of the parties as pled in Relator's complaint. In a *qui tam* action under MAPIL, the relator brings the claim on behalf of the state as well as on his own behalf. La R.S. 46:439.1. Relator did not name Louisiana as a defendant (or as a cross-claim defendant) in the instant lawsuit. Instead, the situation is precisely the opposite: Relator's role in this instant lawsuit as currently pled is to "stand[] in the shoes of the government[s]." *United States ex rel. Robinson v. Healthnet Inc.*, 124 F.4th 511, 514 (7th Cir. 2024). Relator cannot hijack his sole-pled role of standing in the shoes of the states to seek entry of judgment against the parties of whose behalf he purported to bring the action. Here, Relator has filed a motion for a declaratory judgment not pled in the complaint and against entities that are not defendants. Therefore, the motion is invalid.

### B. Declaratory judgment cannot be sought through a motion in the same lawsuit where the predicate state law claims were already dismissed with prejudice.

The only causes of action before this Court related to the States were the claims under FCA. These claims were "dismissed with prejudice" by this Court in January 2024. January 2024 Order at 2 ¶1. Accordingly, there is no live claim over which this Court has any jurisdiction to proceed

---

[13] District courts in this Circuit have ruled similarly. *See, e.g. Sisson v. Gowdy*, No. 1:22-cv-00514-JPH-MJD, 2023 U.S. Dist. LEXIS 66473 (S.D. Ind. Apr. 17, 2023).
[14] While Rule 15(b)(2) allows for issues not raised in the complaint to be addressed, those issues may only come before the court upon the parties' express or implied consent. Fed. R. Civ. P. 15(b)(2). The states recognized this request would be deferred; but it was never before the Court by Relator's filing, and thus no state was placed on notice Relator would attempt to litigate these matters in this forum.

with respect to the States.

Indeed, even had the States' settlement with Walgreens been entered by this Court rather than by state courts in Louisiana,[15] this Court would be without jurisdiction over subsequent disputes. "When a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007).[16] Here, all of Relator's FCA claims were dismissed with prejudice by the Court. The Court may not retain jurisdiction over disputes involving those claims despite that dismissal.

## II. STATUTORY AND CONSTITUTIONAL BARRIERS PREVENT THIS COURT FROM ENTERING A DECLARATORY JUDGMENT AGAINST THE STATES.

### A. The Court does not have diversity or federal question jurisdiction over a declaratory judgment action against the States that arises under state law.

Relator asks this Court to rule on a question of 28 distinct state laws. Even if the motion were procedurally proper, the Court has neither diversity nor federal question jurisdiction over claims against the States that arise purely under state laws.

The question of diversity jurisdiction can be quickly resolved. "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

Courts may exercise federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, a court may

---

[15] While this Court entered a settlement resolving federal FCA claims, that settlement does not address state claims against Walgreens and Relator's claim for a share of that settlement has already been fully resolved.

[16] Relator relies on *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003) ("*Bledsoe I*"). *Bledsoe I* involved a case where the federal government had not intervened to dismiss the original *qui tam* case (or to take any other action) and where the relator still had a live *qui tam* claim. *Id.* at 647. Here, the States did intervene to dismiss their states' claims and there is no live claim under the NCFCA or the TMFCA. Moreover, the demand for a relator share from the federal government in *Bledsoe I* was a question of federal law over which any federal court would have federal question jurisdiction.

issue a declaratory judgment "in a case of actual controversy within its jurisdiction." 22 U.S.C. § 2201(a). However, a court may only maintain jurisdiction over a declaratory judgment action when a hypothetical suit under the same set of facts would satisfy the well-pleaded complaint rule to confer federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16-17 (1983). In other words, 22 U.S.C. § 2201 cannot be the sole federal law at issue in the dispute. The Seventh Circuit applies the following test: "[I]n an action for declaratory judgment the positions of the parties are reversed: the declaratory-judgment plaintiff would have been the defendant in the anticipated suit whose character determines the district court's jurisdiction." *DeBartolo v. HealthSouth Corp.*, 569 F.3d 736 (7th Cir. 2009); *see also Capitol Broad. Co. v. City of Raleigh*, 104 F.4th 536, 540 (4th Cir. 2024) ("Regardless of which roles the parties take on in the hypothesized coercive suit, if that suit would satisfy the well-pleaded complaint rule, then the overarching declaratory judgment action does too.")

There is no hypothetical lawsuit involving Relator's disputed demand to a relator's share over which this Court would have subject matter jurisdiction. All possible actions by Relator against the States arise under state law – the alternate remedy provisions found in La. R.S. 46:439.3 – over which this court has neither diversity nor federal question jurisdiction. Relator's declaratory judgment action, which arises under 28 different states' laws, fails under the Seventh Circuit's federal question jurisdictional test.

      **B.**    **The Court should decline supplemental jurisdiction over pure state law questions when the federal law claims have been fully resolved.**

The Court may exercise supplemental jurisdiction over state claims when they are related to the claims within its original jurisdiction. 28 U.S.C. § 1367(a). But a court may decline supplemental jurisdiction when (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the federal claims, (3) the federal claims have been

dismissed, or (4) there are other compelling reasons to decline jurisdiction. *Id*. § 1367(c).

The Seventh Circuit has held that when all federal claims are dismissed, "the district court should relinquish jurisdiction over pendent state-law claims." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998). Courts in his Circuit therefore only retain federal jurisdiction over pendent state claims when "unusual circumstances exist." *Hawkins v. Trustees of Ind. Univ.*, 83 F. Supp. 2d 987, 1002 (S.D. Ind. 1999). The Court may consider factors including "judicial economy, convenience, fairness and comity" when making this determination. *Id*.

Here, the federal FCA claims that originally gave this court federal question jurisdiction over the case were fully dismissed with prejudice on October 23, 2025. ECF 82, Agreed Order of Dismissal at 1 ¶1. Further, the relevant factors weigh strongly against the exercise of jurisdiction. The Court will best promote judicial economy, fairness, and comity with state courts by declining jurisdiction over Relator's 28 state law claims. Judicial economy, fairness, and comity will best be promoted in each individual state court, as those courts are best poised to navigate complex and novel state law issues regarding alternate remedies and resolve disputes regarding their own settlement orders.

### C. The Court must afford full faith and credit to the state court judgments effectuating the multistate opioid settlement.

The Court must give full faith and credit to all relevant state court judgments resolving the multistate opioid settlement. Federal courts are required to treat state court judgments as valid and enforceable. 28 U.S.C. § 1738. In the Seventh Circuit, a state court settlement is treated the same way in federal court as it would be in state court. *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000) (upholding state settlement and requiring lower court to apply the same preclusion principles as a state court would).

Here, each state court entered a consent judgment incorporating the Agreement. The Court

must honor those state court judgments. Ordering a declaratory judgment in federal court would directly contradict the state judgments that do not provide for a relator's share. To the extent that Relator wants relief from those state court judgments so that they provide for a relator's share, he must seek that relief from the state courts that entered them.[17]

### D. Sovereign immunity bars the post-dismissal alternate remedy action.

Suits against states for monetary damages are barred by the Eleventh Amendment. A suit for monetary damages is determined by whether the action would deplete the state treasury. *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775 (7th Cir. 1991). "[D]eclaratory relief should not be awarded where the [E]leventh [A]mendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993).

There is no question that Relator's request for an alternate remedy from a portion of the States' opioid settlement with Walgreens is a request for recovery of money from Louisiana's local entities. There was no direct state-level allocation for statewide programs beyond administrative costs. Eighty (80%) percent of the settlement went to local parish officials to decide how the settlement funds would be spent with mandatory reporting requirements to the State. The remaining twenty (20%) percent went to the Sheriffs of each parish for the Sheriff to autonomously decide how use the settlement proceeds for remediation.

While a state may waive Eleventh Amendment immunity explicitly," *Lane v. Pena*, 518 U.S. 187, 192 (1996), Louisiana's Medical Assistance Integrity Law ("MAPIL" La R.S. 46:437.1 *et seq*) does not contain any language that has unequivocally abrogated Eleventh Amendment immunity. Therefore, the Eleventh Amendment immunity bars Relator's request for a declaratory

---

[17] Such relief would be improper under state statutes and the consent judgments effectuating the Agreement in each State. In any event, this issue must be resolved by the state courts that entered the judgments.

judgment.[18] It is irrelevant to Eleventh Amendment analysis whether the state law alternate remedy provision allows for Relator to obtain a judgment against the States in their state courts because "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).

### III. EVEN IF A DECLARATORY JUDGMENT MOTION IS PROCEDURALLY PROPER, THE MOTION SHOULD BE DENIED.

#### A. Relator has no right to a share of the multistate opioid settlement, because it resolved claims that Relator could not assert in his *qui tam* suit.

Alternate remedy proceedings from which a relator can recover "must redress the same type of falsity and fraud claims that otherwise could be pursued by a private relator's qui tam lawsuit under the False Claims Act." *United States v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021). If the alternate proceeding seeks "recompense for some other type of claim that the relator could not have brought, then the proceeding . . . is a different legal claim altogether, arising beyond the False Claims Act's borders," and thus beyond a relator's reach. *Id.*[19]

It is undisputed that Relator could not bring the public nuisance and consumer protection claims that formed the basis for the States' settlement with Walgreens. For these reasons, he has no right to a share of the settlement of those claims, particularly given that the proceeds from those settlements are largely devoted to prospective nuisance abatement, with no funds specifically allocated to resolve Medicaid claims or specifically directed to state Medicaid programs. The

---

[18] Although the States intervened for the limited purpose of dismissing their *qui tam* claims against Walgreens, that action did not waive immunity from suit for all claims, much less Relator's motion for a relators share against the States. Instead, it provided that Relator was not barred from later proceeding, in an otherwise appropriate forum, to litigate its claim to a relator share. *See* January 2024 Order at 2 ¶3.

[19] Louisiana is similar to federal law here. Compare LSA-R.S. 46:439.3 *with* 31 U.S.C. §3730(c)(5). Because *Novo A/S* does not support Relator's claim, the State assumes for present purposes that it correctly interprets their laws.

settlement recovered in this case was specifically in consumer protection and not for defrauding Medicaid. The monies received were for remediation so that the local parishes could addresses the effects of the opioid crisis. None of the settlement went the State of Louisiana or any state agency including the LDH which administers Medicaid dollars.

> **B.     Relator's original *qui tam* claim is invalid, which eliminates any entitlement he might have had to any alternate remedies.**

Even if Relator can assert a claim for share of settlement proceeds from causes of action he could not assert, he is still not entitled to a share because his *qui tam* suit is not valid. *See, e.g.*, *United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007) ("We read the relevant statutory provisions to mean that a relator is not entitled to a share in the proceeds of an alternate remedy when the relator's *qui tam* action under [the FCA] is invalid.").

> **1.     The Public Disclosure Bar Renders Relator's Claims Invalid**

The public disclosure bar renders relator's original *qui tam* invalid. Under La R.S. 46:439.1, MAPIL, like the federal FCA, contains provisions requiring dismissal of a *qui tam* claim when substantially the same allegations or transactions as alleged in the claim were already publicly disclosed, whether in a civil action, administrative hearing, a legislative or state report, or from the news media. Here, Relator was not an "original source of information" as Louisiana state agencies filed petitions for damages at the state level years before Relator filed his complaint in the N.D. of Illinois.

The Seventh Circuit has adopted a three-step analysis to determine when a *qui tam* must be dismissed pursuant to the public disclosure bar. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). First, courts are directed to determine whether the allegations in the complaint have been "publicly disclosed" through an enumerated channel. *Id.* If so, the court must then determine whether the relator's suit is "based upon" or "substantially similar to" the publicly

disclosed allegations. *Id.* at 913, 920. The public disclosure bar will then preclude the action unless "the relator is an 'original source' of the information upon which the lawsuit is based." *Id.* at 913. The relator bears the burden of proof at all three steps. *Id.*

A public disclosure occurs "when the critical elements exposing the transaction are placed in the public domain." *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016). The Seventh Circuit has recognized two meanings to the phrase "in the public domain": (1) where "the information is open or manifest to the public at large," *Glaser*, 570 F.3d at 274; and (2) where the "facts disclosing the fraud are in the government's possession." *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 708 (7th Cir. 2014). "The Government's possession of the information exposing the fraud is alone sufficient to trigger the public disclosure bar." *Cause of Action*, 815 F.3d at 275.

This definition of "in the public domain" defeats Relator's claims. As detailed *supra* pp. X-X, Walgreens' failure to properly dispense opioids was well-covered both in court proceedings and the media. Governmental investigations into Walgreens were public, and the company had already been sued by multiple states including Louisiana and more than 300 subdivisions before Relator filed suit in August 2018, and his action offered nothing to the States' efforts to recovery form the company.

Relator's *qui tam* is not saved by the second prong of the Seventh Circuit's test. Even in the "absence of an explicit allegation of fraud, the public-disclosure bar may still apply so long as … facts establishing the essential elements of fraud—and, consequently, providing a basis for the inference that fraud has been committed—are in the government's possession or the public domain." *Id*. at 278. The facts listed above that place Relator's allegations in the public domain support dismissal under this step, as well. While the prior investigations and litigation were

generally based on the Controlled Substances Act and state nuisance and consumer protection claims, all the facts the government could have used to assert a fraud claim were already in the possession of the government when Relator filed his *qui tam* action.

This all stacks against Relator as an original source of information related to the Walgreens' opioid prescription practices. While it may be true that he witnessed problematic internal behavior while employed by an Illinois Walgreens,[20] the fact remains that the company's failures and wrongdoing in dispensing opioids was public knowledge by the time Relator filed his *qui tam* in August 2018. This prior disclosure serves as a clear bar to Relator's claim, and in turn prohibits him from recovering any settlement share as an alternate remedy.

### 2. Relator Fails to State a Plausible Fraud Claim

Notwithstanding the public disclosure bar issues, a Relator whose *qui tam* would be subject to dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b) would not be eligible to assert any claim for an alternate remedy. After remanding to the district court for an analysis on whether the relator's *qui tam* complaint complies with the requirements of Rule 9(b) in *Bledsoe I*, the Sixth Circuit was asked to confirm that if a relator's *qui tam* cannot survive dismissal, that relator would not be entitled to any settlement share as an alternate remedy. The Sixth Circuit answered in the affirmative. *See United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007) ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government.").

Not only has Relator not tried to clear this hurdle, but he would have a difficult path before him to do so. First, Relator's August 2018 complaint alleged no specific facts related to any state

---

[20] Notably, Relator's August 2018 complaint alleges that he is an original source only under the federal FCA and Illinois' Medicaid fraud statute. ECF 1, Complaint ¶11 (Aug. 10, 2018).

other than Illinois, which dooms its compliance with Rule 9(b) with respect to the NCFCA and TMFCA claims. ECF 1, Complaint ¶¶41-71. Second, a recent decision out of the Middle District of Florida illustrates the challenges faced by relators bringing *qui tam* actions under the FCA for opioid over-prescription practices. The relator in *United States ex rel. Publix Litig. P'ship, LLP v. Publix Sper Mkts, Inc.* alleged a very similar theory of liability as the Relator here. Case No. 8:22-cv-2361-TPB-AAS, 2025 WL 5468832, at *4-6 (M.D. Fla. Aug. 27, 2025). The court found that even though the defendants "may certainly have been engaging in bad business practices and procedures that might support a negligence theory, nuisance theory, or even violations of the Controlled Substances Act," those practices do not "support a claim under the False Claims Act." *Id.* at *7. Relator has not even attempted to show that his allegations are distinguishable enough to survive Rule 9(b). Therefore, he should be barred from asserting any right to unrelated settlement proceeds as an alternate remedy.

## CONCLUSION

This Court should deny Relator's motion.

Dated: February 3, 2026

Respectfully submitted,

STATE OF LOUISIANA,
LIZ MURRILL, ATTORNEY GENERAL

BY: /s/ *Ryan M. Nolan*
Ryan M. Nolan
Assistant Attorney General
Louisiana Department of Justice
Public Protection Division
1885 N. Third St.
Baton Rouge, LA 70802
Telephone: (225) 326-6400
Email: nolanry@ag.louisiana.gov

-16-

-17-

## CERTIFICATE OF MAILING AND/OR DELIVERY

      I hereby certify that on February 3, 2026, I caused to be served the foregoing *Opposition* on the following in the following manner:

By CM/ECF:

| | |
|---|---|
| Michael C. Rosenblat<br>Rosenblat Law<br>707 Skokie Blvd, Suite 600<br>Northbrook, Illinois 60062<br>(847)480-2390<br>mike@rosenblate.com | David J. Chizewer<br>William C. Meyers<br>Goldberg Kohn, Ltd.<br>Nashville City Center<br>55 East Monroe Street, Suite 3300<br>Chicago, Illinois 60603<br>(312) 201-4000<br>David.chizewer@goldbergkohn.com<br>William.meyers@goldbergkohn.com |

                              */s/     Ryan M. Nolan*
                              Assistant Attorney General