UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and TEXAS et al, *ex rel*. T.J. NOVAK, | ) ) ) Case No. 18 C 5452 |
| Plaintiffs-Relator, | ) ) Judge Joan H. Lefkow |
| v. | ) ) |
| WALGREENS BOOTS ALLIANCE, INC., | ) ) |
| Defendant. | ) ) |

**STATE OF TEXAS'S OPPOSITION TO RELATOR NOVAK'S MOTION
FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED
TO A SHARE OF TEXAS'S SETTLEMENT WITH WALGREENS**

**I.      INTRODUCTION**

The State of Texas joined the December 9, 2022, multistate opioid settlement with Walgreens (the "Global Opioid Abatement Settlement") for public nuisance and consumer protection claims. The vast majority of the Texas recovery from the Global Opioid Abatement Settlement is allocated to Texas subdivisions to abate the Texas opioid public health crisis. Relator T.J. Novak ("Relator") filed a *qui tam* action with Texas claims based solely on allegations of Medicaid fraud pursuant to the Texas Health Care Program Fraud Prevention Act, Chapter 36 of the Texas Human Resources Code ("THFPA") and now seeks to share in the opioid abatement recovery. For the reasons set forth below, Relator is not entitled to any portion of the Global Opioid Abatement Settlement. This Court should further decline to exercise supplemental jurisdiction over Relator's questions of Texas state law.

## II. BACKGROUND

Details concerning Texas's participation in the Global Opioid Abatement Settlement and the complexities inherent in how the abatement and remediation funds are allocated by Texas pursuant to the settlement and Texas statute are explained in the Declaration of Assistant Attorney General Stephanie Eberhardt, attached hereto as Exhibit A ("Declaration"). The Global Opioid Abatement Settlement was entered in Travis County District Court, Austin, Texas as an exhibit to the Agreed Final Judgment and Permanent Injunction ("Stipulated Judgment") in the case of *State of Texas v. Walgreen Co.*, No. D-1-GN-24-000445 (98th Dist. Ct., Travis County, Tex.). Declaration at ¶8. The 925-page Stipulated Judgment settled and released many of Texas's opioid-related claims against Walgreens. *Id.*

Texas also negotiated a second separate settlement with Walgreens and the Texas Opioid MDL Plaintiff Steering Committee ("PSC"), representing litigating subdivisions in Texas, to maximize the number of Texas litigating subdivisions. Declaration at ¶7. On May 26, 2023, Texas, the PSC, and Walgreens entered into the Texas Settlement Agreement and Release ("Texas Settlement"), in which Walgreens agreed to pay its full allocated share to Texas upon 96% of the litigating subdivisions signing on and agreeing to release the Walgreens claims. *Id.*

The Texas Government Code, subchapter R, governs Texas statewide opioid settlements. Tex. Gov't Code §§ 403.501–403.511 The statute controls the allocation of the payments between the State and the Texas cities and counties that participate in opioid abatement settlements. Declaration at ¶14.

The Stipulated Judgment further includes the Texas Opioid Abatement Fund Council ("OAFC") and Settlement Allocation Term Sheet ("State-Subdivision Agreement").

2

Declaration at ¶9. The OAFC was "established to ensure that money recovered by this state through a statewide opioid settlement agreement is allocated fairly and spent to remediate the opioid crisis in this state by using efficient and cost-effective methods that are directed to regions of this state experiencing opioid-related harms." Tex. Gov't Code § 403.503(a). The Stipulated Judgment entered in Texas state court incorporates the Global Opioid Abatement Settlement, the Texas Agreement, Chapter 403 of the Texas Government Code, subchapter R, and the State-Subdivision Agreement, to control how much Texas receives from the settlement, how much flows to the State versus the Texas participating subdivisions, and how the funds are to be used for opioid abatement and remediation. Declaration at ¶10.

Neither the Texas Government Code nor the Stipulated Judgment permits the use of settlement funds for State Medicaid recovery or the allocation of any funds as remedies to the Texas Medicaid program. Declaration at ¶3, 21, 23, & 25. No funds from the Walgreens settlement has flowed, or will flow to Texas Medicaid. Declaration at ¶24.

### III.  ARGUMENT

The Global Opioid Abatement Settlement is not an alternate remedy for the claims in Relator's *qui tam*. Relator's THFPA claims alleged liability for unlawful acts proscribing specific conduct involving the Texas Medicaid program. Tex. Hum. Res. Code §§ 36.002(1)–(13). Relator further sought civil remedies under the THFPA which includes the amount of the payment resulting from the unlawful act, double that amount, interest, and penalties for each unlawful act committed. Tex. Hum. Res. Code § 36.052(a). The claims pursued by Texas against Walgreens in the Texas state court Original Petition however, alleged consumer protection and public nuisance claims which Relator could not assert under the THFPA. *See* Plaintiff's Original Petition at Exhibit

3

B. Moreover, recoveries for opioid abatement and remediation simply are not available under the THFPA. Tex. Hum. Res. Code § 36.052(a).

Nor should this Court exercise supplemental jurisdiction over the state law issues raised by Relator pursuant to 28 U.S.C § 1367(c), which provides that a district court may dismiss supplemental state law claims for four factors, at least three of which are present here. First, the federal claims were previously dismissed. 28 U.S.C § 1367(c)(1). Second, the questions raised by Relator present both novel and complex issues of Texas state law including whether a consumer settlement constitutes an alternate remedy pursuant to the THFPA. 28 U.S.C § 1367(c)(3). The relief Relator seeks would further require a federal court to analyze and interpret the Texas statute governing opioid settlement abatement and remediation, as well as the Stipulated Judgment entered in Texas state court. Third, this matter constitutes an exceptional circumstance. Relator incorrectly minimizes the complexities this Court would face in adjudicating twenty-eight separate state opioid settlements. Relator is further mistaken in his contention that the Court should retain supplemental jurisdiction because the state claims "parrot" the federal False Claims Act ("FCA") (ECF #84 at ¶18), as the THFPA is not a false claims act and does not mirror the FCA. 28 U.S.C § 1367(c)(4). The court best suited to determine the Texas state law issues is Travis County District Court, Austin, Texas where the Stipulated Judgement was entered.

The Court lacks jurisdiction over Relator's motion because Relator's motion is procedurally improper as Relator failed to initiate an action for declaratory relief pursuant to 28 U.S.C. § 2201, and no case or controversy exists.

### A. Relator's request for a share of the Global Opioid Abatement Settlement is improper because the settlement is not an alternate remedy to Relator's *qui tam*.

A relator's recovery under a valid alternate remedy claim is limited to a share of what the State could have recovered under a relator's *qui tam* action. *See, e.g.*, *United States ex rel. Bledsoe v. Comty. Health Sys.*, 342 F.3d 634 (6th Cir. 2003). The Global Opioid Abatement Settlement, formed from public nuisance and consumer protection claims which recover funds for future "Opioid Remediation" designed to abate the opioid public health crisis (Declaration at ¶4), is not a recovery available under the THFPA. Further, the Global Opioid Abatement Settlement, the Texas Agreement, and the State-Subdivision Agreement do not contemplate any recovery for fraud perpetrated on the Texas Medicaid program. (Declaration at ¶¶3, 21, 23, & 25). Given the scope of the Global Opioid Abatement Settlement, the funds recovered, and the allocation of those funds pursuant to Texas Government Code §§ 403.501–403.511, a statute wholly unrelated to the THFPA, the Global Opioid Abatement Settlement is not an alternate remedy to Relator's *qui tam* and Relator therefore is not entitled to any proceeds from that settlement.

Pursuant to the THFPA, if the State pursues an alternate remedy then the *qui tam* relator has "the same rights in the other proceeding" that they "would have had if the action had continued under" the relator's lawsuit, but does not confer any additional rights. Tex. Hum. Res. Code § 36.109(a). Recovery under the THFPA is for "administrative and financial sanctions to punish and, thereby, prevent Medicaid fraud." *In re Xerox*, 555 S.W.3d 518, 526 (Tex. 2018). The THFPA imposes civil remedies for the full amount of the payments procured by fraud on the Medicaid program, double the amount of those payments, interest on those amounts, and additional penalties for each unlawful act committed against the Medicaid program. Tex. Hum. Res. Code § 36.052(a). In contrast, the vast majority of the Global Opioid Abatement Settlement

5

funds go to Texas state subdivisions and are appropriated to a Texas state agency for future "Opioid Remediation." Declaration at ¶4. The funds are designed to abate the opioid public health crisis and save lives. "Opioid Remediation" is defined in the Stipulated Judgement as "[c]are, treatment, and other programs and expenditures . . . designed to (1) address the misuse and abuse of opioid products, (2) treatment or mitigate opioid use or relator disorders, or (3) mitigate other alleged effects of, including on those injured as a result of, the opioid epidemic." Declaration at ¶22. The Texas Government Code Chapter 403, subsection R, does not allow for any of the funds to be used for, or allocated to, a Medicaid recovery. Tex. Gov't Code §§ 403.505(c) & (d) (indicating how the state agency may use money appropriated from the Opioid Abatement Account), § 403.506 (indicating how the trust company shall distribute money from the opioid abatement trust fund to counties and municipalities to address opioid-related harms). Unlike the remedies available under the THFPA, none of the Global Opioid Abatement Settlement recoveries are in the nature of civil penalties to punish and deter wrongdoing on the Medicaid program.

An alternate remedy "proceeding from which a relator can recover a share must redress the same type of falsity and fraud claims that otherwise could be pursued by a private relator's qui tam lawsuit . . ." *United States ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021). Relator's *qui tam* claims were limited to that which he could plead under the THFPA, unlawful acts committed on the Medicaid program. Tex. Hum. Res. Code § 36.002. Relator is prohibited from bringing DTPA claims or common law public nuisance claims in a THFPA *qui tam* action, as were plead in the State's Original Petition against Walgreens. *See* Exhibit B.[1]

---

[1] Cases relied on by Relator are unpersuasive, for example: *United Staes v. Veluchamy*, No. 11-cv-4458, 2015 WL 7710365 (N.D. Ill. Nov. 30, 2025) (proceeding was not found to constitute an alternate remedy); *United States v. Bisig*, No. IP01-0030, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005) (government sought the same injury or remedy as alleged in that relator's *qui tam* action); and *United States ex rel. Barajas v. United States*,

Relator is further unable to demonstrate that the State "relied on [the relator's] actions or information" that may entitle him to a share of the recovery. *United States ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, No. CIV 16-1148 JB/KK, 2022 WL 704130, at *3 (D.N.M. Mar. 9, 2022); *see also United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d at 651 (relator needed to have "apprised" government of specific diagnosis code that underpinned government's settlement). By 2018, the information provided by Relator in his *qui tam* was publicly disclosed in the media as well as court filings and settlements, including the DEA's 2013 settlement with Walgreens for $80 million for opioid dispensing and record-keeping violations.[2] Relator's *qui tam* therefore did not contribute to the Global Opioid Abatement Settlement.[3]

### B. The Court has discretion to decline to exercise supplemental jurisdiction at any time and should do so here.

The Seventh Circuit recognizes that "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). In addition, the novel issues raised and the complexity of the Global Opioid Abatement Settlement necessitates that this Court decline to exercise supplemental jurisdiction over the issues Relator raises. 28 U.S.C § 1367(c). The Supreme Court in *United Mine Workers of Am. v.*

---

258 F.3d 1004 (9th Cir. 2001) (government sought the same injury or remedy as alleged in that relator's *qui tam* action).

[2] Walgreens Agrees to Pay a Record Settlement of $80 Million for Civil Penalties Under the Controlled Substances Act, June 11, 2013, found at https://www.dea.gov/press-releases/2013/06/11/walgreens-agrees-pay-record-settlement-80-million-civil-penalties-under.

[3] For these same reasons, Relator's THFPA claims are also barred by the THFPA public disclosure bar. Tex. Hum. Res. Code § 36.113(b). Relator is not an original source as he provided no information to Texas that was independent of what was previously known and his Complaint did not materially add to the publicly disclosed allegations. Tex. Hum. Res. Code § 36.113(b)(2). Relator is therefore not entitled to a share of the opioid recovery.

*Gibbs* established supplemental jurisdiction which was later codified at 28 U.S.C § 1367. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). 28 U.S.C. § 1367(c) permits a district court to decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of State law; . . .; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." A finding of any one factor is sufficient for the court to exercise its discretion to dismiss supplemental state law claims. *Parker v. Scrap Metal Processors*, 468 F.3d 733, 743 (11th Cir. 2006).

        **1. The Court should decline to exercise supplemental jurisdiction where the federal claims were previously dismissed.**

As the Supreme Court noted in *Gibbs*, "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726. 28 U.S.C. § 1367(c)(3) grants the district court discretion to dismiss the state claims where the federal claims were previously dismissed. *Al's Serv. Ctr.*, 599 F.3d at 727. The Seventh Circuit has recognized a presumption in favor of dismissal of the state claims where federal claims were dismissed prior to trial as the "well-established law of this circuit court." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams Elecs. Games v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007); *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996). Once the federal claims are dismissed, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) (affirming district court's dismissal of state malpractice claim after dismissal of federal securities claims). "This presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial

8

concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479–80 (7th Cir. 2012).

The Seventh Circuit's presumption that all state law claims should be dismissed once the federal claims are dismissed rather than the district court "resolving them on the merits" applies here to the state law question raised by Relator. *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Relator fails to acknowledge that this Court retains the discretion to dismiss questions of supplemental state law at any time once the federal claims are resolved and further ignores the Seventh Circuit's presumption against retaining such state law questions. Relator in his procedurally improper motion instead raises only that it "makes no sense" (ECF #84 at ¶18) for this court to decline to exercise supplemental jurisdiction, thereby disregarding 28 U.S.C. § 1367(c) and federal precedent.

> 2. **Relator raises complex and novel issues of state law not yet decided warranting these state law questions to be sent to state court.**

Relator raises novel questions of Texas law as there is no Texas state-law precedent analyzing whether a consumer settlement constitutes an alternate remedy under the THFPA. The Global Opioid Abatement Settlement, from which Relator seeks a share, is governed by the Stipulated Judgment entered in Texas state court as well as Texas Government Code §§ 403.501–403.11, neither of which have ever been interpreted by a Texas state court. The novel and complex issues raised by Relator should be determined by a Texas state court which has the expertise and authority in interpreting Texas statutes and applying Texas law.

The district court may decline to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). As the Seventh Circuit reasoned, "[i]t is especially inappropriate for a federal court to make needless decisions of state

law where the court would not be interpreting or following established principles of state law, but rather would be required to decide difficult questions which the state courts have never addressed." *Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235 (7th Cir. 1984). The presumption against retaining supplemental jurisdiction once the federal claims were dismissed "is particularly strong where, as here, the state-law claims are complex and raise unsettled legal issues." *RWJ Mgmt. Co.*, 672 F.3d at 478.

Where "[t]he only significant legal questions ... are of state law," the "state courts are better suited than this Court to decide those questions, in part because they are better situated to accurately gauge the legislative intent behind the statutes in question and the policies guiding the common law issues involved." *Clemons v. City of Springfield*, 735 F. Supp. 309, 313 (C.D. Ill. 1990).

The State is only aware of one Texas state case that discussed the THFPA alternate remedy provision, and that discussion was merely dicta in an opinion addressing the state's sovereign immunity and the THFPA first to file bar. *State v. Ellis,* 681 S.W.3d 501, 512–13 (Tex. App.—Austin 2023, no pet.).

That Relator seeks a share of the Global Opioid Abatement Recovery Settlement raises further novel and complex issues as the Stipulated Judgment and the Texas Government Code restrict the allocation of the opioid settlement funds for specific uses, none of which include paying a *qui tam* relator share. Modification of the Stipulated Judgment, the Global Opioid Abatement Settlement, the Texas Agreement, and amendments to the Texas Government Code would be required for Relator to seek his requested relief. Declaration at ¶25.

For these reasons, Texas has an interest in interpreting its own statutes and questions of state law.

### 3. Exceptional circumstances and compelling reasons exist for declining to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4).

#### a. Complexities of the Opioid Abatement Recovery.

Relator is asserting a separate claim against each of the twenty-eight named plaintiff states and which would require this Court to adjudicate twenty-eight distinct claims in a single federal court action. *See Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 534–36, 541 (11th Cir. 2015) (holding it was an abuse of discretion to retain supplemental jurisdiction over novel and complex state-law claims hailing from nine states when considering judicial economy, convenience, fairness, and federal-state comity). Promotion of judicial economy, fairness, and comity at this juncture requires declination of supplemental jurisdiction. *Id.*

Further, as addressed more fully in the Declaration at Exhibit A, the Texas Global Opioid Abatement Settlement is complex: Texas and the PSC entered into a second separate settlement with Walgreens (Declaration at ¶7); payments are governed by Texas statute and are appropriated to a state agency (Declaration at ¶4); the vast majority of the payments go to subdivisions and not the State (Declaration at ¶4); the Texas recovery includes several different types of payments including Base Payments, Incentive Payments, and additional restitution payments and these payments are paid out differently by Walgreens (Declaration at ¶12); the Annual Remediation Payments are paid out over fifteen years so there is no guarantee that Texas will receive all allocated funds (Declaration at ¶13); and 15% of the funds are distributed to the opioid abatement account and 85% to the opioid abatement trust fund (Declaration at ¶17).

#### b. The THFPA does not mirror the federal False Claims Act.

The THFPA is not false claims act, thereby belying Relator's contention that this Court should retain supplemental jurisdiction because the state statutes all "parrot" the FCA. (ECF #84

at ¶18). Although similarities exist between the two statutes, the THFPA does not mirror the FCA. Among other differences, the elements required to establish liability under the THFPA differ substantially from the FCA's required elements (*compare* Tex. Hum. Res. Code § 36.002 *with* 31 U.S.C. § 3729(a)), and recovery under the THFPA action is for civil remedies and not damages as under the FCA (*compare* Tex. Hum. Res. Code § 36.052 *with* 31 U.S.C. § 3729(a)(1)(G)). As a result, the analysis of THFPA claims is a distinct and separate analysis from that of the FCA, including an analysis of the THFPA's alternate remedy provision. Tex. Hum. Res. Code § 36.109.

In matters involving state law, federal courts apply the same law that would be applied by the highest court of that state. *F.D.I.C. v. Wabick*, 335 F.3d 620, 624–25 (7th Cir. 2003) (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Comparing the TMFPA to the FCA, among other statutes, the Texas Supreme Court determined that state law, and not federal law, controls the Texas analysis because "[t]hese statutes, while similar in aim and tactic, employ materially different language. . ." *In re Xerox*, 555 S.W.3d at 535. The differences, where they exist, between the FCA and the THFPA are material and must be carefully considered in applying Texas law to the specific facts of every case, both in determining liability and in assessing appropriate civil remedies.

Relator's contention that the state statutes, including that of Texas, should be analyzed pursuant to the FCA because the federal courts are more experienced than the state courts in interpreting the FCA is erroneous and unsupported (ECF #84 at ¶18).

The complexities of the Global Opioid Abatement Settlement and the fact that the THFPA does not mirror the FCA are both compelling reasons for this Court to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(4).

12

### C. Relator's declaratory judgment motion is procedurally improper.

#### 1. Relator incorrectly seeks declaratory relief via motion.

Relator's failure to file a declaratory judgment suit requires denial of his motion for declaratory relief. 28 U.S.C. § 2201. "[A] party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Kam-Ko Bio-Pharm Trading Co. Ltd.-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009) (citations omitted).

"A request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment . . . [and is] not properly before the court if raised only in passing, or by motion. *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) (affirming district court's denial of party's request for declaratory relief seeking liability declaration in opposition filing). *See also Greenfield v. Monroe Clinic, Inc.*, No. 18 CV 50331, 2019 WL 2225982, at *3 (N.D. Ill. May 23, 2019) (denying defendants' motion for declaratory judgment where they failed to file counterclaims requesting declaratory relief or refer to the Declaratory Judgment Act in their answer or affirmative defenses). Relator also improperly seeks a declaratory judgment as against the named plaintiff states who he brought his *qui tam* claims on behalf of, and not the defendant.

Relator was required to file an action for declaratory judgment but failed to file a complaint or crossclaim. His motion should therefore be denied as not properly before this court.

#### 2. All *qui tam* claims were previously dismissed and the Court therefore lacks jurisdiction to grant Relator relief.

Relator's procedurally inappropriate motion for declaratory relief also ignores that no "actual controversy" exists since all claims as to all parties were dismissed – the state claims with prejudice by Order dated January 2, 2024 and the federal claims with prejudice by Order dated

13

April 21, 2025 (ECF #72). As no case or controversy exists any longer, this Court has no jurisdiction to decide Relator's motion for declaratory relief. 28 U.S.C. § 2201(a).

"[T]he existence of a case or controversy must be evaluated on a claim-by-claim basis." *Knowles Elecs., LLC v. Analog Devices, Inc.*, No. 11 C 6804, 2012 WL 1405735, at *1 (N.D. Ill. Apr. 23, 2012) (citations omitted), *see also Teva Pharms. USA, Inc. v. Abbott Lab'ys*, No. 04 C 2436, 2004 WL 2271827, at *5 (N.D. Ill. Oct. 7, 2004), *dismissed,* 120 F. App'x 352 (Fed. Cir. 2005) (Rule 42 voluntary dismissal). Here, as Relator acknowledges, the Texas claims, and all other state and federal claims, were dismissed. Relator's procedurally defective motion for declaratory relief is not a complaint and does not plead any claims. With no claims to evaluate, this Court lacks jurisdiction to grant declaratory relief.

Further, sovereign immunity bars Relator's request for declaratory relief. The Eleventh Amendment prevents a state from being sued in federal court by citizens of another state. U.S. Const. amend. XI. The THFPA also expressly does not waive sovereign immunity. Tex. Hum. Res. Code § 36.116.

## IV. CONCLUSION

For the reasons above, together with the Declaration at Exhibit A, Texas respectfully requests that this Court deny Relator's request for relief and decline to exercise supplemental jurisdiction over questions of Texas state law.

Respectfully submitted,

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**AMY SNOW HILTON**
Chief, Healthcare Program Enforcement Division

*/s/ Lynne Kurtz-Citrin*
**LYNNE KURTZ-CITRIN** (*admitted pro hac vice*)
Texas State Bar No. 24081425
Assistant Attorney General
Office of the Attorney General
Healthcare Program Enforcement Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1772
Lynne.Kurtz-Citrin@oag.texas.gov

**Counsel for the State of Texas**

### CERTIFICATE OF SERVICE

I certify that the foregoing document was served via the Court's ECF system to all counsel of record

*/s/ Lynne Kurtz-Citrin*
**LYNNE KURTZ-CITRIN**
Assistant Attorney General

15