ANNE E. LOPEZ 7609
Attorney General of Hawai'i

CHRISTOPHER J.I. LEONG 9662
Supervising Deputy Attorney General
Department of the Attorney General
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 586-1180
Facsimile: (808) 586-1205
Email: christopher.ji.leong@hawaii.gov

LANDON M. M. MURATA 7985
Deputy Attorney General
Department of the Attorney General
707 Richards Street, Suite 402
Honolulu, Hawai'i 96813
Telephone: (808) 586-1058
Facsimile: (808) 586-1077
E-mail: landon.m.murata@hawaii.gov

Attorneys for Plaintiff
STATE OF HAWAI'I

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. T.J. NOVAK, ) | |
| ) | |
| Plaintiffs-Relator, ) | Case No. 1:18-cv-05452 |
| ) | |
| v. ) | Judge Joan H. Lefkow |
| ) | |
| WALGREENS BOOTS ALLIANCE, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**STATE OF HAWAII'S MEMORANDUM IN OPPOSITION TO RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF HAWAII'S OPIOID ABATEMENT SETTLEMENT**

## I.  <u>FACTUAL BACKGROUND</u>

In early 2016, a large group of state Attorneys General, including the Hawai'i Attorney General, formed a multistate opioid working group ("Opioid Working Group") to address what appeared to be an ongoing national opioid crisis.  By 2017, the Opioid Working Group had begun investigating various entities related to their involvement in the national opioid crisis, including Defendant Walgreens Boots Alliance, Inc. ("Walgreens").   In September 2021, a multistate negotiating team that included members from California, Florida, Iowa, Illinois, North Carolina, Nebraska, New York, Pennsylvania, Tennessee, and Texas ("Negotiating Team") had a conference call with Walgreens to lay the framework to begin settlement negotiations.  The ensuing settlement talks between the Negotiating Team and Walgreens would continue for over a year.

Although Relator filed his complaint in the instant case in 2018, prior to the start of the Negotiating Team's settlement discussions with Walgreens, neither the investigation conducted by the Opioid Working Group or the negotiations with Walgreens were influenced by or benefitted from Relator's suit.  Long before Relator initiated the instant suit, the nature of Walgreens' misconduct and connection to the national opioid crisis was well-known and widely publicized.  For example, Delaware's Attorney General filed a public nuisance lawsuit against Walgreens on January 19, 2018, six months before Relator's suit was filed.  Similarly, Kentucky's Attorney General filed a public nuisance complaint against Walgreens on June 14, 2018, two months before relator's suit was filed.  Notably, both the Delaware complaint and the Kentucky complaint featured allegations similar to Relator's later suit, including pharmacists' failures to properly determine the validity of controlled substance prescriptions, a failure of pharmacists' so-called "corresponding responsibility" under state law.  Both complaints were

well-covered by major metropolitan or national media at the time of their filing.

In December 2022, a settlement agreement ("Master Settlement Agreement") was reached between Walgreens and a large number of settling states, including Hawaiʻi. Under the terms of the Master Settlement Agreement, states that opted to participate in the settlement ("Settling States") would do so via "consent judgments," typically filed in the Settling States' respective courts. These consent judgments were permitted to include state-specific intrastate allocation agreements, which would control the allocation of funds between a state (as a political entity) and its participating political subdivisions, which could include cities, counties, and so-called special districts, such as hospital districts or school districts.

In Hawaiʻi ("Hawaiʻi" or "State"), the Master Settlement Agreement was entered as Exhibit A to the Final Consent Judgment and Dismissal with Prejudice as to Defendant Walgreen Co., filed January 18, 2024, in *State of Hawaiʻi, ex rel. Anne E. Lopez, Attorney General v. CVS Health Corporation; CVS Pharmacy, Inc.; Walgreen Co.; And Walmart, Inc.*, First Circuit Court No. 1CCV-23-0001501 ("Consent Judgment")[1]. The Consent Judgment indicates that it summarizes and gives effect to the terms of the Master Settlement Agreement and that "in the event of a conflict between the terms of the [Master Settlement] Agreement (including its exhibits) and language in this [Consent] Judgment, the terms of the [Master Settlement] Agreement shall govern." (Consent Judgment, ¶ 2). It also states that "[n]othing in this summary document shall have the effect of expanding, diminishing, explaining, or otherwise modifying any term of the Agreement." The Consent Judgment also attaches as Exhibit B the Memorandum of Agreement Between the State of Hawaiʻi and Local Governments on Proceeds

---

[1] The Consent Judgment is available in full electronically at: https://nationalopioidsettlement.com/wp-content/uploads/2024/01/HAWAII-Consent-Judgment-Walgreens.pdf, and is attached hereto as Exhibit B.

Relating to the Settlement of Opioid Litigation, dated July 5, 2022 ("State-Subdivision Agreement"). The State-Subdivision Agreement is incorporated into the Consent Judgment pursuant to Paragraph 8 and is permitted by Exhibit O of the Master Settlement Agreement.

The Consent Judgment through its incorporation of both the Master Settlement Agreement and the State-Subdivision Agreement controls how much Hawaiʻi receives from the settlement; how much flows to the State versus Hawaii's participating subdivisions; and how those funds can be used. Nationwide, as in Hawaiʻi, the settlement's monetary provisions fall into three categories: (1) "Annual Remediation Payments," which comprise most of the settlement funds and are to be received in 15 payments between 2022 and 2036; (2) private attorneys' fees for subdivisions across the country, which Hawaiʻi does not receive; and (3) for those states that did not employ outside counsel, an "Additional Remediation Amount."

As discussed below, at the time of the settlement and continuing to this day, there exists tremendous uncertainty as to the amount participating states will ultimately receive from the Master Settlement Agreement. Beyond the uncertainty implicit in a payment stream lasting 15 years from a defendant with well-publicized financial difficulties in a highly competitive market facing increased consolidation,[2] the Master Settlement Agreement by design injects additional uncertainty. The largest portion of Walgreens's monetary payments are the "Annual Remediation Payments." These payments equal up to $4,788,165,456. (Consent Judgment, Exh. A, Exh. M-1). Hawaiʻi and its subdivisions are eligible to receive up to approximately 0.349% of the Annual Remediation Payments, or up to approximately $16,700,000 over the 15 years of

---

[2] See, e.g., "Sycamore Partners Completes Acquisition of Walgreens Boots Alliance (August 28, 2025), available at: https://www.walgreensbootsalliance.com/news-media/press releases/2025/sycamore-partners-completes-acquisition-walgreens-boots-alliance.

payments. (Consent Judgment, Exh. A, Exh. F-1). Walgreens does not make payments directly to settling states or participating subdivisions. Rather, it makes payments into a trust, and a settlement administrator calculates and distributes payments due to each participating state and its subdivisions.

What is certain, however, is that the Consent Judgment and Master Settlement Agreement provide no funds to state Medicaid coffers. While the Master Settlement Agreement provides a broad release of most opioid-related state claims against Walgreens, it is designed to address the opioid public health crisis and save lives, not reimburse state programs for any claims they may have had against Walgreens. Under the settlement, 95% of all Settlement Fund (Annual Remediation) payments, are to be spent on Opioid Remediation. (Consent Judgment, Exh. A). The Master Settlement Agreement defines Opioid Remediation as "[c]are, treatment, and other programs and expenditures … designed to (1) address the misuse and abuse of opioid products, (2) treatment or mitigate opioid use or related disorders, or (3) mitigate other alleged effects of, including on those injured as a result of, the opioid epidemic." (Consent Judgment, Exh. A). Exhibit E to the Master Settlement Agreement, which is incorporated by the Consent Judgment, provides exhaustive, albeit non-exclusive, examples of Opioid Remediation uses. The list of permitted uses includes, but is not limited to: purchasing Naloxone or other Federal Drug Administration-approved opioid overdose reversal drugs; providing medication-assisted treatment and other opioid-related treatments; providing wrap-around services to individuals with Opioid Use Disorder, including housing, education, and job training; and preventing the misuse of opioids, including through media campaigns and public education. (Consent Judgment, Exh. A). None of these uses include reimbursement to state Medicaid coffers. (Consent Judgment, Exh. A).

While the 95% Opioid Remediation use requirement applies to the State and its subdivisions as a whole, the State of Hawai'i is not permitted to use its Annual Remediation payments for anything but "future Opioid Remediation." (Consent Judgment, Exh. A). To the extent that any Annual Remediation payments are spent on non-Opioid Remediation uses in Hawai'i, it is participating subdivisions, not the State, that are permitted to make those non-Opioid Remediation expenditures.

In Hawai'i, much of the State's share has been spent to literally save lives - including through the purchasing and distribution of free, life-saving generic Naloxone and fentanyl test strips - not to provide recompense for Relator's alleged fiscal injury to the Hawai'i Medicaid Program. No funds from the Walgreens settlement have flowed or will flow to the Hawai'i Medicaid Program. The State cannot reimburse the Hawai'i Medicaid Program for losses, assuming arguendo there were such loses, without modification of the Consent Judgment and the Master Settlement Agreement.

Following the execution of the Master Settlement Agreement and pursuant to the releases set forth therein, the States approached Relator with the option to voluntarily dismiss the States as plaintiffs to the qui tam action. Relator refused and to comply with the terms of the Master Settlement Agreement, the named States were forced to intervene in the instant case for the limited purpose of filing a motion to dismiss the States' claims. Relator and the United States consented to the States' motion to dismiss. In January 2024, this Court entered an order granting the States' request; dismissing with prejudice the States' claims brought by Relator under each state's false claim act. The order also provided that "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant

have been resolved" - without indicating where such resolution would occur.

Subsequently, in April of 2025, the Court entered orders upon motions dismissing the federal claims with prejudice, purporting to retain jurisdiction over the state share of the Medicaid claims that had already been dismissed. ECF 72, Order at 3-4 ¶¶2, 3 (Apr. 21, 2025); ECF 82, Agreed Order of Dismissal at 1 ¶¶1, 2 (Oct. 23, 2025). The settling states, including Hawaiʻi, were not parties to these motions, as they had already been dismissed from the instant case with prejudice, and were not advised before the motions or the proposed orders were filed.

On November 26, 2025, Relator thereafter filed the instant Motion for a Declaratory Judgment that Relator is Entitled to a Share of the States' Settlement with Walgreens that Settled Relator's State FCA Claims ("Instant Motion"). In the Instant Motion, Relator asks that the Court issue a declaratory judgment that Relator is entitled to at least a 15% share "of the value of the States' Settlement that is allocated to the release of [Relator's] state FCA claims." Relator makes this request for the first time via motion in a case where all claims Relator had previously brought against Walgreens and on *behalf of* Hawaiʻi have already been dismissed with prejudice. Relator also acknowledges in the Instant Motion that the states "never asserted claims against Walgreens regarding the illegal opioid reimbursement requests to their Medicaid programs" in the context of the Opioid Abatement Settlement. Relator nevertheless seeks to have the Court impose a Relator's share upon the State's legally unrelated Opioid Abatement Settlement.

The State submits the instant Memorandum in Opposition to Plaintiff-Relator's Motion for a Declaratory Judgment that Relator is Entitled to a Share of Hawaii's Opioid Abatement Settlement ("Opposition") respectfully requesting the Court deny the Instant Motion in its entirety. As more fully set forth below, the State argues in its Opposition that (1) the Instant Motion is improper and must be denied, (2) even if the Court were to deem the Instant Motion

6

proper, the Court lacks jurisdiction to hear the motion and it must be denied, and (3) even if the Court were inclined to hear the motion on the merits, Relator has failed to meet its burden of proof and is thus not entitled to the requested declaratory relief.

## II. ARGUMENT

### A. RELATOR'S "MOTION FOR A DECLARATORY JUDGMENT" IS IMPROPER AND MUST BE DENIED

A party cannot simply file a *motion* in an ongoing case to request declaratory relief; rather, the party must bring an *action* under the Declaratory Judgment Act to properly seek such relief. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995); *see also* 28 U.S.C. § 2201 (requiring "the filing of an appropriate pleading"). Although the Seventh Circuit does not appear to have addressed this issue, the Ninth Circuit has held that "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) (quoting *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009)). Accordingly, "[r]equests for declaratory judgment are not properly before the court if raised only in passing, *or by motion*." *Id.* (emphasis added); *see also Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) ("Insofar as plaintiffs seek a motion for a declaratory judgment, plaintiffs' motion is denied because such a motion is inconsistent with the Federal Rules."). Furthermore, the Declaratory Judgment Act "is not an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (citing *Skelly Oil v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

In the instant case, the only causes of action relating to Hawai'i that were before this Court – causes of action that have since been dismissed with prejudice – were Hawaii's claims against Walgreens brought pursuant to § 661-21(a)(1) of the Hawaii Revised Statutes ("HRS").

7

Rather than file a new and separate complaint to initiate an action seeking a declaratory judgment *against Hawai'i*, Relator filed the instant motion in a case where Relator initiated the suit on Hawaii's behalf. Because seeking declaratory relief in this manner is inconsistent with the Declaratory Judgment Act and the Federal Rules, and thus improper, on this basis alone, Relator's motion must be denied.

    **B.    EVEN IF THE COURT DEEMS RELATOR'S MOTION PROPER, THE COURT LACKS JURISDICTION OVER RELATOR'S ENTIRELY STATE LAW CLAIM**

        **1.    There is No Case or Controversy Involving Hawai'i That Would Allow This Court to Exercise Jurisdiction Over Relator's Motion**

Federal courts are courts of limited jurisdiction restricted to hear specific types of cases and controversies as authorized by the United States Constitution and federal statutes enacted by Congress. *East Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 957 (7th Cir. 2021). In the instant case, Hawai'i and its claims were dismissed with prejudice on January 2, 2024. ECF 33. Furthermore, as Hawai'i had been dismissed with prejudice in January of 2024, it did not receive notice or have an opportunity to be heard as to Relator's April 2025 request for this court to maintain supplemental jurisdiction over Relator's entirely state law claims. Nevertheless, even if Hawai'i had so consented, parties cannot agree to confer federal subject matter jurisdiction where it does not already exist by law. *Pittsburgh, C. & St. L.R. Co. v. Ramsey*, 89 U.S. 322 (1874). As a result, there is no case or controversy before this court involving Hawai'i, and this court no longer has jurisdiction over Hawai'i.

        **2.    The Court Cannot and Should Not Exercise Supplemental Jurisdiction Over Relator's Motion**

While the State acknowledges that in any civil action in which a court has original federal jurisdiction, the court may, in its discretion, exercise supplemental jurisdiction over state law

claims, such claims must be "so related to the claims supported by original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The plain language of section 1367 "makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Rivera v. Allstate Ins. Co.*, 913 F.3d 603, 617 (7th Cir. 2018) (citing *Herman Fam. Revoc. Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001)).  Additionally, a court may also decline supplemental jurisdiction when (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the federal claims, (3) the federal claims have been dismissed, or (4) there are other compelling reasons to decline jurisdiction.

In the instant case, all federal claims - including Relator's parallel claim to a share of the federal settlement recovery - were fully dismissed with prejudice on October 23, 2025.  ECF 82, Agreed Order of Dismissal at 1 ¶ 1.  "[W]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims."  *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010).  While this presumption is rebuttable, courts have held that "it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479-480 (7th Cir. 2012) (citing *Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)).  Accordingly, as there are no claims for which "the district court has a hook of original jurisdiction on which to hang" supplemental jurisdiction over the state law claims, the Court should decline to exercise supplemental jurisdiction over the purely state law issues in Relator's motion.  *See id.*; *see also Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (holding that when all federal claims in a lawsuit are dismissed, "the district court

should relinquish jurisdiction over pendent state-law claims"); *Murphy v. Collins*, No. 25-cv-611, 2025 WL 3496141, at *2 (N.D. Ind. Dec. 4, 2025) (finding that "without a claim that the Court can appropriately hear based on federal law, the Court has no supplemental jurisdiction over potential state-law claims").

Additionally, even if Relator were to file a proper declaratory relief *action* against the State under Hawaiʻi law, because such action would not involve any federal question, this court would still lack jurisdiction over Relator's entirely state law claim. *See Bonner v. Repairers of the Breach, Inc.*, No. 24-cv-1636-PP, 2025 WL 2021047, at *2 (E.D. Wis. July 19, 2025) (federal court may hear state law claims only if claims exist over which there is diversity or federal question jurisdiction that are "so related" to the diversity or federal question claims that "they form part of the same case or controversy"). Any attempt by Relator to sue Hawaiʻi in *federal court* for a share of the Opioid Abatement Settlement would be barred by the Eleventh Amendment because (1) Hawaii would not consent to such suit in federal court, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974), and (2) the Eleventh Amendment requires courts to resolve immunity issues before entering judgment on the merits of underlying claims. *Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896, 907 (C.D. Ill. 2012); *see also McHugh v. Illinois Department of Transportation*, 55 F.4th 529 (7th Cir. 2022).

Finally, although the Hawaiʻi False Claims Act ("HFCA"), HRS § 661-21, et seq., contains a similar alternate remedy provision to the alternate remedy provision, the courts of the State of Hawaiʻi have not yet had an opportunity to interpret or apply those provisions to a state case. The interpretation and application of Hawaii's alternate remedy provision to the facts of

this case thus presents "a novel or complex issue of state law" which presents yet another basis

for the Court to decline jurisdiction.

**C.      EVEN IF THE COURT WERE INCLINED TO DECIDE RELATOR'S MOTION ON THE MERITS, RELATOR HAS FAILED TO CARRY HIS BURDEN OF PROOF IN ESTABLISHING A RIGHT TO A SHARE OF HAWAII'S OPIOID ABATEMENT SETTLEMENT**

**1.      The Claims Pursued in the Opioid Abatement Settlement Were Not the Same as the Claims that Dismissed with Prejudice in the Instant Case**

Under the Federal False Claims Act ("FCA") - upon which the Hawaiʻi False Claims Act

was modeled - alternate remedy proceedings from which a relator can recover "must redress the

same type of falsity and fraud claims that otherwise could be pursued by a private relator's qui

tam lawsuit under the False Claims Act." *United States v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir.

2021).  In interpreting the alternate remedy provisions of the FCA, courts have held that

"Congress provided for the relator to share in the recovery if and when the government pursues

an 'alternate remedy' specifically for a false or fraudulent taking of governmental money or

property."  *Id*.  "The statute does not reward relators any time the government pursues any

"alternate claim or cause of action" arising from the same facts and circumstances. In other

words, it is the nature of the legal claim - the fraudulent or false deprivation of a monetary or

property interest - and not the commonality of facts that determines a relator's right to share in an

alternative recovery."  *Id*. at 57 (D.C. Cir. 2021).  If the alternate proceeding seeks "recompense

for some other type of claim that the relator could not have brought, then the proceeding . . . is a

different legal claim altogether, arising beyond the False Claims Act's borders," and thus beyond

Relator's reach.  *Id*.

In the instant case, it is undisputed that while the public nuisance and consumer

protection claims that formed the basis for the States' Opioid Abatement Settlement with

Walgreens may share some underlying facts with the HFCA claims that were dismissed with prejudice in the instant case, they are completely different causes of action with different elements that needed to be proved. The public nuisance and consumer protection claims are not the type of claims that Relator could have brought in the HFCA case and it was these public nuisance and consumer protection claims that were being investigated and pursued by the multistate opioid working group ("Opioid Working Group") in the years leading up to the Opioid Abatement Settlement; not Relator's HFCA allegations. Relator's own motion concedes that "[t]he States never asserted claims against Walgreens regarding the illegal opioid reimbursement requests to their Medicaid programs." Relator's Motion, ¶ 3. For these reasons, Relator has no right to a share of Hawaii's settlement of those claims, particularly given that the proceeds from the Opioid Abatement Settlement are largely devoted to prospective nuisance abatement, with no funds allocated to resolve Medicaid claims or permitted to be distributed to the Hawaiʻi Medicaid Program. *See United States v. Novo A/S*, 5 F.4th 47, 57 (D.C. Cir. 2021) ("To that same point, if Congress had wanted the relator's recovery for an alternate remedy to turn on whether the government's action arose out of the same facts, it would have used the language that it employed in the immediately preceding subsection. Subsection 3730(c)(4) addresses discovery matters when the government prosecutes 'a criminal or civil matter arising out of the same facts[.]' 31 U.S.C. § 3730(c)(4). But Congress did not draw that same line in subsection 3730(c)(5). Instead, Congress changed course and tied the relator's recovery of an alternate remedy to the nature of the claim pursued by the government, not to the facts from which the claim arose. That is a textual distinction that makes a difference."). *See also United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*, No. 15-CV-728-CKK-MAU, 2025 WL 1113407, at *16–17 (D.D.C. Apr. 15, 2025) ("Comparing the two provisions, it is clear that the

12

basis for imposition of an FCC default payment is different from the basis of Vermont's FCA claims. Default payments are not designed to seek recovery for any perpetration of fraud, "the hallmark of a claim litigable under the [FCA]."); *United States v. Molina Healthcare of New Mexico, Inc.*, No. CIV 16-1148 JB/KK, 2024 WL 4002950, at *17 (D.N.M. Aug. 30, 2024) (Noting that a factual overlap between a relator's claim and the Government's later remedy is not enough and that while factual similarity can be important "it is not enough to seal the deal."). Accordingly, Relator's Motion should be denied.

### 2. Hawaii's Recoveries Pursuant to the Opioid Abatement Settlement are Not the Type of Recoveries That Would Amount to an Alternate Remedy to Relator's Qui Tam Action

Similar to the above discussion on the type of claim that Hawaiʻi pursued in negotiating the Opioid Abatement Settlement, Relator's right to recovery under the alternate remedy provisions of the HFCA "is limited to a share of the settlement of the claim that they brought." *Rille v. PricewaterhouseCoopers LLP*, 803 F.3d 368, 372 (8th Cir. 2015). "When the government recovers from a defendant in an alternate proceeding, … a relator is not entitled to a share of whatever recovery the government obtains, just because the government's claim could have been added to the original action brought by the relator." *Id*. at 373. "A relator seeking recovery must establish that there exists an overlap between Relator's allegations and the conduct discussed in the settlement agreement." *Id*. "The plain text of the False Claims Act confines qui tam plaintiffs to recoveries only for claims seeking relief based on the type of fraud or falsehoods covered by that statute." *Unites States ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 49 (D.C. Cir. 2021).

In the instant case, because the claims that were pursued and settled in the Opioid Abatement Settlement are not the type of claim cognizable under the Hawaiʻi False Claims Act

and neither the Covered Conduct nor the monies recovered by the Opioid Abatement Settlement relate to the submission of any false claims for payment to the Hawai'i Medicaid Program, Relator is not entitled to any portion of the settlement amount. See e.g. *United States ex rel. Jahr v. Tetra Tech EC, Inc.*, No. 13-CV-03835-JD, 2025 WL 3124335, at *1 (N.D. Cal. Nov. 7, 2025) ("Because the CERCLA claim is not a 'type of claim cognizable under the False Claims Act' and does not have the element that Tetra Tech EC engaged in 'a false or fraudulent effort to obtain money or property from the United States,' … the relators do not have an entitlement to receive a share of the $40 million paid by Tetra Tech EC as part of the CERCLA consent decree.").

Together with the foregoing, the fact that the vast majority of the payments to be made under the Opioid Abatement Settlement must be spent on opioid abatement and the State has no authority to use any of those monies to reimburse the Hawai'i Medicaid Program should leave no doubt that Relator is not entitled to any portion of the settlement monies and Relator's motion should be denied.

### 3. Particularity of the allegations

A Relator whose qui tam would be subject to dismissal under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure would not be eligible to assert any claim for an alternate remedy. See *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007) ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government.").

In the instant case, it would be difficult for Relator's complaint to survive either a 12(b)(6) or 9(b) challenge. Relator's August 2018 complaint alleged no specific facts related to any state other than Illinois, which makes it facially insufficient as to Hawai'i pursuant to Rule

9(b). ECF 1, Complaint ¶¶41-71.  *United States ex rel. Publix Litig. P'ship, LLP v. Publix Super Mkts, Inc.*, Case No. 8:22-cv-2361-TPB-AAS, 2025 WL 2468832, (M.D. Fla. Aug. 27, 2025) is illustrative.  In *Publix Super Mkts, Inc.*, the relator alleged a similar theory of liability to the Relator in the instant case.  The *Publix Super Mkts, Inc.* court found that even though the defendants "may certainly have been engaging in bad business practices and procedures that might support a negligence theory, nuisance theory, or even violations of the Controlled Substances Act," those practices do not "support a claim under the False Claims Act."  *Id.* at *7. Relator has not even attempted to show that his allegations are distinguishable enough to survive Rule 9(b).  Therefore, Relator should be barred from asserting any right to the unrelated Opioid Abatement Settlement proceeds under the HFCA's alternate remedy provisions and Relator's motion should be denied.

### III.  <u>CONCLUSION</u>

Accordingly, the State respectfully requests that the Court deny Relator's Motion for Declaratory Judgment with prejudice or, in the alternative, direct Relator to seek relief under the alternate remedy provisions of the HFCA in a court of competent jurisdiction in the State of Hawaiʻi.

DATED: Honolulu, Hawaiʻi, February 3, 2026.

ANNE E. LOPEZ
Attorney General

By:     */s/ Christopher J.I. Leong* _____
CHRISTOPHER J.I. LEONG
Supervising Deputy Attorney General
LANDON M. M. MURATA
Deputy Attorney General
  *Deputy Attorneys General for the State of Hawaiʻi*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 3, 2026, a true and correct copy of the foregoing document was served via the Court's ECF/electronic mailing system upon all counsel of record.

DATED:  Honolulu, Hawaiʻi, February 3, 2026.

*/s/ Christopher J.I. Leong*
CHRISTOPHER J.I. LEONG