UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, *ex rel.* T.J. Novak,<br><br>Plaintiffs-Relator,<br><br>v.<br><br>Walgreens Boots Alliance, Inc.,<br><br>Defendant. | Case No. 18 CV 5452<br><br>Judge Joan H. Lefkow |

**STATE OF MINNESOTA'S OPPOSITION TO RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATES' SETTLEMENT WITH WALGREENS**

**INTRODUCTION**[1]

Relator seeks a share of Minnesota's $67 million settlement[2] with Defendant Walgreens for its role in the nationwide opioid crisis. While the Walgreens Settlement Agreement ("Agreement")[3] provides a broad release of claims, including *qui tam* actions, it did not arise from Medicaid fraud claims but rather from consumer protection and public nuisance claims. *See State by Ellison v. CVS Pharmacy, Inc., Walgreen Co, and Walmart, Inc.*, No. 62-CV-24-2062, Consent Judgment (Minn. 2d Dist. May 30, 2024) ("Consent Judgment") at 1.[4] More importantly, the Agreement's terms—in addition to Minnesota law—restrict the distribution and use of opioid settlement funds within Minnesota.

---

[1] Minnesota joins in and incorporates herein by reference the introduction section of the Joint Opposition of the States of North Carolina and Tennessee, which includes a detailed factual and legal background of the Relator's action and the multistate Walgreens settlement that is the subject of Relator's motion.
[2] Minnesota's settlement was part of a $5.52 billion, 46-state settlement.
[3] *Walgreens Settlement Agreement*, April 12, 2024, https://www.ag.state.mn.us/opioids/docs/Walgreens_Settlement.pdf.
[4] Consent Judgment, May 30, 2024, https://www.ag.state.mn.us/opioids/docs/Walgreens_ConsentJudgment.pdf.

The Agreement does not direct settlement funds to resolve fraud claims on behalf of the states' Medicaid programs, and no portion of the Agreement provides for payment to state Medicaid programs, the federal government, or the Relator, whose complaint does not contain any specific facts or allegations that directly pertain to Minnesota. To the contrary, the Agreement restricts a vast majority of the settlement funds to opioid remediation, Agreement §§ V.B, V.D.1-2, V.E.2, reflecting the Agreement's purpose to tackle the opioid crisis and save lives, not reimburse state programs for claims they may have had against Walgreens.

Further, the Agreement permits each state to develop its own approach for allocating the settlement funds within the state. Agreement § V.D.1-2. In Minnesota, pursuant to a Memorandum of Agreement between the state and local governments, opioid settlement funds are allocated as follows: 75% directly to cities and counties, and 25% directly to the state. *See* Amended Minnesota Opioids State-Subdivision Memorandum of Agreement ("MOA") § II.B.[5] The MOA requires that opioid settlement funds "be utilized only for future opioid remediation activities", MOA § IV.A., and includes a list of Approved Uses—a defined term in the MOA—none of which include reimbursement of Medicaid claims or payments related to the Minnesota False Claims Act ("MFCA"). *See* MOA Exhibit A. In fact, the MOA explicitly states that "[r]eimbursement by the State or Local Governments for past expenses are not Approved Uses." MOA § I. Again, the Approved Uses make clear that opioid settlement funds must be used on programs or strategies to abate the opioid epidemic.

Crucially, Minnesota law similarly requires that opioid settlement funds received by the state must be deposited in an opioid epidemic response fund and used for opioid abatement purposes designed to abate the opioid crisis, overseen and directed by Minnesota's Opiate

---

[5] MOA, https://www.ag.state.mn.us/opioids/docs/MN_MOA.pdf.

Epidemic Response Advisory Council ("OERAC"). Specifically, Minnesota Statutes section 16A.151, subd. 2(e) states:

> [a]ny money received by the state resulting from a settlement agreement or an assurance of discontinuance entered into by the attorney general of the state, . . . on behalf of the state or a state agency, related to alleged violations of consumer fraud laws in the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids, must be deposited in the settlement account established in the opiate epidemic response fund under section 256.043, subdivision 1.

Minnesota Statutes section 256.043, subd. 3 requires that, after certain appropriations are made, settlement funds be "appropriated to the commissioner of human services to award grants as specified by the Opiate Epidemic Response Advisory Council in accordance with section 256.042," which in turn directs OERAC to recommend opioid abatement "projects and initiatives to be funded[.]" Minn. Stat § 256.042, subd. 1(b)(3). In sum, the Agreement, the MOA, and Minnesota law operate in conjunction to prohibit Minnesota from using settlement funds for anything other than opioid remediation.

In Minnesota, like in all states, the Agreement was implemented through the filing of a Consent Judgment in state court. Agreement § VIII.B. The Consent Judgment, entered by the Ramsey County District Court on May 30, 2024, approved the Agreement and gave effect to its terms. Consent Judgment at 1. It addressed allocation within Minnesota, approving the MOA as the means by which settlement payments will be allocated within the state. *Id.* at 4 ¶ 8. Neither the Consent Judgment nor the Agreement provides funds to reimburse state Medicaid coffers or to the Relator.

As such, no settlement funds from the agreement have flowed or will flow to state Medicaid coffers, as would be the case if the settlement were related to the MFCA. Minn. Stat. § 15C.15,

subd. 1. Rather, pursuant to the Agreement, the MOA, and state law, settlement funds have been flowing to the state and local governments within Minnesota. Minnesota cannot provide the relief the Relator seeks without modifying the Agreement, the MOA, and amending state law, none of which can be done via the pending motion. In addition to the above, Relator's motion is improper, his claims are invalid as he alleges no specific facts related to Minnesota, and the Court lacks jurisdiction. Accordingly, the Court should deny Relator's motion.

## ARGUMENT[6]

I. **DECLARATORY MOTION IS IMPROPER IN THIS LAWSUIT.**

    A. **Declaratory judgment cannot be sought because it was neither pled in the complaint nor is against parties named as defendants.**

Relator's pending motion should be denied for the simple reason that it is procedurally improper. "A party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment." *Kam-Ko Bio-Pharm Trading Co., Ltd. v. Mayne Pharma (USA) Inc.*, 560 F.3d 935, 943 (9th Cir. 2009).[7] Moreover, Relator has failed to amend his complaint or seek permission to amend. Fed. R. Civ. P. 15.[8] Nor has Relator sought to add the State of Minnesota as a party to bring a crossclaim. Fed. R. Civ. P. 13(g), 20.

Not permitting Relator to seek an unpled Declaratory Judgment action through a motion is not a mere formality but reflects the alignment of the parties as pled in Relator's complaint. In a *qui tam* action under the MFCA, the relator brings the claim on behalf of the state as well as on

---

[6] Because the same arguments apply equally to Minnesota, this brief largely mirrors North Carolina's and Tennessee's Joint Opposition, substituting Minnesota statutory references and state-specific facts where relevant and appropriate.

[7] District courts in this Circuit have ruled similarly. *See, e.g. Sisson v. Gowdy*, No. 1:22-cv-00514-JPH-MJD, 2023 WL 2973768 (S.D. Ind. Apr. 17, 2023).

[8] While Rule 15(b)(2) allows for issues not raised in the complaint to be addressed, those issues may only come before the court upon the parties' express or implied consent. Fed. R. Civ. P. 15(b)(2). The states recognized this request would be deferred, but it was never before the Court by Relator's filing, and thus no state was placed on notice Relator would attempt to litigate these matters in this forum.

his own behalf. Minn. Stat. § 15C.05. Minnesota was not named by Relator as a defendant (or a cross-claim defendant) in the lawsuit. Instead, the situation is precisely the opposite: Relator's role in this lawsuit as currently pled is to "stand[] in the shoes of the government[s.]" *United States ex rel. Robinson v. Healthnet Inc.*, 124 F.4th 511, 514 (7th Cir. 2024). Relator cannot hijack his sole-pled role of standing in the shoes of the states to seek entry of judgment against the parties on whose behalf he purported to bring the action.

> **B. Declaratory judgment cannot be sought through a motion in the same lawsuit where the predicate state law claims were already dismissed with prejudice.**

The only causes of action before this Court related to the State of Minnesota were the claims under the MFCA. These claims were "dismissed with prejudice" by this Court in January 2024. January 2024 Order at 2 ¶ 1. Accordingly, there is no live claim over which this Court has any jurisdiction to proceed with respect to the State of Minnesota.

Indeed, even had Minnesota's settlement with Walgreens been entered by this Court rather than by a Minnesota state court,[9] this Court would be without jurisdiction over subsequent disputes. "[W]hen a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007).[10] Here, Relator's MFCA claim was dismissed with prejudice by the Court. The Court may not retain jurisdiction over disputes involving those claims despite that dismissal.

---

[9] While this Court entered a settlement resolving federal FCA claims, that settlement does not address state claims against Walgreens and Relator's claim for a share of that settlement has already been fully resolved.
[10] Relator relies on *United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 342 F.3d 634 (6th Cir. 2003) ("*Bledsoe I*"). *Bledsoe I* involved a case where the federal government had not intervened to dismiss the original *qui tam* case (or to take any other action) and where the relator still had a live *qui tam* claim. *Id*. at 647. Here, the States did intervene to dismiss their claims and there is no live claim under the MFCA. Moreover, the demand for a relator share from the federal government in *Bledsoe I* was a question of federal law over which any federal court would have federal question jurisdiction.

## II. STATUTORY AND CONSTITUTIONAL BARRIERS PREVENT THIS COURT FROM ENTERING A DECLARATORY JUDGMENT AGAINST THE STATES.

### A. The Court does not have diversity or federal question jurisdiction over a declaratory judgment action against Minnesota that arises under state law.

Relator asks this Court to rule on a question of Minnesota law, in addition to the state law of 27 other states. Even if the motion were procedurally proper, the Court has neither diversity nor federal question jurisdiction over claims against the State of Minnesota that arises purely under state law.

The question of diversity jurisdiction can be quickly resolved. "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

Courts may exercise federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, a court may issue a declaratory judgment "in a case of actual controversy within its jurisdiction[.]" 28 U.S.C. § 2201(a). However, a court may only maintain jurisdiction over a declaratory judgment action when a hypothetical suit under the same set of facts would satisfy the well-pleaded complaint rule to confer federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16-17 (1983). In other words, 28 U.S.C. § 2201 cannot be the sole federal law at issue in the dispute. The Seventh Circuit applies the following test: "[I]n an action for declaratory judgment the positions of the parties are reversed: the declaratory-judgment plaintiff would have been the defendant in the anticipated suit whose character determines the district court's jurisdiction[.]" *DeBartolo v. HealthSouth Corp.*, 569 F.3d 736, 741 (7th Cir. 2009); *see also Capitol Broad. Co. v. City of Raleigh*, 104 F.4th 536, 540 (4th Cir. 2024) ("Regardless of which roles the parties take on in the hypothesized coercive suit, if *that* suit would satisfy the well-pleaded complaint rule, then the overarching declaratory judgment action does too.")

There is no hypothetical lawsuit involving Relator's disputed demand to a relator's share over which this Court would have subject matter jurisdiction. The only possible action by Relator against the State of Minnesota arises under state law—the alternate remedy provision found in Minn. Stat. § 15C.06(c)—over which this court has neither diversity nor federal question jurisdiction. Relator's declaratory judgment action, which arises under state law, fails under the Seventh Circuit's federal question jurisdictional test.

> **B. The Court should decline supplemental jurisdiction over pure state law questions when the federal law claims have been fully resolved.**

The Court may exercise supplemental jurisdiction over state claims when they are related to the claims within its original jurisdiction. 28 U.S.C. § 1367(a). But a court may decline supplemental jurisdiction when (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the federal claims, (3) the federal claims have been dismissed, or (4) there are other compelling reasons to decline jurisdiction. *Id.* § 1367(c).

The United States Supreme Court recently held that "with any federal anchor gone, supplemental jurisdiction over the residual state claims disappears as well." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025); *see also Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (holding that when all federal claims are dismissed, "the district court should relinquish jurisdiction over pendent state-law claims"). Courts therefore only retain federal jurisdiction over pendent state claims when "unusual circumstances exist." *Hawkins v. Trustees of Ind. Univ.*, 83 F. Supp. 2d 987, 1002 (S.D. Ind. 1999). The Court may consider factors including "judicial economy, convenience, fairness and comity" when making this determination. *Id.*

Here, the federal False Claims Act claims that originally gave this court federal question jurisdiction over the case were fully dismissed with prejudice on October 23, 2025. ECF 82,

Agreed Order of Dismissal at 1 ¶ 1.  Further, the relevant factors weigh strongly against the exercise of jurisdiction.  Most notably, the claim raises a novel and complex state law issue regarding allocation of opioid settlement funds since Minnesota law requires that such funds be spent on opioid abatement.  *See* Minn. Stat. §§ 16A.151, subd. 2(e)[11], 256.043, subd. 3, and 256.042 (directing funds to abatement).  The Court will best promote judicial economy, fairness, and comity with state courts by declining jurisdiction over Relator's state law claims.  Minnesota state courts are best poised to navigate complex and novel state law issues regarding alternate remedies, state law allocation issues, and resolve disputes regarding their own settlement orders.

        **C.**      **The Court must afford full faith and credit to Minnesota's Consent Judgment effectuating the Agreement.**

The Court must give full faith and credit to Minnesota's Consent Judgment.  Federal courts are required to treat state court judgments as valid and enforceable. 28 U.S.C. § 1738.  In the Seventh Circuit, a state court settlement is treated the same way in federal court as it would be in state court.  *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000) (upholding state settlement and requiring lower court to apply the same preclusion principles as a state court would).

Here, the Ramsey County District Court entered the Consent Judgment incorporating the Agreement.  Further, the Agreement explicitly states that "the court that entered the Relevant Consent Judgment"—here, the Ramsey County District Court—retains jurisdiction to resolve disputes about the subject matter of the settlement. Agreement § VI.F.1.  The Court must honor that Consent Judgment.  Ordering a declaratory judgment in federal court would directly contradict the Consent Judgment, which does not provide for—and in fact prohibits—a relator's share.  To

---

[11] In 2019, the Minnesota legislature amended Minnesota Statutes section 16A.151 to require opioid settlement funds to be directed solely to opioid abatement.  To the extent there is a conflict between 16A.151 and the alternative remedy provision in Minnesota Statutes section 15C.06, 16A.151 would govern as the more specific and later-in-time law.  *See* Minn. Stat. § 645.26, subds. 1, 4.

the extent that Relator wants relief from the Consent Judgment, he must seek that relief from the state court that entered it.

And as noted above, such relief would be improper under Minnesota law and the Consent Judgment effectuating the Agreement in Minnesota, both of which direct the spending of state funds in a manner inconsistent with them going to Relator. *See* Minn. Stat. §§ 16A.151, subd. 2(e), 256.043, subd. 3, and 256.042 (directing funds to abatement); MOA § IV.A (same). In any event, this issue must be resolved by the state court that entered the judgment.

### D. The Eleventh Amendment bars the federal court alternate remedy action.

Suits against states for monetary damages are barred by the Eleventh Amendment. A suit for monetary damages is determined by whether the action would deplete the state treasury. *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775 (7th Cir. 1991). "[D]eclaratory relief should not be awarded where the [E]leventh [A]mendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993).

There is no question that Relator's request for an alternate remedy from a portion of the State's opioid settlement with Walgreens is a request for recovery of money from the State treasury. Pursuant to Minnesota Statutes section 16A.151, subd. 2(e), opioid settlement funds "must be deposited in the settlement account established in the opiate epidemic response fund under section 256.043, subdivision 1." Minnesota Statutes section 256.043, subdivision 1 states that "[t]he opiate epidemic response fund is established in the state treasury."

While a state may waive Eleventh Amendment immunity explicitly, *Lane v. Pena*, 518 U.S. 187, 192 (1996), the MFCA does not contain any language that has unequivocally abrogated Eleventh Amendment immunity. Therefore, Eleventh Amendment immunity bars Relator's

request for a declaratory judgment.[12]  It is irrelevant to Eleventh Amendment analysis whether the state law alternate remedy provision allows for Relator to obtain a judgment against Minnesota in state court because "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999).

### III. EVEN IF A DECLARATORY JUDGMENT MOTION IS PROCEDURALLY PROPER, THE MOTION SHOULD BE DENIED.

#### A. Relator has no right to a share of the Agreement's settlement funds, because the Agreement resolved claims that Relator could not assert in his *qui tam* suit.

Alternate remedy proceedings from which a relator can recover "must redress the same type of falsity and fraud claims that otherwise could be pursued by a private relator's *qui tam* lawsuit under the False Claims Act." *United States v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021). If the alternate proceeding seeks "recompense for some other type of claim that the relator could not have brought, then the proceeding . . . is a different legal claim altogether, arising beyond the False Claims Act's borders," and thus beyond a relator's reach. *Id.*[13]

It is undisputed that Relator could not bring the public nuisance and consumer protection claims that formed the basis for Minnesota's settlement with Walgreens.  For these reasons, he has no right to a share of the settlement of those claims, particularly given that the proceeds from those settlements are devoted to prospective opioid abatement, with no funds specifically allocated to resolve Medicaid claims or directed to state Medicaid programs.

---

[12] Although the States intervened for the limited purpose of dismissing their *qui tam* claims against Walgreens, that action did not waive immunity from suit for all claims, much less Relator's motion for a relator's share against the States.  Instead, it provided that Relator was not barred from later proceeding, in an otherwise appropriate forum, to litigate its claim to a relator's share. *See* January 2024 Order at 2 ¶ 3.
[13] Minnesota law is similar to federal law here. *Compare* Minn. Stat. § 15C.06(c) *with* 31 U.S.C. § 3730(c)(5).

## B. Relator's original *qui tam* claim is invalid, which eliminates any entitlement he might have had to any alternate remedies.

Even if Relator can assert a claim for share of settlement proceeds from causes of action he could not assert, he is still not entitled to a share because his *qui tam* suit is not valid. *See, e.g., United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007) ("We read the relevant statutory provisions to mean that a relator is not entitled to a share in the proceeds of an alternate remedy when the relator's *qui tam* action under [the FCA] is invalid[.]").

### 1. The Public Disclosure Bar Renders Relator's Claims Invalid

The MFCA, like the federal FCA, contains a provision requiring dismissal of a *qui tam* claim when substantially the same allegations or transactions as alleged in the claim were already publicly disclosed, whether in a civil action, administrative hearing, a legislative or state report, or from the news media. Minn. Stat. § 15C.05(f).

The Seventh Circuit has adopted a three-step analysis to determine when a *qui tam* claim must be dismissed pursuant to the public disclosure bar. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). First, courts are directed to determine whether the allegations in the complaint have been "publicly disclosed" through an enumerated channel. *Id.* If so, the court must then determine whether the relator's suit is "based upon" or "substantially similar to" the publicly disclosed allegations. *Id.* at 913, 920. The public disclosure bar will then preclude the action unless "the relator is an 'original source' of the information upon which his lawsuit is based." *Id.* at 913. The relator bears the burden of proof at all three steps. *Id.*

A public disclosure occurs "when the critical elements exposing the transaction as fraudulent are placed in the public domain." *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016). The Seventh Circuit has recognized two meanings to the phrase "in the public domain": (1) where "the information is open or manifest to the public at large," *id*; and (2) where

the "facts disclosing the fraud itself are in the government's possession[.]" *United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 708 (7th Cir. 2014). "[T]he Government's possession of the information exposing a fraud is alone sufficient to trigger the public disclosure bar." *Cause of Action*, 815 F.3d at 275.

This definition of "in the public domain" defeats Relator's claims. As detailed in North Carolina's and Tennessee's joint opposition to Relator's motion, incorporated herein by reference, Walgreens' failure to properly dispense opioids was well-covered both in court proceedings and the media. Governmental investigations into Walgreens were public, and the company had already been sued by multiple states and more than 300 subdivisions before Relator filed suit in August 2018, and his action offered nothing to the States' efforts to recovery form the company.

Relator's *qui tam* is not saved by the second prong of the Seventh Circuit's test. Even in the "absence of an explicit allegation of fraud, the public-disclosure bar may still apply so long as … facts establishing the essential elements of fraud—and, consequently, providing a basis for the inference that fraud has been committed—are in the government's possession or the public domain." *Id*. at 278. The facts detailed in North Carolina's and Tennessee's opposition that place Relator's allegations in the public domain support dismissal under this step, as well. While the prior investigations and litigation were generally based on the Controlled Substances Act and state nuisance and consumer protection claims, all the facts the government could have used to assert a fraud claim were already in the possession of the government when Relator filed his *qui tam* action.

This all stacks against Relator as an original source of information related to Walgreens' opioid prescription practices. While it may be true that he witnessed problematic internal behavior while employed by an Illinois Walgreens,[14] the fact remains that the company's failures and

---

[14] Notably, Relator's August 2018 complaint alleges that he is an original source only under the federal

wrongdoing in dispensing opioids was public knowledge by the time Relator filed his *qui tam* in August 2018. This prior disclosure serves as a clear bar to Relator's claim, and in turn prohibits him from recovering any settlement share as an alternate remedy.

### 2. Relator Fails to State a Plausible Fraud Claim

Notwithstanding the public disclosure bar issues, a Relator whose *qui tam* lawsuit would be subject to dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b) would not be eligible to assert any claim for an alternate remedy. After remanding to the district court for an analysis on whether the relator's *qui tam* complaint complies with the requirements of Rule 9(b) in *Bledsoe I*, the Sixth Circuit was asked to confirm that if a relator's *qui tam* cannot survive dismissal, that relator would not be entitled to any settlement share as an alternate remedy. The Sixth Circuit answered in the affirmative. *See United States ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007) ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government.").

Not only has Relator not tried to clear this hurdle, but he would have a difficult path before him to do so. First, Relator's August 2018 complaint alleged no specific facts related to any state other than Illinois, which dooms its compliance with Rule 9(b) with respect to the MFCA claim.[15] ECF 1, Complaint. Second, a recent decision out of the Middle District of Florida illustrates the challenges faced by relators bringing *qui tam* actions under the FCA for opioid over-prescription practices. The relator in *United States ex rel. Publix Litig. P'ship, LLP v. Publix Super Mkts, Inc.* alleged a very similar theory of liability as the Relator here. Case No. 8:22-cv-2361-TPB-AAS,

---

FCA and Illinois' Medicaid fraud statute. ECF 1, Complaint (Aug. 10, 2018).
[15] *See also State ex rel. Elder v. U.S. Bank N. A.*, No. A23-0380, 2023 WL 8890552, at *4 (Minn. Ct. App. Dec. 26, 2023) (holding that the heightened pleading standard under Minn. R. Civ. P. 9.02 applies to MFCA claims).

2025 WL 2468832, at *4-6 (M.D. Fla. Aug. 27, 2025). The court found that even though the defendants "may certainly have been engaging in bad business practices and procedures that might support a negligence theory, nuisance theory, or even violations of the Controlled Substances Act," those practices do not "support a claim under the False Claims Act." *Id.* at *7. Relator has not even attempted to show that his allegations are distinguishable enough to survive Rule 9(b). Therefore, he should be barred from asserting any right to unrelated settlement proceeds as an alternate remedy.

## CONCLUSION

For the foregoing reasons, this Court should deny Relator's motion.

Dated: February 3, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*/s/ Evan Romanoff*
EVAN ROMANOFF (*pro hac vice*)
Assistant Attorney General
Atty. Reg. No. 0398223

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2130
Telephone: (651) 728-4126
evan.romanoff@ag.state.mn.us

*Attorney for State of Minnesota*

-15-

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 3, 2026, he caused a true and correct copy of STATE OF MINNESOTA'S OPPOSITION TO RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATES' SETTLEMENT WITH WALGREENS to be served via the Court's CM/ECF system upon all counsel of record.

*/s/ Evan Romanoff*
EVAN ROMANOFF
Assistant Attorney General


*Attorney for State of Minnesota*