**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, AND THE STATE OF OKLAHOMA, *ex rel.* T.J. Novak, | ) | |
| Plaintiffs-Relator, | ) | |
| v. | ) | Case No. 18-C-5452 |
| WALGREENS BOOTS ALLIANCE, INC., | ) | (Judge Joan H. Lefkow) |
| Defendant. | ) | |

**STATE OF OKLAHOMA'S RESPONSE IN OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT**

COMES NOW, the State of Oklahoma opposing Relator's "MOTION FOR DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATES' SETTLEMENT WITH WALGREENS THAT SETTLED RELATOR'S STATE FCA CLAIMS" [ECF Doc. 84] (hereinafter Relator's "Motion"), and respectfully requests the Court deny Relator's Motion.[1]

## BACKGROUND

At issue is Relator's request, post dismissal, to share in a multi-billion-dollar settlement

[1] While Oklahoma is not incorporating any other states' response herein, unless specifically expressed otherwise, Oklahoma's response follows the anticipated joint response of North Carolina and Tennessee.

pool involving forty-six (46) states and Defendant Walgreens, based upon his August 10, 2018, *qui tam* action. The existence of the nationwide opioid crisis was well known prior to his filing, as evidenced by the declaration of a National Health Emergency in October 2017. Similarly, governmental investigations and litigation intended to address the opioid crisis were ongoing well prior to Relator's filing.[2]

As to Walgreens, in September 2012, the Drug Enforcement Administration ("DEA") served an immediate suspension order ("ISO") shutting down Walgreens' Jupiter, Florida, Distribution Center. The DEA alleged Walgreens "…failed to maintain effective controls against the diversion of controlled substances…" and that "Walgreens Jupiter failed to conduct due diligence to ensure that the controlled substances were not diverted…".[3] Walgreens' settlement, which resolved not only the Florida investigation, "…but similar open civil investigations in the District of Colorado, Eastern District of Michigan, and Eastern District of New York, as well as civil investigations by DEA field offices nationwide…". received widespread publicity. [4]

Prior to Relator's *qui tam* filing, actions against Walgreens had already been brought by governmental entities. In April 2017 the Cherokee Nation filed a lawsuit in its Tribal Court against Walgreens, CVS Health, Walmart, and major drug distributors.[5] In response to the lawsuit, a number of Defendants, including Walgreens, filed a successful action seeking declaratory and

[2] ttps://www.kosu.org/local-news/2017-06-30/oklahoma-attorney-general-sues-major-pharma-companies-over-state-opioid-crisis

[3] *See* DEA Press Release - https://www.dea.gov/press-releases/2012/09/14/dea-serves-suspension-order-walgreens-distribution-center-jupiter-florida; https://www.palmbeachpost.com/story/news/local/2012/09/15/dea-suspends-walgreens-distribution-center/7164083007/.

[4] https://www.dea.gov/press-releases/2013/06/11/walgreens-agrees-pay-record-settlement-80-million-civil-penalties-under.; https://www.healthlawyersblog.com/Walgreens-Record-80-Million-Settlement-DEA-Controlled-Substance; https://abc7.com/archive/9135772/; https://abc7chicago.com/archive/9135772/

[5] https://www.cnn.com/2017/04/24/health/cherokee-nation-opioid-lawsuit

injunctive relief in the United States District Court for the Northern District of Oklahoma.[6] Delaware filed an action in January 2018, [7] followed by Kentucky in June 2018.[8] Additionally, although the precise number is unknown to Oklahoma, numerous governmental entities, to including cities and counties, were investigating and/or had initiated litigation against entities within the opioid supply chain, including manufacturers, distributers, and pharmacies, all prior to Relator's *qui tam* filing. Months before Relator's filing, the DEA announced that an agreement had been reached with forty-eight (48) Attorneys General to share prescription drug information to combat the national opioid crisis, (including Walgreens' involvement).[9] Very simply, the existence of a national opioid crisis, as well as governmental efforts to address the crisis through investigation and enforcement, had been ongoing for years prior to the Relator's action being filed.

The December 2022 Walgreens settlement followed other nationwide settlements with certain distributors and manufacturers, that were made public in July 2021. Ultimately, the Walgreens settlement was joined by forty-six (46) states and thousands of governmental entities within the settling states. The Consent Judgment as to Oklahoma was approved and entered November 14, 2023. Exhibit A (Oklahoma "Final Consent Judgment")

The settlement does not provide for payments to the Medicaid programs. Rather, the settlement funds attributable to the states are almost exclusively dedicated to "Opioid Re mediation." See Agreement V.B.1. Settlement funds attributable to Oklahoma under the Agreement are statutorily required to be credited to the "Oklahoma Opioid Abatement Revolving Fund." 74 O.S. § 30.6.(A). The distributions of Walgreens settlement funds, together with other

[6] USDC ND OK Case No.: 4-17-cv-00323-TCK-fhm. ECF Doc.2, ¶¶ 70 and 71. (In part, Walgreens describes the Cherokee Nation action as including allegations materially similar to Relators).
[7] *Delaware v. Purdue Pharma L.P.*, Case no. N18C-01-223 MMJ CCLD, Del. Compl. ¶¶183-91.
[8] *Kentucky v. Walgreens*, Case No. 18-CI-00846, (Ky. Cir. Ct. Boone County), Compl.¶¶ 91-256.
[9] https://www.justice.gov/archives/opa/pr/dea-share-painkiller-prescription-information-48-attorneys-general

funds credited to the revolving fund, are accomplished through grants awarded to Oklahoma's political subdivisions through applications to the Oklahoma Opioid Abatement Board. 74 O.S. § 30.7.

Both the Settlement Agreement and Consent Judgment provide for a comprehensive release as to Walgreens, to include allegations brought in *qui tam* actions by relators. Ex. A ¶ 9. Consistent with the settlement agreement, Oklahoma joined with the other named states to intervene and dismiss "…the State Medicaid portion of the States' causes of action, brought under their respective state statutes, and pursued on their behalf by Relator…". ECF Doc. 27. (December 21, 2023.) On January 2, 2024, the Court entered an order granting the named states intervention and dismissing with prejudice the claims brought by the Relator on behalf of the named states. The order additionally states, "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against the Defendant have been resolved…" See January 2, 2024 Order at ¶ 4. This order does not set forth the forum where the issue may be resolved. Notwithstanding that the action continued with respect to the interests on the United States, Oklahoma was not involved in the subsequent motions and orders of the Court.

## ARGUMENT AND AUTHORITY

### I. RELATOR'S DECLARATORY MOTION IS IMPROPER.

Relator seeks relief by motion made pursuant to 28 U.S.C. § 2201, which must be initiated by "an appropriate pleading." Relator's Motion is not such pleading. In addressing an intervened party's request for declaratory relief brought by way of inclusion in an opposition brief, the court in *Arizona v. City of Tucson,* 761 F.3d 1005, held:

> A request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. *Kam–Ko Bio–Pharm Trading Co. Ltd–Australasia v. Mayne Pharma (USA) Inc.,* 560 F.3d 935, 943 (9th Cir.2009). Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion. *Id.* (denying "motion for declaratory judgment" because such a motion is "inconsistent with the Federal Rules" (internal quotations marks omitted)). [Emphasis added.]

*Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014). Similarly, the court in *Thomas v. Blue Cross and Blue Shield Ass'n,* 594 F.3d 823 (11th Cir. 2010), analyzing whether appellate jurisdiction existed, stated:

> It is true that Robertson's motion sought an order declaring that his claims are not released, but Robertson did not file a complaint for a declaratory judgment. Robertson instead filed a motion in a post judgment proceeding. As the Ninth Circuit recently explained, "'a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for a declaratory judgment.'" *Kam–Ko Bio–Pharm Trading Co., Ltd.-Australasia v. Mayne Pharma (USA), Inc.*, 560 F.3d 935, 943 (9th Cir.2009) (quoting *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y.1995)). The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201." Fed.R.Civ.P. 57. As a result, "the requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions," including the requirement that "the action is commenced by filing a complaint." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §2768(3d ed. 1998).

*Thomas v. Blue Cross & Blue Shield Ass'n*, 594 F.3d 823, 830 (11th Cir. 2010).[10]

---

[10] District courts in this Circuit have ruled similarly. *See, e.g. Sisson v. Gowdy*, No. 1:22-cv-00514-JPH-MJD, 2023 U.S. Dist. LEXIS 66473 (S.D. Ind. Apr. 17, 2023).

In the instant case, the necessity for adherence to the requirement that declaratory relief be initiated by "an appropriate pleading" is plainly evident. Relator's Motion is an improper attempt to shoehorn new claims against Oklahoma and the other named states into (and notwithstanding) the Relator's originally pled claims brought pursuant to Oklahoma's and the other States' laws.

"When a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007). See also *Natkin v. Winfrey,* 2015 WL 8484511, *2,3., (Jurisdiction lacking to enforce settlement agreement, notwithstanding stipulation in parties' joint notice stating the court retained jurisdiction of case to enforce the terms of settlement agreement noting proper forum for enforcement in state court.).

## II. JURISDICTIONAL AND CONSTITUTIONAL LAW APPLICABLE TO RELATOR'S DECLARATORY JUDGMENT ACTION

### A. The Court lacks jurisdiction as Relator's claims are based upon State laws.

Diversity jurisdiction is clearly not present. As the United States Supreme Court observed more than fifty years ago, "There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction. That proposition has been established at least since this Court's decision in *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894)." *Moor v. Alameda Cnty.*, 411 U.S. 693, 717, 93 S. Ct. 1785, 1800, 36 L. Ed. 2d 596 (1973).

In the instant case, Realtor cannot establish that a claim based upon Oklahoma's statutory alternate remedy provisions, (or, for that matter any of the other named states' similar laws), would present "a case of actual controversy within [the Court's] jurisdiction." 28 U.S.C. § 2201(a). The Court need only consider whether Relator's disputed claims, standing alone, would present a "civil

action arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. 2201(a) Clearly, such claims would not. See *DeBartolo v. Healthsouth Corp*., 569 F.3d 736, 741 (7th Cir. 2009). Oklahoma and other named states dispute whether Relator is entitled to any share of funds payable to their states pursuant to the Settlement agreement. The Court has neither diversity nor federal question jurisdiction to entertain and resolve Relator's disputed contention regarding entitlement to a Relator's share from Oklahoma's settlement with Walgreens.

**B. The Court should decline supplemental jurisdiction over pure state law questions when the federal law claims have been fully resolved.**

As of October 23, 2025, Relator's claims brought pursuant to the federal False Claim Act were fully and finally dismissed. [ECF Doc. 82]. Agreed Order of Dismissal at 1 ¶ 1. The court in *Kennedy v. Schoenberg, et al.,* 140 F.3d 716 (7th Cir. 2009), noted:

> This Court has stated that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright*, 29 F.3d at 1251; *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 727–728, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218. While there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness and comity—will point to federal decision of the state-law claims on the merits,"[3] ***728** the district judge is given broad power in determining whether such circumstances apply and thus whether it is appropriate to retain jurisdiction over the state law claims. *Wright*, 29 F.3d at 1251.

*Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727–28 (7th Cir. 1998).

Here, judicial economy, fairness, and comity with the state courts are best accomplished by declining the exercise of supplemental jurisdiction. Oklahoma courts, and the other named states' respective state courts, are best suited to address the complex and novel state law issues presented relating to alternate remedies under state law, including resolution of disputes concerning their own settlement orders.

**C. State court consent judgments are entitled to full faith and credit.**

Courts in the named states entered consent judgments regarding the Agreement. Those judgments are entitled to receive full faith and credit. 28 U.S.C. § 1738. See *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 529 (7th Cir. 2000) (upholding state settlement and requiring lower court to apply the same preclusion principles as a state court would).

Oklahoma's settlement with Walgreens was approved and entered by Final Consent Judgment on November 14, 2023.

To entertain Relator's Motion would be to violate this principle and could create ambiguity, inconsistency, and uncertainty within the respective state courts' jurisdictions. This Court should reject Relator's invitation to do so.

**D. States are entitled to Sovereign immunity.**

The Eleventh Amendment recognizes and affirms the states' pre-existing immunity from suits in federal court, where (as in this case) a plaintiff seeks monetary damages from the states. *Benning v. Bd. of Regents of Regency Univs*., 928 F.2d 775 (7th Cir. 1991). This general legal principle, state immunity from suit in federal court, is well settled. "[D]eclaratory relief should not be awarded where the [E]leventh [A]mendment bars an award of monetary and injunctive relief; otherwise, the relief would operate as a means of avoiding the amendment's bar." *MSA Realty Corp. v. Illinois*, 990 F.2d 288, 295 (7th Cir. 1993). Here, Relator now asks this court to impose a monetary judgment upon the State of Oklahoma. Those funds are held by the State of Oklahoma pursuant to State statute.[11]

The State of Oklahoma did not choose this forum and has not consented to this (or any

---

[11] 74 O.S. § 30.6(A) provides for a revolving fund within the State Treasury consisting, "… of all opioid funds obtained through a settlement or judgment by the Attorney General on behalf of the State of Oklahoma related to opioid litigation involving pharmaceutical supply chain participants."

other) court's jurisdiction for purposes of determining the declaratory judgment sought by Relator. Relator is attempting to pursue by motion in this Court something which is barred by sovereign immunity. Oklahoma has not expressly waived Eleventh Amendment immunity.

## III. DENIAL OF RELATOR'S MOTION IS APPROPRIATE, EVEN ASSUMING HIS MOTON IS PROCEDURALLY PROPER.

### A. Relator could not pursue the claims and remedies upon which the settlement is based, and thus cannot share in the settlement.

Here, Realtor cannot reasonably contend he could pursue the consumer protection and public nuisance claims asserted by the states which ultimately resulted in the States' settlement with Walgreens. See *United States v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021) ("If the alternate proceeding seeks recompense for some other type of claim that the relator could not have brought, then the proceeding . . . is a different legal claim altogether, arising beyond the False Claims Act's borders.") Because Relator could not have pursued those claims, Relator is not entitled to a share of the Walgreens settlement.

### B. Relator's original *qui tam* claim is invalid, foreclosing a right to recovery against the states

It is fundamental that, "… a valid *qui tam* action is a prerequisite to a relator's right to recover." *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.,* 495 F.3d 103, 112 (3d Cir. 2007). Relator's *qui tam* was not valid for at least two keys reasons, thus he is not entitled to any recovery.

#### 1. Public Disclosure Bar.

The Oklahoma Medicaid False Claims Act ("OMFCA") provides for the dismissal of a *qui tam* "… if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in a criminal, civil or administrative hearing, in which the state or its agent is a party, in a legislative, or State Auditor and Inspector report, hearing, audit or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the

action is an original source of the information." 63 O.S. 5053.5(B). In *Glaser v. Wound Care Consultants, Inc*., the court there stated:

> [T]he district court must conduct a three-step inquiry to determine whether it has jurisdiction to hear a qui tam suit under the False Claims Act. First, it examines whether the relator's allegations have been "publicly disclosed." If so, it next asks whether the lawsuit is "based upon" those publicly disclosed allegations. If it is, the court determines whether the relator is an "original source" of the information upon which his lawsuit is based.

*Glaser v. Wound Care Consultants, Inc.,* 570 F.3d 907, 913 (7th Cir. 2009).

For example, the Cherokee Nation action against Walgreens and other defendants, was originally brought in the Cherokee Nation tribal court in April 2017. Defendants, including Walgreens, challenged jurisdiction in an action filed in the Northern District of Oklahoma. *McKesson Corp., et. al., v. Hembree, et. al*., Case No. 4:17-cv-00323-TCK-fhm (USDC ND OK 2017), Doc No. 2. The District Court entered injunctive relief against the Cherokee Nation, which in turn dismissed the tribal court action and filed in state court. *McKesson Corp., et. al., v. Hembree, et. al*., Case No. 4:17-cv-00323-TCK-fhm (USDC ND OK 2017), Doc No. 146, ¶¶ I - II. As to the pharmacies, the Cherokee Nation alleged:

> A. Filling of suspicious or invalid orders for prescription opioids at both the retail and wholesale level:
>
> B. Failing to maintain effective controls against opioid diversion;
>
> C. Failing to operate an effective system to disclose suspicious orders of controlled substances;
>
> D. Failing to report suspicious orders of controlled substances;
>
> E. Failing to reasonably maintain necessary records of opioid transactions;
>
> F. Deliberately ignoring questionable and/or obviously invalid prescriptions and filing them anyway.

*McKesson Corp., et. al., v. Hembree, et. al.*, Case No. 4:17-cv-00323-TCK-fhm (USDC ND OK 2017), Doc No. 2, p. 22, ¶¶ 70-71.

As noted herein, the Cherokee Nation suit gained widespread national publicity. A comparison of the Cherokee Nation allegations and Relator's allegations reveal no material difference, essentially Walgreens dispensed opioids in circumstances where it should not have under the standards applicable to the pharmacy industry.[12]

Together with the other examples noted herein of the publicly available information regarding Walgreens' and other pharmacies' misconduct in dispensing opioids, enforcement actions, and other litigation, create a bar to any recovery by the Relator.

**2. Absence of Plausible Claim**

In order to satisfy Federal Rule of Civil Procedure 9(b), Realtor is required to "allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings." *Wall,* 778 F.Supp.2d at 723) (dismissing without prejudice state FCA claims for those states in which the relator "provide[d] no details of the alleged fraud" because "to plead properly, even where the allegations are stated on information and belief, a plaintiff must set forth in the complaint the facts supporting the belief")." *U.S. ex rel. Nowak v. Medtronic, Inc.,* 806 F. Supp. 2d 310, 357 (D. Mass. 2011). See generally *U.S. ex rel. Everest Prin., LLC v. Abbott lab., Inc.,* 622 F.Supp.3d 920, 935 (USDC SD Ca. 2022) (Relator's allegations brought pursuant to state FCA insufficient); *U.S. ex rel. Bawduniak v. Biogen Idec, Inc.*, 2018 WL 1996829, 7 (D. Mass. 2018) ( States' claims were dismissed where the Relator failed to specifically "allege any facts connecting Biogen's purported conduct to [the other] of the States on whose behalf Relators seek to assert claims, and thus fails to plausibly allege violations of those States' false claims acts"; *U.S. ex rel. Thompson v.*

[12] See Relator's Original Complaint, ECF Doc. 1, § VI. ¶ 23 - § VII. ¶ 38.

*Columbia/HCA Healthcare Corp.*, 125 F. 3d 899, 903 (5th Cir. 1997) (The Relator's allegations must amount to more than speculations, failure to do so fails to satisfy Rule 9(b).

Relator's August 2018 Complaint makes no specific factual specific allegations as to Oklahoma.[13] In fact, Relator's August 2018 complaint alleged no specific facts related to any state other than Illinois, instead relying upon generalized allegations regarding Walgreens' practices throughout the Country.

The August 2018 Complaint, as to Oklahoma and other states, lacks the specificity required by Rule 9(b), and is thus subject to dismissal if challenged pursuant to Rule 12(b)(6). To the extent that Relator now tries, improperly, to convert his original action filed in the States' names into a declaratory ***against the States***, Oklahoma and the other States should be dismissed from the action due to Relator's failure to plead with requisite specificity any set of facts establishing the Court's jurisdiction over Oklahoma in this regard.

## CONCLUSION

This Court should deny Relator's motion.

Dated: February 3, 2026

Respectfully Submitted,

GENTNER DRUMMOND
Oklahoma Attorney General

s/Charles A. Dickson, III
OK Bar No. 17941
Deputy Attorney General
Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK 73105
405-522-2962 (telephone)
405-522-4875 (facsimile)
charles.dickson@oag.ok.gov
*Attorney for the State of Oklahoma*

[13] Relator's August 2018 complaint alleges that he is an original source only under the federal FCA and Illinois' Medicaid fraud statute. ECF 1, Complaint ¶11 (Aug. 10, 2018).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 3, 2026, a true and correct copy of the STATE OF OKLAHOMA'S OPPOSITION TO RELATOR NOVAK'S MOTION FOR A DECLARATORY JUDGMENT WAS served upon all counsel of record via the court's CM/ECF system.

_/s/ Charles A. Dickson, III
Charles A. Dickson, III
Counsel for the State of Oklahoma