Marti A. Liechty
*Assistant Attorney General*
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders Street
P.O. Box 200151
Helena, MT 59620-0151
Tel: (406) 444-2026
marti.liechty@mt.gov

Attorney for Montana Attorney General's Office of Consumer Protection

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and the STATE OF MONTANA, et al., *ex rel.* T.J. NOVAK,<br><br>Plaintiffs-Relator,<br><br>v.<br><br>WALGREENS BOOTS ALLIANCE, INC.,<br><br>Defendant. | Case No. 1:18-CV-05452<br><br>Judge Joan H. Lefkow<br><br>**STATE OF MONTANA'S BRIEF IN OPPOSITION TO PLAINTIFF-RELATOR T.J. NOVAK'S MOTION FOR DECLARATORY JUDGMENT** |

The State of Montana, *ex rel.* Austin Knudsen, Attorney General (the "State" or "Montana") opposes Plaintiff-Relator T.J. Novak's ("Novak" or "Relator") November 26, 2025, Motion for Declaratory Judgment that Relator is Entitled to a Share of the States' Settlement with Walgreens that Settled Relator's State FCA Claims (ECF 84) (the "Motion"). The Motion is procedurally improper and fails on the merits and, therefore, must be denied.

## I. INTRODUCTION

Montana, like its sister states, investigated unlawful activity related to the manufacture, marketing, and distribution of opioids that contributed to the nation's opioid epidemic. Decl. William A. Rossbach ¶¶ 10–11, 13–15, Feb. 3, 2026 ("Decl. Rossbach").[1] Montana's investigation

---

[1] For additional background, Montana refers the Court to North Carolina's and Tennessee's Joint Opposition to Relator Novak's Motion for a Declaratory Judgment. ECF 182 at 1.

began in early 2016 when it joined the multistate Opioid Working Group. *Id.* ¶ 10.

Federal investigations of Walgreens' role in the opioid crisis became public years earlier, in 2012. *Id.* ¶¶ 8–9. In early 2018, the Drug Enforcement Agency's opioid transaction data was shared with state attorneys general. *Id.* ¶ 15. By mid-2018, multiple public court filings alleged Walgreens failed to properly determine the validity of controlled substance prescriptions. *Id.* ¶¶ 12–14.

Montana's continued investigation of opioid supply chains, coupled with the multistate settlement efforts, led to the December 9, 2022 Walgreens Settlement Agreement. Decl. Rossbach ¶ 17; ¶ 4, Ex. 1: Walgreens Settlement Agreement, Dec. 9, 2022 (the "Agreement"). To effectuate the Agreement in Montana, the State filed the Montana Action in state district court against Walgreens on November 7, 2023, seeking recovery consumer protection violations and common law public nuisance liability. *Id.* ¶ 5 Ex. 2: Complaint filed in the action styled as *State of Montana v. CVS Pharmacy, Inc., et al.*, Montana First Judicial District Court, Lewis and Clark County, Cause No. DV-25-2023-728-MT (the "Montana Action"). The Montana Action was resolved through a Final Consent Judgment which incorporated, executed, and approved the Agreement reached between Walgreens and multiple states. Decl. Rossbach ¶ 6, Ex. 3: Final Consent Judgment and Dismissal with Prejudice – State of Montana and Walgreens, Feb. 5, 2024 (the "Consent Judgment").

To further comply with terms of the Agreement, Montana and twenty-seven states intervened in this lawsuit for the limited purpose of filing a motion to dismiss the states' claims with prejudice. ECF 27. Novak and the United States consented to the states' motion to dismiss, which this Court granted on January 1, 2024. ECF 32, 33.

Novak's present Motion improperly asserts Novak is entitled to a relator's share of the

opioid remediation payments made by Walgreens to Montana in accordance with the Consent Judgment. However, the purpose of the Consent Judgment is to abate the opioid public health crises, not reimburse state programs for claims they might have against Walgreens. Novak's Motion is procedurally improper, incorrect on the merits, and inequitable in substance. The Motion must be denied.

## II. BACKGROUND

Novak commenced this lawsuit on August 10, 2018, alleging claims of Medicaid fraud in connection with prescriptions filled by Walgreens pharmacists. ECF 1, 7 (Novak's Complaint and First Amended Complaint). The Second Amended Complaint (the "Complaint"), filed on March 25, 2021, alleges sixty (60) violations of the Federal False Claims Act (the "FCA") and the corresponding laws of twenty-eight states. ECF 21. Regarding Montana's False Claims Act (the "MFCA"): Count 17 of the Complaint alleges Walgreens presented false claims in violation of Mont. Code Ann. § 17-8-403(1)(a) and Count 47 alleges Walgreens concealed an obligation in violation of Mont. Code Ann. § 17-8-403(1)(g). ECF 21, ¶¶ 182–185, 302-305. The state law claims were voluntarily dismissed with prejudice on January 2, 2024. ECF 32, 33. The remaining federal claims were similarly dismissed on October 23, 2025. ECF 37, 72, 82.

### A. The Agreement

The Agreement between Walgreens and Montana resulted in the release of "any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct...". Decl. Rossbach Ex. 1 at 10 (defining "Released Claims"); Decl. Rossbach Ex. 1 at 5 (defining "Covered Conduct"). Subject to limited exceptions for certain litigation fees and costs, settlement payments made pursuant to the Agreement must be spent on "Opioid

Remediation". Decl. Rossbach Ex. 1 at 30; Decl. Rossbach Ex. 1 at 8 (defining "Opioid Remediation").

Due to the Agreement's settlement payments process and structure, tremendous uncertainty continues to exist as to the amount Montana and other participating states will receive from the Agreement. *See* Decl. Rossbach Ex. 1 at 16. The Agreement does not provide for any payments to the Relator. *See* Decl. Rossbach ¶¶ 33, 40, 49–51.

B. **Montana's Consent Judgment**

Montana's court-approved Consent Judgment explains "how the relevant funds paid pursuant to the Agreement will be divided within the State…". Decl. Rossbach Ex. 3 ¶ 7. The Consent Judgment "shall not be modified (by the Court, by any court, or by any other means) without the consent of the State and Walgreens and without approval of the Court." Decl. Rossbach Ex. 3 ¶ 21. Through the Consent Judgment, Montana's court retained jurisdiction over "disputes concerning whether expenditures qualify as "Opioid Remediation." Decl. Rossbach Ex. 3 ¶¶ 7, 19.

The Consent Judgment incorporates a Memorandum of Understanding (and Amendments) between the State of Montana and political subdivisions that opted to participate in the Walgreens settlement by executing a state-subdivision agreement. Decl. Rossbach ¶ 7, Ex. 4: the Montana Distributors' and Janssen Opioids Settlement Memorandum of Understanding and Amendment (together, the "MOU"). Pursuant to the MOU, funds from the Agreement to Montana shall be direct deposited into three separate funds, the State of Montana Fund, the Abatement Trust, and the Local Government Fund. Decl. Rossbach Ex. 4, § D ¶ 2.

Nothing in the Agreement, Consent Judgment, or MOU provides for a Relator's share, nor do the documents permit the use of settlement funds for Medicaid recovery. Decl. Rossbach ¶¶ 33, 40, 49–51. Indeed, the states negotiated a settlement that, although providing a broad release of

most opioid-related state claims against Walgreens, is designed to tackle the opioid public health crisis and save lives, not reimburse state programs for any claims they may have had against Walgreens.

### III. DISCUSSION

#### A. Novak's Motion is procedurally deficient and improper.

As a procedural matter, Novak's Motion must be denied outright. Novak's Motion requests relief against a non-party based on a claim not contained in the pleadings and, therefore, not at issue in this case. Even assuming the claim was properly pleaded, there can be no declaratory relief because there is no present "case or controversy". Moreover, Novak's Motion raises novel and complex issues of state law, this Court's interference with which would violate principles of federalism and state sovereignty, as well as constitute an improper exercise of supplemental jurisdiction.

##### 1. Novak's Motion is procedurally defective and this Court lacks jurisdiction to grant it.

The Declaratory Judgment Act allows federal courts to render declaratory judgments only when an "actual controversy within its jurisdiction" exists. 28 U.S.C. § 2201(a); *see* U.S. Const. art. III, § 2, cl. 1 (the Constitution limits the jurisdiction of a federal court to resolving live "cases" and "controversies"). A claim for declaratory relief must show "that there is a substantive controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Generations at Rock Island, LLC v. Illinois Department of Public Health*, 712 F. Supp. 3d 1071, 1077 (N.D. Ill. Jan. 17, 2024) (No. 20-CV-3817) (declining request for declaratory relief because no "actual controversy" existed). Moreover, "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment. Requests for declaratory judgment are not properly before the court if raised

only in passing, or by motion." *Greenfield v. Monroe Clinic, Inc.*, No. 18 CV 50331, 2019 WL 2225982 (N.D. Ill. May 23, 2019) (quoting *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014)).

Novak's Motion—for the first time in this litigation—requests the Court grant declaratory judgment pursuant to 28 U.S.C. § 2201. Novak's Motion fails on three grounds. First, there is no actual controversy before the Court as all state claims have been dismissed with prejudice. ECF 32, 33. Consequently, Montana is no longer a party before this Court. Second, Novak does not name Montana as a party-defendant having an adverse legal interest. ECF 21, ¶¶ 4–5. Montana, therefore, cannot properly be the subject of a declaratory judgment action. Finally, Novak improperly seeks a declaration via motion, rather than the Complaint. ECF 84. That too warrants dismissal. *City of Tucson*, 761 F.3d at 1010.

Based on the foregoing, Novak's Motion fails to satisfy basic requirements set forth in 28 U.S.C. § 2201, as well as Federal Rules of Civil Procedure 7 and 8. This Court should dismiss the Motion on these oversights alone.[2]

### 2. This Court must decline supplemental jurisdiction over Novak's Motion.

Under 28 U.S.C. § 1367(a), a federal district court with original jurisdiction over one claim may exercise supplemental jurisdiction over related claims, provided they form part of the same case or controversy. However, supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Pogorzelska v. Vandercook Coll. of Music*, 442 F. Supp. 3d 1054, 1061 (N.D. Ill. 2020) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L. Ed.

---

[2] As a prudential matter, 28 U.S.C. § 2201 "says only that the court *may* declare the rights and legal relations of any interested party, not that it *must* do so." *Amling v. Harrow Indus. LLC*, 943 F.3d 373, 379 (7th Cir. 2019) (internal citation and quotation omitted) (emphasis in original). The district court in *Amling* did not abuse its discretion in declining to issue declaratory judgment over questions of state law best answered by the state courts. *Id.* at 380.

2d 218 (1966)). A federal district court may decline to exercise supplemental jurisdiction if the claim raises complex state law issues, significantly predominates over any federal claims, if all federal claims have been dismissed, or under exceptional circumstances. 28 U.S.C. § 1367(c).

        **a.    This Court should decline supplemental jurisdiction because Novak's Motion raises complex state law issues.**

Novak's Motion invites this Court to rewrite the Consent Judgment entered by a Montana district court. Granting such a request would not only violate the plain language of the Consent Judgment and jeopardize a complicated payment structure, *supra* II.A; Decl. Rossbach ¶¶ 20(e)–(h), 20(k)–(n), 39, 48, but would also liven the complex and novel issues of state law which necessarily precede such a consideration. Thus, to avoid potential constitutional conflict, this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(1), (4).

Federalism mandates a division of powers that requires federal courts to respect the authority of state systems. *See New York v. United States*, 505 U.S. 144, 181, 112 S. Ct. 2408 (1992) ("[T]he Constitution divides authority between federal and state governments for the protection of individuals."); *see also Schoenthal v. Raoul*, 150 F.4th 889, 902 n.7 (7th Cir. 2025) ("Federalism concerns counsel us to leave novel and complex interpretations of Illinois law to Illinois's courts…."); *Lasco v. Koch*, 428 F. Supp. 468, 475 (S.D. Ill. 1977) (explaining that doctrines of judicial restraint are based on similar principles, including respect for the sovereignty of the state, the importance of allowing states to manage their own internal affairs, and concern for the public interest).

Judicial restraint and federalism instruct this Court to defer to the clear and unequivocal terms of the Consent Judgment approved by Montana's court. Decl. Rossbach Ex. 3 ¶ 5 ("The Court finds that the Agreement was entered into in good faith and is in the public interest, and that entry of this Consent Judgment is in the public interest."). Through the Consent Judgment,

Montana's court retained jurisdiction over "disputes concerning whether expenditures qualify as "Opioid Remediation." Decl. Rossbach Ex. 3 ¶¶ 7, 19. Novak is not a party to Montana's Consent Judgment, and no private right of action arises from the same. Decl. Rossbach Ex. 3 ¶ 15. Nor can he flip federalism on its head by baselessly claiming it is "more rare [*sic*] for state courts to litigate even a state-based FCA claim." ECF 84 at 11.

Novak cites no precedent which would justify, let alone require, this Court's rewriting of Montana's Consent Judgment to award a relator's share. Notably, Montana law does not require a relator's share, *infra* III.B.1, 4; whether it should presents a unique question best left for another branch of Montana's government. As it stands, the Consent Judgment is entitled to this Court's full faith and credit. *Deguelle v. Camilli*, 724 F.3d 933, 937 (7th Cir. 2013) (collecting cases) ("[T]he statute that implements the full faith and credit clause, 28 U.S.C. § 1738, goes further than the constitutional clause and requires federal as well as state courts to give state court judgments the same preclusive effect that the state courts that issued the judgments would give them.").

Further, Novak's Motion improperly seeks an award of monies held in Montana's treasury. ECF 84 at 15 (claiming an entitlement to 15% of the opioid remediation payments made to Montana per the Agreement). This request flies in the face of the Eleventh Amendment, Montana's Constitution, and applicable law. U.S. Const. amend. XI (establishing sovereign immunity for states against suits from citizens of other states); *see also Pennhurst State Sch. and Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); Mont. Const. art. VIII, § 14 (prohibiting disbursement of state treasury funds absent lawful appropriation).

Any court considering Novak's Motion must resolve these various fundamental and constitutional questions prior to resolving its merits. *Chester Bross Constr. Co. v. Schneider*, 886 F. Supp. 2d 896, 907 (C.D. Ill. 2012); *see also McHugh v. Illinois Department of Transportation*,

55 F.4th 529 (7th Cir. 2022). And because such questions are inextricably intertwined with novel and complex issues of state law, this Court should deny Novak's Motion.

### b. This Court should decline supplemental jurisdiction because all Federal claims have been dismissed.

Finally, this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) because all federal claims have been dismissed. *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims").

Here, all counts contained in Novak's Complaint, including federal claims, have been resolved and dismissed with prejudice. ECF 32, 33, 82. Dismissal extinguished this Court's jurisdiction over Novak's MFCA claim. Novak's Motion challenges, for the first time in this lawsuit, the validity of Montana's Consent Judgment. However, Novak is not a party to Montana's Consent Judgment, and no private right of action arises from the same. Decl. Rossbach Ex. 3 ¶ 15.

Further, jurisdiction over such an issue properly lies in Montana. Decl. Rossbach, ¶¶ 35–36, 39. Contrary to Novak's argument, ECF 84 at 10–11, if he seeks a declaration allowing a relator's share under the Agreement, he must go to state court. *Supra* III.A.2. Simply put, Novak cannot attack the terms of a court-approved Agreement, executed through the Montana Action and resulting Consent Judgment, in a parallel federal court proceeding. *See* 28 U.S.C. § 1738. The Montana state court retains jurisdiction over the Consent Judgment and that is where Novak must seek relief, if any.

Because the federal claims giving rise to this Court's original jurisdiction have been dismissed, this Court should relinquish jurisdiction.

B. **Novak's Motion also fails on the merits.**

Setting aside the litany of procedural missteps, this Court should also deny Novak's Motion on its merits. Novak primarily argues that Montana's pursuit an "alternative remedy" in obtaining the Consent Judgment against Walgreens entitles him to a share of Montana's settlement. ECF 84 ¶ 6. Novak simultaneously admits that the MFCA, unlike the FCA, does not contain an "alternative remedy" provision. ECF 84-1 at 365. Thus, when, as here, Montana settles a separate lawsuit outside the *qui tam* action, relators are not entitled to a share of the outside settlement—even if the result is a release and dismissal of other *qui tam* claims.

Next, Novak failed to plead or subsequently allege any Montana-specific facts. Even if he were entitled to a share of Montana's opioid remediation payments, he cannot demonstrate a factual basis that would justify awarding a relator's share because his *qui tam* action does not allege any false claims in Montana.

Third, and even if an alternate remedy provision applies, no alternate remedy is available in this case because Novak never presented a valid *qui tam* claim. That is, the public-disclosure bar prevents Novak's claim of a relator's share and the alleged "alternate remedy"—Montana's Consent Judgment—does not address the same type(s) of fraud Novak alleged. Put simply, the Montana Consent Judgment aims to remediate public health concerns, not provide compensation for Medicaid fraud.

        1.       **Montana law, unlike Federal law, does not entitle Relator's to a share of alternate remedies.**

Novak's Motion claims, "[t]he States and Relator have agreed to postpone the resolution of the issue of whether Relator is entitled to a share" of Montana's settlement, "pursuant to the alternative remedy provisions of [Montana]'s false claims act, or other applicable law…." EFC 27 at 3. The MFCA does not contain an "alternative remedy" provision. ECF 84-1 at 365 (Novak

acknowledges as much). Novak does not identify any other applicable law. ECF 84 at 4 n.3. Therefore, the postponed issue is not even reached as to Montana because Novak admits the MFCA does not contain an "alternate remedy" provision and failed to analyze "other applicable law."

Novak's response to the lack of statutory authority under Montana law is to ask this Court to insert nonexistent statutory language–*i.e.* insert an "alternative remedy" provision. ECF 84 at 4 n.3. That violates principles of statutory construction and is antithetical to the MFCA's deliberate policy choice to omit such a provision. *See* Mont. Code Ann. § 1-2-101 (reciting the principle of statutory construction "not to insert what has been omitted"). Montana's policy on *qui tam* actions is clear; Novak may disagree with this policy and is free to do so in a Montana state court. Montana does not have an alternate remedy provision, and this Court cannot effectively insert such into the statute. This should end any further inquiry, and the Court should deny Novak's Motion as to Montana.

        **2.    Novak's dismissed claims never advanced allegations on behalf of Montana consumers.**

Generally, a *qui tam* complaint must allege a representative fraudulent transaction by each actor and in each jurisdiction where fraud is alleged to have occurred. *See U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 510 (6th Cir. 2007) (under Fed. R. Civ. P. 9(b) a qui tam relator must provide specific examples of fraud representative of the broader class of claims).[3] Courts require relators to "allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings." *U.S. ex rel. Nowak v. Medtronic, Inc.*, 806 F. Supp. 2d 310, 357 (D. Mass.

---

[3] Novak asserts the states cannot attack the underlying validity of his claims. ECF 84 at 10. That misconstrues what Montana agreed to in the motion to dismiss. ECF 27 at 3. Novak and Montana "agreed to postpone the resolution of the issue of whether Relator is entitled to a share" of the State's settlement. *Id.* Novak's Motion skips the first inquiry by incorrectly assuming he is entitled to a share. For at least all the reasons set forth herein, it is Montana's position Novak is not entitled to a share of its opioid remediation settlement payments.

State of Montana's Brief in Opposition to Plaintiff-Relator
T.J. Novak's Motion for Declaratory Judgment | 11

2011); *see also, e.g.*, *U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 906 F. Supp. 2d 1264, 1277 (N.D. Ga. 2012) (finding relator's complaint "provide[d] neither the level of detail nor indicia of reliability required to support his state-law claims against the identified state defendants," where relator drew an inference of a nationwide scheme from his experience in two local clinics and his receipt of national office memoranda, "rather than his firsthand participation in billing and drug inventory management on a nationwide basis or in all of the identified states"); *U.S. ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 723 (N.D. Tex. 2011) (determining that facts alleged by a plaintiff regarding events in one state "cannot support by inference her general pleading, 'upon information and belief,' that similar frauds were also perpetrated in" four other states).

Here, Novak has never alleged facts specific to Montana. *See, e.g.*, ECF 21, ¶¶ 39–71 (the specific transactions to which Novak claims personal knowledge occurred outside Montana). Merely reciting Montana statute, ECF 21 at ¶¶ 182–185, 302–305, does not provide a sufficient factual basis to invoke the MFCA. Novak cannot fail to provide a representative example of Montana-based fraud and then claim a share of Montana's settlement proceeds. *Bledsoe*, 501 F.3d at 510. Novak's failure on this point undermines his other arguments for an award under the MFCA and serves as an additional, independent basis to deny his Motion. *Infra* III.B.3(a), 4.

### 3. Even if an alternate remedy provision applied, Novak failed to present a valid q*ui tam.*

A relator must plead a valid FCA claim to be eligible to seek a share of the government's recovery under the FCA's alternate-remedy provision. *Miller v. U.S. ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024) ("But the relator has no right to a portion of a financial recovery if she failed to allege a valid FCA claim in the first place; if a valid FCA claim is lacking, there would be no recovery of which to take a share").

Even if this Court imputes the FCA "alternate remedy" provision onto the MFCA, Novak is still not entitled to a share of Montana's opioid abatement settlement because, first, the public-disclosure bar prevents Novak's claim of a relator's share and, second, the alleged "alternate remedy"—Montana's Consent Judgment against Walgreens—does not address the same type(s) of fraud as Novak's now dismissed claims.

### a. The Public Disclosure Bar precluded Novak's now dismissed claims.

The "public-disclosure" bar precludes and invalidates some *qui tam* lawsuits. *Singer v. Progressive Care, SC*, 202 F. Supp. 3d 815, 822 (N.D. Ill. 2016); 31 U.S.C. § 3730(e)(4) ("No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions…unless…the person bringing the action is an original source of the information").

For purposes of § 3730(e)(4), a "public disclosure" occurs when "the critical elements exposing the transaction as fraudulent are placed in the public domain." *U.S. ex rel. Feingold v. AdminaStar Fed., Inc.,* 324 F.3d 492, 495 (7th Cir. 2003).

In this case, the critical elements of Novak's Medicaid fraud claims were well-known and widely publicized prior to the filing of this lawsuit. Decl. Rossbach ¶¶ 8–10, 12–14. Second, Novak's Complaint is substantially similar to the publicly disclosed allegations. *See Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 920 (7th Cir. 2009) ("We now adopt the majority position and conclude that a relator's FCA complaint is 'based upon' publicly disclosed allegations or transactions when the allegations in the relator's complaint are substantially similar to publicly disclosed allegations"). Third, Novak is not an original source within the meaning of Mont. Code Ann. § 17-8-403(6)(c) because he failed to allege any Montana-specific facts. *See* ECF 21, ¶¶ 41–71, 76–91, 98–113 (no specific transaction relates to the operative Montana government entity);

*see also* Decl. Rossbach ¶ 15 (The Montana Action claims relied on other sources).

In sum, the public disclosure bar applies due to the widespread availability of critical elements of Novak's Complaint.

> **b. Novak has no legal right to recover a share of the proceeds because the Montana Consent Judgment does not compensate the State for Medicaid fraud Novak originally alleged.**

Moreover, an alternate remedy provision is intended to apply to the *same kinds of fraud* that a relator could have brought in a *qui tam* action. A false claims act "does not reward relators any time the government pursues any 'alternate claim or cause of action' arising from the same facts and circumstances." *U.S. ex rel. Kennedy v. Novo A/S ("Novo A/S")*, 5 F.4th 47, 57 (D.C. Cir. 2021).

The Montana Action rested on different legal theories than Novak's MFCA claims, and the direction of settlement proceeds reflects these aims. Decl. Rossbach ¶¶ 21–26. And this is undisputed by Novak. ECF 84, ¶ 4 ("The States never asserted claims against Walgreens regarding illegal opioid reimbursement requests to their Medicaid programs"). Rather, Montana sued Walgreens, among other distributors, to abate a public health crisis; the Agreement's terms reflect that goal. Decl. Rossbach ¶¶ 25, 30, 40, 50–51. Medicaid billing was not a target of Montana's litigation and settlement funds are not obligated for that purpose. *Id.* ¶¶ 50–51.

Although the Montana Action and court-approved Consent Judgment may arise from circumstances similar to those underlying Novak's lawsuit, the Agreement does not compensate Montana for the same kinds of fraud alleged in Novak's now dismissed MFCA claims. Accordingly, this Court should not allow Novak to claim a share of funds designed to protect the lives and communities of Montana from the harm of the opioid epidemic.

    **4.  Novak's other arguments lack merit.**

Novak raises a smorgasbord of procedural arguments against Montana's Consent

Judgment. *See* ECF 84 at 3–4, 10–11. Namely, Novak asserts that Montana was required to "show that its release of Mr. Novak's claims was fair, adequate, or reasonable." ECF 84 at 4. However, Novak consented to the release of his MFCA claims in 2024, and his Motion fails to identify how circumstances have since changed to justify his new and untimely request.

When the State moves to dismiss an MFCA action, the relator has an opportunity to oppose the motion and present evidence at a hearing. Mont. Code Ann. § 14-8-407. That was the time for Novak to oppose dismissal and present specific evidence of his Montana claims. However, instead of opposing the motion, Novak voluntarily dismissed his MFCA claim. ECF 32, 33; *see also supra* III.B.2 (Novak never alleged Montana-specific transactions). The MFCA requires only a reasonableness hearing regarding the settlement of a false claims lawsuit, *Id.* § 17-8-413, it does not require a reasonableness hearing when the settlement of a non-MFCA action includes a term which broadly releases and dismisses an MFCA action.

Even assuming Novak timely opposed dismissal and timely opposed the Montana Consent Judgment, he still gets Montana law wrong. *See* ECF 84 at 15 (claiming an entitlement to the "statutory minimum" 15%). The MFCA's distribution statute allows courts to reduce a relator's share to 0%, or apportion a maximum of 10%, if the relator failed to provide non-public information or failed to advance the case to litigation. Mont. Code Ann. § 17-8-410(2). By Novak's admission, that's what happened here. ECF 84 at 7. Montana law envisions and accounts for situations like this where a *qui tam* relator seeks an award without materially advancing litigation on behalf of Montana taxpayers. In such cases, the appropriate distribution is 0%.

IV. CONCLUSION

Based on the procedural and substantive deficiencies analyzed herein, Montana respectfully requests this Court deny Novak's Motion.

DATED this 3rd day of February, 2026.

    Attorney for Attorney General's Office of Consumer Protection:

By:   /s/ Marti A. Liechty
    Marti A. Liechty
    Assistant Attorney General
    MT State Bar No. 14168
    (406) 594-3447
    marti.liechty@mt.gov

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 3, 2026, she caused a true and correct copy of the **STATE OF MONTANA'S BRIEF IN OPPOSITION TO PLAINTIFF-RELATOR T.J. NOVAK'S MOTION FOR DELARATORY JUDGMENT** to be served via the Court's ECF/electronic mailing system upon all counsel of record.

By: /s/ Marti A. Liechty
Marti A. Liechty
Assistant Attorney General
MT State Bar No. 14168
(406) 594-3447
marti.liechty@mt.gov