**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA et al., *ex rel.* T.J. NOVAK,<br><br>                    Plaintiffs and Plaintiff-Relator,<br><br>          v.<br><br>WALGREENS BOOTS ALLIANCE, INC.,<br><br>                    Defendant. | Case No. 18-C-5452<br><br>Judge Joan H. Lefkow |

**STATE OF NEW YORK'S OPPOSITION TO RELATOR T.J. NOVAK'S MOTION FOR DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF NEW YORK'S OPIOID ABATEMENT SETTLEMENT WITH DEFENDANT WALGREENS BOOTS ALLIANCE, INC.**

## TABLE OF CONTENTS

Table of Authorities……………………………………………………………...…………iv

Introduction……………….……………………………………………………….…………..1

Factual and Procedural Background…………………………………………………...………1

Argument……………………………………………………………………………………...4

    I. The Court Cannot Declare Judgment in Relator's Favor as There Is No Pending Action for Declaratory Relief Against the State……………………………………...…...…4

        a. Relator's Motion for Declaratory Relief Is Procedurally Defective as It Is Not Brought in the Form of a Complaint……………………………….……………………4

        b. Relator Cannot Seek Declaratory Relief Against the State as There Is No Existing Case or Controversy……………………….…………………………...……………….......…..6

    II. This Court Should Not Hear Relator's Purely State-Law Claim………….…………..6

        a. The Court Has Neither Diversity nor Federal Question Jurisdiction Over Relator's State-Law Claim. ……………………………….................……………………7

        b. The Court Should Decline to Exercise Supplemental Jurisdiction…….……..……8

            i. The Court has Dismissed All Federal Claims in the Qui Tam Action and There Are No Federal Claims for the Court to Address in Relator's Motion……………………………………………………………………8

            ii. Relator's Claim Rests on an Interpretation of New York State Law and Should be Resolved in New York State Court………………..………….…10

    III. Relator Has No Right to a Share of the National Walgreens Settlement Agreement…………………………………………………………….………………11

        a. The National Walgreens Settlement Agreement and Consent Judgement are Not an Alternate Recovery to Relator's Qui Tam Action Within the Meaning of the NYFCA………………………………………………………………………11

b. Relator is not Entitled to an Alternate Remedy because the Complaint in the Qui Tam Action is Facially Invalid……………………………………….…..…13

c. Relator Cannot Claim a Share of a Recovery to Which He Did Not Contribute…14

**Conclusion………………………………………………………………………………15**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ameritox, Ltd. v. Millennium Labs., Inc.*,
    803 F.3d 518 (11th Cir. 2015) ............................................................11

*Arizona v. City of Tucson*,
    761 F.3d 1005 (9th Cir. 2014) ...............................................................5

*Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd.*,
    No. 11-CV-3108 (NRB), 2012 WL 3283479 (S.D.N.Y. Aug. 13, 2012) .................5

*C.f. U.S. ex rel. Merena v. SmithKline Beecham Corp.*,
    205 F.3d 97 (3d Cir. 2000) ..................................................................11

*Cap. Broad. Co. v. City of Raleigh*,
    104 F.4th 536 (4th Cir. 2024) ................................................................7

*Centrifugal Acquisition Corp. v. Moon*,
    No. 09-C-327, 2010 WL 152074 (E.D. Wis. Jan. 14, 2010) ...........................5

*Clemons v. City of Springfield*,
    735 F. Supp. 309 (C.D. Ill. 1990) .........................................................10

*DeBartolo v. HealthSouth Corp.*,
    569 F.3d 736 (7th Cir. 2009) .................................................................7

*E. Cent. Ill. Pipe Trades Health and Welfare Fund v. Prather Plumbing & Heating, Inc.*,
    3 F.4th 954 (7th Cir. 2021) ...................................................................6

*Ervin v. OS Rest. Servs. Inc.*,
    632 F.3d 971 (7th Cir. 2011) .................................................................8

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
    463 U.S. 1 (1983) .................................................................................7

*Gomez v. Terri Vegetarian LLC*,
    No. 17-CV-213 (JLC), 2021 WL 2349509 (S.D.N.Y. June 9, 2021) ..................6

*Groce v. Eli Lilly & Co.*,
    193 F.3d 496 (7th Cir. 1999) .................................................................9

*Hooker v. U.S. Marshals Serv.*,
No. 12-CV-346 (JNL), 2015 WL 1510439 (D. Me. Mar. 12, 2015) ........................................6

*Hopper v. Solvay Pharmacy, Inc.*,
588 F.3d 1318 (11th Cir. 2009) ...................................................................................................14

*Huffman v. Hains*,
865 F.2d 920 (7th Cir. 1989) .......................................................................................................10

*Moor v. Cnty. of Alameda*,
411 U.S. 693 (1973)........................................................................................................................7

*People of the State of New York by Letitia James v. CVS Pharmacy, Inc., et al.*,
Index No. 602838/2024 ................................................................................................................1

*Rouse v. Devlin's Pointe Apartments*,
No. 2:17-CV-1454 (AJS), 2018 WL 5624171 (W.D. Pa. Oct. 3, 2018)....................................6

*Russell v. PS 27 Fam. L.P.*,
No 23-CV-405 (CCB) (SLC), 2025 WL 689744 (N.D. Ind. Mar. 4, 2025) ..............................5

*RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*,
672 F.3d 476 (7th Cir. 2012) ...............................................................................................8, 10

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
578 F.3d 505 (7th Cir. 2009) .......................................................................................................9

*Thulin v. Shopko Stores Operating Co., LLC*,
771 F.3d 994 (7th Cir. 2014) .......................................................................................................9

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007) .....................................................................................................13

*U.S. ex rel. Godfrey v. KBR, Inc.*,
360 F. App'x 407 (4th Cir. 2010) ..............................................................................................13

*U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*,
495 F.3d 103 (3d Cir. 2007)........................................................................................................13

*U.S. ex rel. Kuriyan v. HCSC Ins. Servs. Co.*,
No. 16-CV-1148 (JB) (KK), 2022 WL 704130 (D.N.M. Mar. 9, 2022) ...........................12, 14

*U.S. ex rel. Lee v. N. Adult Daily Health Care Ctr.*,
174 F.Supp.3d 696 (E.D.N.Y. 2016) ........................................................................................13

*U.S. ex rel. Newell v. City of St. Paul, Minn.*,
    728 F.3d 791 (8th Cir. 2013) ........................................................................13

*U.S. ex rel. Pepe and Sherman v. Fresenius Med. Care Holdings*,
    No. 14-CV-3505 (LDH) (ST), 2024 WL 4635236 (E.D.N.Y. Oct. 31, 2024) .......13

*U.S. v. Novo A/S*,
    5 F.4th 47 (D.C. Cir. 2021) ..........................................................................12

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ......................................................................................9

*United States ex rel. Kolchinsky v. Moody's Corp.*,
    238 F. Supp. 3d 550 (S.D.N.Y 2017) ...........................................................13

*W. Ill. Serv. Coordination v. Ill. Dep't of Hum. Servs.*,
    No. 19-3127, 2020 WL 5807958 (C.D. Ill. Sept. 29, 2020) ...........................10

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) ......................................................................................5

**Federal Statutes**

22 U.S.C.
    § 2201(a) ........................................................................................................7

28 U.S.C.
    § 1331 .............................................................................................................5
    § 1367(a) ........................................................................................................8
    § 1367(c) ........................................................................................................8
    § 2201 .........................................................................................................5, 8

Federal False Claims Act, 31 U.S.C
    § 3730(c)(5) .................................................................................................11

**State Statutes**

N.Y. State Fin. Law
    § 99-N .......................................................................................................3, 11
    § 187 *et seq.* ..................................................................................................2
    § 190(5)(c) ...................................................................................................12

New York Controlled Substances Act, N.Y. Public Health Law
    § 3000 *et seq.* ...............................................................................................3

§ 25.18 of the New York Mental Hygiene Law.........................................................2, 10

**State Regulations**

10 NYCRR
    § 80 *et seq.* ..........................................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................14

Fed. R. Civ. P. 12(b)(6)............................................................................................14

## INTRODUCTION

The State of New York ("New York" or the "State") opposes Relator T.J. Novak's ("Relator") motion for a declaratory judgment confirming his alleged entitlement to a share of the opioids-remediation funds allocated to New York as part of a state court-effectuated consent judgment entered in *People of the State of New York by Letitia James v. CVS Pharmacy, Inc., et al.*, Index No. 602838/2024, Suffolk County Supreme Court. The New York Consent Judgment (the "Consent Judgment," Ex. A to the Declaration of Noah Popp ("Popp Decl.")) did not allocate any of the remediation funds to New York's Medicaid program. The Consent Judgment attached the nationwide Walgreens Settlement ("National Walgreens Settlement Agreement") and implemented the agreement between the State and Defendant Walgreens Boots Alliance, Inc. ("Walgreens"), which released, *inter alia*, claims Relator brought in this Court ("Qui Tam Action") pursuant to the *qui tam* provisions in the New York False Claims Act ("NYFCA"), N.Y. State Fin. Law § 187 *et seq.* The Consent Judgment is just one piece of a 46-state, $5.52 billion settlement of public nuisance and consumer protection claims that were litigated against and settled with Walgreens for its role in the nationwide opioid crisis.

This Court should deny Relator's Motion because: 1) declaratory judgment is inappropriate; 2) having dismissed the federal claims from this matter, this Court has no reason to exercise supplemental jurisdiction over the remaining questions of state law; and 3) pursuant to the NYFCA, an alternate remedy is not available to Relator in this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2018, Relator initiated the Qui Tam Action amidst a decade-long multi-state examination and investigation of pharmacies (such as Walgreens), pharmaceutical

manufacturers, and pharmaceutical distributors for their role in creating/perpetuating the opioid crisis. (*See* Dkt. No. 1; Popp Decl. ¶ 2.)

Following years of investigation, in March 2019, New York Attorney General James filed suit against various pharmaceutical manufacturers and distributors. (Popp Decl. ¶ 3.) As the case moved towards trial in 2021, many of the named defendant manufacturers and distributors settled, reaching agreements with New York. (Popp Decl. ¶ 4.) While a number of defendants went to trial, only Teva Pharmaceuticals, Ltd., its American subsidiary Teva Pharmaceuticals USA, and its affiliates ("Teva") tried the case all the way to a jury verdict. Following a seven-month trial, on the issue of liability for public nuisance, New York won a jury verdict against Teva in December 2021. As New York prepared for the remedies phase of the litigation, Teva settled. (Popp Decl. ¶ 5.) After a year of helping lead national negotiations, in late 2022, New York joined national settlements with a number of large chain pharmacies, including Walgreens. (Popp Decl. ¶ 6.)

The National Walgreens Settlement Agreement, dated December 9, 2022, was joined by 46 states and thousands of local governments. (Popp Decl. ¶¶ 6–7.) The vast majority of the funds from the National Walgreens Settlement Agreement were restricted to opioid remediation, a defined term in the Agreement. (Agreement §§ V.B, V.D.1–2, V.E.2.) Each state developed its own approach for allocating the money within the state. (Popp Decl. ¶ 21.) In New York, funds resulting from settlements between the State and companies that engaged in misconduct related to the opioids supply chain are restricted under the provisions of Section 25.18 of the New York Mental Hygiene Law and Section 99-N of the N.Y. State Fin. Law. (Popp Decl. ¶ 8; *see* Popp Decl. ¶¶ 20, 22, 25, 29.)

The National Walgreens Settlement Agreement was implemented through the filing of individual settlement complaints and consent judgments in the state courts of all participating

states. (Agreement § VIII.B.) New York filed its settlement complaint (Ex. B to Popp Decl. ("Chain Pharmacies Settlement Complaint")) and Consent Judgment, on February 1, 2024, in the Supreme Court of the State of New York, Suffolk County, pleading that Walgreens and other chain pharmacies had each engaged in repeated and persistent illegal conduct in violation of the New York Controlled Substances Act, N.Y. Public Health Law § 3000 *et seq*., and its implementing regulations, 10 NYCRR § 80 *et seq*., and had contributed to the creation of a public nuisance prohibited by the common law of New York. (Popp Decl. ¶ 12; Ex. A to Popp Decl.; Chain Pharmacies Settlement Complaint.) The Consent Judgment explicitly states that "[i]n the event of a conflict between the terms of the [Agreement] (including its exhibits) and language in this Consent Judgment, the terms of the Agreement shall govern." (Popp Decl. ¶ 13; Ex. A to Popp. Decl.) Notably, the Chain Pharmacies Settlement Complaint did not allege any claims of Medicaid fraud, nor did the National Walgreens Settlement Agreement or the Consent Judgment allocate any recovery to the New York State Medicaid program. (Popp Decl. ¶ 25; *see generally* Ex. A to Popp Decl.; Chain Pharmacies Settlement Complaint)

The National Walgreens Settlement Agreement provides a broad release of all civil claims that states (and subdivisions) could assert, including *qui tam* actions. (National Walgreens Settlement Agreement at §§ I.O, I.LLL, I.NNN & X.) Although the release did not specifically reference Relator's case, it encompassed the conduct and theories of liability alleged in Relator's Complaint. Following the execution of the National Walgreens Settlement Agreement, the states asked Relator to voluntarily dismiss them as plaintiffs to his action. Relator refused. Subsequently, the named states intervened in the action for the limited purpose of filing a motion to dismiss their claims. (Dkt. No. 27.) Relator and the United States consented to the states' motion to dismiss. (*Id.*) On January 2, 2024, this Court granted the motion and dismissed the states' claims brought

3

by Relator under each state's false claims act with prejudice. (Dkt. No. 33.) That order provided that "[r]esolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, is postponed until after the United States' claims in this case against Defendant have been resolved." (*Id.* ¶ 3.) The Court then entered orders dismissing the federal claims with prejudice, purporting to retain jurisdiction over the state share of the state Medicaid claims that had been dismissed already. (Dkt. No. 72, Order ¶¶ 2, 3 (Apr. 21, 2025); Dkt. No. 82, Agreed Order of Dismissal ¶¶ 1, 2 (Oct. 23, 2025).) The states, having already been dismissed from the case with prejudice, were neither parties to these motions nor heard on them. Subsequently, Relator filed the instant Motion for Declaratory Judgment ("Motion"), Dkt. No. 84.

## ARGUMENT

In his Motion, Relator contends that "he is entitled to a share of the multi-state settlement with Walgreens" because the "states' settlement agreement resolved Relator's state False Claims Act . . . claims in this case." (Mot. at 1.) This Court should not grant Relator's requested relief because: 1) Relator's motion for a declaratory judgment is not the correct vehicle to seek this relief; 2) this Court has many compelling reasons to decline to exercise supplemental jurisdiction over any remaining state-law claims; and 3) Relator is not entitled to a share of the Settlement based on an alternate remedy theory.

**I.     The Court Cannot Declare Judgment in Relator's Favor as There Is No Pending Action for Declaratory Relief Against the State.**

    **A.   Relator's Motion for Declaratory Relief Is Procedurally Defective as It Is Not Brought in the Form of a Complaint.**

Pursuant to the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party

4

seeking such declaration." 28 U.S.C. § 2201. The term "appropriate pleading" is not statutorily defined. However, the Supreme Court has suggested that a party must bring an action—not a motion—for declaratory judgment. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Although the Seventh Circuit has not addressed this issue, the Ninth Circuit has held that a "request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment." *Arizona v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014) (citation omitted). "Requests for declaratory judgment are not properly before the court if raised only in passing, or by motion." *Id.*; *see also Russell v. PS 27 Fam. L.P.*, No 23-CV-405 (CCB) (SLC), 2025 WL 689744, at *12 (N.D. Ind. Mar. 4, 2025) ("the Declaratory Judgment Act authorizes declaratory judgment actions, not declaratory judgment motions within an active case"); *Bisnews AFE (Thailand) Ltd. v. Aspen Rsch. Grp. Ltd.*, No. 11-CV-3108 (NRB), 2012 WL 3283479, at *2 (S.D.N.Y. Aug. 13, 2012) ("it is well established that because an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief but rather must bring an action for a declaratory judgment") (citation altered); *Centrifugal Acquisition Corp. v. Moon*, No. 09-C-327, 2010 WL 152074, at *1 (E.D. Wis. Jan. 14, 2010) ("the motion is procedurally improper because there is no such thing as a motion for declaratory relief").

Here, Relator "moves for a declaratory judgment." (Mot. at 1.) However, no such motion exists in federal law—Relator must file an action seeking declaratory judgment to obtain his requested relief. Relator has failed to do so, and, therefore, this Court should deny Relator's motion as procedurally defective.

### B. Relator Cannot Seek Declaratory Relief Against the State as There Is No Existing Case or Controversy.

Federal courts are courts of limited jurisdiction, hearing only those types of cases and controversies as authorized by the U.S. Constitution and federal statutes. *E. Cent. Ill. Pipe Trades Health and Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 957 (7th Cir. 2021).

As noted, on January 2, 2024, this Court dismissed New York and its claims from this matter. As a result, there is no case or controversy before this Court with respect to New York. Therefore, relief in the form of a declaratory judgment cannot be sought against the State in this matter. *See, e.g.*, *Gomez v. Terri Vegetarian LLC*, No. 17-CV-213 (JLC), 2021 WL 2349509, at *8 (S.D.N.Y. June 9, 2021) (noting that it is "an improper use of judicial resources" to "continually file motions against clearly dismissed parties"); *Rouse v. Devlin's Pointe Apartments*, No. 2:17-CV-1454 (AJS), 2018 WL 5624171, at *1 n.1 (W.D. Pa. Oct. 3, 2018) (denying motions and striking requests as they were against dismissed parties); *Hooker v. U.S. Marshals Serv.*, No. 12-CV-346 (JNL), 2015 WL 1510439, at *5 (D. Me. Mar. 12, 2015) (denying motion for default judgment "against previously dismissed parties").

## II.     This Court Should Not Hear Relator's Purely State-Law Claim.

Relator asks this Court to grant declaratory judgment as to all 28 states. In doing so, the Court must rule on questions of 28 distinct state laws. Even assuming Relator's request was properly before this Court as a motion, this Court has neither federal question nor diversity jurisdiction over the claims against the states that arise purely under state laws. Following the dismissal of the federal claims, there are ample reasons for this Court to decline to exercise

supplemental jurisdiction over the state-law claims. Accordingly, this Court has no reason to entertain Relator's purely state-law claims.

### A. The Court Has Neither Diversity nor Federal Question Jurisdiction Over Relator's State-Law Claim.

It is established law "that a State is not a 'citizen' for purposes of the diversity jurisdiction." *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973). Therefore, this Court cannot hear this matter based on diversity jurisdiction.

Courts have federal question jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Thus, a court may grant declaratory relief "in a case of actual controversy within its jurisdiction." 22 U.S.C. § 2201(a). However, a court may only do so when 22 U.S.C. § 2201 is not the sole federal law at issue in the dispute. Indeed, the underlying suit must satisfy the well-pleaded complaint rule to confer federal question jurisdiction. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 16–17 (1983). To make this determination, the Seventh Circuit applies the following test: "in an action for declaratory judgment the positions of the parties are reversed: the declaratory-judgment plaintiff would have been the defendant in the anticipated suit whose character determines the district court's jurisdiction." *DeBartolo v. HealthSouth Corp.*, 569 F.3d 736 (7th Cir. 2009); *see also Cap. Broad. Co. v. City of Raleigh*, 104 F.4th 536, 540 (4th Cir. 2024) ("Regardless of which roles the parties take on in the hypothesized coercive suit, if that suit would satisfy the well-pleaded complaint rule, then the overarching declaratory judgment action does too").

Here, no claims involving Relator's alleged share of the National Walgreens Settlement Agreement would have subject matter jurisdiction because all such claims arise under state law, and there is no diversity jurisdiction. Accordingly, being that there is no hypothetical case that would survive the well-pleaded complaint rule, this Court lacks federal question jurisdiction and

7

cannot grant Relator's request for declaratory relief.

### B. The Court Should Decline to Exercise Supplemental Jurisdiction.

Even if the Court were to somehow consider Relator's Motion for Declaratory Judgment as a proper vehicle of bringing state-law claims ancillary to dismissed federal claims in the Qui Tam Action, it should decline to exercise supplemental jurisdiction over those claims and therefore deny Relator's requested relief. It is well settled that 28 U.S.C. § 1367(a) "grants the district courts supplemental jurisdiction to hear all other claims that are so related to the claims over which they have original jurisdiction that they form part of the same Article III case or controversy." *Ervin v. OS Rest. Servs. Inc.*, 632 F.3d 971, 979 (7th Cir. 2011). However, a court "may decline to exercise supplemental jurisdiction over a claim" if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). These are easily satisfied here as to the first and third factors, thus greatly weighing in favor of the Court declining to exercise supplemental jurisdiction over any state-law claims.

### i. The Court has Dismissed All Federal Claims in the Qui Tam Action and There Are No Federal Claims for the Court to Address in Relator's Motion.

"When federal claims drop out of the case, leaving only state-law claims, the district court has broad discretion to decide whether to keep the case or relinquish supplemental jurisdiction over the state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). "Although the decision is discretionary, '[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over

any supplemental state-law claims.'" *Id.* at 479 (alterations in original) (*quoting Al's Serv. Ctr. V. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)); *see Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). "The presumption is rebuttable, 'but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law.'" *Id.* (*quoting Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996)). The presumption may be rebutted when "(1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th Cir. 2009) (internal quotation marks and citation omitted).

Here, it is undisputed that the federal claims in the Qui Tam Action have been dismissed. (Dkt. No. 72 ¶¶ 2, 3; Dkt. No. 82 ¶¶ 1, 2.) Moreover, none of the three rebuttals to the presumption of declination are present—there are no timing issues, this Court has had limited involvement in this matter, and as explained *infra* Section II.B.ii, New York courts have not addressed how Relator's claims should be decided. In the interest of "judicial economy, convenience, and fairness to litigants," *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966), this Court, like countless similarly situated others before it, should decline to exercise supplemental jurisdiction over the state-law claims following the dismissal of the federal claims. *See, e.g.*, *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 995 (7th Cir. 2014) (affirming district court's decision to decline to exercise supplemental jurisdiction over state-law claims in *qui tam* complaint

9

involving allegations of overbilling Medicaid after dismissing federal claims); *W. Ill. Serv. Coordination v. Ill. Dep't of Hum. Servs.*, No. 19-3127, 2020 WL 5807958, at *5 (C.D. Ill. Sept. 29, 2020) ("Because there are no remaining federal claims, the Court declines to exercise supplemental jurisdiction as to the remaining state law claims").

### ii. Relator's Claim Rests on an Interpretation of New York State Law and Should be Resolved in New York State Court.

The general presumption of declining to exercise supplemental jurisdiction "is particularly strong where, as here, the state-law claims are complex." *RWJ Mgmt. Co.*, 672 F.3d at 478; *see also Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989) ("[R]espect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns"). Where "[t]he only significant legal questions . . . are of state law," the "state courts are better suited than this Court to decide those questions, in part because they are better situated to accurately gauge the legislative intent behind the statutes in question and the policies guiding the common law issues involved." *Clemons v. City of Springfield*, 735 F. Supp. 309, 313 (C.D. Ill. 1990).

New York state courts are well situated to address the complex issues in the instant motion where Relator is contending that under New York state law a public nuisance abatement recovery is a proper alternative remedy under the NYFCA and is attempting to claim a portion of the funds of a wholly unrelated settlement that are not in the State's control. New York Courts should be afforded the opportunity to weigh in on these issues. In addition, the Settlement's distribution is extremely complex, governed by a myriad of New York State statutes such as Section 25.18 of the New York Mental Hygiene Law and Section 99-N of the New York Finance Law. (Popp Decl. ¶¶ 8, 22, 26–33.) Respectfully, unlike New York State courts, this Court does not—and has no reason

to—have experience analyzing and applying these New York State laws.[1] And New York is just one of 28 states that Novak is asserting claims against, meaning the Court would have to conduct 28 separate analyses of distinct consent judgments and applicable state laws. *C.f. U.S. ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 106 (3d Cir. 2000) (relators' claims to shares of proceeds "must be based on a claim-by-claim analysis"). Relator asks this Court to shoehorn these 28 distinct analyses into a one-size-fits-all proceeding, in direct opposition to federal-state comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 534–36, 541 (11th Cir. 2015) (abuse of discretion to retain supplemental jurisdiction over novel and complex state-law claims from nine states). Promotion of judicial economy, fairness, and comity at this juncture requires declination of supplemental jurisdiction.[2]

### III. Relator Has No Right to a Share of the National Walgreens Settlement Agreement.

#### A. The National Walgreens Settlement Agreement and Consent Judgement are Not an Alternate Recovery to Relator's Qui Tam Action Within the Meaning of the NYFCA.

Much like the federal False Claims Act, 31 U.S.C § 3730(c)(5) ("FCA"), the NYFCA contains an alternate remedy provision, which imbues relators with the same rights they would have had in a *qui tam* action, "if any . . . alternate civil remedy is pursued in another proceeding." N.Y. State Fin. Law § 190(5)(c). However, the plain language of the NYFCA alternate remedy provision goes beyond its federal counterpart, specifying that a Relator may seek a share of a recovery received only "if the attorney general or a local government . . . elect[s] to pursue any remedy available with respect to the criminal or civil prosecution *of the presentation of false*

---

[1] To the extent that Relator attempts to define the value of the share of the National Walgreens Settlement Agreement that he believes he is entitled to (Mot. ¶ 19), that complex issue of the amount allegedly subject to an alternate remedy share is not properly before the Court in his Motion, and should be addressed, if at all, in separate briefings.

[2] Relator may argue that the State has waived its opportunity to argue against this Court's exercise of supplemental jurisdiction by failing to contest his April 2025 request that this Court maintain supplemental jurisdiction. However, having already been dismissed with prejudice from the case, the State neither received notice nor had an opportunity to be heard on the matter.

*claims*, including any administrative proceeding to determine a civil money penalty." *Id.* (emphasis added). The NYFCA's statutory language leaves no room for interpretation—a relator can only avail himself of the NYFCA's alternate remedy provision when the alternate proceeding pursued by the State involves the presentation of false claims, which the National Walgreens Settlement Agreement and Consent Judgment, unequivocally, did not.

Notwithstanding the differences between the FCA and NYFCA's alternate remedies provisions, the Motion should be denied as the National Walgreens Settlement Agreement and its implementing Consent Judgment are not an alternate recovery to Relator's Qui Tam Action within the meaning of the FCA. In determining whether a relator may share in an alternate remedy, a factual overlap alone is not sufficient. "[T]he alternative remedial proceedings from which a relator can recover a share must redress the same type of falsity and fraud claims that otherwise could be pursued by a private relator's *qui tam* lawsuit under the false claims act." *U.S. v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021).

Here, in order to claim a share of the National Walgreens Settlement Agreement and Consent Judgment, it is insufficient for Relator to demonstrate a commonality of facts. Rather, Relator must show that the recovery in the State's separate proceeding was for the same harm that the NYFCA recognizes. *See U.S. ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, No. 16-CV-1148 (JB) (KK), 2022 WL 704130, at *1 (D.N.M. Mar. 9, 2022). There is no question that Relator could not pursue a claim for violations of the New York Controlled Substance Act or for the creation of a public nuisance, which are the claims asserted in the New York case against Walgreens. (*See* Chain Pharmacies Settlement Complaint.)

The *Novo* Court recognized that "the same misconduct that underlies false and fraudulent claims may also run afoul of other . . . statutes for different reasons. As a result, the government

12

may sometimes choose to pursue relief under the [FCA]. Other times, on the same set of facts, it might prioritize the enforcement of a different law." *Novo*, 5 F.4th at 49. Rather than seek to recover fraudulently obtained Medicaid funds through the instant Qui Tam Action, the 28 state governments chose to prioritize the health and safety of their citizenry through the enforcement and settlement of a public nuisance action. The National Walgreens Settlement Agreement provides injunctive relief—funds for abatement—delivering funds for evidence-based approved uses to alleviate the opioid crisis Walgreens is partially responsible for creating, exacerbating, and/or perpetuating. Indeed, none of the funds allocated to New York are to be used to recompense victims of a fraud, rather, the approved uses of the proceeds from the settlement are almost entirely devoted to prospective nuisance abatement—treatment, prevention, harm reduction, and other strategies. (Ex. C to Popp Decl. at 5, 13–24.)

### B. Relator is not Entitled to an Alternate Remedy because the Complaint in the Qui Tam Action is Facially Invalid.

The threshold requirement for seeking an alternate remedy under the NYFCA is that a valid *qui tam* is pending at the time the alternate proceeding is commenced. *U.S. ex rel. Lee v. N. Adult Daily Health Care Ctr.*, 174 F.Supp.3d 696, 700 (E.D.N.Y. 2016); *see, e.g. United States ex rel. Kolchinsky v. Moody's Corp.,* 238 F. Supp. 3d 550, 561 (S.D.N.Y 2017) *U.S. ex rel. Newell v. City of St. Paul, Minn.*, 728 F.3d 791, 799 (8th Cir. 2013); *U.S. ex rel. Godfrey v. KBR, Inc.*, 360 F. App'x 407, 412–13 (4th Cir. 2010); *U.S. ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 112 (3d Cir. 2007); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007).[3] The relator must plead with sufficient particularity the "circumstances constituting

---

[3] Relator suggests the State has waived this defense, but the entire issue of whether Relator was entitled to a share of the National Walgreens Settlement Agreement was postponed until now. (Dkt. No. 33.) Thus, Relator's pursuit of a share of that settlement is only cognizable if Relator stated a claim against Walgreens upon which relief could properly be sought under the NYFCA. *N. Adult Daily Health Care Ctr.*, 174 F.Supp.3d at 704; *see also* Fed. R. Civ. P. 12(b)(6).

[the] fraud." Fed. R. Civ. P. 9(b); *see Hopper v. Solvay Pharmacy, Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009). "Rule 9(b) requires plaintiffs to set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Pepe and Sherman v. Fresenius Med. Care Holdings*, No. 14-CV-3505 (LDH) (ST), 2024 WL 4635236, at *4 (E.D.N.Y. Oct. 31, 2024) (internal quotation marks and citation omitted). In *Fresenius*, the Court made clear that relators must provide factual support for a reasonable inference that any fraud alleged was widespread. A relator cannot rely on conclusory allegations of nationwide fraud to support a claim that illicit conduct was carried out in any particular state. *Id.* Here, Relator has failed to allege a single instance of Walgreen's submission of false claims for reimbursement to the New York Medicaid program in any of the three iterations of his complaint.[4]

### C. Relator Cannot Claim a Share of a Recovery to Which He Did Not Contribute.

To share in a recovery the government obtains from an alternate proceeding, a relator must show that the government relied on the relator's action or information. *See U.S. ex rel. Kuriyan v. HCSC Ins. Servs. Co.*, No. 16-CV-1148 (JB) (KK), 2022 WL 704130, at *1 (D.N.M. Mar. 9, 2022). As explained above, Relator provided no New York specific allegations nor did he paint a picture of a nationwide scheme, and, therefore, is not entitled to any share of the National Walgreens Settlement Agreement and its implementing Consent Judgment.[5]

---

[4] For the reasons stated herein, the State urges the Court to deny Relator's Motion or decline to extend supplemental jurisdiction. However, if the Court does not find those myriad arguments compelling, there is yet another reason why the Court should reject Relator's requested relief. As many other states have argued, the public disclosure bar renders Relator's complaint in the Qui Tam Action invalid. New York has a longstanding history investigating the opioid crisis, dating well before Relator initiated the Qui Tam Action. In the interest of limiting the volume of this briefing, the State has declined to set forth that history in its totality. Nevertheless, should the Court reach this issue, the State seeks leave to file additional briefings with regard to the public disclosure bar.

[5] The Agreement does provide a release of "any person or entity acting in a . . . *qui tam* . . . capacity seeking relief on behalf of or generally applicable to the general public," but that was not specific to Walgreens. (Ex. A to Popp Decl. ¶ 3.) The language was modeled after that used in the states' settlement with the drug manufacturers and distributors against whom no *qui tams* were pending.

## **CONCLUSION**

For the reasons set forth above, and those of the other Plaintiff States, herein incorporated by reference, Relator's Motion for Declaratory judgment should be denied. The State respectfully requests that the Court find that Relator's request was not properly before the Court in the form of a motion, decline to exercise supplemental jurisdiction over any remaining state-law claims, find that there was not an alternate remedy to which Relator is entitled to a share, and/or grant any further relief as the Court deems just and proper.

Dated: New York, NY
February 3, 2026

Respectfully submitted,

LETITIA JAMES
*Attorney General of the State of New York*

By: /s/ Muhammad Umair Khan
Muhammad Umair Khan
Senior Advisor and Special Counsel

Jill D. Brenner
Noah H. Popp
Nathan Shi
Assistant Attorneys General

28 Liberty Street
New York, NY 10005
Tel: (212) 417-5377

## CERTIFICATE OF SERVICE

I, the undersigned, an attorney of record in this matter, hereby certify that on February 3,

2026, I caused a true and correct copy of this Opposition to Relator's Motion to be served via the

Court's ECF/electronic mailing system upon all counsel of record.

Dated: February 3, 2026
      New York, NY

Nathan Shi
Special Assistant Attorney General
New York State Office of the Attorney General

16