# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, | ) ) ) | |
| Plaintiff-Relator, | ) | |
| v. | ) ) | Case No. 18 C 5452 |
| WALGREENS BOOTS ALLIANCE, INC., | ) ) ) | Judge Joan H. Lefkow |
| Defendant. | ) ) | |

## THE STATE OF NEW MEXICO'S OPPOSITION TO PLAINTFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT

I.  **INTRODUCTION**

A multitude of problems plague Relator's motion. It is procedurally improper because Relator cannot seek declaratory relief through a motion. It is jurisdictionally improper because the claims on behalf of New Mexico were dismissed with prejudice, so this Court lacks subject matter jurisdiction. Nor are there reasonable grounds for this Court to exercise supplemental jurisdiction, not least because New Mexico's state opioid action contained no federal claims.

Relator's motion is also substantively flawed. It seeks a share of a settlement to which New Mexico was not a party and uses a statutory claim on behalf of New Mexico that the State has never asserted in opioid litigation. Nor does the statute Relator uses to hook New Mexico provide for alternate remedy, meaning Relator could not claim a share even if his motion were not otherwise compromised. Nor does this Court have grounds to read an alternate remedy provision into New Mexico's relevant statute.

Even if Relator could overcome *all of these issues*, he would still not be able to claim a share of New Mexico's separate Walgreens settlement agreement because he is not an "original source" and provided no meaningful help to New Mexico's opioid litigation. As will become clear

through New Mexico's Opposition, Relator's motion belies his assertions that he is no interloper. The State of New Mexico thinks Relator doth protest too much and asks this Court to deny the motion and release the State from any further proceedings.

A. **Procedural and Jurisdictional Issues Preclude This Court from Granting Relator's Motion.**

   1. *Relator's Motion Should Be Denied Because It Seeks Relief He Cannot Obtain In This Lawsuit*

The problems with the relief that Relator seeks begin with how he has sought it. Relator has filed a "Motion For A Declaratory Judgement That Relator is Entitled to a Share Of The States' Settlement With Walgreens That Settled Relator's State FCA Claims" ("Relator's Motion") in which he "respectfully asks this court to enter a declaratory judgment . . . that [Relator] is entitled to [a] . . . share of the value of the States' Settlement." Dkt. 84 at 1, 15-16. Such a motion is not cognizable under the Federal Rules of Civil Procedure.

The Court's power to issue declaratory judgments stems from 28 U.S.C. § 2201, which provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, *upon the filing of an appropriate pleading*, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The "[o]nly . . . pleadings . . . allowed" in federal civil practice are defined in Rule 7, and its list excludes motions. Fed. R. Civ. P. 7(a). Instead, "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment." *Ariz. v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014). Courts have explained that "a party may not make *a motion* for declaratory relief, but rather, must being *an action* for a declaratory judgment." *Kam-Ko Bio-Pharm Trad. Co. v. Mayne Pharma*, 560 F.3d 935, 943 (9th Cir. 2009) (quoting *Int'l Bd. of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (emphasis in original)). For this reason, "[a] request for declaratory relief is properly before the court when it is pleaded in a complaint for declaratory judgment." *Ariz. v. City of Tucson*, 761 F.3d 1005, 1010 (9th Cir. 2014).

2

Although it appears technical, this is a distinction with a difference. Courts require the proper presentation of declaratory judgment requests because they raise issues of sufficient importance that they cannot be "decided in passing." *City of Tucson*, 761 F.3d at 1010. Relator asks this Court to declare his rights under the differing laws of 28 states to a share of a settlement agreement executed outside the context of this litigation that New Mexico was not a party to.[1] The motion makes short work of this complexity. In New Mexico's case, Relator ends up relying on New Mexico law that does not exist and the terms of a Settlement Agreement New Mexico did not sign. These questions demonstrate the need for the procedural safeguards afforded by a declaratory judgment action, and Relator's Motion should be denied. *See Int'l Bd. of Teamsters*, 160 F.R.D. at 456 ("[i]nsofar as plaintiffs seek a motion for a declaratory judgment plaintiffs' motion is denied because such a motion is inconsistent with the Federal Rules.").[2]

> 2. *This Court lacks subject matter jurisdiction to issue the relief Relator requests because New Mexico's state law claims have been dismissed with prejudice.*

The relief Relator seeks also cannot be issued in this case because New Mexico's state law claims have already been dismissed with prejudice. "It is the responsibility of the Court to make an independent evaluation of whether subject matter jurisdiction exists in every case," *Foster v. Hill*, 497 F.3d 695, 696-97 (7th Cir. 2007), and dismissal with prejudice has the effect of "terminating federal jurisdiction," *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006). "When a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy v. McEwen*, 495 F.3d 807, 809 (7th Cir. 2007).

---

[1] *See* Ex. A at 788 (Schedule I to Exhibit S identifying New Mexico, Nevada, and West Virginia as "Non-Settling States" as it relates to Walgreens). **Note**: Due to multiple sources of pagination within New Mexico's exhibits, all page references to these exhibits are to the PDF pages of the filed document.

[2] Some courts have construed motions for declaratory judgment as motions for summary judgment in an action for a declaratory judgment in order to hear them. *See, e.g.*, *Kam-Ko Bio-Pharm Trad. Co.*, 560 F.3d at 943. This court should not do so. First, Relator's Complaint does not seek a declaratory judgment, so this case cannot be construed as an action for one. *See generally* Dkt. 7, Dkt. 21. Second, summary judgment would be improper based on the record in this case. *See* Fed. R. Civ. P. 56(a).

This Court dismissed New Mexico's Medicare False Claims Act (NMMFCA) claims with prejudice in January 2024, Dkt. 33 at ¶¶ 1-3, and subsequently issued two orders releasing federal claims in April and October of 2025. *See* Dkt. 72, Dkt. 82. In each of these orders, the Court sought to retain jurisdiction over Relator's share of state settlement funds. Dkt. 33 at ¶ 3; Dkt. 72 at ¶4(3); Dkt. 82 at ¶2. Having been dismissed from the litigation, New Mexico did not receive notice or an opportunity for a hearing in which to contest the orders seeking to retain jurisdiction after dismissing the federal claims. Nevertheless, because the Court has already dismissed New Mexico's state law claims with prejudice, it lacks jurisdiction to issue a declaratory judgment determining Relator's recovery under New Mexico law. *See Vasich v. City of Chicago*, No. 11C 4843, 2013 WL 6730106, *3 (N.D. Ill Dec. 20, 2013) ("The Seventh Circuit has made it . . . clear that a court may not dismiss a case with prejudice and retain jurisdiction to enforce a settlement agreement in the same breath."); *see also Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002) ("once a suit is dismissed with prejudice the judge loses all power to enforce the terms of the settlement that may lie behind that dismissal.").

> 3. *The Court should decline to exercise supplemental jurisdiction over New Mexico's state law claims.*

Federal supplemental jurisdiction "allows federal courts to decide state-law claims . . . if they are so closely related to the plaintiff's federal-law claims as to be in effect part of the same case." *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007). Federal courts may decline to exercise such jurisdiction if (1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) there are other compelling reasons in exceptional circumstances. *Id*. Applying these factors, this Court should not exercise supplemental jurisdiction over any remaining New Mexico state law claims.

<u>Relator's Motion Raises Novel or Complex Issues of State Law</u>: Relator's Motion raises novel issues of state law because it raises issues of first impression. Relator's complaint contained

4

two counts, both violations of the NMMFCA. Relator's alleges that New Mexico has "refused to comply with the provisions of [its] state FCA[] that expressly require [it] to pay Mr. Novak a share of the States' Settlement." Dkt. 84 at 6. It then declares that "[t]hose provisions . . . state as follows" and quotes the Illinois False Claims Act. *Id*. New Mexico is not Illinois, and their statutes are different. Relator brought the New Mexico state law portion of his claim under the NMMFCA, which, unlike the Illinois False Claims Act, does not contain an alternate remedy provision. *See generally* NMSA 1978, § 27-14-1, *et seq*. Whether to read such a provision into a New Mexico statute to create a new cause of action is a quintessentially "novel" question best left to the courts of New Mexico to decide. *See Garrity*, 479 F.3d at 907 ("The judge identified several issues of unsettled state law . . . and this we know is an independent ground for relinquishing supplemental jurisdiction"); *see also Western World Ins. Co. v. Hoey*, 773 F.3d 755, 760 (6th Cir. 2014) ("a district court would be wise to decline jurisdiction if a declaratory action involved novel, unsettled, or complex issues of state law"); *Willis v. Bell*, 669 F. Supp. 229, 234 (N.D. Ill. 1987) ("any possible economy gained by deciding the state-law claims as well as federal ones in federal court is far outweighed by the undesirable effects of this Court's deciding novel state-law issues").

State Law Claims Predominate Over Federal Claims: "[I]f it appears that the state issues substantially predominate . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). With both federal and state claims dismissed, Relator's Motion is one of the last items outstanding in this case. It exclusively raises state law questions, and its resolution will require this Court to apply the differing false claims statutes of 28 sovereign states. In New Mexico's case, it will require the Court to interpret the NMMFCA in light of a New Mexico-specific Settlement Agreement that releases New Mexico's claims in the context of a much larger, global resolution of the state's opioid crisis. Meanwhile, no federal issues remain in <u>this</u> litigation (nor did any federal claims ever exist in New Mexico's opioid litigation). Under these circumstances, state law claims predominate over federal ones "in terms of proof" and in "the scope of the issues raised"

5

and this factor weighs against the Court's exercise of supplemental jurisdiction. *See Gibbs*, 383 U.S. at 726-27.

<u>The District Court Has Dismissed All Claims Over Which It Has Original Jurisdiction</u>:

Finally, and most importantly, when this Court dismissed the federal FCA claims from this litigation, it dismissed the claims that provided it with original jurisdiction. The Supreme Court has explained that "[c]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs*, 383 U.S. at 726; *accord Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state law claims."); *Hansen v. Bd. of Trustees of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). The Seventh Circuit has "identifie[d] three situations in which jurisdiction over supplemental claims should be retained even though the federal claims have dropped out." *Garrity*, 479 F.3d at 906-07. These are when the statute of limitations would bar the refiling of the supplemental claim in state court, when substantial federal judicial resources have been expended on the supplemental claims, and when it is obvious how the claims should be decided. *Id*. None of these are applicable here. To start, 28 U.S.C. § 1367(d) automatically tolls the statute of limitations for Relator's state law claims so there is little risk they are time-barred provided Relator acts diligently in refiling them. *See* 28 U.S.C. § 1367(d). Next, comparatively few judicial resources have been expended on the state law claims to date. Before Relator filed his motion, the States had only appeared in this litigation to request dismissal, which this Court granted. *See* Dkt. 27; Dkt. 33. Finally, the answers sought by Relator's motion are far from obvious. With respect to New Mexico law alone, Relator seeks to have this Court interpret a New Mexico statute to contain terms that it quite clearly lacks. *See* Dkt. 84, Ex. B (listing alternate remedy provisions by state and leaving New Mexico's entry blank). Accordingly, this factor weighs against the Court's exercise of supplemental jurisdiction.

Seventh Circuit precedent indicates that, in considering whether to exercise supplemental jurisdiction after federal claims have dropped from a litigation, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989). The federal claims have been dismissed in this case and all that remain are novel questions of state law raised by Relator's Motion. Because questions of New Mexico law are best answered by New Mexico courts, this Court should relinquish jurisdiction consistent with the principle of comity. *Hansen*, 551 F.3d at 607 ("[w]hen all federal claims have been dismissed . . . the principle of comity encourages federal courts to relinquish supplemental jurisdiction").

B. **<u>New Mexico Is Not a Party to the Multistate Settlement and Therefore Should Not Be Included in Relator's Motion</u>**

Relator's improper motion asks this Court to apportion a share of the Multistate Agreement with Walgreens, arguing that 28 states profited from his underlying qui tam. In support of this, Relator attaches a copy of the December 9, 2022 "Walgreens Settlement Agreement" and represents to the Court that "all the States at issue in Mr. Novak's case here are parties to the States' Settlement Agreement." *See* Dkt. 84 at 2, fn.2; Dkt. 84-1 (Relator's Exhibit A, Walgreens Settlement Agreement). This is not true. Three states signed separate settlement agreements with Walgreens. New Mexico is one of those three states.[3] As such, New Mexico is not a party to this action and should be dismissed by the Court.

The Multistate Agreement defines a "Settling State" as "[a]n Eligible State that has entered into this Agreement and delivers executed releases in accordance with Section VIII.A." *See* Ex. B at 11. The agreement defines a "Non-Settling State" as "[a]ny Eligible State that is not a Settling State." *Id*. at 6. New Mexico did not execute the Multistate Agreement instead opting to pursue settlement with Walgreens through its separate State action. Thus, New Mexico is a Non-Settling

---

[3] The other two states with separate Walgreens settlements are Nevada and Florida. Many of the arguments presented by Nevada are applicable to New Mexico as well.

7

State, derived no benefit from the Agreement, and is not a party to that Agreement or this qui tam action. *See generally* Ex. A.

Relator may well argue that the failure to distinguish the three standalone states from the larger Multistate Agreement is mere scrivener's error. The substance of the motion refutes this and suggests Relator's error is due to a lack of knowledge about the underlying matter he seeks to profit from.[4] The 7th Circuit has relied on Blacks's Law Dictionary which "defines 'scrivener's error' as synonymous with 'clerical error.' And a 'clerical error' is on that results from 'a minor mistake or inadvertence' such as '[a] typist's technical error that can be rectified without serious doubt about the correct reading'" *See Sinha v. Bradley Univ.*, 995 F.3d 568, 575-576 (7th Cir. 2021) (quoting Black's Law Dictionary (11th ed. 2019)) (emphasis added). The 7th Circuit recognizes a mistake as scrivener's error "if it is 'one of transcription,' not of legal knowledge or analysis.'" *Id.* (quoting Holloway v. United States, 526 U.S. 1, 19 n.2, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999)). New Mexico courts have adhered to a similar standard and likewise relied on the Black's Law Dictionary. *See Gonzales v. Berryhill*, 2017 WL 3588924, at *7, n.5 (D.N.M. Aug. 18, 2017). Both approaches boil down to whether the error has a substantive impact on the proceedings.

Under either analysis, Relator's motion falls short. The entirety of the motion discusses the Multistate Agreement. At no point does it identify any of the standalone states nor does it acknowledge there were any separate agreements. This is no mere error. It is indicative of the slapdash nature of Relator's efforts to dip into whatever treasure chest lies nearby. To read otherwise would be to fundamentally transform Relator's motion.

The State of New Mexico executed its separate Walgreens settlement on March 9, 2023.

---

[4] Relator has done himself no favors with his February 2, 2026 Motion to Correct and Supplement His Motion for Declaratory Judgment with Respect Only to Florida. Dkt. 154. The motion was only filed in response to notice from the Florida Attorney General's office regarding its separate Walgreens agreement. To date, Relator still has not realized there are two other states in a similar situation. If and when he does, this Court should withdraw his request with respect to the State of New Mexico in the same manner that it withdrew his request with respect to the State of Florida. Dkt. 175.

Ex. B at 20. It released all claims against Walgreens. It also meticulously detailed the distribution and use of the funds within the State. *See id*. at 31-36, 45-61. Importantly, it enshrined the settlement's governing law as New Mexico law and the proper venue as the 1st Judicial District in Santa Fe. *Id.* at 21. Even if Relator merely erred in presenting fundamental facts of this matter to the Court, New Mexico should still be dismissed.

C. **New Mexico's MFCA Does Not Provide a Means for Relator to Recover Because it Does Not Include an Alternate Remedy Provision**

The rights of a qui tam relator in New Mexico are governed by the Medicare False Claims Act ("MFCA.") NMSA 1978 §§ 27-14-1 to 15. Relator's entire argument is premised on the Federal FCA's "alternate remedy" provision contained in 31 U.S.C. § 3730(c)(5), which preserves a relator's rights to recovery when the government pursues claims through other actions. Many of the states party to this action have similar language in their respective FCAs. By contrast, New Mexico's MFCA contains no alternate remedy provision or language that could be construed as such. *See United States ex rel. Kuriyan v. HCSC Ins. Serv. Co*., D.N.M., Dec. 20, 2021, 2021 WL 5998603 ("Unlike the FCA and NMFATA, NMMFCA does not contain an alternate-remedy provision.") Relator was aware of this fact, considering he lists no statutory alternate remedy provision for New Mexico in Exhibit B (list of Alternate Remedy provisions). Despite this, Relator chose to include New Mexico in a federal matter where his sole basis for jurisdiction over the state is a provision that does not exist in the relevant New Mexico law.

Nor should this Court graft an alternate remedy provision onto New Mexico's MFCA as the State's legislature clearly intended its omission.[5] Application of state law in federal court is bound by controlling decisions of that state's judicial system. *Vance v. Amazon.com*, 852 F.3d 601, 610 (6th Cir. 2017). When a state's supreme court has yet to grapple with a specific question of law, it is incumbent on the federal court to "predict" how the state court would rule by drawing on

---

[5] By contrast, New Mexico's Fraud Against Taxpayers Act, which serves a similar purpose and was alleged by the State in its State opioid case, *does* contain an alternate remedy provision, bolstering the argument that the legislature's language choice is deliberate. *See* NMSA 1978, § 44-9-6(H).

9

a variety of sources such as analogous decision by that state supreme court and regulator guidance. *See Mitchell v. Durham Enters., Inc.*, 99 F.4th 978, 987 (7th Cir. 2024); see also *Wankier v. Crown Equip. Co.*, 353 F.3d 862, 866 (10th Cir. 2003) ("Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.").

Should the Court feel compelled to perform an analysis of the NMMFC, a natural starting point would be to apply the New Mexico standard for legislative interpretation. When analyzing legislative intent, New Mexico courts "look to the plain language of the statute and the context in which it was enacted, taking into account its history and background." *See Pirtle v. Legis. Council Comm. of New Mexico Legis.*, 492 P.3d 586, 592 (NMSC 2021). When reviewing the entirety of a statute, the court must consider "statutory provisions in relation to one another, and give effect to all provisions of a statute so as to render no part inoperative or surplusage." *Id*. at 593. Nor does the omission of language create room for the court to interject its own understanding. "The complement to the preceding rule is that we 'will not read into statute or ordinance language which is not there, particularly if it makes sense as written.'" *See Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 125 N.M. at 411, 962 P.2d at 246 (quoting *Burroughs v. Bd. of Cnty. Comm'rs of Bernalillo Cnty.*, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975)).

When a statute is silent on a specific issue, New Mexico courts are reluctant to act as legislators. "Under our rules of construction, '[i]f the Legislature is silent on an issue, we look at the overall structure and function of the statute, as well as the public policy embodied in the statute.'" *See Segura v. J.W. Drilling, Inc.*, 355 P.3d 845, 850 (N.M. Ct. App. 2015) (quoting *Delfino v. Griffo*, 257 P.3d 917, 922 (NMSC 2011)). The NMMFCA as written functions as intended. The absence of an alternate remedy provision does not undermine the efficacy of the statute. For this Court to read an alternate remedy provision into the statute where one does not exist would far exceed its authority to interpret New Mexico law. As the court in *Segura* said, "The effect of such an effort – in the face of legislative silence – would be to amend the current statutory language. This we are loath to do." *Id*.

Coupled with the preceding arguments, it is unreasonable for Relator to ask this Court to interpret 28 different state laws, many of which lack guidance from the various state supreme courts on the novel issues presented by Relator's improper motion. The Court should deny the motion as it pertains to New Mexico.

### D. Even if the NMMFCA Contained an Alternate Remedy Provision, Relator Has No Grounds to Recover a Share of the New Mexico Settlement

*1. New Mexico's State Action Did Not Allege the Only New Mexico Counts Contained In Relator's Underlying Complaint.*

Courts have consistently held that a relator is not entitled to a share of proceeds from government actions brought under statutes other than the one relied upon by the relator simply because the two matters share a nexus of facts. The D.C. Circuit court penned an illustrative opinion on this question in *United States ex rel. Kennedy v. Novo A/S*, 5 F.4th 47 (D.C. Cir. 2021), wherein the court noted that the government "on the same set of facts… might prioritize the enforcement of a different law." *Novo A/S*, 5 F.4th at 49. In *Novo*, a Novo Nordisk sales representative filed a qui tam action against her employer alleging violations of the Federal FCA. These violations included omitting warning information and marketing prescription drugs inconsistent with FDA limitations. The relator alleged that Novo profited handsomely from these misrepresentations. The federal government pursued the FCA claims but also brought a separate action against Novo Nordisk for violations of the Food, Drug, and Cosmetics Act ("FDCA"). The D.C. Court realized that while the two different claims shared a common set of facts, the government's FDCA claim did not constitute an "alternate remedy" under the FCA. In deciding *Novo*, the Court stated:

> In short, from every angle, the text of the alternate-remedy provision [of the FCA] establishes that the alternative remedial proceedings from which a relator can recover a share must redress *the same type of falsity and fraud claims* that otherwise could be pursued by a private relator's qui tam lawsuit under the False Claims Act.
> …
> By the same token, if the alternate proceeding seeks recompense for some other type of claim that the relator could not have brought, then the proceeding is not covered

by subsection 3730(c)(5) because it is not "alternate" to the False Claims Act qui tam remedy. It is a different legal claim altogether, arising beyond the False Claims Act's borders.

*Novo A/S*, 5 F.4th at 56 (emphasis added)

The U.S. District Court of New Mexico has consistently invoked the logic of *Novo* in a series of *qui tam* decisions on claims brought by the same plaintiff in New Mexico.[6]

*Novo*'s logic should also be applied here. The State of New Mexico filed a state court action against opioid manufacturers on September 8, 2017, alleging numerous New Mexico state claims. *See generally* Ex. E. On March 6, 2019, the State filed its Second Amended Complaint that brought in distributor defendants, including Walgreens. Ex. D at 1. While additional claims were added in the Second Amended Complaint, the statutes relied upon in Relator's complaint – NMSA 1978, 27-14-4(A) and (E) – were not among of them. *Compare* Dkt. 7 at ¶¶ 198-201, 318-21 and Dkt. 21 ¶¶ 198-201, 318-21 *with* Ex. 743-1011. Instead, New Mexico focused its efforts on other statutes that addressed the holistic, statewide impact of the opioid epidemic, rather than specifically on Medicaid fraud. *See*, *e.g.*, Ex. D at ¶ 671; ¶ 673. To the extent New Mexico brought claims of Medicaid fraud, it was through its state criminal statute. *See* Ex. D at ¶¶ 795-809 (alleging violations of NMSA 1978, §§ 30-44-1 to -8).

The results of New Mexico's litigation speak to the disconnect between Relator's allegations and reality. Walgreens reached a settlement with New Mexico that totals upwards of $500,000,000. Critically, according to the distribution section of the settlement, no amount of money is to be directed toward reimbursement for Medicaid fraud. *See* Ex. C at 45-59 (establishing the "core abatement strategies" at the heart of the New Mexico Settlement). Remediation in New Mexico focuses on efforts in local communities to undo the catastrophic impact of the opioid crisis,

---

[6] *United States ex. rel. Kuriyan v. HCSC Ins. Serv. Co.,* No. CIV 16-1148 JB/KK, 2021 WL 5238333, at *2 (D.N.M. Sept. 30, 2021); *Kuriyan*, 2021 WL 5998603, at *46; *United States ex. rel. Kuriyan v. HCSC Ins. Serv. Co.*, No. CIV 16-1148 JB/KK, 2022 WL 704130, at *2 (D.N.M. Mar. 9, 2022); *United States v. Molina Healthcare of New Mexico, Inc.*, No. CIV 16-1148 JB/KK, 2024 WL 4002950, at *17, 18–20 (D.N.M. Aug. 30, 2024).

not government reimbursement. *See id*. There exists no connection between the 21st and 51st counts of Relator's complaint and New Mexico's state court litigation.

2. *Relator's Action Would Be Barred In New Mexico By the Public Disclosure Bar Contained in the NMMFCA.*

If Relator manages to overcome the numerous legal hurdles he has manifested with his improper motion, his claim to any portion of the New Mexico Settlement would be prohibited by the public disclosure bar contained in the NMMFCA. Section 27-14-10(B) states: "A person shall not bring an action pursuant to the Medicaid False Claims Act that is substantially based upon allegations or transactions that are the subject of a civil suit or an administrative proceeding in which the department is already a party.)" NMSA 1978, § 27-14-10b. Though the New Mexico Supreme Court has not spoken directly on this issue, the 10th Circuit has weighed in on the analogous section of the federal FCA. *See* 31 U.S.C. § 3730(e)(4)(A). In considering whether a relator's qui tam is barred by public disclosure, the 10th Circuit asked two questions: (1) whether "substantially the same allegations . . . were publicly disclosed" and (2) if the relator is "an original source of the information." *See United States ex rel. Reed v KeyPoint Gov't Sol.*, 923 F.3d 729, 741 (10th Cir. 2019) (quoting 31 U.S.C. § 3730(e)(4)(A)).

New Mexico's opioid litigation was expansive, including numerous claims across a wide legal spectrum of harms. It was initiated on September 7, 2017, almost two years before Novak's qui tam was served on the state. It is clear that New Mexico was already party to a civil action that encompassed the limited factual space Relator's claim against the State occupies within the larger universe of the opioid litigation. Relator served the State after it had already joined Walgreens and the State never alleged the claims Relator asserts in his underlying complaint. There is nothing alleged in Relator's motion that suggests he was a source of information for New Mexico, much less an "original source."

Relator asks this Court to adjudicate New Mexico state law and so his claim should be tested against the full extent of that law. Under the NMMFCA, Relator's claim cannot proceed

because the State was well into litigation that encompassed the basis of his qui tam and thus it is barred by statute. Relator's motion should be dismissed as it pertains to New Mexico.

### E. Relator's Complaint Did Not Further the State's Investigation or Litigation, and Did Not Advance Settlement Efforts in Any Way

New Mexico filed its amended opioids complaint naming Walgreens on March 6, 2019. Ex. D at 1. The complaint alleged a broad course of conduct that led to systemic, community-wide harms far beyond New Mexico's Medicare program. It included alleged violations of New Mexico's Unfair Practices Act, New Mexico's Medicaid Fraud Act[7], New Mexico's Racketeering Act, New Mexico's Fraud Against Taxpayers Act, and also included common law counts for civil conspiracy, public nuisance, fraud, negligence, and unjust enrichment. *Id*. These claims were filed in New Mexico state court and sounded exclusively in New Mexico law.

To be entitled to any settlement proceeds, Relator must show that New Mexico "used [relator's] information to recoup the funds at issue." *Kyriyan*, 2022 WL 704130, *1 (D.N.M. Mar. 9, 2022). Relator's *qui tam* complaint did not further New Mexico's investigation into Walgreen's conduct, nor could it. New Mexico filed its complaint against Walgreens, to include its alleged violations of the NMMFA and FATA, on March 6, 2019—before Relator served New Mexico with his complaint against the company. *Compare* Ex. D at 1 *with* Dkt. 7 at 1 (demonstrating the First Amended Complaint filed on May 9, 2019). New Mexico had not *even seen* Relator's complaint before it initiated its litigation. Moreover, even if New Mexico had access to Relator's complaint before bringing suit, it would not have been able to rely on it because it did not contain any New Mexico-specific allegations whatsoever. New Mexico is only mentioned in the caption of Relator's complaint, in its introduction, and in the counts section. *See* Dkt. 7 at ¶¶ 1, 173-76, 293-96. Such threadbare allegations would not have provided much assistance to New Mexico's investigation even if they had been reviewed prior to New Mexico's filing suit. *United States ex*

---

[7] The Medicaid Fraud Act is a separate and distinct statute from the Medicaid False Claims Act. *Compare* NMSA 1978, § 30-44-1, *et seq. with* NMSA 1978, § 27-14-1, *et seq*. New Mexico's choice to include the former and not the latter was intentional and should not be interpreted otherwise.

*rel. Nowak v. Medtronic, Inc.*, 806 F.Supp. 310, 357 (dismissing FCA claims because Relator "must allege some specificity with respect to each asserted state and cannot rely on generalized pleadings).

## I. CONCLUSION

The motion should be denied as to New Mexico, and the action should be dismissed. Alternatively, the Court should decline supplemental jurisdiction over all New Mexico-specific issues, and such matters should be raised in New Mexico state court as contemplated by the Walgreens-New Mexico agreement.

Dated: February 3, 2026          Respectfully Submitted,

**ATTORNEY GENERAL OF NEW MEXICO**
**RAÚL TORREZ**

By: */s/ Evan Crocker*
Evan Crocker
Assistant Attorney General – Division Director
Anthony Juzaitis
Assistant Attorney General – Deputy Division Director
Consumer Protection Bureau
408 Galisteo Rd
Santa Fe, New Mexico 87501
Tel: (505) 494-8973
ECrocker@nmdoj.gov
Ajuzaitis@nmdoj.gov
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on February 3, 2026, he caused a true and correct copy of STATE OF NEW MEXICO'S OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT to be served via the Court's ECF/electronic mailing system upon all counsel of record.

*/s/ Evan Crocker*
