**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* T.J. NOVACK, | No. 1:18-cv-05452 |
| Plaintiffs, | Judge Joan H. Lefkow |
| v. | |
| WALGREENS BOOTS ALLIANCE, INC., | |
| Defendant. | |

**STATE OF WASHINGTON'S RESPONSE TO PLAINTIFF-RELATOR'S**
**MOTION FOR DECLARATORY JUDGMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................. 1

II.   WASHINGTON-SPECIFIC FACTS ................................................................... 2

    A.  Washington's Settlement with Walgreens ............................................................ 2

    B.  Payments to Washington Under the Walgreens Settlement Are Precisely Distributed Among Numerous Stakeholders and May Only Be Used For Forward-Looking Abatement ............................................................................................................ 3

    C.  Relator's Amended Complaint Asserted Allegations Under Washington Law Based on No Facts Specific to Washington ....................................................................... 5

    D.  Relator Now Seeks a Portion of Washington's Walgreens Settlement ............................ 6

III.  ARGUMENT........................................................................................................ 7

    A.  Relator's "Motion" Is an Improper Vehicle for Declaratory Relief and Cannot Be Used to Evade the Eleventh Amendment.......................................................... 7

    B.  The Court Should Decline to Exercise Subject Matter Jurisdiction Over Relator's Request for Declaratory Relief Regardless.......................................................... 8

    C.  Alternatively, Relator Is Not Entitled to Any Share of Washington's Abatement Settlement with Walgreens Under Washington Law........................................... 10

        1.  The Walgreens Settlement is not an "alternate remedy" to Relator's dismissed MFFCA claims under Washington law........................................................ 10

        2.  Relator did not provide significant information or play a role in advancing Washington's case against Walgreens and Washington did not receive any proceeds attributable to Relator's putative MFFCA claims...................................... 13

IV.  CONCLUSION.................................................................................................... 15

## I.      INTRODUCTION

The State of Washington (Washington) opposes Plaintiff-Relator's (Relator) procedurally and legally deficient request to divert settlement funding directed to state and local programs that remediate impacts of the ongoing opioid epidemic. Relator's request for a share of settlement payments already designated for Washington public health programs that serve Washington communities implicates novel issues of state law with substantial public policy implications and therefore should be adjudicated, if at all, by a Washington state court.

There are numerous reasons for this Court to deny Relator's "Motion for a Declaratory Judgment that Relator is Entitled to a Share of the States' Settlement with Walgreens that Settled Relator's State FCA Claims" (Motion) as it pertains to Washington. First, the Court should deny the Motion because it is procedurally improper and if properly brought it would be barred by the Eleventh Amendment. Second, and in any case, the Court should decline to exercise pendent jurisdiction over the relief sought in the Motion because it necessarily implicates complex and novel issues of Washington law that also impact a crucial area of public policy: the efforts of the State of Washington and its local governments and tribal communities to remediate the impacts of the opioid crisis. Third, and in the alternative if the Court determines that it can and should entertain Relator's Motion, the Motion should still be denied as to Washington because: (a) abatement funding is not an "alternate remedy" available for Medicaid fraud claims under Washington law; (b) Relator's generalized allegations about nationwide practices (without any Washington-specific information) did not aid Washington and would not survive under Washington law; and (c) Washington's settlement with Walgreens did not include any Medicaid fraud-related "proceeds."

Accordingly, this Court should deny the Motion as to Washington and/or decline to exercise supplemental jurisdiction over the claims that were brought under Washington law.

## II.    WASHINGTON-SPECIFIC FACTS

### A.    Washington's Settlement with Walgreens

In December 2022, Washington announced its intent to join a multi-state settlement with Walgreens (the Walgreens Settlement). Declaration of Jonathan J. Guss in Support of State of Washington's Response to Motion (Guss Decl.) ¶ 4. Washington then secured participation in the Walgreens Settlement from 129 of its local government subdivisions as a precondition for the State and its subdivisions to receive Washington's full share of the settlement payments. *Id.* ¶¶ 5–6.

In early 2024, as required by the Walgreens Settlement, Washington filed a complaint against Walgreens and the parties submitted a consent judgment in the state superior court in King County, Washington. *See* Guss Decl. Exs. 1–2 (complaint and consent judgment). As the complaint describes, Walgreens "materially contributed to the creation of an opioid addiction crisis that has injured, harmed, and otherwise disrupted the lives of thousands of residents of the State of Washington" and which has "cost state, county and municipal governments billions of dollars in expenditures to prevent, mitigate and remedy the multitude of different societal harms and injuries." Guss Decl. Ex. 1 ¶ 25. The complaint alleges two causes of action under Washington law: first, a violation of Washington's Consumer Protection Act, Wash. Rev. Code §§ 19.86.010–.920, based on unfair and deceptive conduct in distributing and dispensing opioids which "affect[ed] the public interest" by "injur[ing] numerous Washington consumers," and "creat[ing] a public health crisis and a public nuisance;" and second, a public nuisance action, under Wash. Rev. Code §§ 7.48.010–.905, because Walgreens "contributed to and/or assisted in creating and maintaining a condition that is unreasonable and harmful to the health of Washingtonians and/or interferes with the comfortable enjoyment of life in violation of Washington law." Guss Decl. Ex. 1 ¶¶ 26–35. Washington has brought the same causes of action in its litigation against other chain pharmacy defendants that contributed to the crisis. Guss Decl. ¶ 9.

The court entered a consent judgment resolving the complaint, effectuating the settlement's scope of release, affirming that court's continuing jurisdiction to resolve any disputes arising under the Walgreens Settlement, and clarifying that the consent judgment could not be modified without the consent of the parties and the state superior court. Guss Decl. Ex. 2 ¶¶ 8, 12, 14–18, 28, 30.

## B. Payments to Washington Under the Walgreens Settlement Are Precisely Distributed Among Numerous Stakeholders and May Only Be Used For Forward-Looking Abatement

The payments that Washington and its subdivisions receive under the Walgreens Settlement are distributed among various stakeholders who are working to abate the continuing impacts of the opioid crisis. Overall, Washington will receive $120.3 million under the Walgreens Settlement over fifteen years. Guss Decl. ¶ 11. The payments are divided between the state government and a group of 126 local governments under the "Allocation Agreement II," which applies to the Walgreens Settlement at issue here as well as several other opioid-related settlements. Guss Decl. Ex. 3.

The Allocation Agreement II divides the payments from the Walgreens Settlement in half, with a 50% share to the State (the State Share), and a 50% share to the local governments (the LG Share). *Id.* at 2, 5.[1] The LG Share is further divided between local governments based on an agreed-upon formula in the One Washington Memorandum Of Understanding Between Washington Municipalities (One Washington MOU). *See Id.* Ex. 4 at 26–37 (allocation formula in the One Washington MOU). The State Share is required by law to be deposited into Washington's Opioid Abatement Settlement Account within the state treasury and can only be spent through legislative appropriations. Guss Decl. ¶ 15; *see also* Wash. Rev. Code § 43.79.483(1) ("The opioid abatement settlement account is created in the state treasury. All settlement receipts and moneys that are designated to be used by the state of Washington to abate the opioid epidemic for state use must

---

[1] All page number references to exhibits here will refer to the pagination assigned by the ECF filing system, rather than any internal pagination that may appear in the documents themselves.

be deposited into the account. Money in the account may be spent only after appropriation."). Beginning in 2025, the state treasurer must transfer at least 20% of funds received by the Opioid Abatement Settlement Account during the prior fiscal year into the Tribal Opioid Prevention and Treatment Account. *See* Wash. Rev. Code §§ 43.79.483(3)–(4) (between 2025 and 2031 the greater of 20% or $7,750,000 must be transferred yearly; starting in 2031, 20% is transferred yearly). The Tribal Opioid Prevention and Treatment Account may only be spent through legislative appropriations that "address[] the impact of the opioid epidemic in tribal communities." Wash. Rev. Code. § 43.79.484. Washington is home to twenty-nine federally recognized tribal governments. Guss Decl. ¶ 16. To summarize it simply, the payments from the Walgreens Settlement are distributed each year as follows: 50% to local governments, 40% to the state government, and 10% to tribal communities.

Payments received by the various stakeholders in the Walgreens Settlement must be used for a defined set of programs and initiatives designed to abate the far-reaching public health impacts of the opioid epidemic. First, by law the Opioid Abatement Settlement Account "may only be used for future opioid remediation," including "the care, treatment, and other programs and expenditures, designed to: (a) Address the use and abuse of opioid products; (b) treat or mitigate opioid use or related disorders; or (c) mitigate other alleged effects of, including those injured as a result of, the opioid epidemic." Wash. Rev. Code § 43.79.483(1). Second, the Tribal Opioid Prevention and Treatment Account can be used to address impacts of the opioid epidemic in Washington's tribal communities, including for "(1) [p]revention and recovery services; (2) treatment programs including medication-assisted treatment; (3) peer services; (4) awareness campaigns and education; and (5) support for first responders." Wash. Rev. Code § 43.79.484. Third, the use of funds under the LG Share to local governments is subject to a similar set of

4

abatement-related restrictions under the Allocation Agreement II and the One Washington MOU. Guss Decl. Ex. 3 ¶ 9, Ex. 4 at 4, 15–25. Finally, the Walgreens Settlement provides a list of "core strategies" and "approved uses" for abatement-related programs. ECF No. 84-1 at 120–34. No payments are assigned to compensate for past harms and none of the funds go to Washington's Medicaid Fraud Penalty Account. Guss Decl. ¶ 18; *see also* Wash. Rev. Code § 74.09.215 (creating Medicaid Fraud Penalty Account and describing what funds are deposited there).

## C.     Relator's Amended Complaint Asserted Allegations Under Washington Law Based on No Facts Specific to Washington

Per the Amended Complaint, ECF No. 7, Relator is a Walgreens pharmacist who has been licensed to practice pharmacy in Illinois since 1982. *Id.* ¶ 4. The complaint asserted "Walgreens' control of its billing and prescription dispensing practices are consistent nationwide[,]" and thus "[t]he occurrences as demonstrated in this Complaint, and in the Chicago area, are consistent with Walgreens' policies and procedures throughout the United States." *Id.* ¶ 38. It provided "[r]epresentative samples of Walgreens' knowingly dispensing [] controlled substances in violation of good pharmacy practices and its submission of false claims," all of which involve prescriptions dispensed in Illinois. *Id.* ¶¶ 40–71. On this basis, Relator alleged that "Walgreens has knowingly submitted thousands of false claims to Medicaid and other federal and state funded prescription drug programs." *Id.* ¶ 72. His complaint gives more examples, again all from Illinois, of specific false claims that were not reversed by Walgreens. *Id.* ¶¶ 75–92. He asserted that Walgreens knowingly submitted false claims to states he named as plaintiffs and concealed its obligation to return money to those states, that those states' false claims laws are similar to the federal law, that those states have established prescription monitoring programs, and that those states generally have similar laws, rules, and regulations to those that apply under federal and Illinois law.

*Id.* ¶¶ 18–20, 26, 35. There is no specific description of any prescriptions dispensed in Washington or of Walgreens' conduct there. *Id*. ¶¶ 13–92.

Relator asserted that Walgreens violated two provisions of Washington's Medicaid Fraud False Claims Act (MFFCA), Wash. Rev. Code §§ 74.66.005–.130. Count 30 alleged it violated Wash. Rev. Code § 74.66.020(1)(a) because it "knowingly presented, or caused to be presented, false and fraudulent claims for payment or approval to Washington" based on "claims for reimbursement of controlled substance prescriptions which were not dispensed as required with the pharmacist exercising sound professional judgment." ECF No. 7 ¶¶ 210–11. Count 60 alleged it violated Wash. Rev. Code § 74.66.020(1)(g) because it "knowingly concealed or knowingly and improperly avoided an obligation to pay or transmit money or property to Washington" based on "prescriptions billed to Medicaid or other federal and/or state funded health care programs that were not reversed by Walgreens even after Walgreens knew that these prescriptions were fake, that payment was not authorized, and that Walgreens received funds to which it was not entitled." ECF No. 7 ¶¶ 330–31. Relator requested damages and civil penalties for both Counts. *Id.* ¶¶ 212, 332.

### D. Relator Now Seeks a Portion of Washington's Walgreens Settlement

The states named as plaintiffs here, including Washington, filed a motion to dismiss (agreed to by Relator) that dismissed Relator's MFFCA claims, among many others, because those claims had been released in the Walgreens Settlement. ECF No. 27. That resolution left open whether Relator might be entitled to some share of the settlement. *Id.* at 3. Relator's instant Motion seeks an order that he is entitled to a share of the Walgreens Settlement, among others. ECF No. 84.

## III.    ARGUMENT

### A.    Relator's "Motion" Is an Improper Vehicle for Declaratory Relief and Cannot Be Used to Evade the Eleventh Amendment

The Court should deny Relator's Motion because it is not a proper request for declaratory relief. A declaratory judgment action under 28 U.S.C. § 2201(a) requires both "a case of actual controversy" within the court's jurisdiction and "the filing of an appropriate pleading." The Motion does not meet either requirement. To avoid voluminous briefing on the same legal issues, Washington joins in full the arguments at pages 4–9 of the State of Connecticut's response to the Motion, ECF No. 149, and adds only an abbreviated discussion here.

First, there is no case or controversy before the Court because Relator's state law claims, including his MFFCA claims under Washington law, have been dismissed. Instead, Relator seeks a determination of whether he has any right to a share of the Walgreens Settlement, which was effectuated under a consent judgment in Washington state court that gives the state court continuing jurisdiction to adjudicate disputes relating to that settlement. *Supra* § II.A. Additionally, Relator seeks funding that is either memorialized under the consent judgment (for local governments) or required under state law to be placed in certain funds that can only be appropriated by the Washington legislature for specific, enumerated purposes. *Supra* §§ II.A–.B. The proper forum to raise those disputes, if any, is a Washington state court, not this Court.

Second, Relator's "motion" requesting a declaratory judgment is not an "appropriate pleading" under the statute. *See Centrifugal Acquisition Corp. v. Moon*, No. 2:09-cv-00327-RTR, 2010 WL 152074, at *1 (E.D. Wis. Jan. 14, 2010) (denying a motion for declaratory judgment as "procedurally improper because there is no such thing as a motion for declaratory relief").

Moreover, Relator cannot call his request a "motion" to avoid the Eleventh Amendment bar that would apply if *he had* filed an appropriate pleading. *See Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 121 (1984) ("A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment.") The Eleventh Amendment bars suits against unconsenting states brought by citizens of any state. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669–70 (1999). Nothing in the Walgreens Settlement, or the consent judgment effectuating it, constitutes a waiver of sovereign immunity for a collateral claim to modify that judgment in federal court. And the MFFCA contains no express or implied waiver as to a suit against the state seeking an alternate remedy determination in federal court. *See* Wash. Rev. Code § 74.66.060(5) (referencing actions in state court only). Nor does Washington's agreement to reserve the alternate remedy question in dismissing Relator's MFFCA claims, ECF No. 27, constitute its consent to litigate the merits of a separate declaratory judgment claim in federal court. *See Moore v. Watson*, 838 F. Supp. 2d 735, 753 (N.D. Ill. 2012) ("A state may waive its sovereign immunity by consenting to suit, but such consent must be unequivocally expressed.") (citation omitted). The Motion should be denied.

**B.     The Court Should Decline to Exercise Subject Matter Jurisdiction Over Relator's Request for Declaratory Relief Regardless**

Yet even if Relator could fix the procedural deficiencies with his request for declaratory relief, the Court should still decline to exercise subject matter jurisdiction over the novel state law issue of whether Washington's MFFCA entitles Relator to a share of the Walgreens Settlement. This Court may decline to exercise supplemental jurisdiction where: (1) "the claim raises a novel or complex issue of State law," (2) the court has "dismissed all claims over which it has original jurisdiction," or (3) "in exceptionable circumstances" that provide "other compelling reasons." 28 U.S.C. § 1367(c). All three apply here. To avoid duplicative briefing of common legal arguments, Washington joins in full the arguments in the State of California's response to the Motion (ECF No. 141) at pages 10–15, and will only add a Washington-specific perspective here.

Relator's request for a portion of the Walgreens Settlement raises complex issues that have not been resolved under the MFFCA. Those issues include whether a settlement of nuisance and Consumer Protection Act claims that provides exclusively abatement-focused remedies can be an "alternate remedy" for MFFCA claims that sought only compensatory damages and civil penalties. *See infra* § III.C.1 (discussing issue). That issue itself implicates a network of inter-governmental agreements and state statutory provisions that allocate the opioid crisis-related settlement payments and restrict how they can be used. *Id*. Relator's request also raises whether exclusively abatement-directed funds can be considered the "proceeds" of an MFFCA claim. *See infra* § III.C.2 (discussing issue). These are questions for a Washington state court.

The unique dynamics here provide additional compelling reasons for this Court to require Relator's claim to be resolved in state court. The interaction between Washington's opioid settlements, its abatement programs, and individual MFFCA claims will require a court to weigh competing interests and public policies. Relator's claim is essentially seeking to collaterally modify or challenge the terms of a complex years-long settlement and consent judgment entered in a Washington state court and governed by Washington law. The King County Superior Court retained its jurisdiction over such disputes. *Supra* § II.A. Moreover, Relator seeks to divert funding that Washington and its local governments are required to use to mitigate the impacts of a continuing and devastating public health crisis—if his request is granted, it may impact Washingtonians who rely on services funded in part by the settlement. Thus, principles of fairness and comity further support declining jurisdiction over this claim. *See Wright v. Assoc. Ins. Co. Inc.*, 29 F.3d 1255, 1251 (7th Cir. 1994) ("[A] district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction

over pendent state-law claims."). The Court should decline to exercise pendent jurisdiction over the claims brought under Washington law.

## C. Alternatively, Relator Is Not Entitled to Any Share of Washington's Abatement Settlement with Walgreens Under Washington Law

While the Court should not reach the merits of Relator's Motion, either due to its procedural defects or because the Court declines to exercise supplemental jurisdiction, if the Court ultimately adjudicates the Motion's merits, it should deny the Motion because Relator is not entitled to any share of the Walgreens Settlement under Washington law.

### 1. The Walgreens Settlement is not an "alternate remedy" to Relator's dismissed MFFCA claims under Washington law

Relator argues he is entitled to a portion of the payments Washington will receive under the Walgreens Settlement because the abatement funding provided under that settlement is an "alternate remedy" to Relator's claims under the MFFCA. ECF No. 84 at 6. Relator is wrong. Under the MFFCA, Washington "may elect to pursue its claim through any alternate remedy available to [it], including any administrative proceeding to determine a civil money penalty," but "[i]f any alternate remedy is pursued in another proceeding, the relator has the same rights in the proceeding as the relator would have had if the action had continued under [the MFFCA]." Wash. Rev. Code § 74.66.060(5). But Washington has not elected to pursue Relator's claim in *any forum* and the Walgreens Settlement exclusively provides an abatement remedy that funds programs to reduce future impacts of the opioid epidemic; it does not provide compensation or impose penalties for past conduct. That is different in kind from the remedies available under the MFFCA.

Washington has not elected to pursue an MFFCA or MFFCA-like claim against Walgreens. Instead, Washington's complaint against Walgreens—consistent with its complaints against other chain pharmacy defendants—only alleged that Walgreens contributed to the creation of a public nuisance and violated Washington's Consumer Protection Act. *Supra* § II.A. Washington did not

seek civil penalties to be paid into the Medicaid Fraud Penalty Account. *Id*. That Washington and Walgreens agreed to a broad release of potential governmental claims relating to opioid dispensing which swept up Relator's putative MFFCA claim does not alter that equation.

The payments under the Walgreens Settlement are designed to abate the impacts of the opioid epidemic going forward, not to compensate or penalize for past costs or harms to Washington's Medicaid program from fraud. The Opioid Abatement Settlement Account, which is where "[a]ll settlement receipts and moneys that are designated to be used by the state of Washington to abate the opioid epidemic for state use," requires that funding "only be used for future opioid remediation." Wash. Rev. Code § 43.79.483(1); *supra* § II.B. Appropriations from the Tribal Opioid Prevention and Treatment Account are also limited to "addressing the impact of the opioid epidemic in tribal communities." Wash. Rev. Code § 43.79.484; *supra* § II.B. Local governments in Washington are bound to use the funds for remedial, rather than compensatory, purposes. *Supra* § II.B. Tellingly, no portion of the payments under the Walgreens Settlement goes into to the Medicaid Fraud Penalty Account, which is where "all receipts received under . . . settlements that originated under the [MFFCA] *must be deposited*." Wash. Rev. Code § 74.09.215 (emphasis added); Guss Decl. ¶ 18.

The exclusively abatement-focused payments under the Walgreens Settlement further underscore that the remedies Washington will receive under the Walgreens Settlement could not have come from Relator's nascent MFFCA claim. Relator's MFFCA claim sought damages for harms from payment of alleged fraudulently billed prescription claims and civil penalties by the State. *Supra* § II.C. But payments under the Walgreens Settlement must be used for a specific set

11

of *abatement-related* purposes by state agencies, local governments, and entities serving tribal populations. *Supra* § II.B.[2]

Abatement is neither damages nor a penalty under Washington law. Washington's public nuisance statute allows courts to order that a nuisance "be abated, or removed at the expense of" the party that caused it after determining the "sum necessary to defray the expenses of such abatement." Wash. Rev. Code § 7.48.260. It is a forward-looking equitable remedy to remove the nuisance and prevent its recurrence. *See Ingersoll v. Rosseau*, 76 P. 513, 515 (Wash. 1904) ("[A] court can, by the equitable relief of injunction, not only abate the existing nuisance, but it can forbid the creation of other or similar nuisances in the future, entering a judgment that will support an execution whenever its terms are violated."). As the plain language of Section 7.48.260 suggests, equitable abatement relief can include payments necessary to cover the present and future costs of removing or mitigating an ongoing nuisance. *See, e.g., Matter of a Pub. Nuisance Located at 14514 66th Ave E, Puyallup, Pierce Cnty., Wash. (Tax Parcel No. 4015423910)*, 29 Wash. App. 2d 1003, 2023 WL 8589975, at *6-7 (Wash. Ct. App. Dec. 12, 2023) (unpublished) (upholding award of abatement costs in a nuisance action). But even where equitable abatement relief requires the payment of costs, that alone does not transform that relief into compensatory damages. *See United States v. Apex Oil Co., Inc.*, 579 F.3d 734, 736 (7th Cir. 2009) ("That equitable remedies are always orders to act or not to act is a myth; equity often orders payment."); *see also Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("[T]hat a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.' ").

---

[2] Washington joins fully the State of Maryland's observations regarding the complexities of untangling settlement funding and sources at pages 11–15 of Maryland's response to the Motion, ECF No. 145. Similar complexities would abound with respect to Washington's settlement payments too.

12

The MFFCA does not contemplate that an "alternate remedy" for an MFFCA claim could include equitable injunctive abatement relief. Indeed, the only example provided in the statute is an "administrative proceeding to determine a civil monetary penalty"—the same kind of compensatory relief that could be pursued under the MFFCA, and not at all comparable to abatement relief. Wash. Rev. Code § 74.66.060(5); *see also Schnitzer W., LLC v. City of Puyallup*, 416 P.3d 1172, 1180 (Wash. 2018) ("Principles of statutory interpretation suggest that "general terms, when used in conjunction with specific terms in a statute, should be deemed only to incorporate those things similar in nature or 'comparable to' the specific terms.") (citation and quotation marks omitted). Relator's claim to a share of the Walgreens Settlement fails on this basis alone.[3]

2. **Relator did not provide significant information or play a role in advancing Washington's case against Walgreens and Washington did not receive any proceeds attributable to Relator's putative MFFCA claims**

*Even if* the Court finds that the alternate remedy provision applies, Relator still should not be awarded any share of the Walgreens Settlement under Washington law. Section 74.66.070 of the MFFCA creates a sliding scale for how much a *qui tam* plaintiff may recover based on the State's ultimate "proceeds" in the underlying action. Specifically, "the court may award an amount it considers appropriate, but in no case more than ten percent of the proceeds" under circumstances where the action was "based primarily on disclosures of specific information, other than information provided by the relator, relating to allegations or transactions in a criminal, civil, or administrative hearing, in a legislative or administrative report, hearing, audit, or investigation, or from the news media" after considering "the significance of the information and the role of the

---

[3] Moreover, even if the alternate remedy provision applied, it would only grant Relator the "same rights [as under the MFFCA] in the proceeding" where the alternate remedy was pursued. Wash. Rev. Code § 74.66.060(5). This would only authorize an action in the King County Superior Court, which retains jurisdiction over disputes about the Walgreens Settlement, not the collateral challenge Relator is attempting.

relator in advancing the case to litigation." Wash. Rev. Code § 74.66.070(1)(b). Relator's complaint did not provide any information significant to Washington or play any role in advancing Washington's claims against Walgreens, and the State did not receive any MFFCA "proceeds."

The Court should award a 0% share under Section .070(1)(b). Relator's Amended Complaint provides no Washington-specific information and, as detailed in the response brief of North Carolina and Tennessee at pages 1–3, ECF No. 182, his general allegations about Walgreens' nationwide practices had already been alleged in other lawsuits and widely publicized. Such allegations would be dismissed under the MFFCA as a matter of course. *See* Wash. Rev. Code § 74.66.080(2)(a) (requiring dismissal of a MFFCA action "if substantially the same allegations . . . as alleged in the action or claim were publicly disclosed" by the news media unless the relator is "an original source of the information"). To the limited extent they pertain to Washington at all, Relator's generalized allegations as to nationwide practices did not add to Washington's understanding of its public nuisance and Consumer Protection Act claims or assist the State in resolving those claims.

Moreover, Washington did not receive any MFFCA "proceeds" under Section .070. Washington did not bring an MFFCA claim. It did not recover any MFFCA damages or civil penalties. The abatement funding that Washington receives under the Walgreens Settlement is not a remedy that is available under the MFFCA. Wash. Rev. Code §§ 74.66.020, .070. That funding is not deposited into the Medicaid Fraud Penalty Account. *See* Wash. Rev. Code § 74.66.070(5) (clarifying that any "recovered funds that remain after calculation and distribution" of the Relator share "must be deposited" into the Medicaid Fraud Penalty Account); Wash. Rev. Code § 74.09.215 (providing that all receipts received from settlements originating with MFFCA actions

14

must be deposited into the Medicaid Fraud Penalty Account). This means that regardless of Relator's share, Washington's MFFCA "proceeds" under the Walgreens Settlement are $0.

Accordingly, Relator's claim to a share of the Walgreens Settlement fails even if that settlement were deemed an alternate remedy under the MFFCA.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny the Motion as to Washington and/or decline to exercise supplemental jurisdiction over the Washington law claims.

DATED this 3rd day of February 2026.

<div style="margin-left:40%">

NICHOLAS W. BROWN
Attorney General State of Washington

*s/ Jonathan J. Guss*
JONATHAN J. GUSS, *pro hac vice*
Assistant Attorney General
Complex Litigation Division
Washington State Office of the Attorney General
800 Fifth Avenue, Suite 2000
206-464-7744
jonathan.guss@atg.wa.gov

*Counsel for State of Washington*

</div>