**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF WASHINGTON, *ex rel.* T.J. NOVACK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WALGREENS BOOTS ALLIANCE, INC.,<br><br>Defendant. | No. 1:18-cv-05452<br><br>Judge Joan H. Lefkow |

**DECLARATION OF JONATHAN J. GUSS IN SUPPORT OF STATE OF WASHINGTON'S RESPONSE TO PLAINTIFF-RELATOR'S MOTION FOR DECLARATORY JUDGMENT**

I, Jonathan J. Guss, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge unless otherwise stated.

2. I am an Assistant Attorney General at the Washington Attorney General's Office. I represent the State of Washington in the above-captioned case.

3. I have also been counsel of record for Washington in other litigations related to the opioid crisis in Washington state court, including Washington's ongoing litigation against chain pharmacies, *State of Washington v. Rite Aid Corp., et al.*, King County Superior Court Cause No. 22-2-20910-1 SEA (Chain Pharmacy Litigation); and Washington's complaint and consent judgment against Walgreens, *State of Washington v. Walgreen Co.*, King County Superior Court Cause No. 24-2-00510-2 SEA (Walgreens Litigation).

**Washington's Settlement with Walgreens**

4. In December 2022, the Washington Attorney General's Office announced that Washington would be joining several multi-state settlements with various companies alleged to have contributed to the opioid epidemic in Washington, including Walgreens (Walgreens Settlement).

5. Our office then began soliciting a group of 129 local governments to join the Walgreens Settlement. Their participation was required for Washington to receive the full amount possible under the terms of the settlement. This group of local governments included all counties, cities over a certain population threshold, and several school districts.

6. The State of Washington was able to secure full participation from those 129 local governments, and the Walgreens Settlement became effective.

7. As required by the Walgreens Settlement, the State of Washington then filed a complaint against Walgreens and a consent judgment in the Walgreens Litigation.

8. A true and correct copy of the State of Washington's "Complaint for Injunctive and Other Relief Under the Consumer Protection Act and Public Nuisance" in the Walgreens Litigation, dated January 8, 2024, is attached hereto as **Exhibit 1**.

9. The complaint filed in the Walgreens Litigation brought the same two causes of action that Washington is pursuing in its ongoing Chain Pharmacy Litigation: a claim under the Washington Consumer Protection Act and a public nuisance action under Washington law.

10. A true and correct copy of the Final Consent Judgment and Dismissal with Prejudice in the Walgreens Litigation, signed by King County Superior Court Judge Maureen McKee and dated February 2, 2024, without its accompanying exhibits is attached hereto as **Exhibit 2**.

**The Distribution of Payments in Washington Under the Walgreens Settlement**

11. Overall, Washington is slated to receive $120.3 million in payments over a period of 15 years under the Walgreens Settlement. The payments are divided between the State and a set of 125 local subdivisions pursuant to a series of inter-governmental agreements.

12. The "Allocation Agreement II" divides the distribution of funds paid from the Walgreens Settlement and other opioid-related settlements involving Walmart, Teva, Allergan, and CVS. The Allocation Agreement II divides the payments from the Walgreens Settlement in half, with a 50% share to the State, which it calls the "State Share," and a 50% share that goes to the local governments, which it calls the "LG Share." A true and correct copy of the Allocation Agreement II without its accompanying exhibits is attached hereto as **Exhibit 3**.

13. One of the exhibits to the Allocation Agreement II is an agreement between local governments as to how the LG Share will be distributed and what it can be used to fund, called the "One Washington Memorandum of Understanding Between Washington Municipalities" (One Washington MOU). A true and correct copy of the One Washington MOU with its accompanying exhibits is attached hereto as **Exhibit 4**.

14. As with other opioid settlements in Washington, local governments that joined the Walgreens Settlement were required to have signed both the Allocation Agreement II and the One Washington MOU.

15. The payments that constitute the State Share of the Walgreens Settlement go exclusively to an account in the state treasury called the Opioid Abatement Settlement Account, which was created by the Washington Legislature under Wash. Rev. Code § 43.79.483. The statute restricts how the funds can be spent.

16. Washington is home to twenty-nine federally recognized tribes and to citizens of numerous other tribal governments. A directory including the federally recognized tribes both in and near Washington provided by the Washinton Governor's Office of Indian Affairs is available at https://goia.wa.gov/tribal-directory/federally-recognized-tribes-washington-state (last accessed on January 30, 2026).

17. By law, a portion of the State Share of the Walgreens Settlement will be transferred from the Opioid Abatement Settlement Account to a separate account in the state treasury called the Tribal Opioid Prevention and Treatment Account, which was created by the Washington Legislature under Wash. Rev. Code § 43.79.484. The statute restricts how the funds can be spent, including limiting the use of its funds to address impacts of the opioid epidemic in Washington's tribal communities.

18. No payments from the State Share or the LG Share go into the Medicaid Fraud Penalty Account in the state treasury, which was created by the Washington Legislature under Wash. Rev. Code § 74.09.215.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 3rd day of February 2026 at Everett, Washington.

*s/ Jonathan J. Guss*
JONATHAN J. GUSS, *pro hac vice*
Assistant Attorney General
Washington State Office of the Attorney General