# Exhibit A

## VIRGINIA OPIOID ABATEMENT FUND AND SETTLEMENT ALLOCATION MEMORANDUM OF UNDERSTANDING

**WHEREAS**, the people of the Commonwealth of Virginia and its communities have been harmed through the national and statewide epidemic caused by licit and illicit opioid use and distribution within the Commonwealth of Virginia;

**WHEREAS**, the Commonwealth of Virginia, through the Office of Attorney General Mark R. Herring, and certain Political Subdivisions, through their elected representatives and counsel, are separately engaged in litigation seeking to hold those entities in the Pharmaceutical Supply Chain accountable for the damage caused;

**WHEREAS**, the Commonwealth of Virginia and its Political Subdivisions share a common desire to abate and alleviate the impacts of the opioid epidemic throughout Virginia; and now

**THEREFORE**, the Commonwealth of Virginia and certain of its Political Subdivisions, subject to completing formal documents effectuating the Parties' agreements, enter into this Virginia Opioid Abatement Fund and Settlement Allocation Memorandum of Understanding ("MOU") relating to the allocation and use of the proceeds of any Settlements as described herein.

### A. Definitions

As used in this Virginia Term Sheet:

1. "The Commonwealth" shall mean the Commonwealth of Virginia acting through its Attorney General.
2. "Political Subdivision(s)" shall mean the Virginia counties and independent cities represented by Counsel.
3. "Participating Political Subdivisions" shall mean the Political Subdivisions, along with all Virginia counties and independent cities who agree to become signatories to this MOU and to be bound by the terms of future Settlements.

4. "Counsel" shall mean the undersigned private attorneys representing the Political Subdivisions.

5. "The Parties" shall mean the Commonwealth of Virginia, the Political Subdivisions, and Counsel.

6. "Negotiating Committee" shall mean a three-member representative group of the Parties. The Commonwealth shall be represented by the Virginia Attorney General or his designees. The Political Subdivisions and Counsel shall be represented by W. Edgar Spivey of Kaufman & Canoles, P.C. or his designee, and J. Burton LeBlanc of Baron & Budd, P.C. or his designee.

7. "Settlement" shall mean the negotiated resolution of legal or equitable claims against a Pharmaceutical Supply Chain Participant named in Complaints filed by all the Political Subdivisions in court on or before April 30, 2020 when that resolution has been jointly entered into by the Commonwealth, the Political Subdivisions, and Counsel. "Settlement" also shall include the approval by a United States Bankruptcy Court of a plan of reorganization or liquidation of a Pharmaceutical Supply Chain Participant, or any other determination, ruling, or decision by a United States Bankruptcy Court, in which legal or equitable claims against the Pharmaceutical Supply Chain Participant by the Commonwealth and the Political Subdivisions are settled, adjudicated, released, or otherwise resolved.

8. "Opioid Funds" shall mean monetary amounts obtained through a Settlement as defined in this MOU.

9. "Approved Abatement Purposes" shall mean efforts to treat, prevent, or reduce opioid use disorder or the misuse of opioids or to otherwise abate or remediate the

opioid epidemic, including but not limited to those efforts described in Section C(4)(a) through (j) of this MOU. In addition, "Approved Abatement Purposes" shall include the types of efforts approved for funding by the Authority that is defined in Section C(1). "Approved Abatement Purposes" also shall include any other abatement or remediation purposes to the extent such purposes are described in a Settlement.

10. "Pharmaceutical Supply Chain" shall mean the process and channels through which opioids or opioid products are manufactured, marketed, promoted, distributed or dispensed.

11. "Pharmaceutical Supply Chain Participant" shall mean any entity that engages in or has engaged in the manufacture, marketing, promotion, distribution, or dispensing of an opioid analgesic.

**B. Allocation of Settlement Proceeds**

1. All Opioid Funds shall be initially divided with fifteen percent (15%) going to the Participating Political Subdivisions ("Subdivision Share"), seventy percent (70%) going to the Virginia Opioid Abatement Fund and to other Approved Abatement Purposes as further described herein ("Opioid Abatement Share"), and fifteen percent (15%) going to the Commonwealth of Virginia ("Commonwealth Share").

2. The Subdivision Share shall be allocated and paid to the Participating Political Subdivisions in accordance with the division of proceeds referenced in the schedule attached hereto as Exhibit A. The shares of Virginia counties and independent cities who elect not to become Participating Political Subdivisions, if any, shall be reallocated ratably to the Participating Political Subdivisions.

3. In the event a Participating Political Subdivision merges, dissolves, or ceases to exist, the allocation percentage for that Participating Political Subdivision shall be redistributed equitably based on the composition of the successor subdivision.

4. The Commonwealth Share shall be deposited to the Attorney General's Regulatory, Consumer Advocacy, Litigation, and Enforcement Revolving Trust Fund with moneys transferred to the Commonwealth's General Fund as provided by law. To the extent a Settlement requires that all Opioid Funds be used only for abatement or similar purposes, then the Commonwealth Share shall be deposited and distributed accordingly.

5. The Opioid Abatement Share of 70% of the Opioid Funds shall be allocated and paid as follows:

   a. Fifty-five percent (55%) of the Opioid Funds shall be allocated and paid to the Virginia Opioid Abatement Fund ("Fund").

   b. Fifteen percent (15%) of the Opioid Funds shall be allocated and paid to the Participating Political Subdivisions and shall be used for Approved Abatement Purposes ("Direct Subdivision Abatement Share"). Upon request, a Participating Political Subdivision shall make publicly available information showing the purposes for which the Participating Political Subdivision used Direct Subdivision Abatement Share funds. The Direct Subdivision Abatement Share shall be allocated and paid to the Participating Political Subdivisions in accordance with the division of proceeds referenced in the schedule attached hereto as Exhibit A. The shares of Virginia counties and independent cities who

elect not to become Participating Political Subdivisions, if any, shall be reallocated ratably to the Participating Political Subdivisions.

6. To the extent a Settlement requires that all Opioid Funds be used only for abatement or similar purposes, then the Subdivision Share and the Commonwealth Share shall be used for Approved Abatement Purposes.

7. To receive funds allocated under this MOU from any Settlement, the Commonwealth and the Participating Political Subdivisions will comply with the terms of any such Settlement, including, among other things, any reporting requirements or restrictions on the use of funds for administrative purposes.

C. **Virginia Opioid Abatement Fund and Virginia Opioid Abatement Authority**

1. The Parties have sought creation of a Virginia Opioid Abatement Authority ("Authority") through legislation submitted to the Virginia General Assembly, which passed in the form attached hereto as Exhibit B. The Authority shall administer the Fund, which also shall be created through the legislation. The Authority shall seek to abate and remediate the opioid epidemic in Virginia through financial support from the Fund in the form of grants, donations, or other assistance, for efforts to treat, prevent, and reduce opioid use disorder and the misuse of opioids in Virginia.

2. The Authority shall be governed by a Board of Directors consisting of 11 members as follows: (i) the Secretary of Health and Human Resources, or his designee; (ii) the Chair of the Senate Committee on Finance and Appropriations or his designee and the Chair of the House Committee on Appropriations or his designee; (iii) an elected member of the governing body of a Participating Political Subdivision, to

be selected from a list of three submitted jointly by the Virginia Association of Counties and the Virginia Municipal League; (iv) one representative of a community services board or behavioral health authority of an urban or suburban region containing Participating Political Subdivisions and one representative of a community services board or behavioral health authority of a rural region containing Participating Political Subdivisions, each to be selected from lists of three submitted by the Virginia Association of Community Services Boards; (v) one sheriff of a Participating Political Subdivision, to be selected from a list of three submitted by the Virginia Sheriffs' Association; (vi) one licensed, practicing City or County Attorney of a Participating Political Subdivision, to be selected from a list of three submitted by the Local Government Attorneys of Virginia; (vii) two medical professionals with expertise in public and behavioral health administration or opioid use disorders and their treatment; and (viii) one representative of the addiction and recovery community.

a. The members appointed pursuant to clause (i) shall serve ex officio, and the members appointed pursuant to clauses (iii) through (viii) shall be appointed by the Governor.
b. After an initial staggering of terms, members of the Board shall serve terms of four years. No member shall be eligible to serve more than two terms. Any appointment to fill a vacancy shall be for the unexpired term. A person appointed to fill a vacancy may be appointed to serve two additional terms. Ex officio members shall serve terms coincident with their terms of office.

c. The Board shall elect annually a chairman and vice-chairman from among its membership. The chairman, or in his absence the vice-chairman, shall preside at all meetings of the Board. A majority of the members of the Board serving at any one time shall constitute a quorum for the transaction of business. The Board shall meet annually or more frequently at the call of the chairman.

3. The Authority shall establish specific criteria and procedures for awards from the Fund; establish requirements for the submission of funding requests; evaluate funding requests in accordance with the criteria established by the Authority; make awards from the Fund in a manner that distributes funds equitably among all community services board regions of the Commonwealth, including the establishment of minimum percentages of funds that must be awarded to each Participating Political Subdivision; and evaluate the implementation and results of all efforts receiving support from the Authority.

4. The Authority may make grants and disbursements from the Fund that support efforts to treat, prevent, or reduce opioid use disorder or the misuse of opioids or otherwise abate or remediate the opioid epidemic. Such efforts may include but shall not be limited to the following:

a. Support treatment of opioid use disorder and any co-occurring substance use disorder or mental health conditions through evidence-based or evidence-informed methods, programs, or strategies.

b. Support people in recovery from opioid use disorder and any co-occurring substance use disorder or mental health conditions through evidence-based or evidence-informed methods, programs, or strategies;

c. Provide connections to care for people who have, or are at risk of developing, opioid use disorder and any co-occurring substance use disorder or mental health conditions through evidence-based or evidence-informed methods, programs, or strategies;

d. Support efforts, including law-enforcement programs, to address the needs of persons with opioid use disorder and any co-occurring substance use disorder or mental health conditions who are involved, or are at risk of becoming involved, in the criminal justice system through evidence-based or evidence-informed methods, programs, or strategies;

e. Support drug treatment and recovery courts that provide evidence-based or evidence-informed options for people with opioid use disorder and any co-occurring substance use disorder or mental health conditions;

f. Support efforts to address the needs of pregnant or parenting women with opioid use disorder and any co-occurring substance use disorder or mental health conditions, and the needs of their families, including babies with neonatal abstinence syndrome, through evidence-based or evidence-informed methods, programs, or strategies;

g. Support efforts to prevent over-prescribing and ensure appropriate prescribing and dispensing of opioids through evidence-based or evidence-informed methods, programs, or strategies;

h. Support efforts to discourage or prevent misuse of opioids through evidence-based or evidence-informed methods, programs, or strategies;

i. Support efforts to prevent or reduce overdose deaths or other opioid-related harms through evidence-based or evidence-informed methods, programs, or strategies; and

j. Support efforts to provide comprehensive resources for patients seeking opioid detoxification, including detoxification services.

5. The Authority shall provide financial support only for efforts that satisfy the following conditions:

a. The efforts shall be conducted or managed by a Virginia state agency or Participating Political Subdivision;

b. No support provided by the Authority shall be used by the recipient to supplant funding for an existing program or continue funding an existing program at its current amount of funding;

c. No support provided by the Authority shall be used by the recipient for indirect costs incurred in the administration of the financial support or for any other purpose proscribed by the Authority; and

d. Recipients of support provided by the Authority shall agree to provide the Authority with such information regarding the implementation of the effort and allow such monitoring and review of the effort as may be required by the Authority to ensure compliance with the terms under which the support is provided.

6. The Authority shall give priority to applications for financial support for efforts that:

a. Collaborate with an existing program or organization that has an established record of success treating, preventing or reducing opioid use disorder or the misuse of opioids;

b. Treat, prevent, or reduce opioid use disorder or the misuse of opioids in a community with a high incidence of opioid use disorder or opioid death rate relative to population;

c. Treat, prevent or reduce opioid use disorder or the misuse of opioids in a historically economically disadvantaged community, as that term is defined in Va. Code § 56-576; or

d. Include a monetary match from or on behalf of the applicant, with higher priority given to an effort with a larger matching amount.

7. For every deposit to the Fund, the Authority shall allocate a portion to the following purposes:

a. Fifteen percent (15%) shall be restricted for use by state agencies;

b. Fifteen percent (15%) shall be restricted for use by Participating Political Subdivisions with these funds distributed in accordance with the division of proceeds referenced in the schedule attached hereto as Exhibit A. The shares of Virginia counties and independent cities who elect not to become Participating Political Subdivisions, if any, shall be reallocated ratably to the Participating Political Subdivisions.

c. Thirty-five percent (35%) shall be restricted for use for regional efforts (a partnership of at least two Participating Political Subdivisions within a community services board region); and

d. Thirty-five percent (35%) shall be unrestricted and may be used to fund the Authority's staffing and administrative costs and may be distributed for use by state agencies, by the Participating Political Subdivisions, or for regional efforts in addition to the amounts set forth in subparagraphs 7(a)-(c), provided that the Authority shall ensure that such funds are used to accomplish the purposes described above or invested as described immediately below.

8. In distributing money from the Fund, the Authority shall balance immediate and anticipated needs with projected receipts of funds in order to best accomplish the purposes for which the Authority is established.

9. The Board may designate any amount from the Fund to be invested, reinvested, and managed by the Board of the Virginia Retirement System.

**D. Payment of Counsel and Litigation Expenses**

1. The Parties anticipate that any national Settlement will provide for payment of all or a portion of the attorneys' fees and litigation expenses of named plaintiff Participating Political Subdivisions. Counsel for any named plaintiff Participating Political Subdivision that seeks to recover attorneys' fees and litigation expenses from Settlement funds shall first seek to recover such fees and expenses from any national Settlement fund established to pay such fees and expenses. For such purposes, the Parties agree that the monetary recoveries obtained via Settlement are attributable to the Commonwealth and the Political Subdivisions 50% each.

2. In addition, the Parties agree that a supplemental attorneys' fees and costs fund (the "Deficiency Fund") will be created; provided, however, that such Deficiency Fund may not violate the terms of any national Settlement. In such event, the Parties

agree to exert diligent efforts to accomplish an alternate arrangement that preserves the payment of counsel and litigation expenses outlined hereunder. Administration of the Deficiency Fund shall be the responsibility of the Political Subdivisions, and the costs of administration may be paid out of the Deficiency Fund.

3. The Deficiency Fund is to be used to compensate counsel for the Participating Political Subdivisions that filed suit on or prior to April 30, 2020. Eligible contingent fee contracts shall have been executed on or before April 30, 2020.

4. The Deficiency Fund shall be funded as follows: from any national Settlement, the funds deposited in the Deficiency Fund shall be 25% of the Subdivision Share and 25% of the Direct Subdivision Abatement Share of each payment (annual or otherwise) that is allocated to the Commonwealth of Virginia (including its political subdivisions) for that Settlement. These funds shall be deposited to the Deficiency Fund prior to distribution to the Participating Political Subdivisions. No portion of the Deficiency Fund shall be drawn from the Commonwealth Share or the Fund.

5. The maximum percentage of any contingency fee agreement permitted for compensation shall be 25% of the portion of the Subdivision Share and the Direct Subdivision Abatement Share attributable to the named plaintiff Participating Political Subdivision that is a party to the contingency fee agreement, plus expenses attributable to that named plaintiff Participating Political Subdivision. Under no circumstances may counsel collect more for its work on behalf of a named plaintiff Participating Political Subdivision than it would under its contingency agreement with that named plaintiff Participating Political Subdivision.

6. To the extent that funds available in the designated amounts or percentages set forth in this Section D are inadequate to fully pay amounts due under contingent fee contracts, funds shall be distributed to private counsel for named plaintiff Participating Political Subdivisions who filed suit and entered into contingent fee contracts prior to April 30, 2020 on a pro rata basis based on the percentage of the total population of named plaintiff Participating Political Subdivisions contained in the named plaintiff Participating Political Subdivision that private counsel represents.

7. Any funds remaining in the Deficiency Fund in excess of the amounts needed to cover private counsel's representation agreements shall revert to the Participating Political Subdivisions and be allocated to the sources from which they derived.

8. Any attorneys' fees related to representation of the Commonwealth of Virginia shall not be paid from the Subdivision Share, the Direct Subdivision Abatement Share, or the Fund but shall be drawn directly from the Commonwealth Share or through other sources. Any payments of attorneys' fees related to representation of the Commonwealth of Virginia from such other sources shall not be deemed Opioid Funds subject to allocation under this MOU.

**E. Settlement Negotiations**

1. The Negotiating Committee members agree to inform each other in advance of any negotiations relating to any Virginia-only Settlement with a Pharmaceutical Supply Chain Participant that includes both the Commonwealth and its Political Subdivisions and shall provide each other the opportunity to participate in such negotiations.

2. The Parties further agree to keep each other reasonably informed of all other global settlement negotiations with Pharmaceutical Supply Chain Participants. Neither this provision, nor any other, shall be construed to state or imply that the Commonwealth or the Political Subdivisions are unauthorized to engage in settlement negotiations with Pharmaceutical Supply Chain Participants without prior consent or contemporaneous participation of the other, or that either party is entitled to participate as an active or direct participant in settlement negotiations with the other. Rather, while the Commonwealth's and the Political Subdivisions' efforts to achieve worthwhile settlements are to be collaborative, incremental stages need not be so.

3. As this is a Virginia-specific effort, the Negotiating Committee shall be chaired by the Attorney General or his designee.

4. The Commonwealth of Virginia, the Political Subdivisions, or Counsel may withdraw from coordinated Settlement discussions detailed in this Section upon 5 days' written notice to the remaining Committee Members and counsel for any affected Pharmaceutical Supply Chain Participant. The withdrawal of any Member releases the remaining Committee Members from the restrictions and obligations in this Section E.

5. The obligations in this Section E shall not affect any Party's right to proceed with trial or, within 30 days of the date upon which a trial involving that Party's claims against a specific Pharmaceutical Supply Chain Participant is scheduled to begin, reach a case-specific resolution with that particular Pharmaceutical Supply Chain Participant.

6. Nothing in this MOU alters or changes the right of the Commonwealth or any Political Subdivision to pursue its own claim. The intent of this MOU is to join the Parties to reach a Settlement or Settlements.

**Acknowledgment of Agreement**

We, the undersigned, have participated in the drafting of the above MOU, including comments solicited from client Political Subdivisions. This document has been collaboratively drafted to maintain all individual claims while allowing the Commonwealth and its Political Subdivisions to cooperate in exploring all possible means of resolution. Nothing in this agreement binds any party to any specific outcome. Any resolution under this document will require acceptance by the Commonwealth of Virginia and the Participating Political Subdivisions.

We, the undersigned, hereby accept the VIRGINIA OPIOID ABATEMENT FUND AND SETTLEMENT ALLOCATION MEMORANDUM OF UNDERSTANDING. We understand that the purpose of this MOU is to permit collaboration between the Commonwealth of Virginia and Political Subdivisions to explore and potentially effectuate earlier resolution of the Opioid Litigation against Pharmaceutical Supply Chain Participants. We also understand that an additional purpose is to create an effective means of distributing any potential Settlement funds obtained under this MOU between the Commonwealth of Virginia and the Participating Political Subdivisions in a manner that would promote an effective and meaningful use of the funds in abating the opioid epidemic throughout Virginia.

Executed this 20th day of August, 2021.

FOR THE COMMONWEALTH OF VIRGINIA:

Mark R. Herring

MARK R. HERRING
ATTORNEY GENERAL

Executed this 20th day of August, 2021

Signature: ______________________

Printed Name: W. Edgar Spivey

KAUFMAN & CANOLES, P.C.
W. Edgar Spivey (VSB No. 29125)
Patrick H. O'Donnell (VSB No. 29637)
150 W. Main Street, Suite 2100
Norfolk, VA 23510
wespivey@kaufcan.com
phodonnell@kaufcan.com
(757) 624-3000 - phone
(888) 360-9092 - fax

SANFORD HEISLER SHARP, LLP
Grant Morris (VSB No. 16290)
Andrew H. Miller (pro hac vice)
700 Pennsylvania SE, Suite 300
Washington, DC 20003
gmorris@sanfordheisler.com
amiller@sanfordheisler.com
(202) 499-5200 - phone
(202) 499-5199 - fax

SANFORD HEISLER SHARP, LLP
Kevin Sharp (pro hac vice)
R. Johan Conrod, Jr. (VSB No. 46765)
Jonathan Tepe (pro hac vice)
611 Commerce Street, Suite 3100
Nashville, TN 37203
ksharp@sanfordheisler.com
JConrod@sanfordheisler.com
jtepe@sanfordheisler.com
(615) 434-7000 - phone
(615) 434-7020 - fax

THE CICALA LAW FIRM PLLC
Joanne Cicala (pro hac vice)
R. Johan Conrod, Jr. (VSB No. 46765)
101 College Street
Dripping Springs, TX 78620
joanne@cicalapllc.com
johan@cicalapllc.com
(512) 275-6550 - phone
(512) 858-1801 – fax

Executed this 20th day of August, 2021

Signature: [signature]

Printed Name: Aaron L. Harrah

BARON & BUDD, P.C.
J. Burton LeBlanc, IV
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219
(214) 521-3605 - phone
(214) 520-1181 - fax
bleblanc@baronbudd.com

KALFUS & NACHMAN, P.C.
Christopher I. Jacobs
P.O. Box 12889
Norfolk, VA 23541
(757) 461-4900 – phone
(757) 461-1518 – fax
cij@knlegal.com

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL LLP
Bert Ketchum
419 - 11th Street (25701)
P.O. Box 2389
Huntington, West Virginia 25724-2389
(800) 479-0053 – phone
(304) 525-9115 - phone
(304) 529-3284 fax
bert@greeneketchum.com

WILLIAMS & LIGHT
Mark T. Williams
317 Patton Street
Danville, VA 24541
(434) 483-5196 – phone

DANIEL THOMAS LAW
Jacob Berkley Daniel
P.O. Box 999
Yanceyville, NC 27379
(336) 694-4363
jdaniel@danielthomaslaw.com

HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC
James C. Peterson
Aaron L. Harrah
NorthGate Business Park
500 Tracy Way
Charleston, WV 25311
(304) 345-5667 – phone
jcpeterson@hpcbd.com

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.
Peter J. Mougey
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
(850) 435-7068 – phone
(850) 436-6068 – fax
pmougey@levinlaw.com

POWELL & MAJESTRO, PLLC
Anthony J. Majestro
405 Capitol Street, Suite P-1200
Charleston, WV 25301
(304) 346-2889 – phone
(304) 346-2895 – fax
amajestro@powellmajestro.com

KILGORE LAW FIRM
Terry Kilgore
197 W. Jackson St.
P.O. Box 669
Gate City, VA 24251
(276) 386-7701 – phone
(276) 386-2377 – fax
tkilgore@kilgorelawoffice.com

Executed this 20th day of August, 2021

Signature: [signature]

Printed Name: Eric Barton


WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 - phone
(816) 531-2372 - fax
tcartmell@wcllp.com
bmadden@wcllp.com
ebarton@wcllp.com
sruane@wcllp.com

CAMPBELL LAW FIRM
Jeffrey L. Campbell
117 N. Park Street
Marion, VA 24354
(276) 783-8197
jeff@campbelllawfirmva.com

Kimberly C. Haugh, PC
Kimberly C. Haugh
324 Cummings Street
Abingdon, VA 24210
(276) 676-2400 - phone
(276) 525-4359 - fax
kchlawgroup@gmail.com

DUMAS LAW FIRM, LLC
Joey D. Dumas
P.O. Box 3046
Mobile, AL 36652
(251) 222-6669 - phone
(251) 217-7753 - fax
joey@joeydumaslaw.com

Executed this 18th day of August, 2021

Signature: [signature]

Printed Name: Ellen Relkin

WEITZ & LUXENBERG, P.C.
Paul J. Pennock
Ellen Relkin
700 Broadway
New York, NY 10003
(212) 558-5549 – phone
ppennock@weitzlux.com
erelkin@weitzlux.com

MARKS & HARRISON
Lee J. Bujakowski
2141 E. Hundred Road
Chester, VA 23836
(804) 458-2766 – phone
lbujakowski@marksandharrison.com

Executed this 20th day of August, 2021. Signature: [signature]

Printed Name: DONALD BROGGI

SCOTT & SCOTT, ATTORNEYS AT LAW, LLP
Donald A. Broggi
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
(212) 223-6444 – phone
(212) 223-6334 – fax
dbroggi@scott-scott.com

FURNISS, DAVIS, RASHKIND AND SAUNDERS, P.C.
James A. Cales, III (VSB No. 41371)
6160 Kempsville Circle, Suite 341B
Norfolk, Virginia 23502
jcales@furnissdavis.com

Executed this 26 day of August, 2021

Signature: [signature]

Printed Name: J.C. Petersen


CHAP PETERSEN & ASSOCIATES, P.C.
J. Chapman Petersen
David L. Amos
3970 Chain Bridge Road Fairfax, VA 22030
(571) 459.2512 – phone
(571) 459.2307 – fax
jcp@petersenfirm.com
dla@petersenfirm.com

PINTO COATES KYRE & BOWERS, PLLC
Jon Ward
Paul D. Coates
3203 Brassfield Road
Greensboro, NC 27410
(336) 282.8848 – phone
(336) 282.8409 – fax
jward@pckb-law.com
pcoates@pckb-law.com

DANIEL THOMAS
Jacob Berkley Daniel
139 E. Main Street
P.O. Box 999
Yanceyville, NC 27379
(336) 694-4363
Fax: (336) 694-6601
jdaniel@danielthomaslaw.com

EDWARDS LAW FIRM
John S. Edwards
Seven-0-Seven Building
707 S. Jefferson Street Suite 310
Roanoke, VA 24016
(540) 985.8625 – phone
(540) 345.9950 – fax
jselaw@edwardsva.com

DONALD R. VAUGHAN & ASSOCIATES
Donald R. Vaughan
612 W. Friendly Avenue
Greensboro, NC 27401
(336) 273-1415 – phone
(866) 903-1301 – fax
don.vaughan@vaughanlaw.com

BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP
J. Anderson Davis
Samuel L. Lucas
Lee B. Carter
P.O. Box 5007
Rome, GA 30162-5007
(706) 291-8853 – phone
(706) 234-3574 – fax
adavis@brinson-askew.com
slucas@brinson-askew.com
lcarter@brinson-askew.com

McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Robert H. Smalley
P.O. Box 1105
Dalton, GA 30720-1105
(706) 508-4292 – phone
(706) 278-5002 – fax
rsmalley@mccamylaw.com

THE FINNELL FIRM
Robert K. Finnell
1 West Fourth Avenue, Suite 200
Rome, GA 30162-0063
(706) 235-7272 – phone
(706) 235-9461 – fax
bob@finnellfirm.com

Executed this 20th day of August, 2021

Signature: [signature]

Printed Name: J. Gregory Webb

STREET LAW FIRM, LLP
Benjamin A. Street
Jason D. Gallagher
1142 Riverview Street
P.O. Box 2100
Grundy, VA 24614
(276) 935-2128 – phone
(276) 935-4162 – fax
bas@streetlawfirm.com
jdg@streetlawfirm.com

MICHIEHAMLETT ATTORNEYS AT LAW
David W. Thomas
J. Gregory Webb
Bryan Slaughter
310 4th Street NE
P.O. Box 298
Charlottesville, VA 22902
(434) 951-7224 - phone
(434) 951-7244 – fax
dthomas@michiehamlett.com
gwebb@michiehamlett.com
bslaughter@michiehamlett.com

# EXHIBIT A

Table 1: Opioid Settlement Allocations to Counties and Independent Cities

| Location | % | Location | % | Location | % |
|---|---|---|---|---|---|
| Accomack | 0.348% | Franklin City | 0.079% | Norton City | 0.110% |
| Albemarle | 0.863% | Frederick | 1.277% | Nottoway | 0.133% |
| Alexandria City | 1.162% | Fredericksburg City | 0.524% | Orange | 0.638% |
| Alleghany | 0.213% | Galax City | 0.139% | Page | 0.410% |
| Amelia | 0.100% | Giles | 0.409% | Patrick | 0.329% |
| Amherst | 0.299% | Gloucester | 0.424% | Petersburg City | 0.395% |
| Appomattox | 0.133% | Goochland | 0.225% | Pittsylvania | 0.750% |
| Arlington | 1.378% | Grayson | 0.224% | Poquoson City | 0.186% |
| Augusta | 0.835% | Greene | 0.178% | Portsmouth City | 1.937% |
| Bath | 0.037% | Greensville | 0.124% | Powhatan | 0.262% |
| Bedford | 0.777% | Halifax | 0.353% | Prince Edward | 0.190% |
| Bland | 0.147% | Hampton City | 1.538% | Prince George | 0.351% |
| Botetourt | 0.362% | Hanover | 1.079% | Prince William | 3.556% |
| Bristol City | 0.434% | Harrisonburg City | 0.523% | Pulaski | 1.061% |
| Brunswick | 0.107% | Henrico | 4.473% | Radford City | 0.247% |
| Buchanan | 0.929% | Henry | 1.220% | Rappahannock | 0.091% |
| Buckingham | 0.127% | Highland | 0.023% | Richmond | 0.084% |
| Buena Vista City | 0.078% | Hopewell City | 0.344% | Richmond City | 4.225% |
| Campbell | 0.456% | Isle of Wight | 0.356% | Roanoke | 1.498% |
| Caroline | 0.318% | James City | 0.612% | Roanoke City | 1.859% |
| Carroll | 0.440% | King George | 0.306% | Rockbridge | 0.235% |
| Charles City | 0.073% | King William | 0.178% | Rockingham | 0.614% |
| Charlotte | 0.138% | King and Queen | 0.072% | Russell | 1.064% |
| Charlottesville City | 0.463% | Lancaster | 0.135% | Salem City | 0.786% |
| Chesapeake City | 2.912% | Lee | 0.556% | Scott | 0.421% |
| Chesterfield | 4.088% | Lexington City | 0.093% | Shenandoah | 0.660% |
| Clarke | 0.125% | Loudoun | 2.567% | Smyth | 0.592% |
| Colonial Heights City | 0.283% | Louisa | 0.449% | Southampton | 0.137% |
| Covington City | 0.100% | Lunenburg | 0.088% | Spotsylvania | 1.417% |
| Craig | 0.070% | Lynchburg City | 0.816% | Stafford | 1.443% |
| Culpeper | 0.790% | Madison | 0.163% | Staunton City | 0.440% |
| Cumberland | 0.100% | Manassas City | 0.452% | Suffolk City | 0.710% |
| Danville City | 0.637% | Manassas Park City | 0.095% | Surry | 0.058% |
| Dickenson | 0.948% | Martinsville City | 0.494% | Sussex | 0.081% |
| Dinwiddie | 0.196% | Mathews | 0.088% | Tazewell | 1.606% |
| Emporia City | 0.050% | Mecklenburg | 0.344% | Virginia Beach City | 4.859% |
| Essex | 0.101% | Middlesex | 0.108% | Warren | 0.766% |
| Fairfax | 8.672% | Montgomery | 1.205% | Washington | 0.996% |

| | | | | | |
|---|---|---|---|---|---|
| Fairfax City | 0.269% | Nelson | 0.147% | Waynesboro City | 0.363% |
| Falls Church City | 0.102% | New Kent | 0.156% | Westmoreland | 0.223% |
| Fauquier | 1.210% | Newport News City | 2.047% | Williamsburg City | 0.086% |
| Floyd | 0.182% | Norfolk City | 3.388% | Winchester City | 0.649% |
| Fluvanna | 0.194% | Northampton | 0.122% | Wise | 1.756% |
| Franklin | 0.954% | Northumberland | 0.129% | Wythe | 0.642% |
| | | | | York | 0.561% |

# EXHIBIT B

# Va. Code Ann. § 2.2-2365

Current through the 2021 Regular Session and Special Session I of the General Assembly

***VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY***

## § 2.2-2365. Definitions

As used in this article, unless the context requires a different meaning:

*"Authority"* means the Opioid Abatement Authority.

*"Board"* means the board of directors of the Authority.

*"Community services board region"* means a region as determined by the Department of Behavioral Health and Developmental Services for purposes of administering Chapter 5 (*§ 37.2-500* et seq.) of Title 37.2.

*"Fund"* means the Opioid Abatement Fund.

*"Historically economically disadvantaged community"* means the same as such term is defined in *§ 56-576.*

*"Local apportionment formula"* means any formula submitted to the Attorney General by participating localities pursuant to the provisions of subsection B of *§ 2.2-507.3.*

*"Participating locality"* means any county or independent city that agrees to be bound by the terms of a settlement agreement entered into by the Attorney General relating to claims regarding the manufacturing, marketing, distribution, or sale of opioids, and that releases its own such claims.

*"Regional effort"* means any effort involving a partnership of at least two participating localities within a community services board region.

## History

*2021, Sp. Sess. I, cc. 306* , *307* .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

End of Document

# Va. Code Ann. § 2.2-2366

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2366. Opioid Abatement Authority established

The Opioid Abatement Authority is established as an independent body. The purpose of the Authority is to abate and remediate the opioid epidemic in the Commonwealth through financial support from the Fund, in the form of grants, donations, or other assistance, for efforts to treat, prevent, and reduce opioid use disorder and the misuse of opioids in the Commonwealth. The Authority's exercise of powers conferred by this article shall be deemed to be the performance of an essential governmental function and matters of public necessity for which public moneys may be spent and private property acquired.

## History

2021, Sp. Sess. I, cc. 306 , 307 .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# Va. Code Ann. § 2.2-2367

Current through the 2021 Regular Session and Special Session I of the General Assembly

***VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY***

## § 2.2-2367. Board of directors; members

**A.**The Authority shall be governed by a board of directors consisting of 11 members as follows: (i) the Secretary of Health and Human Resources or his designee; (ii) the Chair of the Senate Committee on Finance and Appropriations or his designee and the Chair of the House Committee on Appropriations or his designee; (iii) an elected member of the governing body of a participating locality, to be selected from a list of three submitted jointly by the Virginia Association of Counties and the Virginia Municipal League; (iv) one representative of a community services board or behavioral health authority serving an urban or suburban region containing participating localities and one representative of a community services board or behavioral health authority serving a rural region containing participating localities, each to be selected from lists of three submitted by the Virginia Association of Community Services Boards; (v) one sheriff of a participating locality, to be selected from a list of three submitted by the Virginia Sheriffs' Association; (vi) one licensed, practicing county or city attorney of a participating locality, to be selected from a list of three submitted by the Local Government Attorneys of Virginia; (vii) two medical professionals with expertise in public and behavioral health administration or opioid use disorders and their treatment; and (viii) one representative of the addiction and recovery community.

The member appointed pursuant to clause (i) shall serve ex officio, and the members appointed pursuant to clauses (iii) through (viii) shall be appointed by the Governor. If the term of the office to which a member appointed pursuant to clause (iii) or (v) was elected expires prior to the expiration of his term as a member of the board, the Governor may authorize such member to complete the remainder of his term as a member or may appoint a new member who satisfies the criteria of clause (iii) or (v), as applicable, to complete the remainder of the term.

**B.**1. After an initial staggering of terms, members of the Board shall serve terms of four years. No member shall be eligible to serve more than two terms. Any appointment to fill a vacancy shall be for the unexpired term. A person appointed to fill a vacancy may be appointed to serve two additional terms.

2. Ex officio members shall serve terms coincident with their terms of office.

**C.**The Board shall elect annually a chairman and vice-chairman from among its membership. The chairman, or in his absence the vice-chairman, shall preside at all meetings of the Board.

**D.**A majority of the members of the Board serving at any one time shall constitute a quorum for the transaction of business.

**E.**The Board shall meet annually or more frequently at the call of the chairman.

## History

2021, Sp. Sess. I, cc. 306 , 307 .

Annotations

## Notes

**EDITOR'S NOTE. --**

Acts *2021, Sp. Sess. I, cc. 306* and *307*, cl. 2 provides: "That the initial appointments of nonlegislative citizen members to the board of directors of the Opioid Abatement Authority shall be staggered as follows: (i) two nonlegislative citizen members appointed by the Governor shall be appointed for a term of one year, (ii) two nonlegislative citizen members appointed by the Governor shall be appointed for a term of two years, (iii) two nonlegislative citizen members appointed by the Governor shall be appointed for a term of three years, and (iv) two nonlegislative citizen members appointed by the Governor shall be appointed for a term of four years. For purposes of this enactment, "nonlegislative citizen member" means any member identified in clauses (iii) through (viii) of *§ 2.2-2367 of the Code of Virginia*, as created by this act. Any nonlegislative citizen member appointed to an initial term of less than four years shall be eligible to serve two additional full four-year terms."

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# *Va. Code Ann. § 2.2-2368*

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2368. Duties of the Authority

The Authority shall:

1. Establish specific criteria and procedures for awards from the Fund;

2. Establish requirements for the submission of funding requests;

3. Evaluate funding requests in accordance with the criteria established by the Authority and the provisions of this article;

4. Make awards from the Fund in a manner that distributes funds equitably among all community services board regions of the Commonwealth, including the establishment of mandatory minimum percentages of funds to be awarded from the Commonwealth to each participating locality;

5. Evaluate the implementation and results of all efforts receiving support from the Authority; and

6. Administer the Fund in accordance with the provisions of this article.

## History

*2021, Sp. Sess. I, cc. 306* , *307* .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# Va. Code Ann. § 2.2-2369

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2369. Powers of the Authority

In order to carry out its purposes, the Authority may:

1. Make grants and disbursements from the Fund that support efforts to treat, prevent, and reduce opioid use disorder and the misuse of opioids or otherwise abate or remediate the opioid epidemic;

2. Pay expenditures from the Fund that are necessary to carry out the purposes of this article;

3. Contract for the services of consultants to assist in the evaluation of the efforts funded by the Authority;

4. Contract for other professional services to assist the Authority in the performance of its duties and responsibilities;

5. Accept, hold, administer, and solicit gifts, grants, bequests, contributions, or other assistance from federal agencies, the Commonwealth, or any other public or private source to carry out the purposes of this article;

6. Enter into any agreement or contract relating to the acceptance or use of any grant, assistance, or support provided by or to the Authority or otherwise in furtherance of the purposes of this article;

7. Perform any lawful acts necessary or appropriate to carry out the purposes of the Authority; and

8. Employ such staff as is necessary to perform the Authority's duties. The Authority may determine the duties of such staff and fix the salaries and compensation of such staff, which shall be paid from the Fund. Staff of the Authority shall be treated as state employees for purposes of participation in the Virginia Retirement System, health insurance, and all other employee benefits offered by the Commonwealth to its classified employees. Staff of the Authority shall not be subject to the provisions of Chapter 29 (§ 2.2-2900 et seq.) of Title 2.2.

## History

2021, Sp. Sess. I, cc. 306 , 307 .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

---

**End of Document**

# *Va. Code Ann. § 2.2-2370*

Current through the 2021 Regular Session and Special Session I of the General Assembly

***VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY***

## § 2.2-2370. Conditions and restrictions on financial assistance

A.The Authority shall provide financial support only for efforts that satisfy the following conditions:

1. The efforts shall be designed to treat, prevent, or reduce opioid use disorder or the misuse of opioids or otherwise abate or remediate the opioid epidemic, which may include efforts to:

a. Support treatment of opioid use disorder and any co-occurring substance use disorder or mental health conditions through evidence-based or evidence-informed methods, programs, or strategies;

b. Support people in recovery from opioid use disorder and any co-occurring substance use disorder or mental health conditions through evidence-based or evidence-informed methods, programs, or strategies;

c. Provide connections to care for people who have, or are at risk of developing, opioid use disorder and any co-occurring substance use disorder or mental health conditions through evidence-based or evidence-informed methods, programs, or strategies;

d. Support efforts, including law-enforcement programs, to address the needs of persons with opioid use disorder and any co-occurring substance use disorder or mental health conditions who are involved in, or are at risk of becoming involved in, the criminal justice system through evidence-based or evidence-informed methods, programs, or strategies;

e. Support drug treatment and recovery courts that provide evidence-based or evidence-informed options for people with opioid use disorder and any co-occurring substance use disorder or mental health conditions;

f. Support efforts to address the needs of pregnant or parenting women with opioid use disorder and any co-occurring substance use disorder or mental health conditions and the needs of their families, including infants with neonatal abstinence syndrome, through evidence-based or evidence-informed methods, programs, or strategies;

g. Support efforts to prevent overprescribing and ensure appropriate prescribing and dispensing of opioids through evidence-based or evidence-informed methods, programs, or strategies;

h. Support efforts to discourage or prevent misuse of opioids through evidence-based or evidence-informed methods, programs, or strategies;

i. Support efforts to prevent or reduce overdose deaths or other opioid-related harms through evidence-based or evidence-informed methods, programs, or strategies; and

j. Support efforts to provide comprehensive resources for patients seeking opioid detoxification, including detoxification services;

2. The efforts shall be conducted or managed by any agency of the Commonwealth or participating locality;

3. No support provided by the Authority shall be used by the recipient to supplant funding for an existing program or continue funding an existing program at its current amount of funding;

4. No support provided by the Authority shall be used by the recipient for indirect costs incurred in the administration of the financial support or for any other purpose proscribed by the Authority; and

5. Recipients of support provided by the Authority shall agree to provide the Authority with such information regarding the implementation of the effort and allow such monitoring and review of the effort as may be required by the Authority to ensure compliance with the terms under which the support is provided.

B.The Authority shall give priority to applications for financial support for efforts that:

1. Collaborate with an existing program or organization that has an established record of success treating, preventing, or reducing opioid use disorder or the misuse of opioids;

2. Treat, prevent, or reduce opioid use disorder or the misuse of opioids in a community with a high incidence of opioid use disorder or opioid death rate, relative to population;

3. Treat, prevent, or reduce opioid use disorder or the misuse of opioids in a historically economically disadvantaged community; or

4. Include a monetary match from or on behalf of the applicant, with higher priority given to an effort with a larger matching amount.

## History

2021, Sp. Sess. I, cc. 306 , 307 .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# Va. Code Ann. § 2.2-2371

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2371. Cooperation with other agencies

All agencies of the Commonwealth shall cooperate with the Authority and, upon request, assist the Authority in the performance of its duties and responsibilities.

## History

2021, Sp. Sess. I, cc. 306 , 307 .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# Va. Code Ann. § 2.2-2372

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2372. Form and audit of accounts and records

A.The accounts and records of the Authority showing the receipt and disbursement of funds from whatever source derived shall be in such form as the Auditor of Public Accounts prescribes.

B.The accounts and records of the Authority are subject to an annual audit by the Auditor of Public Accounts or his legal representative.

## History

2021, Sp. Sess. I, cc. 306, 307.

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# Va. Code Ann. § 2.2-2373

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2373. Annual report

The Authority shall submit to the Governor and the General Assembly an annual executive summary of the interim activity and work of the Authority no later than the first day of each regular session of the General Assembly. The executive summary shall be submitted as a report document as provided in the procedures of the Division of Legislative Automated Systems for the processing of legislative documents and reports and shall be posted on the General Assembly's website. The executive summary shall include information regarding efforts supported by the Authority and expenditures from the Fund.

## History

*2021, Sp. Sess. I, cc. 306*, *307*.

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# *Va. Code Ann. § 2.2-2374*

Current through the 2021 Regular Session and Special Session I of the General Assembly

***VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY***

## § 2.2-2374. Opioid Abatement Fund

**A.**There is hereby created in the state treasury a special, nonreverting fund to be known as the Opioid Abatement Fund, referred to in this section as "the Fund," to be administered by the Authority. All funds appropriated to the Fund, all funds designated by the Attorney General under *§ 2.2-507.3* from settlements, judgments, verdicts, and other court orders relating to claims regarding the manufacturing, marketing, distribution, or sale of opioids, and any gifts, donations, grants, bequests, and other funds received on the Fund's behalf shall be paid into the state treasury and credited to the Fund. Interest earned on moneys in the Fund shall remain in the Fund and be credited to it. Any moneys remaining in the Fund at the end of each fiscal year, including interest thereon, shall not revert to the general fund but shall remain in the Fund. Expenditures and disbursements from the Fund, which may consist of grants or loans, shall be authorized by majority vote of the Board.

**B.**Moneys in the Fund shall be used to provide grants and loans to any agency of the Commonwealth or participating locality for the purposes determined by the Authority in accordance with this article and in consultation with the Office of the Attorney General. The Authority shall develop guidelines, procedures, and criteria for the application for and award of grants or loans in consultation with the Office of the Attorney General. Such guidelines, procedures, and criteria shall comply with the terms of any applicable settlement, judgment, verdict, or other court order, or any agreement related thereto between the Attorney General and participating localities.

**C.**The Authority shall fund all staffing and administrative costs from the Fund. Its expenditures for staffing and administration shall be limited to those that are reasonable for carrying out the purposes of this article.

**D.**For every deposit to the Fund, the Authority shall allocate a portion to the following purposes:

1. Fifteen percent shall be restricted for use by state agencies;

2. Fifteen percent shall be restricted for use by participating localities, provided that if the terms of a settlement, judgment, verdict, or other court order, or any agreement related thereto between the Attorney General and participating localities, require this portion to be distributed according to a local apportionment formula, this portion shall be distributed in accordance with such formula;

3. Thirty-five percent shall be restricted for use for regional efforts; and

4. Thirty-five percent shall be unrestricted. Unrestricted funds may be used to fund the Authority's staffing and administrative costs and may be distributed for use by state agencies, by participating localities, or for regional efforts in addition to the amounts set forth in subdivisions 1, 2, and 3, provided that the Authority shall ensure that such funds are used to accomplish the purposes of this article or invested under subsection F.

**E.**In distributing money from the Fund under subsection D, the Authority shall balance immediate and anticipated needs with projected receipts of funds to best accomplish the purposes for which the Authority is established.

F.The Board may designate any amount from the Fund to be invested, reinvested, and managed by the Board of the Virginia Retirement System as provided in § 51.1-124.40. The State Treasurer is not liable for losses suffered by the Virginia Retirement System on investments made under the authority of this section.

## History

*2021, Sp. Sess. I, cc. 306* , *307* .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# Va. Code Ann. § 2.2-2375

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2375. Exemption from taxes or assessments

The exercise of the powers granted by this article shall be in all respects for the benefit of the people of the Commonwealth, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of projects by the Authority and the undertaking of activities in furtherance of the purpose of the Authority constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon any project or any property acquired or used by the Authority under the provisions of this article or upon the income therefrom, including sales and use taxes on tangible personal property used in the operations of the Authority, and shall at all times be free from state and local taxation. The exemption granted in this section shall not be construed to extend to persons conducting on the premises of a facility businesses for which local or state taxes would otherwise be required.

## History

2021, Sp. Sess. I, cc. 306 , 307 .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

End of Document

# Va. Code Ann. § 2.2-2376

Current through the 2021 Regular Session and Special Session I of the General Assembly

*VA - Code of Virginia (Annotated) > TITLE 2.2. ADMINISTRATION OF GOVERNMENT > SUBTITLE I. ORGANIZATION OF STATE GOVERNMENT > PART D. STATE AUTHORITIES, BOARDS, COMMISSIONS, COUNCILS, FOUNDATIONS AND OTHER COLLEGIAL BODIES > CHAPTER 22. AUTHORITIES > ARTICLE 12. OPIOID ABATEMENT AUTHORITY*

## § 2.2-2376. Exemption of Authority from personnel and procurement procedures

The provisions of the Virginia Personnel Act (*§ 2.2-2900* et seq.) and the Virginia Public Procurement Act (*§ 2.2-4300* et seq.) shall not apply to the Authority in the exercise of any power conferred under this article.

## History

*2021, Sp. Sess. I, cc. 306* , *307* .

Annotations

## Notes

**EFFECTIVE DATE. --**

This section is effective July 1, 2021.

Copyright © 2021 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**