# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, | ) ) | |
| Plaintiffs-Relator, | ) | Case No. 1:18-CV-5452 |
| v. | ) ) | Judge Joan H. Lefkow |
| WALGREENS BOOTS ALLIANCE, INC., | ) ) | |
| Defendant. | ) ) ) | |

## STATE OF INDIANA'S OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATE OF INDIANA'S CONSUMER OPIOID SETTLEMENT

THEODORE E. ROKITA
Indiana Attorney General

Lawrence J. Carcare II
Deputy Attorney General
Medicaid Fraud Control Unit

Betsy M. DeNardi
Special Counsel of Complex Litigation

Office of the Indiana Attorney General

Attorneys for the State of Indiana

The State of Indiana opposes Novak's motion for declaratory judgment that he is entitled to a share of the settlement recovery obtained in the state court-effectuated stipulated judgment ("Indiana Walgreens Consumer Opioid Settlement") entered in Cause Number 46D06-2311-MI-044685, in Marion County Superior Court in Marion County, Indiana. The Consent Judgment required the dismissal of claims Novak brought in this Court pursuant to the *qui tam* provisions of the Indiana Medicaid False Claims and Whistleblower Protection Act (the "IMFCA").

## PROCEDURAL HISTORY

Novak commenced the *qui tam* action on August 10, 2018, when he filed his Complaint. ECF 1. On May 9, 2019, an Amended Complaint was filed (ECF 7), and a Second Amended Complaint was filed on March 25, 2021 (ECF 21). In these three complaints, Novak included the State of Indiana in the caption, alleged that his action is on behalf of the State of Indiana among other states, cited the Indiana statute under which he brought the action, but failed to allege a single submission of false claim for reimbursement to Indiana Medicaid.

Indiana filed a civil complaint against CVS Pharmacy Inc., Walgreen Co., and Walmart, Inc., on November 16, 2023, Cause Number 46D06-2311-MI-044685, in Marion County Superior Court in Marion County, Indiana. The complaint alleged one cause of action pursuant to the Indiana Deceptive Consumer Sales Act ("DCSA"), Indiana Code § 24-5-0.5 *et seq*. A final consent judgment and dismissal was entered by the Court as to Walgreens on November 21, 2023 ("Indiana Walgreens Consumer Opioid Settlement").

Pursuant to the consent judgment, the State of Indiana, along with the other Named Plaintiff States filed a Joint Notice of Intervention for the Purpose of Moving to Dismiss the State Medicaid Portion of the State Causes of Action on December 21, 2023. ECF 27. The States jointly filed their notice of intervention as permitted under their respective state false claims acts and as required by the Walgreens Settlement Agreement. *Id*. Relator's claims in the Second

2

Amended Complaint seek recovery against Defendant related to Defendant's unlawful dispensing of certain controlled substances, including opioids; therefore, Relator's claims pursued on behalf of the States are within the definitions of "Covered Conduct" and "Product" contained in the Walgreens Settlement Agreement. Walgreens Settlement Agreement at ¶I.S and ¶I.III. ECF 27. The States thereby agreed to release their claims against Defendant for the Covered Conduct, as the States are obligated to dismiss the States' Medicaid Claims pursued on their behalf by Relator. *Id*. Relator agreed to the filing and content of the motion. *Id*. The States and Relator had agreed to postpone the resolution of the issue of whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be, whether pursuant to the alternate remedy provisions of each state's respective false claims act, or other applicable law, until after the United States' claims in this case against Defendant have been resolved. *Id.*

In an Order dated January 2, 2024, this Court granted the States' Joint Motion, dismissing with prejudice COUNTS 2 through 30, and 32 through 60, brought by Relator on the States' behalf pursuant to the States' respective statutes.

The United States filed its Notice of Election to Intervene in Count I of Novak's *qui tam* action on September 3, 2024. ECF 36. The United States filed its Complaint in Intervention on January 16, 2025. ECF 58. On April 18, 2025, the United States filed its Complaint in Intervention. ECF 68. Both complaints assert violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (Controlled Substances Act or CSA), 21 U.S.C. §§ 801-904, and of the False Claims Act (FCA), 31 U.S.C. §§ 3729-33. Neither complaint includes Medicaid in its definition of "Federal Healthcare Programs." ECF 58 at ¶ 17 and ECF 68 at ¶ 17. The

United States and Walgreens entered into a settlement agreement on April 18, 2025. ECF 69. That agreement included Medicaid in its definition of "Federal Healthcare Programs." *Id*. at ¶ C.

Novak filed his Motion for Declaratory Judgment ("Novak Alternate Remedy Motion") on November 26, 2025, seeking relief against Indiana and 27 other states. ECF 84.

This Court dismissed with prejudice the United States' Amended Complaint in Intervention on April 21, 2025. ECF 72.

## RELEVANT LAW

### I.     Indiana's Consumer Opioid Settlement with Walgreens

A final consent judgment and dismissal was entered by the Court as to Walgreens on November 21, 2023 ("Indiana Walgreens Consumer Opioid Settlement"). The judgment incorporates the terms of the national settlement agreement, releases a panoply of claims related to the Covered Conduct as defined in the Walgreens Settlement Agreement (*See* States' Settlement Agreement § I. S., ECF 84-1), that were brought or could have been brought, including claims on behalf of Indiana's commissions, boards, and agencies. *See* Indiana Final Consent Judgment attached as Exhibit A. Distribution of opioid funds received from the Indiana Walgreens Consumer Opioid Settlement is governed by Indiana Code § 4-6-15-4. (Exhibit A, p. 4). The Marion County Superior Court retains jurisdiction over the parties to resolve certain disputes related to the settlement. (Exhibit A, p. 8, ¶ 21).

### II.     Indiana Statutory Framework for Opioid Distribution

In 2021, the Indiana General Assembly passed Indiana Code § 4-6-15 *et seq.*, entitled Opioid Litigation and Settlements. As a result of the legislation, all political subdivisions in Indiana are considered part of any opioid settlement that is "finalized" after March 1, 2021. Indiana Code § 4-6-15-2(a). Distribution of opioid settlement funds is governed by Indiana Code

§ 4-6-15-4(a). Unless a bankruptcy court order or settlement sets forth separate terms, opioid settlement funds in Indiana are divided into four buckets: (1) 15% in the "state unrestricted opioid settlement account;" (2) "15% to the local unrestricted opioid settlement account . . . as reimbursement to cities, counties, and towns"; (3) "35% to state abatement opioid settlement account . . . to be used for statewide treatment, education, and prevention programs" and (4) "35% to the local abatement opioid settlement account . . . for distribution to cities, counties, and towns . . . for programs of treatment, prevention, and care that are best practices" under the settlement agreements or order. *Id.* If a city or town's distribution for a year is less than $5,000 ($1,000 if before July 1, 2023), then the distribution will be sent to the county where the city or town is located. Indiana Code § 4-6-15-4(a)(4). Payments of any city, county, or town's attorneys' fees are made by the Indiana Attorney General prior to distributing funds to the city, county, or town. Indiana Code § 4-6-15-5. If the State must pay any attorneys' fees or costs for outside counsel, the amount owed is to be deducted from the funds deposited in the state unrestricted opioid settlement account. Indiana Code § 4-6-15-4(b). The funds contained in the state unrestricted opioid settlement account can only be used for "expenditures . . . after appropriation of the money in the account by the general assembly." Indiana Code § 4-12-16.2-5(1). These expenditures "must be used . . . for oversight and administration of programs for treatment, education, recovery, and prevention of opioid use disorder and any co-occurring substance use disorders or mental health issues." *Id.*

The funds deposited in the state abatement opioid settlement account are "continuously appropriated to the office of the secretary of Family and Social Services Agency for treatment, education, recovery, and prevention programs for opioid use disorder and any co-occurring substance use disorder or mental health issues as defined or required by the settlement

5

documents or court order." Indiana Code § 4-12-16.2-5(2). Funds appropriated to the Secretary's Office have restricted use and the Secretary cannot be used for another purpose. Indiana law does not permit an agency to divert funds to a different appropriation. *See* Indiana Constitution, Article X, Sec. 3 ("No money shall be drawn from the Treasury, but in pursuance of appropriations made by law.'); Indiana Code § 4-10-11-3 ("In the accounting for moneys expended, the items of the appropriation act shall be literally followed and in no case shall moneys appropriated for one (1) specific purpose be diverted for the purposes of another.").

## III. Indiana Deceptive Consumer Sales Act

Indiana's DCSA was enacted to streamline "the law governing deceptive and unconscionable consumer sales practices" and to protect consumers from individuals or businesses committing "deceptive and unconscionable sales acts." Indiana Code § 24-5-0.5-1. *See also Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013) (observing that the act is "remedial'), *superseded on other grounds by* Pub. L. 65-2014 § 7 (eff. July 1, 2014). The operative language of the DCSA is:

> A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.

Indiana Code § 24-5-0.5-3(a). A supplier includes "a seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions." Indiana Code § 24-5-0.5-2(a)(3). A consumer transaction is defined as

> a sale, lease, assignment, award by chance, or other disposition of an item of personal property, real property, a service or an intangible, except securities and policies or contracts of insurance issued by corporations authorized to transact an insurance business under the laws of the state of Indiana, with or without an extension of credit, to a person for purposes that are primarily personal, familial, charitable, agricultural, or household, or a solicitation to

6

supply any of these things.

The DCSA permits consumers or the Indiana Attorney General's Office to bring actions that address unfair, deceptive, or abusive transactions that individuals engage in with other people or businesses. Ind. Code § 24-5-0.5-4(a), (b).

## IV.   Indiana Medicaid False Claims and Whistleblower Protection Act

Novak brought claims on the behalf of the State of Indiana pursuant to the Indiana Medicaid False Claims and Whistleblower Protection Act (the "IMFCA"). Ind. Code §§ 5–11–5.7–1 *et seq*. The IMFCA applies only to claims, requests, demands, statements, records, acts, and omissions made or submitted in relation to the Medicaid program. Ind. Code § 5–11–5.7–1 (a). The IMFCA defines "Claim" to mean:

> a request or demand for money or property, whether under a contract or otherwise, and whether or not the state has title to the money or property, that:
>
> (A) is presented to an officer, employee, or agent of the state; or
> (B) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the state's behalf or to advance a state program or interest, and if the state:
> (i) provides or has provided any part of the money or property that is requested or demanded; or
> (ii) will reimburse the contractor, grantee, or other recipient for any part of the money or property that is requested or demanded.

Ind. Code § 5–11–5.7–1 (b)(1). "State" means Indiana or any agency of state government. The term does not include a political subdivision. Ind. Code § 5–11–5.7–1 (b)(9).

Indiana's alternate proceeding remedy can be found at Ind. Code § 5–11–5.7–5 (h), which states:

> (h) A court may dismiss an action brought under this chapter to permit the attorney general or the inspector general to pursue its claim through an alternative proceeding, including an administrative proceeding or a proceeding brought in another jurisdiction. The person who initially filed the complaint has the same rights in the alternative proceedings as the person would have had in the original

proceedings. A finding of fact or conclusion of law made in the alternative proceeding is binding on all parties to an action under this section once the determination made in the alternative proceeding is final under the rules, regulations, statutes, or law governing the alternative proceeding, or if the time for seeking an appeal or review of the determination made in the alternative proceeding has elapsed.

## ARGUMENT

### I.   Where All of The Federal Claims Have Been Dismissed the General Rule Is to Dismiss Any State Law Claims.

Novak alleged in his Second Amended Complaint ("SAC") this Court had supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. § 1367 and pursuant to 31 U.S.C. §3732(b), as the state's claims arise from the same transactions and occurrences as the federal action. The federal claims in Novak's *qui tam* have been dismissed. "In a *qui tam* suit involving both state and federal claims, once the federal claims are dismissed, the court no longer has original jurisdiction pursuant to section 3730(b), a Court may then decline to exercise supplemental jurisdiction over the state-law claims that were related to the federal claim." *United States ex rel. Mohajer v. Omnicare*, 525 F. Supp. 3d 447, 462 (S.D.N.Y. 2021). (cleaned up). "The general rule is that when all federal claims are dismissed, the district court should decline to exercise supplemental jurisdiction over the state law claims." *United States ex rel. Frawley v. McMahon*, No. 11-cv-4620, 2016 WL 5404598, *14(N.D. Ill. Sept. 28, 2016).

> Exceptions to this general rule exist (1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* Here, the state claims underlying Novak's claim to a relator's share have been dismissed and Novak is not precluded from filing a claim to his purported relator's share in an Indiana state

court due to a statute of limitations (*see* Ind. Code § 34–11–8–1 allowing the refiling of an action filed in the wrong court). Additionally, at this stage there have been few judicial resources committed to resolving Novak's claim under Ind. Code § 5–11–5.7–5 (h). To the extent that Novak asserts that this Court should exercise jurisdiction over his dispute with Indiana, he runs afoul of Seventh Circuit jurisprudence:

> Precedent teaches that state courts are just as able as federal courts and they naturally are more expert at applying state law than federal courts. State courts are quite as capable as federal courts of determining the facts, and they alone can define and interpret state law. When assessing the propriety of exercising or retaining supplemental jurisdiction, federal courts should avoid making needless decisions of state law as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

*Williams Elecs. Games, Inc. v. Garrity*, No. 97 C 3743, 2005 WL 2284280, at *7 (N.D. Ill. Sept. 15, 2005), *aff'd*, 479 F.3d 904 (7th Cir. 2007)(cleaned up). Furthermore, as Novak's claims are related to protection of the funds paid out under Indiana's Medicaid Program – a quintessential sovereign function, the Court should find in the interest of abstention from needlessly deciding state law issues. See *United States v. Garman*, No. 3:14-cv-172, 2016 WL3562062, *9 (E.D. Tenn. June 24, 2016).

## II. Novak cannot claim a share predicated on facially invalid *qui tam* claims.

### A. Novak's failure to adequately state a claim under Rule 9(b) with respect to Indiana Medicaid means he is not entitled to any portion of Indiana's settlement proceeds.

Novak points to *United States ex rel. Bledsoe v. Community Health Systems,* 342 F.3d 634 (6th Cir. 2003), *Bledsoe I,* to support his position "that relators bringing claims under the federal FCA are entitled to a portion of the settlement proceeds, even if the government did not intervene in the relator's case and instead pursued a separate settlement with the defendant." ECF 84, ¶ 7. Novak asserts that *Bledsoe* addressed the very same concerns that arose for him as

result of Indiana's release of Walgreens from its claims in his *qui tam* action. *Id.* Indiana believes *United States ex rel. Bledsoe v. Community Health Systems,* 501 F.3d 634 (6th Cir. 2007), *Bledsoe II,* better addresses the present situation. The reasoning set forth in Novak's cites to *Bledsoe I* "does not extend to *qui tam* actions that fail to adequately state a claim upon which relief can be granted." *Bledsoe II,* 501 F.3d at 522. This is because denying an entitlement to settlement proceeds that might overlap with inadequately-pled claims does not decrease relators' incentives to bring well-pled claims. "Moreover, allowing a relator who failed to plead fraud with particularity to recover proceeds from an alternate remedy pursued by the government with respect to those fraudulent allegations would make little sense." *Id*. Here, Novak's operative complaint fails to make a single well-pled allegation that Walgreens had submitted even one false claim to Indiana Medicaid. Even if the Walgreens Consumer Opioid Settlement was in any part a recovery for Indiana Medicaid, which it was not, Novak would not be entitled to a share from Indiana.

### B. Novak cannot assert an alternate proceeding remedy with respect to the funds received by Indiana political subdivisions or state agencies other than Indiana Medicaid.

Half of the opioid settlement funds received in Indiana are distributed to its cities, counties, and towns. Thus, none of these funds will be provided to Indiana's Medicaid program. The funds, instead, will be used for opioid use disorder programming in local communities and other expenses. The municipalities' share of Indiana's Walgreens Consumer Opioid Settlement would not be used to repay Indiana's Medicaid program, a federal and state program, not a municipality program. The funds deposited in the state abatement opioid settlement account are "continuously appropriated to the office of the secretary of Family and Social Services Agency for treatment, education, recovery, and prevention programs for opioid use disorder and any co-

occurring substance use disorder or mental health issues as defined or required by the settlement documents or court order." The funds contained in the state unrestricted opioid settlement account can only be used for "expenditures . . . after appropriation of the money in the account by the general assembly." The decision to provide funds to local communities, as well as the State from the Walgreens Consumer Opioid Settlement reflects the consumer nature of the complaint and settlement.

Novak's Indiana claims were pursuant to the Indiana Medicaid False Claims and Whistleblower Protection Act (the "IMFCA"). Ind. Code §§ 5–11–5.7–1 *et seq*. The IMFCA applies only to claims, requests, demands, statements, records, acts, and omissions made or submitted in relation to the Indiana Medicaid program. To the extent that Novak asserts entitlement to a share of a recovery by any Indiana State program other than Medicaid, that assertion has no legal basis. Similarly, any assertion that he may make with regard to an entitlement to a share of a recovery by a political subdivision in Indiana under the IMFCA is defeated by Ind. Code § 5–11–5.7–1 (b)(9), which plainly defines "State" to not include a political subdivision.

**III.    The $150 Million Settlement with the Federal Government is not a reasonable data point as to the value of the release extracted from the States by Walgreens.**

Novak, without substantiating any of his statements, claims that the $150 million federal FCA settlement is at least one reasonable data point as to the value of the release that the States gave to Walgreens. ECF 84 ¶ 19. The Amended Complaint in Intervention of the United States, which was filed on April 18, 2025,brought claims on behalf of Medicare, TRICARE (Dept. of Defense), FEHBP (Federal Employees Health Benefits Program), and FECA (Federal Employees' Compensation Act), the "Federal Healthcare Programs." ECF 68 ¶ 17. During the

11

relevant periods the various components of Walgreens directly submitted claims for reimbursement to various Federal Healthcare Programs, including Medicare, TRICARE, FEHBP, and OWCP. ECF 68 ¶ 36. The operative federal complaint in intervention does not make any allegations regarding Medicaid.[1] Novak's data point does not factor in the share of these large Federal Healthcare Programs or the belated presence of federal claims for Medicaid.

### IV. Indiana's Walgreens Consumer Opioid Settlement was not an alternate proceeding.

Novak concedes the fact that in Indiana's DCSA action "[t]he State[ ] never asserted claims against Walgreens regarding the illegal opioid reimbursement requests to [its] Medicaid program [and] pursued other harms that Walgreens allegedly caused to [its] state and municipal public health systems." ECF 84 ¶ 4. That means that the Walgreens Consumer Opioid Settlement did not resolve the type of claim that could have been litigated under the IMFCA. See *United States v. Novo A/S*, 5 F.4th 47, 56 (D.C. Cir. 2021). Nor is a DCSA action the type of action that could have been initiated by *qui tam* relator.  See *Id*. at 57. A DCSA action brought by the Indiana Attorney General is to protect the public from being misled and to abate the harm caused by the defendant's illegal conduct. A DCSA action does not seek to recover damages for false claims submitted to Indiana Medicaid. While there may be a commonality of facts, the D.C. Circuit held in *Novo A/S:*

> The statute does not reward relators any time the government pursues any "alternate claim or cause of action" arising from the same facts and circumstances. In other words, it is the nature of the legal claim—the fraudulent or false deprivation of a monetary or property interest—and not the commonality of facts that determines a relator's right to share in an alternative recovery.

---

[1] The federal settlement agreement, filed on the same day as the Amended Complaint in Intervention of the United States, includes Medicaid in the list Federal Healthcare Programs. ECF 69 ¶ C.

. . .

> Kennedy's proposed reading of the statute also overlooks that the "claim" pursued through an alternate remedy must be one that could have continued instead under the False Claims Act.

*Id*. at 57. Novak has not argued and cannot argue that he could have brought an action under Indiana's DCSA to recover damages for damages for false claims submitted to Indiana Medicaid. Nor has he argued that any *qui tam* relator could do so.

Novak is not entitled to any share of Indiana's opioid settlement with Walgreens because Indiana's DCSA complaint did not allege Medicaid Fraud, instead alleged violations of the DCSA were asserted. Qui tam relators may not use the Indiana DCSA action to press claims on behalf of the State. The Indiana Walgreens Consumer Opioid Settlement cannot be considered an alternate proceeding for the purposes of the IMFCA.

## V.    CONCLUSION

For the foregoing reasons, Novak's Motion for Declaratory Judgment should be denied with prejudice. In the alternative, as to Indiana, this Court should direct Novak to seek relief in Marion County Superior Court in Marion County, Indiana..

Dated: February 3, 2026                           Respectfully submitted,

                                                  THEODORE E. ROKITA
                                                  Indiana Attorney General

                                                  Lawrence J. Carcare II
                                                  Deputy Attorney General
                                                  Medicaid Fraud Control Unit

                                                  Betsy M. DeNardi
                                                  Special Counsel of Complex Litigation

                                                  Office of the Indiana Attorney General

                                                  Attorneys for the State of Indiana

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that on February 3, 2026, he caused a true and correct copy of **STATE OF INDIANA'S OPPOSITION TO PLAINTIFF-RELATOR'S MOTION FOR A DECLARATORY JUDGMENT THAT RELATOR IS ENTITLED TO A SHARE OF THE STATE OF INDIANA'S CONSUMER OPIOID SETTLEMENT** to be served via the Court's ECF/electronic mailing system upon all counsel of record.


/s/ Lawrence J. Carcare II