IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, <br><br> Plaintiffs-Relator, <br><br> v. <br><br> WALGREENS BOOTS ALLIANCE, INC., <br><br> Defendant. | Case No. 18-cv-5452 <br><br> Judge Joan H. Lefkow |

**PLAINTIFF-RELATOR'S REPLY IN SUPPORT
OF HIS MOTION FOR DECLARATORY JUDGMENT**

There are four simple and indisputable points that entitle Plaintiff-Relator ("Relator") to the relief he is seeking. They are as follows.

**First**, Relator filed an FCA case against Walgreens under the federal FCA and several state FCAs. All claims were based on illegal prescriptions for opioids filled by Walgreens and paid for by Medicare and Medicaid. The federal FCA claim sought to get money back for Medicare and the federal share of Medicaid reimbursements. That federal claim was settled for $150 million. The state FCA claims sought the state share of Medicaid for the exact same prescriptions at issue in the federal Medicaid claims.

**Second**, the Settling States[1] proceeded with Relator's FCA state claims by resolving them through a settlement agreement. The Settling States acknowledged that fact in the Joint Notice of Intervention they filed with this Court, stating:

> On December 9, 2022, the States and Walgreens executed a Settlement Agreement ("the Walgreens Settlement Agreement") separate from this case. The Walgreens Settlement Agreement resolved certain of the claims that Relator brings in this case.

(ECF No. 27 at 2) (footnotes omitted).

**Third**, by proceeding to settle the state law claims in *this action*, the Settling States are obligated, under their own state laws, to pay a relator's share. Indeed, every state FCA has a provision either identical to or substantively equivalent to the following:

> (d) Award to Qui Tam plaintiff.
>
> (1) If the State proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15% but not more than 25% of the proceeds of the action or ***settlement of the claim***, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Auditor General's report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10% of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph (1) shall be made from the proceeds.

---

[1] All capitalized terms not defined herein have the same meaning as in Plaintiff-Relator's Motion for a Declaratory Judgment that Relator is Entitled to a Share of the States' Settlement with Walgreens that Settled Relator's State FCA Claims. (ECF No. 84.)

*See, e.g.*, Illinois False Claims Act, 740 ILCS 175/4(d)(1) (emphasis added). Citations to the same provisions in the other applicable state FCA laws are contained in the attached Appendix.

By settling the action in exchange for billions of dollars, the states have "proceeded with the action." The fact that the settlement proceeds were provided in exchange for more than just the release and dismissal of this action does not change the fact that this action was resolved through the State Settlement. The Settling States acknowledged as much in the Joint Notice of Intervention they filed to intervene in and dismiss this action, pursuant to that very settlement. (ECF No. 27 at 2.)

>**Fourth**, the Settling States' attempt to elevate form over substance by noting that they resolved Relator's state FCA claims in a settlement agreement "separate from this case" is a misnomer and irrelevant in any event. The only reason the settlement was separate from this case is because the Settling States failed to comply with their own FCA laws. Those laws required that if they were to settle the claims in this action through settlement, they were obligated first to come to this Court to submit that settlement for approval.[2] In such a case, that settlement would have been made part of this action. The fact that the Settling States violated their own FCA laws does not change the nature of the settlement, does not change the fact that they proceeded with this action by settling it, and does not allow them to violate their own state laws again by refusing to pay a relator's share.

The events described above cannot be seriously contested. Moreover, these facts are dispositive under every Settling States' FCA laws. The Settling States have come up with a stream

---

[2] *See, e.g.*, 740 ILCS 175/4(c)(2)(B).

of mix-and-match arguments in an attempt to avoid their statutory obligation to pay a relator's share. Those arguments are addressed below. None warrants denial of Relator's Motion.

### I. Relator's Right to a Share Derives From the Settlement of His Case—Not From An Alternate Remedy.

As explained above, this matter was resolved precisely as contemplated by the State FCAs. Defendant Walgreens agreed to pay money to the Settling States, and the Settling States agreed, among other things, to dismiss this case in exchange. That is NOT an alternate remedy; that is the exact remedy contemplated by the applicable State FCAs which entitles a relator to a share of the recovery. That point is demonstrated above. *See, e.g.*, 740 ILCS 175/4(d)(1).

In hindsight, Relator's Motion for Declaratory Judgment (ECF No. 84) could have been more clear on this point. Relator cited the alternate remedy provisions simply to demonstrate that most of the state statutes had alternate remedy provisions to restrict the Settling States from trying to sidestep their legal obligation to pay a relator's share. Those alternate remedy provisions are merely an indicator that the legislatures were looking out for, and aiding the protection of, relators. But here, the Settling States did not pursue an alternate remedy. That is why, in Relator's Motion for Declaratory Judgment, he made the point (albeit in a footnote) that it did not matter whether a Settling State had an alternate remedy provision or not. (ECF No. 84 at n.3.)

Some of the states without alternate remedy provisions have argued that the absence of an alternate remedy provision relieves them of their relator's share obligation. The case law they cite does not support this all-too-convenient argument. None of the alternate remedy cases cited by California, Nevada, Montana, and New Mexico feature the settlement of the subject *qui tam* and the payment of money to the state in exchange for the dismissal of the *qui tam* complaint. (ECF No. 141 at 2-4; ECF No. 157 at 5-8; ECF No. 199 at 10-11; ECF No. 204 at 9-11.) Thus, the absence of an alternate remedy provision has no effect on Relator's right to his share.

**II.     The Settling States Cannot Hide Behind the Eleventh Amendment.**

Only a subset of the Settling States has sought refuge in the Eleventh Amendment.  This is perhaps the first clue that the argument lacks merit.  Essentially, certain Settling States take the position that they can:  (1) accept service of the Relator's complaint; (2) participate in the investigation of his claims; (3) settle Relator's claims while violating their obligation to get this Court's approval of such settlement; (4) receive proceeds of the settlement; (5) intervene in this case to effectuate that settlement by dismissing Relator's state law claims; (6) agree to the postponement of any relator's share determination until after the federal case is resolved; and then and only then, claim that the Eleventh Amendment bars this Court from entering an order on one issue the parties agreed was preserved—the relator's share.  It should not be surprising that the law does not support this result.

The terms of the Eleventh Amendment are clear:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, *commenced or prosecuted against one of the United States*…." (emphasis added).  U.S. Const. amend. XI.  In the present case, Relator did not "commenc[e] or prosecut[e]" a suit against any state; in fact, Relator sued *on behalf* of the states.  (ECF No. 1.)  Relator's present Motion seeks simply a form of relief stemming from this initial action.  In analogous federal suits involving relator's share disputes, courts have not required that relators bring an action against the government.  Instead, courts resolve these disputes through motion practice, with the government listed on the plaintiff's side of the line.  *See, e.g.*, *United States ex rel. Conner v. Mahajan*, 877 F.3d 264 (7th Cir. 2017) (proceeding with relator's share dispute through motion practice); *United States v. Bisig*, No. 100-cv-335-JDT-WTL, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005) (same).

This Court should proceed in the same manner.  State FCA claims are regularly resolved by federal courts without raising any Eleventh Amendment issues.  *See, e.g.*, *United States v.*

*HealthNet, Inc.*, No. 1:19-cv-04258-JRS-TAB, 2023 WL 4362955 (S.D. Ind. May 31, 2023), *aff'd sub nom. United States ex rel. Robinson v. HealthNet Inc.*, 124 F.4th 511 (7th Cir. 2024); *United States ex rel. Streck v. Takeda Pharms. Am., Inc.*, No. 14 C 9412, 2023 WL 3320281 (N.D. Ill. May 9, 2023); Settlement Agreement, *United States ex rel. Hsieh v. Shire*, No. 1:09-cv-06994 (N.D. Ill. Sept. 25, 2014) (ECF No. 47); Notice of Settlement, *United States ex rel. Plantz v. Cmty. Health Sys.*, No. 1:10-cv-00959 (N.D. Ill. Aug. 4, 2014) (ECF No. 33).

To the extent that the Court regards Relator's Motion or initial Complaint as a suit "commenced…against" the states, the states here have waived Eleventh Amendment immunity. When a state chooses to participate in, intervene, and settle state claims in a federal case, it waives its immunity for purposes of those proceedings. *Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 463-64 (7th Cir. 2011) (citing *Clark v. Barnard*, 108 U.S. 436, 447 (1883)). The Settling States took all of those actions without raising sovereign immunity, "thereby contending that the 'Judicial power of the United States' extends to the case at hand. . . ." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002).

The states appear to argue that simply because Relator seeks a monetary award, the Eleventh Amendment bars his Motion. (*See, e.g.*, ECF No. 182 at 11 (citing *Benning v. Bd. of Regents of Regency Univs.*, 928 F.2d 775, 777 (7th Cir. 1991)).) But once a state has waived immunity through litigation actions such as those referenced above, other parties may bring counterclaims against the state or request set off or recoupment "up to the amount of the sovereign's claim." *Dep't of Transp. of State of Ill. v. Am. Com. Lines, Inc.*, 350 F. Supp. 835, 838 (N.D. Ill. 1972); *Bd. of Regents of Univ. of Wis. Sys.*, 653 F.3d at 470. What Relator seeks here is less intrusive than these forms of relief. The States' Settlement Agreement with Walgreens was

conditioned on the dismissal of Relator's case. Relator is not asking for any additional money from the Settling States beyond an appropriate share of the States' Settlement.

The Supreme Court's unanimous decision in *Lapides* emphasized the role of fairness in considering whether a state has retained sovereign immunity. *Lapides*, 535 U.S. at 619-21 (warning that the Eleventh Amendment recognizes "the judicial need to avoid inconsistency, anomaly, and unfairness, and [does] not [rest] upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages."); *see also Bd. of Regents of Univ. of Wis. Sys.*, 653 F.3d at 466 ("An animating principle of *Lapides* is that a state should not reap litigation advantages . . . ."). It would "generate seriously unfair results" to apply the Eleventh Amendment in such a way that there is no mechanism for holding states accountable to the fair and statutorily prescribed settlement process—absent the relator simultaneously bringing suit in dozens of state courts. *Lapides*, 535 U.S. at 619. In future cases, states would be tempted to unlawfully settle *qui tam* claims without notifying the court or relator, intervene in federal court to dismiss the relator's claims, invoke the Eleventh Amendment, and then make the relator chase them in state courts across the country to obtain the rightful relator share.

Many states cite *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985), or similar cases for the proposition that "any waiver of Eleventh Amendment immunity must be clear, unambiguous, and specific." (*See, e.g.*, ECF No. 149 at 6; ECF No. 172 at 10; ECF No. 207 at 11-12; ECF No. 205 at 7-8.) But the United States Supreme Court decided *Lapides* (2002) after *Atascadero* (1985), and found that litigation conduct can provide a "clear" waiver of sovereign immunity. *Lapides*, 535 U.S. at 620. Likewise, many states rely on *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440 (7th Cir. 2010).

But *Mobile* addressed personal jurisdiction—not Eleventh Amendment immunity and dealt with a motion for continuance—not intervention.

### III. Relator's Motion is Procedurally Proper.

By his Motion, Relator simply seeks the remedy (*i.e.*, the relator's share) sought in his original pleading. (ECF No. 1 at 55; ECF No. 84 at 1.) His Motion for Declaratory Judgment is a procedurally proper way to do so. 28 U.S.C. § 2201 ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); *see also Comm. on Judiciary, U.S. House of Representatives v. Miers*, 558 F. Supp. 2d 53, 82 (D.D.C. 2008) (allowing a case to proceed "in light of case law indicating that the Act 'should be liberally construed'") (citing *McDougald v. Jenson*, 786 F.2d 1465, 1481 (11th Cir. 1986); 10B Wright, Miller & Kane, Federal Practice & Procedure § 2754 (3d ed. 1998)).

The Settling States have been on notice for over seven years that Relator seeks a relator's share pursuant to the state FCAs. In 2018, Relator filed an action in this Court to "recover damages and civil penalties" on behalf of the federal government and twenty-nine states under the federal FCA and the respective state FCAs. (ECF No. 1 at 1, ¶ 1.) In the complaint, Relator "pray[ed] that the Court…Award Relator Mr. Novak the maximum reward allowed pursuant to the *qui tam* provisions of the Governments' False Claims Acts." (*Id.* at 55; ECF No. 7 at 4, ¶ 13, and 56; *see also* ECF No. 1 at 4, ¶ 13.)

The Settling States' principle procedural concern hinges on case law finding that a party may not bring a "motion" for declaratory judgment, but the Settling States ignore that Relator's initial complaint qualifies as an "appropriate pleading." (*See, e.g.*, ECF No. 195 at 7-8; ECF No. 157 at 1-2; ECF No. 177 at 3-4.)

Alternatively, the Court could construe Relator's Motion for Declaratory Judgment as a "Motion for a Relator's Share." Relator's share disputes between whistleblowers and the government typically proceed with this nomenclature and through motion practice. *See, e.g.*, *Conner*, 877 F.3d 264 (proceeding with relator's share dispute through motion practice); Motion to Determine Relator's Share, *United States ex rel. Conner v. Mahajan*, No. 1:11-cv-04458 (N.D. Ill. Aug. 4, 2015) (ECF No. 268); *Bisig*, 2005 WL 3532554; Order Granting Relator's Motion for Enlargement of Time, *United States v. Bisig*, No. 1:00-CV-00335 (S.D. Ind. Jan. 19, 2006) (ECF No. 5) (referring to "Motion on the Relator's Share of Recovery"). Courts in this circuit often construe motions differently from how the movant initially styled them. *See, e.g.*, *Mitchell v. Union Pac. R.R. Co.*, 408 F.3d 318, 320 (7th Cir. 2005); *DeLeon-Reyes v. Guevara*, No. 1:18-cv-01028, 2020 WL 3050230, at *1 (N.D. Ill. June 8, 2020); *Randle v. City of Chicago*, 527 F. Supp. 1, 2 (N.D. Ill. 1979); *Levin v. Madigan*, 697 F. Supp. 2d 958, 962 (N.D. Ill. 2010).

Whether the Court considers Relator's motion as a "Motion for Declaratory Judgment" or recharacterizes it as a "Motion for a Relator's Share" makes little difference because in either case, Relator has filed a motion and not a new action against the states. Whatever label the Court deems appropriate, Relator is seeking a court determination that he is entitled to a share of the States' Settlement with Walgreens, a right he first asserted in his complaint. (ECF No. 1 at 4, ¶ 13 and 55.)

### IV. This Court Should Continue to Assert Supplemental Jurisdiction.

Under 28 U.S.C. § 1367(c), a district court "may decline to exercise supplemental jurisdiction over a claim" if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." These provisions do not command courts to decline to exercise supplemental jurisdiction but

merely permit them to. *See Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993) ("the statute says that the court 'may' relinquish its supplemental jurisdiction if various conditions such as the dismissal of all the claims within the court's original jurisdiction are satisfied, not that it must always do so."). Afterall, "[t]he district court has broad discretion in deciding whether to retain supplemental claims." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir. 2008); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

While the district court has "dismissed all claims over which it has original jurisdiction," the Seventh Circuit has repeatedly reinforced three circumstances in which federal courts should retain supplemental jurisdiction over pendant state law claims. *See, e.g.*, *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994); *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 731-32 (7th Cir. 2001); *Hansen*, 551 F.3d at 608; 13D Wright & Miller, Federal Practice & Procedure § 3567.3 (3d ed. 2025).

Relevant here, a district court should retain jurisdiction over supplemental claims when "the correct disposition of a pendent claim or action [is] so clear as a matter of state law that it [can] be determined without further trial proceedings and without entanglement with any difficult issues of state law, considerations of judicial economy warrant[] retention and decision rather than relinquishment of the case to the state court." *Brazinski*, 6 F.3d at 1182 (citing *Disher v. Info. Res., Inc.*, 873 F.2d 136, 140 (7th Cir. 1989)).[3]

---

[3] Notably, North Carolina and Tennessee's joint brief cites *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998), as follows: "The Seventh Circuit has held that when all federal claims are dismissed, 'the district court should relinquish jurisdiction over pendent state-law claims.'" (ECF No. 182 at 9.) This quotation is misleading. The full quote is "This Court has stated that 'the *general* rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.'" (citing *Wright*, 29 F.3d at 1251) (emphasis added). Importantly, the quote in *Kennedy* comes from *Wright*, which outlined the "well recognized" circumstances in which courts should retain jurisdiction. *Wright*, 29 F.3d at 1252. Other

-10-

As explained in points 1-4 at the beginning of this Reply, the present Motion can be decided under the same dispositive provision that exists in every Settling State's FCA law. That fact is the basis for retaining jurisdiction over Relator's Motion for Declaratory Judgment. No difficult state law questions need to be decided to confirm that Relator is entitled to a share of the States' Walgreens Settlement. Whether the states must follow the provisions in their own FCA statutes and whether they did not follow those provisions by failing to notify Relator of the settlement, seeking a court determination on the terms of the settlement, and providing a relator's share are simple questions with clear answers following from the same plain language in each of the state statutes. *See* attached Appendix. Multiple states argue that Relator's motion presents a complicated question involving the interpretation of state false claims alternate remedy provisions, but as explained in Section I, that is not the basis of Relator's argument. (*See, e.g.*, ECF No. 145 at 3-4; ECF No. 202 at 10-11.) Instead, the questions here require the Court to interpret language in state statutes that were modeled on the federal FCA. The fact that remanding to state court would unnecessarily "add to the burdens of" not one but more than twenty-five different state courts provides yet another reason why this Court should retain supplemental jurisdiction. *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).

States put weight on "state court's greater expertise in applying state law," but because the states modeled their FCA statutes on the federal statute, federal courts have more experience than state courts interpreting relator's share issues. (*See, e.g.*, ECF No. 202 at 10; ECF No. 149 at 10; ECF No. 180 at 5 (all citing *Huffman v. Hains*, 865 F.2d 920, 923 (7th Cir. 1989)).) Many states argue that this case presents "exceptional circumstances" providing "other compelling reasons for

---

states, such as Virgina, adopt a similar strategy. *Compare Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) *with* ECF No. 207 at 9 (citing *Williams*).

declining jurisdiction." (*See, e.g.*, ECF No. 177 at 11-12; ECF No. 157 at 15; ECF No. 180 at 7-9.) But the circumstances that make this case exceptional point the other way. As stated above, Relator's case has been in federal court for over seven years, the relevant state law provisions replicate federal provisions, and Relator would have to chase his claim into more than twenty-five different state courts, all with their own overcrowded dockets.

### V. The States Gave Up Their Opportunity to Litigate the Merits.

The states make a sideshow of the public disclosure bar and Rule 9(b). (*See, e.g.*, ECF No. 182 at 13-15; ECF No. 177 at 13-15.) Putting aside the fact that these arguments hold no weight, as Relator has explained previously, the states have missed their opportunity to make arguments on the merits. (ECF No. 84 at 10, ¶ 17; ECF No. 210 at 2.)

The Seventh Circuit has made clear that once a party settles a case, it can no longer continue to litigate the underlying merits. *See United States ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938-39 (7th Cir. 1996); *Hudson v. Chicago Teachers Union Local No. 1*, 922 F.2d 1306, 1312 (7th Cir. 1991). Not a single Settling State squarely addresses this point set forth clearly in Relator's Motion. (ECF No. 84 at 10, ¶ 17.)

If the states harbored real concerns about the merits of Relator's claims, they could have sought to dismiss them when Relator initially filed them or at any time before entering into the Settlement Agreement with Walgreens. Moreover, the Settling States made the decision to wait and address the relator's share issue after Relator's federal FCA claims were resolved. To the extent the Settling States did so in order to see how the federal government would act, the result is revealing. The federal government recovered a $150 million settlement, including the federal Medicaid share of the very same illegal opioid prescriptions at issue in Relator's state claims. The

federal government then paid a relator's share to Relator. The federal government never raised the public disclosure bar or any Rule 9(b) deficiencies.[4]

### VI. The Settlement Provisions and State Statutes Pose No Obstacle to Awarding a Relator's Share.

In a last-ditch effort to avoid paying Relator the share of the States' Walgreens Settlement that he is entitled to, the states claim that state statutes and the terms of the settlement prevent them from allocating a relator's share. (*See, e.g.*, ECF No. 141 at 2-3; ECF No. 183 at 2, 4-5.) No state statute or terms of the States' Settlement Agreement with Walgreens abrogates the states' obligations to pay a relator's share. And as a practical matter, the States still expect to receive more than $4 billion in future settlement payments under the States' Settlement. A relatively small fraction of that amount could easily be set aside to pay the relator's share to which Relator is entitled. The settlement money will go to a central administrator before any Settling State receives it. Thus, the state statutes referenced provide no legal or practical obstacle to paying a relator's share.

Additionally, a number of states argue that calculating and distributing the relator's share would be too logistically complex. (*See, e.g.*, ECF No. 141 at 14-15; ECF No. 145 at 10-15; ECF No. 208 at 11-12.) But that's an issue for another day. At this point, Relator has only requested a finding that he is entitled to an award from the States' Settlement.

---

[4] It is true that the Settling States' FCAs allow this Court to reduce a relator's share in cases "based primarily on disclosures of specific information" found in certain public sources. (*See, e.g.*, ECF No. 199 at 15.) A review of Relator's Complaint, amendments and multiple supplemental disclosures establish that Relator's claims were based exclusively on his own personal observation of illegal prescriptions that he refused to fill, and on the Walgreens' corporative executives who punished him for doing the right thing. In any event, any reduction in a relator share under these provisions goes only to the amount of the share and not a relator's entitlement to it.

**VII.     Separate State Settlement Agreements.**

Relator previously filed a motion to correct in which he noted that Florida entered into a separate settlement agreement with Walgreens outside of the multi-state Settlement Agreement. (ECF No. 154.)  The Court mistook that correction and supplement as a withdrawal of Relator's claim with respect to Florida, but that is not correct. (*Id.*; ECF No. 175.)  Relator simply noted in the motion the fact that Florida entered into its own settlement agreement.  Relator's entitlement to a share of the Florida settlement is based on precisely the same rationale for why Relator is entitled to a share of the multi-state Settlement Agreement.  Like the states in the multi-state agreement, Florida received money from Walgreens in exchange for, among other things, the dismissal of Relator's *qui tam* claims in this case.  (ECF No. 154 at 2.)  The same applies for Nevada and New Mexico.  (ECF No. 157 at 2-4; ECF No. 204 at 7-9.)

## CONCLUSION

For the foregoing reasons, as well as those stated in Relator's Motion for Declaratory Judgment, this Court should declare that Relator is entitled to a share of the multi-state Settlement Agreement and other similar state settlement agreements with Walgreens in an amount to be determined.

Dated: February 24, 2026

Respectfully submitted,

PLAINTIFF-RELATOR T.J. NOVAK

By:     /s/ *David J. Chizewer*
          One of His Attorneys

Michael C. Rosenblat
ROSENBLAT LAW
707 Skokie Boulevard, Suite 600
Northbrook, Illinois  60062
(847) 480-2390
mike@rosenblatlaw.com

David J. Chizewer
William C. Meyers
GOLDBERG KOHN LTD.
55 East Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 201-4000
david.chizewer@goldbergkohn.com
william.meyers@goldbergkohn.com

*Counsel for Plaintiff-Relator T.J. Novak*

**CERTIFICATE OF SERVICE**

      The undersigned, an attorney, hereby certifies that on February 24, 2026, he caused a true and correct copy of **PLAINTIFF-RELATOR'S REPLY IN SUPPORT OF HIS MOTION FOR DECLARATORY JUDGMENT** to be served via the Court's ECF/electronic mailing system upon all counsel of record.

                                                                      /s/ *David J. Chizewer*