UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, and the States of North Carolina and Tennessee, et al, *ex rel*. T.J. Novak,<br><br>    Plaintiffs-Relator,<br><br>v.<br><br>Walgreens Boots Alliance, Inc.,<br><br>    Defendant. | Case No. 18 C 5452<br><br>Judge Joan H. Lefkow |

**STATE OF NORTH CAROLINA'S AND STATE OF TENNESSEE'S REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE**

The State of North Carolina and the State of Tennessee ("the States") hereby submit their response to Relator Novak's brief, filed February 17, 2026, in which he admits he has no objection to the States request for judicial notice, but goes on to present substantive arguments related to his Motion for Declaratory Judgment.

  **1. Relator Should Not Be Surprised That his Request for Money Damages from 28 Sovereign States, with Separate Alternate Remedy Provisions, Prompted Separate Responses**

By *one* motion for declaratory judgment, Relator Novak is trying to convert *twenty-eight* sovereign states into defendants to a claim for money damages in federal court. Even the caption of Relator's pleadings defies logic. The states are not plaintiffs because this court dismissed them from this matter with prejudice. ECF 182 at p. 6. They are not defendants, *id.* at p. 7—certainly not by virtue of a "motion" for judgment on a declaratory cause of action never pleaded or asserted in any pleading. *Id.* at pp. 6-8.

Federal courts presiding over questions of state law must look to state law to resolve the question, *Illinois ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 624 F. Supp. 3d 943, 949–50 (N.D. Ill. 2022), and here, Relator raises questions under twenty-eight states' laws. This must be a case-

by-case, state-by-state resolution. The states' separate filings reflect the individual sovereign interests and unique legal positions of each state. Each has distinct false claims act provisions, statutory interpretations, legal structures governing their spending of opioid settlement funds, and public policy considerations that necessitate individual analysis. The fact that states coordinated on settlement terms (effectuated by individual consent judgments in each state's own state court, ECF 182 at pp. 4-5) does not obligate them to coordinate on all legal positions, particularly when addressing the question of relator share entitlement across multiple jurisdictions with varying statutory schemes. Indeed, Relator has pointed to no case, and the States have found none, where alternate remedy issues are decided *en masse*. The cases that do exist arise from claims asserted by relators against one sovereign. ECF 182 at pp. 12-15.

### 2. *Fallon*, a Case About a Settling Defendant Precluded from Relitigating Settled Issues, Does Not Save Relator from the Public Disclosure Bar

Relator insists that the Seventh Circuit's 30-year-old decision in *U.S. ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937 (7th Cir. 1996), shields him from the public disclosure bar, ECF 182 at pp. 13-15, and allows him to raid the sovereigns' treasuries. *Fallon* is not what Relator says it is. Relators in that case brought two false claims counts against Accudyne Corp. under the federal False Claims Act. *Id*. at 938. The United States intervened on Count I and declined to intervene on Count II, meaning the relators continued to prosecute the Count II cause of action. *Id.* Accudyne had previously filed and lost motions to dismiss and for summary judgment. *U.S. ex rel. Fallon v. Accudyne Corp.*, 880 F. Supp. 636 (W.D. Wis. 1995) (motion to dismiss); *U.S. ex rel. Fallon v. Accudyne Corp.*, 921 F. Supp. 611 (W.D. Wis. 1995) (motions to dismiss and for summary judgment). Accudyne argued the case should be dismissed on public disclosure bar grounds, which the district court denied, and the company failed to appeal. *Fallon*, 921 F. Supp. at 624–26. Rather than continue to fight, Accudyne agreed to settle both claims—Count I and Count II—with the

United States and relators, respectively. *Fallon*, 97 F.3d at 938–39. The company paid $12 million, including a $2.64 million share to the relators, and *specifically agreed* to pay the relators' reasonable attorney's fees and costs. *Id.*

When relators moved to receive attorney's fees and costs, Accudyne brought a kitchen sink motion in opposition. *Id*. at 939. It raised fourteen discrete arguments, including the public disclosure bar. *Id.* The trial and appellate courts were "impressed that Accudyne's behavior [was] outrageous" in raising these arguments. *Id*. Accudyne, the court held, "capitulated and cannot now ask us to address the subject—any more than the defendant in a diversity case could litigate (and lose) a dispute about the citizenship of the parties, settle, and then refuse to pay on the theory that it was entitled to another go at the question." *Id*. at 941.

*Fallon* is completely distinguishable from Relator's dispute with the states. First, the dispute in *Fallon* arose between the defendant-company and the relators after a settlement agreement had been entered *between those parties* on opposite sides of the "v.". *Fallon*, 97 F.3d at 938–39. Here, the dispute lies between the states and Relator Novak, who were on the same side of the "v." of the qui tam lawsuit, as to a settlement agreement *not* between them. Instead, here the dispute is over whether Relator is entitled to a share of the states' settlements with Walgreens of consumer- and nuisance-based investigations and litigations (the "Walgreens multistate settlements")—a settlement to which Relator is not a party. Second, Accudyne had already agreed to pay relator's reasonable attorney's fees and costs. *Id.* Here, the states never made such an arrangement with Walgreens or Relator Novak. ECF 182 at p. 4. Third, Accudyne had already litigated and lost on the public disclosure bar argument. *Fallon*, 97 F.3d at 940–41. Here, the states neither "capitulated" nor "litigate[d] (and los[t])" to Relator, unlike Accudyne. *Id*. at 941. Instead, the states and Novak specifically agreed to defer the question of relator's share

3

when the states intervened to dismiss the matter. ECF 33 at p. 2, ¶¶1-2. It was never adjudicated or resolved—it was reserved, and thus so were the "valid" questions that courts uniformly address when resolving a relator's share question like Novak's. *See, e.g.*, *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 522 (6th Cir. 2007) ("Absent a valid complaint which affords a relator the possibility of ultimately recovering damages, there is no compelling reason for allowing a relator to recover for information provided to the government.").[1]

The *Fallon* decision stands for the limited, straightforward proposition that a party cannot relitigate claims it has agreed to settle. But here, the states never agreed to settle Relator's alleged right to a share of the states' Walgreens' multistate settlements—not by the Walgreens multistate settlements, the Walgreens consent judgments, or the states' intervention motion. In other words, *Fallon* does not assist Relator.

The states were within their rights as sovereigns to move to dismiss on any grounds, *U.S. ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 424 (2023), and leave for a later day the relator's share and disclosure bar issues. The Court should grant the States' request for judicial notice and reject Relator's misapplication of *Fallon*.

---

[1] The states' willingness to defer the "valid complaint" challenges likely benefited the Relator. These defects, which could have affected *all* claims, including his federal False Claims Act claim, were not presented to the Court until *after* the United States and Walgreens settled the federal claims for $300 million, resulting in a $30 million payment to Relator Novak. *See generally* ECF 69; ECF 78.

4

Dated: February 25, 2026          Respectfully submitted,

                                         STATE OF NORTH CAROLINA
                                         JEFF JACKSON, ATTORNEY GENERAL

By:    /s/ Daniel P. Mosteller
        Daniel P. Mosteller
        Associate Deputy Attorney General
        N.C. State Bar No. 36958
        (919) 716-6026
        dmosteller@ncdoj.gov

        Allyson S. Barkley
        Chief Deputy Fellow
        N.C. State Bar No. 63780
        (919) 716-0151
        abarkley@ncdoj.gov

        North Carolina Department of Justice
        Post Office Box 629
        Raleigh, North Carolina 27602
        *Counsel for the State of North Carolina*

        STATE OF TENNESSEE
        JONATHAN SKRMETTI, ATTORNEY
        GENERAL

By:    s/ Kevin M. Kreutz
        Kevin M. Kreutz, BPR No. 040686
        Deputy Attorney General
        Office of the Tennessee Attorney General
        P.O. Box 20207
        Nashville, TN 37202-0207
        Phone: (615) 313-0694
        kevin.kreutz@ag.tn.gov

        Taylor Davidson, BPR No. 038514
        Assistant Attorney General
        Office of the Tennessee Attorney General
        P.O. Box 20207
        Nashville, TN 37202-0207
        Phone: (615) 532-7404
        taylor.davidson@ag.tn.gov

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on February 25, 2026, he caused a true and correct copy of **STATE OF NORTH CAROLINA'S AND STATE OF TENNESSEE'S REPLY IN SUPPORT OF REQUEST FOR JUDICIAL NOTICE** to be served via the Court's ECF/electronic mailing system upon all counsel of record.

By: /s/ Daniel P. Mosteller
Daniel P. Mosteller
Associate Deputy Attorney General
N.C. State Bar No. 36958
(919) 716-6026
dmosteller@ncdoj.gov