**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* T.J. NOVAK, | ) | |
| Plaintiff, | ) | Case No. 18 C 5452 |
| v. | ) | Hon. Joan H. Lefkow |
| WALGREENS BOOTS ALLIANCE, INC., | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

T.J. Novak filed this qui tam action under seal on August 10, 2018, on behalf of the United States and twenty-nine States (collectively, the States), asserting claims under the False Claims Act, §§ 3729–3733 (FCA), and each State's analogous false claims statute. (Dkt. 1.) Novak alleged that Walgreen Co. and Walgreens Boots Alliance, Inc. (together, Walgreens) violated the FCA and all of the state statutes by billing Medicare and Medicaid for invalid controlled-substance prescriptions. As detailed below, the court has since dismissed every claim Novak asserted against Walgreens. The state Medicaid claims went first, in January 2024, on the States' motion after they settled opioid-related claims with Walgreens in a separate multistate agreement. The United States and Novak settled the federal claims in 2025. What remains is Novak's demand for a share of what the States recovered in their settlement, which each dismissal order preserved and which he now presents by motion. (Dkt. 84.) That demand turns on unsettled questions of the laws of twenty-eight States. With the federal claims gone, those States' courts should answer them. The court declines to exercise supplemental jurisdiction.

# BACKGROUND

**Factual Background**

Walgreens operates retail pharmacies nationwide. (Dkt. 21 ¶ 5.)[1] Novak worked for Walgreens as a registered pharmacist. *(Id.* ¶ 4.) He alleged that Walgreens knowingly submitted false claims to Medicare and Medicaid for invalid prescriptions, did not refund the payments, and retaliated against him for objecting. (*Id.* ¶¶ 18–19, 95.) Novak sought damages on behalf of the United States and the States for prescriptions those governments paid for through Medicare and Medicaid and, for himself, "the maximum reward allowed pursuant to the *qui tam* provisions of the Governments' False Claims Acts." *(Id.* at 66.)

Separately from this action, on December 9, 2022, Walgreens executed a settlement agreement with the attorneys general of forty-six States and numerous local governments resolving opioid-related claims that those governments had asserted or investigated (the Multistate Agreement). (Dkt. 84-1.) The Multistate Agreement requires Walgreens to pay more than $4.7 billion over fifteen years and releases the civil claims that the participating governments could assert against Walgreens for conduct within the Multistate Agreement's definition of Covered Conduct, including public-nuisance, consumer-protection, and qui tam claims. (*Id.* at 3, 5, 11.) The Multistate Agreement directs that the payments be used for programs for the abatement and treatment of opioid and other substance-use disorders and mental health conditions, and it requires that any funds not spent on abatement be reported to the settlement administrator and to Walgreens. (*Id.* at 30–36.) It does not allocate any portion of the payments to the States' Medicaid programs. (*See id.*) Novak was not a party to the Multistate

[1] Novak twice amended his complaint; the second amended complaint (Dkt. 21) is operative. (Dkts. 7, 21.) Citations to the record refer to the document and page numbers assigned by the court's CM/ECF system.

Agreement. Florida, Nevada, and New Mexico did not join it and instead settled separately with Walgreens. (Dkt. 154 at 2; Dkt. 157 at 2–4; Dkt. 204 at 7–9.)

**Procedural Background**

On August 10, 2018, Novak filed this action under seal. (Dkt. 1.) The operative complaint asserts two counts under the FCA, Counts 1 and 31, and two counts under each State's statute, Counts 2 through 30 and 32 through 60. (Dkt. 21 ¶¶ 122–237, 242–357.)

In December 2023, the States filed a joint notice of intervention under seal and, under their respective false-claims statutes, moved to dismiss with prejudice the state Medicaid portion of Novak's claims. (Dkt. 27.) The States explained that they and Walgreens had executed the Multistate Agreement on December 9, 2022, "separate from this case," and that it "resolved certain of the claims that Relator brings in this case." (*Id.* at 2.) They represented that the conduct Novak alleged fell within the Multistate Agreement's definitions of Covered Conduct and Product, that they had released their claims for that conduct, and that the Multistate Agreement obligated them to dismiss the state Medicaid claims. (*Id.* at 3.) Novak agreed to the filing and contents of the notice, and the United States did not object. (*Id.*) The States and Novak also agreed to postpone the "resolution of the issue . . . until after the United States' claims in this case against Defendant have been resolved." (*Id.* at 7.) The notice sought dismissal of the state Medicaid claims only; the federal claims remained. (*Id.*) On January 2, 2024, the court granted the motion and dismissed the state Medicaid claims with prejudice. (Dkt. 33.) The order left the federal claims, and the federal portion of any Medicaid claim, untouched. (*Id.*) It postponed the question whether Novak is entitled to a share of the States' settlement funds until after the federal claims were resolved. (*Id.*)

On September 3, 2024, the United States intervened as to Count 1 and later filed a complaint in intervention. (Dkts. 36, 58, 68.) On April 18, 2025, the United States, Novak, and Walgreens settled the claims of the United States and Novak against Walgreens, other than Novak's claims for attorneys' fees, expenses, and costs. (Dkt. 69.) Walgreens agreed to pay $300 million to resolve the United Sates' FCA and Controlled Substances Act claims, and Novak received a relator's share of 17.25 percent of the $150 million allocated to the FCA claims. (*Id.* at 2, 4, 7.)

On April 21, 2025, on the parties' joint motion, the court dismissed with prejudice the United States' claims and Novak's claims against Walgreens other than his claims for attorneys' fees, expenses, and costs. (Dkt. 72 at 4–5.) The order preserved any claims Novak may have against the States for a share of the States' settlement funds. (*Id.*) On October 23, 2025, the court dismissed with prejudice Novak's remaining claims against Walgreens for fees, expenses, and costs. (Dkt. 82 ¶¶ 1–2.) It retained jurisdiction to enforce the settlement and over any claim Novak may bring for a share of the States' settlement funds. (*Id.*)

On November 26, 2025, Novak moved for a declaratory judgment that he is entitled to a share of the States' settlement funds. (Dkt. 84.) The motion seeks a share from twenty-eight of the twenty-nine States; it omits New Hampshire. (*Id.* ¶ 1.) On February 2, 2026, he supplemented the motion to note that Florida was not a party to the Multistate Agreement, and the court granted the supplement the next day, construing it as withdrawing the request for relief as to Florida. (Dkts. 154, 175.) Novak now contends that the court misread the supplement and that he continues to seek a share of Florida's separate settlement, as well as the separate settlements of Nevada and New Mexico. (Dkt. 213 at 14.) Twenty-seven States filed responses

opposing the motion, North Carolina and Tennessee jointly.[2] Florida did not respond, and New Hampshire has not appeared. North Carolina and Tennessee also ask the court to take judicial notice of documents relating to the Multistate Agreement. (Dkt. 184.) Novak has "no objection to the Court taking judicial notice of the identified articles." (Dkt. 210 ¶ 5.) On February 24, 2026, Novak filed a single reply to the responses. (Dkt. 213.)

## LEGAL STANDARD

A district court that has original jurisdiction over a claim also has supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726 (1966); *see RWJ Mgmt. Co.* v. *BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). A district court's decision whether to exercise supplemental jurisdiction is discretionary and is reviewed for abuse of discretion. *Carlsbad Tech., Inc.* v. *HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009); *RWJ Mgmt.*, 672 F.3d at 479.

Section 1367(c) identifies four circumstances in which a court may decline to exercise supplemental jurisdiction: when "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining

[2] *See* Dkt. 141 (California); Dkt. 145 (Maryland); Dkt. 146 (Colorado); Dkt. 149 (Connecticut); Dkt. 157 (Nevada); Dkt. 169 (Rhode Island); Dkt. 171 (New Jersey); Dkt. 172 (Delaware); Dkt. 177 (Georgia); Dkt. 180 (Illinois); Dkt. 182 (North Carolina and Tennessee); Dkt. 183 (Iowa); Dkt. 185 (Louisiana); Dkt. 189 (Michigan); Dkt. 190 (Texas); Dkt. 195 (Hawaii); Dkt. 196 (Minnesota); Dkt. 197 (Oklahoma); Dkt. 199 (Montana); Dkt. 202 (New York); Dkt. 203 (Vermont); Dkt. 204 (New Mexico); Dkt. 205 (Washington); Dkt. 206 (Massachusetts); Dkt. 207 (Virginia); Dkt. 208 (Indiana). Unless otherwise noted, references to the States' positions are to the responding States.

jurisdiction." 28 U.S.C. § 1367(c). The grounds are disjunctive; any one of them suffices. *Id.* In deciding whether to decline, the court weighs "the values of judicial economy, convenience, fairness, and comity." *City of Chicago* v. *Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ*. v. *Cohill*, 484 U.S. 343, 350 (1988)); *see Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

When the claims that supplied original jurisdiction have been dismissed before trial, "the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *Al's Serv. Ctr.* v. *BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); *accord Groce* v. *Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999).

Section 1367(c)(1) supplies an independent ground for relinquishment. Once the federal claims are gone, "respect for the state's interest in applying its own law, along with the state court's greater expertise in applying state law, become paramount concerns." *Huffman* v. *Hains*, 865 F.2d 920, 923 (7th Cir. 1989). A district court's identification of "several issues of unsettled state law that may decide the outcome of [a] state-law claim" is "an independent ground for relinquishing supplemental jurisdiction." *Williams Elecs. Games, Inc.* v. *Garrity*, 479 F.3d 904, 907 (7th Cir. 2007).

The presumption in favor of relinquishing supplemental jurisdiction yields in any of three recognized circumstances: (1) when the statute of limitations has run on the state claims so that they cannot be refiled; (2) when substantial judicial resources have already been committed so that relinquishment would cause substantial duplication of effort; and (3) when it is absolutely clear how the state claims should be decided. *Wright* v. *Associated Ins. Cos.*, 29 F.3d 1244, 1251–52 (7th Cir. 1994); *Sharp Elecs. Corp.* v. *Metro. Life Ins. Co.*, 578 F.3d 505, 514–15 (7th

Cir. 2009). The third circumstance requires that the correct disposition of the state claim be "so clear as a matter of state law that it [can] be determined without further trial proceedings and without entanglement with any difficult issues of state law." *Brazinski* v. *Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993).

A dismissal under § 1367(c) is without prejudice. *Groce*, 193 F.3d at 501. The court does not decide the merits of the state claims. It decides which court should decide them.

## ANALYSIS

### I. The Request for Judicial Notice

North Carolina and Tennessee ask the court to take judicial notice of thirteen exhibits. (Dkt. 184 at 2–4.) They offer Exhibits A through G (news coverage, DEA orders and press releases, state complaints against Walgreens, and a 2021 distributor settlement) to show that Novak's allegations were publicly disclosed before he sued. Exhibits H through L are the Multistate Agreement, North Carolina's and Tennessee's intrastate allocation agreements, and the consent judgments entered in the Wake County Superior Court on November 3, 2023, and the Knox County Circuit Court on January 4, 2024. (*Id.* at 4.) Novak does not object. (Dkt. 210 ¶ 5.)

The request is unopposed, and the exhibits are of the kind Federal Rule of Evidence 201 contemplates. A court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). The court has considered Exhibits H through L (the Multistate Agreement, the allocation agreements, and the state-court consent judgments) for their existence, dates, and provisions. It has not relied on Exhibits A through G, which the States offer on the public-disclosure question the court does not reach.

## II. The Share Claims Remain Pending

Novak moves the court for a declaration that he is entitled to a share of what each State recovered from Walgreens. The court refers to that demand, which the dismissal orders preserved, as the share claims. The source of any such entitlement is each State's analogous false claims statute. *See, e.g.*, 740 Ill. Comp. Stat. 175/4(d)(1) (relator entitled to fifteen to twenty-five percent of "the proceeds of the action or settlement of the claim" when the State proceeds with the action). Novak's appendix collects the corresponding provision of each State. (Dkt. 213-1.) The share claims therefore arise under state law.[3]

The States raise two objections that go to whether anything is before the court at all. The first is that nothing remains. The court dismissed the state-law counts with prejudice on January 2, 2024, and the federal counts on April 21 and October 23, 2025. Several States rely on the Seventh Circuit's statement that "when a suit is dismissed with prejudice, it is gone, and the district court cannot adjudicate disputes arising out of the settlement that led to the dismissal merely by stating that it is retaining jurisdiction." *Dupuy* v. *McEwen*, 495 F.3d 807, 809 (7th Cir. 2007).[4] California and Texas add that with every claim dismissed no active case or controversy remains. (Dkt. 141 at 11; Dkt. 190 at 4.) California also argues that the Declaratory Judgment Act supplies no independent basis for jurisdiction. (Dkt. 141 at 9.) Louisiana and Minnesota contend that a declaratory claim is within federal-question jurisdiction only if the coercive suit it

---

[3] Novak's complaint also invoked 31 U.S.C. § 3732(b), which gives district courts jurisdiction over "any action brought under the laws of any state for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730." (Dkt. 21 ¶ 7; *see* Dkt. 149 at 9 n.3; Dkt. 208 at 8.) No party contends that § 3732(b) alters the analysis under § 1367(c), and the court assumes that it does not. By its terms, moreover, § 3732(b) reaches actions "for the recovery of funds paid by a State"; a claim against a State for a share of what it recovered is not one.

[4] *See* Dkt. 157 at 5 (Nevada); Dkt. 185 at 8 (Louisiana); Dkt. 196 at 5 (Minnesota); Dkt. 197 at 6 (Oklahoma); Dkt. 204 at 3 (New Mexico).

anticipates would be, and that a suit by Novak against a State for a share under the State's statute would not be. (Dkt. 185 at 9; Dkt. 196 at 6–7.)

The first objection misreads the orders. Under *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380–82 (1994), a court's power to enforce a settlement agreement after the action that produced it has ended is a form of ancillary jurisdiction, and it exists only if the dismissal order retains jurisdiction over the agreement or incorporates its terms. Applying *Kokkonen*, the Seventh Circuit has held that a dismissal with prejudice, coupled with a bare statement that the court retains jurisdiction, does not keep that power alive. *Lynch, Inc.* v. *SamataMason, Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). It has since reiterated the rule. *Shapo* v. *Engle*, 463 F.3d 641, 643 (7th Cir. 2006); *Dupuy*, 495 F.3d at 809–10.

That is not this case. The complaint demands the maximum relator's award available under each State's statute. (Dkt. 21 at 66.) And each order of dismissal excepted the share claims. The order dismissing the state-law counts provided that resolution of "whether Relator is entitled to a share of one or more State's share of its Settlement Fund, and if so, what that share would be," was "postponed until after the United States' claims in this case against defendant have been resolved." (Dkt. 33.) The order dismissing the federal claims excepted from the dismissal "any claims Relators may have against the States for a relator share" and provided that "[t]he Court retains jurisdiction over . . . any claims Relators may have for a share of the State Settlement Funds." (Dkt. 72 at 4–5.)[5] The order terminating Novak's remaining claims against Walgreens provided that the court "shall retain jurisdiction only (1) to enforce the terms of the

[5] California and New York observe that because their claims had been dismissed in January 2024, they received no notice of the joint motion that produced the April 2025 order and had no opportunity to object to its retention language. (Dkt. 141 at 11; Dkt. 202 at 18 n.2.) Nothing turns on that. No party contends that the States forfeited their objection by not raising it then, and the § 1367(c) question is the court's to decide in any event.

settlement between the parties and (2) over any claims Relator may have for a share of the State Settlement Funds." (Dkt. 82 ¶ 2.) A claim excepted from a dismissal is not dismissed. It remains pending, and the action is not "gone" as to it. The rule the States invoke addresses "the paradox of dismissing a case with finality yet at the same time retaining it." *Dupuy*, 495 F.3d at 810; *see Lynch*, 279 F.3d at 489 (jurisdiction is retained where "the suit has not been dismissed with prejudice"). The court did not dismiss the share claims, and the reservation was express, specific, and repeated.

The court assumes, without deciding, that the share claims fall within its supplemental jurisdiction under 28 U.S.C. § 1367(a). A court "declining to adjudicate state-law claims on discretionary grounds need not first determine whether those claims fall within its pendent jurisdiction." *Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007). Louisiana and Minnesota are right that the court has no original jurisdiction over the share claims, and California is right that the Declaratory Judgment Act does not supply it. Novak does not contend otherwise.[6]

The second objection goes to form. Illinois and New York argue that the Declaratory Judgment Act authorizes relief only "upon the filing of an appropriate pleading," 28 U.S.C. § 2201(a), and that a party may not obtain a declaration by motion. (Dkt. 180 at 2–3; Dkt. 202 at 11–12.) Novak answers that his complaint prayed for the maximum award under each State's statute and that the court may construe the motion as one to determine a relator's share. (Dkt. 213 at 8–9.) He adds that relator's-share disputes are ordinarily resolved by motion, with the government on the plaintiff's side of the caption. (*Id.* at 5.) The court need not decide whether a

[6] Several States make two further arguments. The first is that a relator whose claims were dismissed with his consent has nothing left in which to share. (*See* Dkt. 171 at 9–10 (citing *United States* v. *L-3 Commc'ns EOTech, Inc.*, 921 F.3d 11, 19 (2d Cir. 2019)).) The second is that Novak never pleaded a viable claim. (*See* Dkt. 206 at 10.) Those arguments go to whether Novak is entitled to a share, not to whether the question is before the court.

motion is the proper vehicle. Even if the States were correct about form, the result would be the same: the motion would be denied and the question left to the States' courts.

Novak argues that the States, by agreeing in 2023 to defer the share question, committed to litigating it here. (Dkt. 84 ¶ 18; *see* Dkt. 213 at 5.) The orders that preserved the share claims said nothing about whether or where they should be decided. The States' notice of intervention, filed with Novak's agreement, described the deferred question as whether Novak is entitled to a share "pursuant to the alternate remedy provisions of each state's respective false claims act, or other applicable law," and stated that its resolution "is postponed until after the United States' claims in this case against Defendant have been resolved." (Dkt. 27 at 3, 7.) The stipulation and the order that adopted it addressed timing. Neither said which court would decide, and neither purported to answer the question § 1367(c) poses.

An agreement to defer a question is not an agreement on its answer, and it is not an agreement to the forum. *See United States ex rel. Merena* v. *SmithKline Beecham Corp.*, 205 F.3d 97, 106–07 (3d Cir. 2000) (settlement agreement and dismissal order that reserved the relator's-share question preserved the government's right to contest it). Nor could it be. Parties cannot create federal jurisdiction through an agreement. *Shapo*, 463 F.3d at 645 (ancillary jurisdiction does not permit a federal court "to encroach on the jurisdiction reserved to the states merely because the parties would prefer to have a federal court resolve their future disputes"). Whether to exercise supplemental jurisdiction under § 1367(c) is the court's determination, not the parties' choice.

## III. The Court Declines to Exercise Supplemental Jurisdiction

### A. All Claims Within the Court's Original Jurisdiction Have Been Dismissed

The court dismissed Counts 1 and 31, the FCA claims that brought this case within the court's original jurisdiction, with prejudice on April 21 and October 23, 2025. (Dkts. 72, 82.)[7] Section 1367(c)(3) is satisfied, and the presumption of relinquishment applies. Novak answers that the statute does not command relinquishment but "merely permit[s]" it. (Dkt. 213 at 9–10.) He adds that the court has broad discretion to retain supplemental claims. (*Id.* at 10.) Both propositions are correct. A court is not required to relinquish. *Bailey* v. *City of Chi.*, 779 F.3d 689, 696 (7th Cir. 2015). But neither proposition displaces the presumption. The Seventh Circuit's cases describe how that discretion is ordinarily exercised, and Novak identifies nothing in them that permits retention absent one of the circumstances *Wright* recognizes: limitations, substantial judicial investment, or a clear disposition. Section 1367(c)(1) supplies an independent ground and forecloses the third circumstance.

### B. Novak's Claim to a Share Turns on Unsettled State Law

Novak's reply distills his position to "four simple and indisputable points": he sued under the States' statutes; the States "proceeded with" his claims by resolving them through a settlement; each State's statute obligates a State that proceeds with a relator's action to pay the relator between fifteen and twenty-five percent of "the proceeds of the action or settlement of the claim"; and the States' description of the settlement as "separate from this case" is "a misnomer"

[7] California cites *Rivera* v. *Allstate Ins. Co.*, 913 F.3d 603, 617 (7th Cir. 2018), and Illinois cites *Royal Canin U.S.A., Inc.* v. *Wullschleger*, 604 U.S. 22, 44 (2025), for the proposition that with the federal claims gone the court has no supplemental jurisdiction at all. (Dkt. 141 at 10; Dkt. 180 at 4.) *Royal Canin* held that a post-removal amendment deleting the federal claims eliminated supplemental jurisdiction. 604 U.S. at 25–26, 43–44. *Rivera* held that a court lacks discretion to retain state claims only when the federal claim fails for want of standing; after a merits dismissal, the choice is discretionary. 913 F.3d at 617–18. The federal claims here were settled and dismissed with prejudice, and the court reserved the share claims. Even if the States were right, the court would lack jurisdiction rather than decline it, and the disposition would be the same.

that exists only because the States failed to seek the court's approval of the settlement as their statutes required. (Dkt. 213 at 1–3.) On his account, no difficult question of state law arises, and the disposition is clear. The States disagree. On their account, they intervened to dismiss, not to prosecute; the Multistate Agreement resolved consumer-protection and public-nuisance claims that Novak could not have brought, in proceedings to which he was not a party, and allocated nothing to Medicaid; and the release of Novak's Medicaid claims was an incident of a global settlement, not the settlement of his action. The court does not decide who is right. It concludes that the questions are open, that they are questions of state law, and that the answers may differ from State to State.

**1. The States' courts have not decided whether a settlement outside the action triggers a share**

No decision the parties cite establishes the premise of Novak's argument, that a State "proceeds with" a qui tam action when it settles related claims outside the action and then intervenes to dismiss. (Dkt. 213 at 2.) Nor do the statutes supply it. The award provisions Novak invokes are keyed to the State's election to proceed with the relator's action. *See, e.g.*, 740 Ill. Comp. Stat. 175/4(d)(1) (award provision triggered when "the State proceeds with an action brought by" the relator). The alternate-remedy provisions found in most of the States' statutes address a different election, to pursue the State's claim through some other proceeding. *See, e.g.*, 740 Ill. Comp. Stat. 175/4(c)(5) (State "may elect to pursue its claim through any alternate remedy available to the State"). The stipulation Novak joined in 2023 described the deferred question as one arising under "the alternate remedy provisions of each state's respective false claims act, or other applicable law." (Dkt. 27 at 3.) His motion invoked those provisions. (Dkt. 84 ¶¶ 5–6.) His reply disclaims them and insists that the settlement was the settlement of the

action itself. (Dkt. 213 at 4.)[8] That Novak has framed the question two ways is some evidence that the answer is not clear.

Decisions under the analogous provisions of the FCA do not settle the matter, and to the extent they speak to it they do not support Novak's claim of simplicity. The Second Circuit has held that a relator whose qui tam action was voluntarily dismissed is not entitled to share in the government's later recovery. *L-3 Commc'ns*, 921 F.3d at 30. The Eighth Circuit, sitting en banc, has held that a relator's "right to recovery is limited to a share of the settlement of the claim that they brought," and "does not extend to a different claim that is settled by the government when that claim was not originally 'brought by' the relator." *Rille* v. *PricewaterhouseCoopers LLP*, 803 F.3d 368, 372 (8th Cir. 2015) (en banc). The Third Circuit has held that the government may settle its own claims without compromising the relator's. *United States ex rel. Dunleavy* v. *Cnty. of Delaware*, 123 F.3d 734, 739 (3d Cir. 1997), *abrogated on other grounds by Graham Cnty. Soil & Water Conservation Dist.* v. *United States ex rel. Wilson*, 559 U.S. 280 (2010). Connecticut, Hawaii, and New Jersey read *Rille* to mean that a payment made to resolve consumer-protection and public-nuisance claims is not the "settlement of the claim" Novak brought, which alleged Medicaid fraud.[9] Novak answers that none of the decisions the States cite "feature[s] the settlement of the subject *qui tam* and the payment of money to the state in exchange for the dismissal of the *qui tam* complaint." (Dkt. 213 at 4.) He may be right that the facts here are unlike any reported case. If so, no court has answered the question. Whether a

[8] Novak's reply states that the motion "could have been more clear" and that those provisions were cited only to show that legislatures "were looking out for" relators. (Dkt. 213 at 4.) The court need not decide whether the reframing is an argument first raised in reply, which would ordinarily be forfeited, because the analysis does not depend on which framing governs. Under either, the questions are unsettled questions of state law.

[9] *See* Dkt. 149 at 15 (Connecticut); Dkt. 171 at 9 (New Jersey); Dkt. 195 at 14 (Hawaii).

State's courts would follow the federal decisions, distinguish them, or reject them in construing the State's own statute is the question § 1367(c)(1) reserves to those courts.

Novak also argues that each State's statute permitted the State to settle his claims only with court approval, that the States obtained none, and that the violation does not permit them to refuse him a share. (Dkt. 84 ¶ 5; Dkt. 213 at 3 & n.2.) The Illinois provision on which he relies allows the State to settle "notwithstanding the objections of" the relator if the court determines, "after a hearing," that the settlement is "fair, adequate, and reasonable." 740 Ill. Comp. Stat. 175/4(c)(2)(B). The argument raises a further question no party has shown that any court has answered: what consequence, if any, a State's statute attaches to a settlement of the State's own claims that releases, without court approval, claims a relator had pleaded on the State's behalf. New Jersey's answer is that it never settled Novak's claims at all. When it executed the Multistate Agreement in December 2022, New Jersey had not intervened in this action. (Dkt. 171 at 10.) On its view, a State that has not intervened cannot compromise a relator's claim. (*Id.* (citing *Dunleavy*, 123 F.3d at 739).) On that view, the Multistate Agreement did not bind Novak, and what ended his claims was the dismissal to which he consented. Whether that is right under New Jersey law, or the law of any other State, is a question neither the statutory text nor any State's courts have resolved.

**2. The alternate-remedy question is unsettled, fact-dependent, and may differ from State to State**

Recasting the question as whether the Multistate Agreement is an alternate remedy does not simplify it. The federal decisions on which both sides draw point in different directions. The court sets them out not to choose among them but to show that even the body of law Novak says the States' courts would follow yields no single answer. (*See* Dkt. 213 at 11.)

The Sixth Circuit has held that a settlement the government pursues instead of intervening in a qui tam action is an alternate remedy. *United States ex rel. Bledsoe* v. *Cmty. Health Sys., Inc.*, 342 F.3d 634, 649 (6th Cir. 2003). The same court later held that a relator may share in such a recovery only if he has a valid qui tam action covering the conduct settled. *United States ex rel. Bledsoe* v. *Cmty. Health Sys., Inc.*, 501 F.3d 493, 522–23 (6th Cir. 2007); *accord Miller* v. *United States ex rel. Miller*, 110 F.4th 533, 549–50 (2d Cir. 2024); *United States ex rel. Hefner* v. *Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 111–12 (3d Cir. 2007). A district court applying that rule to a relator seeking a share of New York's separate settlement held the request premature while a motion to dismiss was pending. *United States ex rel. Lee* v. *N. Adult Daily Health Care Ctr.*, 174 F. Supp. 3d 696, 701, 704 (E.D.N.Y. 2016). The Eighth Circuit, by contrast, has held that a government that intervenes and settles may not invoke Rule 9(b) after the fact to deny the relator a share. *Roberts* v. *Accenture, LLP*, 707 F.3d 1011, 1017–18 (8th Cir. 2013). The court in *Lee* declined to extend that rule to a government that had not intervened. 174 F. Supp. 3d at 706. The States here intervened, but only to dismiss. That posture sits on neither side of the line.

Other federal decisions add requirements of their own. The alternate proceeding must involve a claim of the type the FCA reaches. *United States ex rel. Kennedy* v. *Novo A/S*, 5 F.4th 47, 54 (D.C. Cir. 2021); *see United States* v. *Kurlander*, 24 F. Supp. 3d 417, 425 (D.N.J. 2014). The conduct settled must overlap with the conduct the relator alleged. *Bledsoe*, 342 F.3d at 651; *Rille*, 803 F.3d at 373–74. On one court's reading, the government must have relied on the relator's information. *United States ex rel. Kuriyan* v. *HCSC Ins. Servs. Co.*, No. CIV 16-1148 JB/KK, 2022 WL 704130, at *3 (D.N.M. Mar. 9, 2022).

Louisiana, Massachusetts, and Minnesota contend that Novak's action was not valid because their statutes' public-disclosure provisions barred it.[10] They ask the court to decide that question under federal public-disclosure doctrine. *See Glaser* v. *Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). Whether those States' statutes track the federal doctrine is one more question of state law.

Massachusetts, North Carolina, and Tennessee argue that public-nuisance and consumer-protection settlements funding prospective abatement are not the type of claim a relator could bring under a false claims statute, and that Novak, whose complaint remained under seal until September 3, 2024 (Dkt. 37), nearly two years after Walgreens and the States executed the Multistate Agreement, contributed nothing to them. (Dkt. 182 at 14; Dkt. 206 at 11–12.) Illinois reads Novak's motion to concede that "the States never asserted claims against Walgreens regarding the illegal opioid reimbursement requests to their Medicaid programs" and that the States' consumer divisions "obtained the [Walgreens Settlement] without even knowing about the existence of Mr. Novak's case." (Dkt. 180 at 12 (citing Dkt. 84 ¶¶ 4, 12–13).) Novak answers that the Multistate Agreement nonetheless released his claims and conditioned payment on their dismissal. (Dkt. 213 at 3, 6–7.) Whether a State's courts would adopt the rules the federal courts have developed under the FCA—that the alternate proceeding must involve the same type of claim, that the conduct must overlap, that the government must have relied on the relator—and what they would make of a release obtained without knowledge of a sealed complaint are open questions. The few state-court decisions that exist do not answer them.

The only Illinois decision the parties cite held that a tax audit that began before the relators filed their qui tam complaint was not an alternate remedy because the State had

[10] *See* Dkt. 185 at 13–15 (Louisiana); Dkt. 196 at 11–14 (Minnesota); Dkt. 206 at 9–12 (Massachusetts).

embarked on it before there was any qui tam action to which it could be an alternative, and that a payment made while the complaint remained sealed could not be one because the defendant had no knowledge of the sealed action. *State ex rel. Hurst* v. *Fanatics, Inc.*, 2021 IL App (1st) 192159, ¶¶ 19–20, 189 N.E.3d 498, 502–03. The parties dispute what that holding implies for a settlement executed while this complaint was sealed. Texas's appellate courts have addressed its alternate-remedy provision twice, most recently after briefing on this motion closed. *State* v. *Ellis*, 681 S.W.3d 501, 512–14 (Tex. App.—Austin 2023, no pet.); *State* v. *Alvarez*, No. 15-25-00034-CV, 2026 WL 1900046, at *14 (Tex. App.—15th Dist. July 2, 2026, no pet. h.) (reversing the trial court's award and holding that the relators were not entitled to a share of the State's Medicaid-fraud settlement proceeds). The Texas Supreme Court has not taken up the issue, and no party has addressed what *Alvarez* implies for a settlement of the kind at issue here.

Maryland reports that its courts have never construed any provision of its False Health Claims Act, and New Jersey reports that no court has construed its alternate-remedy provision. (Dkt. 145 at 5; Dkt. 171 at 8.) For the remaining States, the parties cite nothing on point, and the court is aware of none.[11]

Novak asserts that "every state FCA has a provision either identical to or substantively equivalent to" the Illinois award provision. (Dkt. 213 at 2.) That may be true of the award

[11] The alternate-remedy provisions of the responding States, as the parties and the court have identified them, are: Colo. Rev. Stat. § 24-31-1204(4)(e); Conn. Gen. Stat. § 4-280; Del. Code Ann. tit. 6, § 1204(f); Ga. Code Ann. §§ 23-3-122(g), 49-4-168.2(h); Haw. Rev. Stat. § 661-26(e); 740 Ill. Comp. Stat. 175/4(c)(5); Ind. Code § 5-11-5.5-5(h); Iowa Code § 685.3(3)(e); La. Stat. Ann. § 46:439.3; Md. Code Ann., Health-Gen. § 2-604(c)(2); Mass. Gen. Laws ch. 12, § 5E; Mich. Comp. Laws § 400.610a(8); Minn. Stat. § 15C.06(c); N.J. Stat. Ann. § 2A:32C-6(h); N.Y. State Fin. Law § 190(5)(c); N.C. Gen. Stat. § 1-609(h); Okla. Stat. tit. 63, § 5053.3(D); R.I. Gen. Laws § 9-1.1-4(c)(5); Tenn. Code Ann. § 71-5-183(c)(5); Tex. Hum. Res. Code Ann. § 36.109(a); Vt. Stat. Ann. tit. 32, § 634; Va. Code Ann. § 8.01-216.6(H); Wash. Rev. Code § 74.66.060(5). California, Montana, Nevada, and New Mexico have none. *See* Cal. Gov't Code § 12652(g)(2); Mont. Code Ann. § 17-8-410; Nev. Rev. Stat. § 357.210(1); N.M. Stat. Ann. § 27-14-8(A). Apart from the Illinois and Texas decisions discussed in the text, the parties have identified, and the court is aware of, no decision of any State's courts construing any of these provisions.

provisions read in isolation. It is not true of the provisions that determine whether an award provision is triggered, and the dispute turns on those provisions.

The differences begin with four States that have no alternate-remedy provision at all: California, Montana, Nevada, and New Mexico. *See* Cal. Gov't Code § 12652(g)(2); Mont. Code Ann. § 17-8-410; Nev. Rev. Stat. § 357.210(1); N.M. Stat. Ann. § 27-14-8(A). Novak's own list of alternate-remedy provisions leaves the entries for California and Montana blank, and his motion contends that States without such a provision are bound regardless. (Dkt. 84 at 4 n.3; Dkt. 84-1 at 365.) California reports that its legislature considered and declined to add an alternate-remedy provision when the statute was enacted in 1987 and again when it was amended in 2012. (Dkt. 141 at 4.) Montana invokes its rule of construction against inserting what the legislature omitted. Mont. Code Ann. § 1-2-101. (Dkt. 199 at 11.) Novak replies that the omissions do not matter because he claims under the award provisions, not the alternate-remedy provisions. (Dkt. 213 at 4.) But whether an award provision, standing alone, reaches a recovery the State obtained outside the action is a question no court of those four States has confronted.

Maryland's alternate-remedy provision gives a relator rights in an alternative proceeding only where the State pursues that remedy "after intervening" in the qui tam action. Md. Code Ann., Health-Gen. § 2-604(c)(2). Maryland contends that it never intervened within the meaning of that provision. (Dkt. 145 at 4.)

New York contends that its alternate-remedy provision is narrower than the federal one, reaching only an election by the attorney general or a local government to pursue a remedy "with respect to the criminal or civil prosecution *of the presentation of false claims*." N.Y. State Fin. Law § 190(5)(c). (Dkt. 202 at 18–19.)

New Jersey's provision was amended effective June 30, 2023. Before the amendment, it reached only the attorney general's election to pursue "an alternate administrative recovery action" under the State's Medicaid Act. N.J. Stat. Ann. § 2A:32C-6(h) (2008). The amended version resembles the federal provision. *See* 31 U.S.C. § 3730(c)(5). Walgreens and the States executed the Multistate Agreement in December 2022, and a New Jersey court implemented it by consent judgment in November 2023. (Dkt. 171-3 at 1, 10.) Which version governs is a question New Jersey identifies and no court has answered. (Dkt. 171 at 3, 6, 8.)

Texas describes its statute as a health-care-program fraud statute with elements and remedies that differ from the FCA's. (Dkt. 190 at 12.) The Texas Supreme Court has declined to treat the FCA as probative where the statutes "employ materially different language." *In re Xerox Corp.*, 555 S.W.3d 518, 535 (Tex. 2018).

Indiana's provision differs again: it contemplates dismissal of the qui tam action to permit an alternative proceeding. Ind. Code § 5-11-5.5-5(h).

**3. Each State's allocation of the funds is governed by its own statutes and judgments**

Even if Novak established an entitlement to a share, a court would still have to identify "the proceeds of the action or settlement of the claim." *See, e.g.*, 740 Ill. Comp. Stat. 175/4(d)(1). Here those proceeds would have to be located within a global payment that resolves the public-nuisance and consumer-protection claims of forty-six States and thousands of political subdivisions, funds prospective abatement, and pays Tribes and attorneys' fees. (Dkt. 84-1 at 30–36, 323–28.) Novak says the amount is "an issue for another day." (Dkt. 213 at 13.) Maryland calculates that, under the Multistate Agreement's five categories of payment and its own state-subdivision agreement, fifteen percent of its allocation remains with the State. (Dkt. 145 at 11–14.) California reports that the amount it will ultimately receive cannot be known until

Walgreens makes its last payment in year fifteen. (Dkt. 141-1, Jones Decl. ¶¶ 30–33.) The statutes Novak invokes, however, award a percentage of the proceeds of "the claim," and whether any portion of a global payment is attributable to his claim is not severable from whether he is entitled to anything.

A consent judgment entered in each participating State's courts, together with that State's statutes, executive orders, and intrastate agreements, governs how its share of the Multistate Agreement is allocated. On the States' account, any share paid to Novak would have to come out of funds those instruments have already committed. And each instrument is a matter of that State's law. Three States illustrate the pattern.

*Illinois.* The Circuit Court of Cook County entered a consent judgment effecting Illinois's settlement with Walgreens. *People* v. *CVS Pharmacy, Inc.*, No. 2023 CH 09846 (Ill. Cir. Ct. Cook Cnty. Dec. 7, 2023). (Dkt. 180-1, Law Decl. ¶ 9.) That judgment incorporates an intrastate allocation agreement negotiated between the attorney general and the State's seven largest counties and joined by more than 180 subdivisions, under which fifty-five percent of each annual payment goes to the Illinois Remediation Fund, thirty-three percent to local governments, and twelve percent to the State. (Dkt. 180-1 ¶¶ 8, 11, 14, 19–20.) The Remediation Fund is a creature of statute and executive order, both of which restrict the funds to approved abatement programs. 30 Ill. Comp. Stat. 105/6z-133; Ill. Exec. Order No. 2022-19 (Aug. 30, 2022). (Dkt. 180-1 ¶¶ 12, 15–16.)

*New Jersey.* New Jersey's consent judgment, entered by the Superior Court, Chancery Division, on November 29, 2023, provides that the court "shall retain jurisdiction over the Parties for the limited purpose of the resolution of disputes identified in Section VI.F.1 of the Agreement," and that section of the Multistate Agreement provides that "all disputes shall be

resolved in . . . the court that entered the relevant Consent Judgment[.]" (Dkt. 171-3 at 9 ¶ 21; *id.* at 60.) A state-local memorandum of agreement divides New Jersey's proceeds equally between the State and its 262 eligible subdivisions, and the statute establishing the Opioid Recovery and Remediation Fund governs the State's use of its half. N.J. Stat. Ann. §§ 26:2G-39 to -43. (Dkt. 171-1, Fogel Decl. ¶¶ 11–19.)

*Texas.* The District Court of Travis County entered Texas's settlement as an exhibit to a 925-page agreed final judgment, which incorporates the Multistate Agreement, a second settlement among Texas, Walgreens, and the steering committee for litigating Texas subdivisions, a state-subdivision allocation term sheet, and the subchapter of the Texas Government Code that creates the Texas Opioid Abatement Fund Council and directs fifteen percent of the funds to an abatement account and eighty-five percent to an abatement trust fund for distribution to counties and municipalities. *State* v. *Walgreen Co.*, No. D-1-GN-24-000445 (98th Dist. Ct., Travis Cnty., Tex. Jan. 23, 2024) (Dkt. 190-1 at 8–18); Tex. Gov't Code Ann. §§ 403.501–.511. (Dkt. 190-1, Eberhardt Decl. ¶¶ 7–10, 14, 17.) Texas represents that a relator's share could be paid only if the judgment were modified and the statute amended. (Dkt. 190-1 ¶ 25.)

Maryland and California follow the same pattern.[12] North Carolina and Tennessee point to consent judgments entered in the Wake County Superior Court and the Knox County Circuit

[12] Maryland law requires that all revenue from any judgment against, or settlement with the opioid industry be deposited in the State's Opioid Restitution Fund and used for substance-use prevention, treatment, recovery, or harm reduction. Md. Code Ann., State Fin. & Proc. § 7-331(e)(1), (f). Appropriations must conform to the State's agreements with its subdivisions, which direct seventy percent of each payment to them. *Id.* § 7-331(h)(2)(i). (Dkt. 145-2 at 6–8.) California's settlement was entered as an 865-page stipulated judgment. *People* v. *Walgreen Co.*, No. 23-CV-013529 (Cal. Super. Ct. Sacramento Cnty. Jan. 4, 2024). That judgment, and Cal. Gov't Code § 12534 restrict the funds to opioid remediation, and California represents that any reallocation would require modifying the judgment and amending the statute. (Dkt. 141 at 15–16; Dkt. 141-1 ¶¶ 30–33, 42, 46.)

Court and to intrastate allocation agreements of the same kind.[13] Two statutes govern New York's allocation, N.Y. Mental Hyg. Law § 25.18 and N.Y. State Fin. Law § 99-n.[14] Montana points to a consent judgment entered in its courts that commits the proceeds to public-health remediation, and Indiana and Iowa note comparable schemes.[15]

Novak's answer is that no state statute "abrogates" the obligation to pay a share and that, because payments flow through a central administrator before reaching any State, "a relatively small fraction" could be set aside. (Dkt. 213 at 13.) That answer presupposes the resolution of the state-law question. Whether a State's false claims statute obligates the State to pay a share out of funds its opioid-allocation statute commits elsewhere, or whether the more specific allocation statute controls, is a question of that State's law. And whether a consent judgment that commits settlement funds to abatement permits payment of a relator's share is a question for the court that entered the judgment. As Minnesota and New Jersey note, it is also a question the Multistate Agreement itself assigns to that court as among the parties to it. (Dkt. 84-1 at 37 (§ VI.F.1); Dkt. 171-3 at 60; Dkt. 196 at 8.) North Carolina and Tennessee, joined by California, Delaware, Georgia, Louisiana, Massachusetts, Minnesota, Montana, and Oklahoma, argue that 28 U.S.C. § 1738 requires this court to give those judgments the same effect they would have in the courts that entered them and that a federal court may not enter relief that contradicts them.[16] The court need not decide whether those arguments are correct. That they have been made at all

---

[13] *See* Dkt. 182 at 5; Dkt. 184, Exs. I–L.

[14] *See* Dkt. 202-1 ¶¶ 8, 22, 26–33.

[15] *See* Dkt. 183 at 2, 4–5 (Iowa); Dkt. 199-1, Rossbach Decl. ¶¶ 21–26, 34–40, 50–51 (Montana); Dkt. 208 at 11 (Indiana).

[16] *See* Dkt. 141 at 16 (California); Dkt. 172 at 8 (Delaware); Dkt. 177 at 12–13 (Georgia); Dkt. 182 at 10 (North Carolina and Tennessee); Dkt. 185 at 10 (Louisiana); Dkt. 196 at 8–9 (Minnesota); Dkt. 197 at 8 (Oklahoma); Dkt. 199 at 8 (Montana); Dkt. 206 at 9 (Massachusetts).

is a further reason the courts that entered those judgments should be the ones to construe them. A federal court asked to answer these questions for twenty-eight States would be deciding "difficult questions which the state courts have never addressed," *Buethe* v. *Britt Airlines, Inc.*, 749 F.2d 1235, 1241 (7th Cir. 1984), in an area where "the state's interest in applying its own law" is at its height, *Huffman*, 865 F.2d at 923. The Eleventh Circuit has held it an abuse of discretion to retain jurisdiction over novel state-law claims arising under the laws of nine States after the federal claims dropped out. *Ameritox, Ltd.* v. *Millennium Labs., Inc.*, 803 F.3d 518, 532–37, 540–41 (11th Cir. 2015). The same considerations are present here, in greater number.

**4. Novak's arguments for retention do not change the analysis**

Novak first argues that because the States modeled their statutes on the FCA, "federal courts have more experience than state courts interpreting relator's share issues." (Dkt. 213 at 11.) Some States' courts consult federal decisions in construing their statutes, but on their own terms. California's courts treat federal decisions as persuasive where the California provision is analogous to its federal counterpart. *See Laraway* v. *Sutro & Co.*, 96 Cal. App. 4th 266, 274–75 (2002). They treat them as "not particularly helpful" where the statutory language differs. *Fassberg Constr. Co.* v. *Hous. Auth. of L.A.*, 152 Cal. App. 4th 720, 737 n.10 (2007). Texas's courts follow this approach: federal decisions are informative where Texas statutory language is substantially similar, *see Ellis*, 681 S.W.3d at 506 n.3, and not probative where the statutes "employ materially different language," *Xerox*, 555 S.W.3d at 535. New York contends that its provision is narrower than the federal one. (Dkt. 202 at 18–19.) How much weight federal decisions carry in construing a State's statute is therefore a question of that State's law, answered provision by provision. And on the questions presented here, the federal decisions diverge. A federal court adjudicating a supplemental state-law claim applies state law as the State's highest

court would. *See FDIC* v. *Wabick*, 335 F.3d 620, 625 (7th Cir. 2003) (*Erie* principles govern non-diversity claims for which state law supplies the rule of decision). Where that court has not spoken, the federal court is predicting, *Pisciotta* v. *Old Nat'l Bancorp*, 499 F.3d 629, 635 (7th Cir. 2007), and § 1367(c)(1) exists so that the prediction does not have to be made.

Novak next argues that relinquishment would "add to the burdens of" more than twenty-five state courts. (Dkt. 213 at 11 (quoting *Timm* v. *Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994)).) *Timm* affirmed retention where "the applicable state law was straightforward" and the claims "unspectacular." 32 F.3d at 277. The number of courts reflects the number of sovereigns on whose behalf Novak chose to sue, each with its own statute, its own consent judgment, and its own allocation scheme. A single federal forum would economize only if one answer governed every State. And whether one does is the question the States dispute.

He also argues that the case "has been in federal court for over seven years" and that the circumstances that make it exceptional "point the other way," toward retention. (Dkt. 213 at 12.) The time the case has spent on the docket does not reflect judicial investment in the state-law claims. *See infra* Part III.D.2 (judicial resources). The remaining "exceptional" features Novak identifies, that the state provisions replicate federal ones and that he would have to proceed in many courts, are the first two arguments restated.

Finally, he observes that the United States, which recovered "the federal Medicaid share of the very same illegal opioid prescriptions," paid him a share without raising the public-disclosure bar or Rule 9(b). (Dkt. 213 at 12–13.) The United States intervened in this action, prosecuted it here, and settled it here under a federal statute that entitles a relator to a share when the government "proceeds with an action brought by a person." 31 U.S.C. § 3730(d)(1). The

United States' handling of the FCA claims says nothing about what the States' statutes require of them.

### C. Subsections (c)(1) and (c)(3) Suffice

Two of the four statutory grounds apply. Either would suffice. Subsection (c)(3) is the reason the presumption of relinquishment applies. The federal claims that brought this case here are gone, and with them the federal interest in deciding the state claims. Subsection (c)(1) is the reason the presumption is "particularly strong." *RWJ Mgmt.*, 672 F.3d at 478. What remains would require this court to construe the false claims statutes, opioid-allocation statutes, and consent judgments of twenty-eight States on questions their own courts have not answered. The Seventh Circuit treats unsettled state law as "an independent ground for relinquishing supplemental jurisdiction," and the disappearance of the federal claims as a "further reason." *Williams Elecs.*, 479 F.3d at 907.

The values the court weighs under § 1367(c) point the same way. *See Int'l Coll. of Surgeons*, 522 U.S. at 173. Retaining the share claims would not serve judicial economy. No federal court has spent substantial effort on them, and deciding them would require separate constructions of the statutes and judgments of twenty-eight States. *See Wright*, 29 F.3d at 1251. Relinquishment is not unfair to Novak. No party contends the claims would be time-barred on refiling, and several States urge their own courts as the forum. Comity favors relinquishment because the questions concern how a State's statutes and its own courts' judgments direct the use of its own funds. *See Huffman*, 865 F.2d at 923. Convenience alone favors a single forum, and it does not outweigh the rest.

California, Georgia, Illinois, Nevada, New Mexico, and Virginia also argue that Novak's state-law claims "substantially predominate" under § 1367(c)(2) and that the number of

sovereigns, the state-court judgments, and the allocation schemes are "exceptional circumstances" under § 1367(c)(4).[17] Novak counters that the circumstances are exceptional the other way. (Dkt. 213 at 12.) The considerations the States identify under subsection (c)(4) are the ones that establish novelty and complexity under subsection (c)(1), and predominance under subsection (c)(2) adds nothing once no federal claim remains for the state claims to predominate over. Because subsections (c)(1) and (c)(3) independently support relinquishment, the court does not decide whether subsection (c)(2) or (c)(4) would as well. *Cf. Ameritox*, 803 F.3d at 537 n.28 (declining to reach subsection (c)(2) where subsection (c)(1) sufficed).

### D. None of the Circumstances That Displace the Presumption Is Present

None of the three circumstances *Wright* identifies is present.

#### 1. Limitations

Novak does not contend that his claims would be time-barred if refiled in state court, and no State contends that they would be. California states that "previously executed tolling agreements permit Relator to refile and pursue his claims in state courts." (Dkt. 141 at 14.) Section 1367(d) tolls the limitations period for a claim dismissed under § 1367(c) "while the claim is pending and for a period of 30 days after it is dismissed." The Supreme Court has read that provision to stop the clock for the duration of the federal case, not merely to afford a thirty-day grace period. *Artis* v. *District of Columbia*, 583 U.S. 71, 74–75 (2018).[18] The States have urged the court to relinquish jurisdiction on the ground that their own courts are the proper forum

[17] *See* Dkt. 141 at 13–15 (California); Dkt. 157 at 12, 15 (Nevada); Dkt. 177 at 12–13 (Georgia); Dkt. 180 at 8–10 (Illinois); Dkt. 204 at 4–5 (New Mexico); Dkt. 207 at 10–12 (Virginia).

[18] The Supreme Court has held that § 1367(d) does not apply to claims against nonconsenting States dismissed on Eleventh Amendment grounds. *Raygor* v. *Regents of Univ. of Minn.*, 534 U.S. 533, 548 (2002). Whether § 1367(d) applies to claims against States dismissed under § 1367(c) rather than on immunity grounds is unsettled, and the court does not decide it.

for these questions. And California, Hawaii, Indiana, Maryland, and Minnesota have asked that Novak be directed to those courts.[19] The court relinquishes jurisdiction in reliance on those representations.

**2. Judicial resources**

The court has expended few resources on this case, and fewer on the state-law claims. Novak filed the complaint under seal in August 2018, and it remained sealed until September 3, 2024, when the United States elected to intervene in part. (Dkts. 1, 36, 37.) Apart from the January 2024 dismissal, the court's role during those six years was confined to maintaining the seal while the United States investigated. (*See* Dkts. 5–35.) The case was reassigned to this court the day the complaint was unsealed. (Dkts. 37, 40.) The States intervened once, to dismiss, on an unopposed motion. (Dkts. 27, 33.) No party filed any other motion on a state-law claim. The parties took no discovery on them. The court has not construed any State's statute. The briefing on the motion is the first substantive attention the state-law claims have received in this court, and nothing the court has done would have to be repeated elsewhere. Novak's observation that the case "has been in federal court for over seven years" measures elapsed time, not effort. (Dkt. 213 at 12.)

The judicial-resources exception exists to prevent duplication of work already done. *See Williams Elecs.*, 479 F.3d at 906–08 (affirming relinquishment under subsection (c)(1) where the state-law claim had been tried once and remanded for retrial, and where reassignment to a new judge had "attenuated" the investment of judicial resources). If relinquishment was within the court's discretion there, it is well within it here, where the court has decided nothing about the share claims and the judge who entered the January 2024 order no longer presides.

[19] *See* Dkt. 141 at 3 (California); Dkt. 145 at 2 (Maryland); Dkt. 195 at 16 (Hawaii); Dkt. 196 at 8–9 (Minnesota); Dkt. 208 at 13 (Indiana).

### 3. Clarity of disposition

Novak invokes the third circumstance, and it is the one Part III.B forecloses. His claim rests on reading "proceeds with an action" to reach a settlement the State made outside the action. (Dkt. 213 at 2–3.) There are at least four unsettled questions under each State's law: whether an out-of-court settlement of different claims that releases a relator's pleaded claims is the State's "proceeding with" the action or the "settlement of the claim"; if not, whether it is an alternate remedy and, if so, whether the State's courts would adopt the federal same-type-of-claim and reliance requirements; what consequence, if any, follows from a State's settlement of its own claims without court approval or notice to the relator; and how any share would be reconciled with the consent judgment and allocation statutes governing the State's funds. Those are not questions that can be answered "without entanglement with any difficult issues of state law." *Brazinski*, 6 F.3d at 1182.

## E. What This Opinion Does Not Decide

Because the court declines to exercise supplemental jurisdiction, it does not reach three sets of questions. The first is whether the Eleventh Amendment bars Novak's request. Most States say it does.[20] Novak counters that he did not commence a suit against any State and that the States waived immunity by intervening. (Dkt. 213 at 6.) The second is whether Novak's claims were barred at the outset by the public-disclosure provisions of the States' statutes or deficient under Rule 9(b). Most States say they were.[21] Novak counters that the States, having

[20] *See* Dkt. 141 at 10 n.1 (California); Dkt. 149 at 6–7 (Connecticut); Dkt. 169 at 6–7 (Rhode Island); Dkt. 172 at 9–10 (Delaware); Dkt. 177 at 7–8 (Georgia); Dkt. 182 at 11–12 (North Carolina and Tennessee); Dkt. 185 at 11–12 (Louisiana); Dkt. 190 at 14 (Texas); Dkt. 195 at 11 (Hawaii); Dkt. 196 at 9–10 (Minnesota); Dkt. 197 at 8–9 (Oklahoma); Dkt. 199 at 8 (Montana); Dkt. 203 at 4–5 (Vermont); Dkt. 205 at 9–10 (Washington); Dkt. 206 at 6 (Massachusetts); Dkt. 207 at 12–13 (Virginia).

[21] Thirteen States argue that Novak's claims were barred by both the public-disclosure bar and Rule 9(b). *See* Dkt. 157 at 10–12 (Nevada); Dkt. 169 at 13–15 (Rhode Island); Dkt. 172 at 12–14 (Delaware); Dkt. 177 at 15–16 (Georgia); Dkt. 182 at 13–15 (North Carolina and Tennessee); Dkt. 185 at 13–15 (Louisiana); Dkt. 196 at 11–14

settled, may not litigate the merits. (Dkt. 213 at 12–13.) The third is whether the Multistate Agreement is, under any State's statute, an alternate remedy or the settlement of Novak's action. (Dkt. 213 at 4.) The court has described the parties' positions on the second and third questions only to show that they are unsettled questions of state law. Nothing in this opinion decides them.

California argues that a court must resolve a State's immunity before entering judgment on the merits of a claim against it. (Dkt. 141 at 10 n.1.) That is correct, but it does not apply here because the court enters no judgment on the merits. Eleventh Amendment immunity is not a limit on subject-matter jurisdiction that must be resolved before anything else. A court may consider some questions before deciding whether immunity applies, and a State may waive it. *McHugh* v. *Ill. Dep't of Transp.*, 55 F.4th 529, 533 (7th Cir. 2022); *see Wis. Dep't of Corr.* v. *Schacht*, 524 U.S. 381, 389 (1998). Declining supplemental jurisdiction is one of those questions. *Sinochem*, 549 U.S. at 431; *see Ruhrgas AG* v. *Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). Resolving immunity first would not change the result. If the States are immune, § 1367(a) never extended to the share claims against them, *Raygor*, 534 U.S. at 541–42, and the court would lack jurisdiction over those claims rather than decline it. Either way, the share claims would be dismissed without prejudice.

Nor does the immunity dispute favor retention. Novak's waiver theory treats the States' intervention to dismiss as an invocation of federal jurisdiction. Connecticut, Delaware, Texas, Virginia, and Washington respond that it was not, and Texas adds that its statute preserves

(Minnesota); Dkt. 197 at 9–12 (Oklahoma); Dkt. 199 at 11–14 (Montana); Dkt. 202 at 20–21, 21 n.4 (New York); Dkt. 206 at 9–12 (Massachusetts); Dkt. 207 at 7–8, 13–14 (Virginia). Three States point to Rule 9(b) exclusively. *See* Dkt. 141 at 8 (California); Dkt. 195 at 15–16 (Hawaii); Dkt. 208 at 9–10 (Indiana). Four States raise only the public-disclosure bar argument. *See* Dkt. 171 at 9 (New Jersey); Dkt. 180 at 13–16 (Illinois); Dkt. 190 at 7 n.3 (Texas); Dkt. 204 at 13–14 (New Mexico).

immunity. Tex. Hum. Res. Code Ann. § 36.116.[22] An answer here would govern only this court. Each State's immunity in its own courts is a matter of that State's law, and those courts can decide it. Texas represents that its courts have already addressed whether its alternate-remedy provision implicates sovereign immunity. (Dkt. 190 at 10 (citing *Ellis*, 681 S.W.3d at 512–13).) The Fifteenth Court of Appeals has since addressed the question as well. *See Alvarez*, 2026 WL 1900046, at *6–9. Novak warns that relinquishment invites States to settle qui tam claims outside federal court, dismiss the relator's claims, and then invoke immunity, leaving relators "to chase them in state courts across the country." (Dkt. 213 at 7.) Relinquishment will require Novak to proceed in many forums. That is a consequence of the number of sovereigns on whose behalf he sued, not a reason to decide their law for them. *See supra* Part III.B.4 (Novak's arguments for retention).

### F. Scope of the Ruling

This ruling resolves Novak's motion and his share claims. The analysis applies to every State from which Novak seeks a share, including Florida, Nevada, and New Mexico, which settled with Walgreens separately. It applies equally to any claim for a share against New Hampshire, which the complaint names but the motion does not, and which has not appeared. A State's silence does not change the character of the claim against it. The court need not decide whether the minute order of February 3, 2026 withdrew the claim as to Florida. (Dkt. 175.) To the extent that claim remains pending, it is subject to the same disposition. The court consolidated three related qui tam actions with this one (Dkt. 43), and the order of April 21, 2025, preserved their relators' claims as well. (Dkt 72 at 4–5.) Those actions have since been

---

[22] *See* Dkt. 149 at 7 (Connecticut); Dkt. 172 at 10 (Delaware); Dkt. 190 at 14 (Texas); Dkt. 205 at 9–10 (Washington); Dkt. 207 at 11–12 (Virginia).

dismissed, and no relator in them asserts a claim to a share of the States' settlement funds. *See* No. 23 C 1617, Dkt. 42; No. 22 C 6366, Dkt. 67; No. 22 C 6052, Dkt. 81.

**CONCLUSION AND ORDER**

For the foregoing reasons, the court declines to exercise supplemental jurisdiction over Novak's claims for a share of the settlement funds the States recovered from Walgreens. Novak's motion for a declaratory judgment (Dkt. 84) is denied. Novak's share claims are dismissed without prejudice to their assertion in the courts of the respective States. The retention of jurisdiction over Novak's share claims in the orders of April 21, 2025, and October 23, 2025, is withdrawn. (Dkt. 72 at 4–5; Dkt. 82 ¶ 2(2).) North Carolina and Tennessee's request for judicial notice (Dkt. 184) is granted to the extent stated in Part I. Civil case terminated.

Date: September 29, 2026

Joan H. Lefkow

U.S. District Judge Joan H. Lefkow